**FISHERBROYLES, LLP**
Timothy L. Moore, Esq.
CA Bar No. 305168
811 Mason Street
San Francisco, CA 94108
T: 619-678-1588
F: 619-275-7479
timothy.moore@fisherbroyles.com

Attorneys for Defendants GreenSky, Inc.,
GreenSky of Georgia, LLC, and GreenSky, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH BELYEA,**<br>**individually and on behalf of all**<br>**others similarly situated,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**GREENSKY, INC.,**<br>**a corporation,**<br><br>**and**<br><br>**GREENSKY OF GEORGIA, LLC,**<br>**and GREENSKY, LLC,**<br>**limited liability companies, and**<br>**DOES 1-20,**<br><br>    **Defendants.** | **CASE NO. 3:20-cv-01693-JSC**<br><br>**NOTICE AND MOTION TO COMPEL ARBITRATION OF DEFENDANTS GREENSKY, INC., GREENSKY OF GEORGIA, LLC, AND GREENSKY, LLC**<br><br>Date: May 7, 2020<br>Time: 9:00 am<br>Ctrm: E, 15th Floor<br>Judge: Hon. Jacqueline Scott Corley |

| | |
|---|---|
| 1 | NOTICE OF DEFENDANTS' MOTION TO COMPEL ARBITRATION |
| 2 | |
| 3 | To Plaintiff Elizabeth Belyea and her attorneys of record: |
| 4 | PLEASE TAKE NOTICE that on May 7, 2020 at 9 am, or as soon thereafter as the |

NOTICE OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

To Plaintiff Elizabeth Belyea and her attorneys of record:

PLEASE TAKE NOTICE that on May 7, 2020 at 9 am, or as soon thereafter as the matter may be called at the U.S. District Courthouse at 450 Golden Gate Avenue, San Francisco, California, in Courtroom E on the 15th Floor, before the Honorable Magistrate Judge Jacqueline Scott Corley, Defendants will and hereby do move for an order compelling Plaintiffs' claims against Defendants to arbitration and dismissing the pending action accordingly .

This motion is made pursuant to the Federal Arbitration Act, controlling Ninth Circuit law, as well as applicable state law. The grounds for the motion are that Plaintiff alleges claims arising from a contract that contains an arbitration agreement and an agreement by Plaintiff agreement to individually arbitrate all "Claims," which is defined broadly and encompasses the claims asserted here. Further, by granting Defendants' Motion and requiring Plaintiff to arbitrate claims she previously agreed to arbitrate, judicial resources will be conserved.

This motion is based on the memorandum of points and authorities, the declaration of Timothy D. Kaliban, all previously filed documents and pleadings, and the argument of counsel at the hearing.

Dated: March 16, 2020.

                                                    */s/ Timothy L. Moore*  e
                                                  Timothy L. Moore, Esq.
                                                  CA Bar No. 305168
                                                  Attorney for Defendants GreenSky, Inc. GreenSky of Georgia, LLC, and GreenSky, LLC

                                                  FISHERBROYLES, LLP
                                                  811 Mason Street
                                                  San Francisco, CA 94108

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 7

**RELEVANT FACTUAL BACKGROUND** ......................................................................... 7

   **I.    PLAINTIFF'S DEFICIENT COMPLAINT** ................................................................ 7

   **II.   RELEVANT TERMS OF THE LOAN AGREEMENT** ........................................... 9

      **A.  Arbitration Provision** ............................................................................................ 9

      **B.  Agreement to Pursue Claims Individually** ......................................................... 11

      **C.  Applicable Law** .................................................................................................... 12

**ARGUMENT** ........................................................................................................................... 12

   **I.    FEDERAL COURTS STRONGLY FAVOR ARBITRATION, WITH ALL DOUBTS RESOLVED IN FAVOR OF ARBITRATION.** ....................................................... 12

   **II.   BECAUSE THE LOAN AGREEMENT'S ARBITRATION PROVISION DELEGATES GATEWAY ISSUES OF ARBITRABILITY TO THE ARBITRATOR, THE COURT'S SOLE FUNCTION HERE IS TO COMPEL ARBITRATION.** ............................................. 14

      **A.  The Parties Can Agree To Delegate "Gateway" Issues To The Arbitrator.** .......... 14

      **B.  Plaintiff And GreenSky "Unmistakably And Clearly" Delegated To The Arbitrator The Resolution Of Gateway Issues.** ............................................................................ 15

        **i. The Arbitration Agreement's Broad Delegation Language Clearly Encompasses Gateway Issues Such As Arbitrability.** ................................................................................. 15

        **ii.** .. **The Arbitration Agreement's Reference To, And Incorporation Of, The Rules Of JAMS And AAA Also Demonstrates "Clear And Unmistakable Evidence" To Delegate To The Arbitrator Gateway Questions Of Arbitrability.** ............................................................ 17

   **III.  THE COURT SHOULD STAY OR DISMISS THE CASE PENDING THE OUTCOME OF THE ARBITRATION.** ............................................................................................ 19

**CONCLUSION** ....................................................................................................................... 20

**Cases**

*Aceves v. Autonation, Inc.*
   317 F. App'x 665 (9th Cir. 2009) .................................................................................................. 16

*AT & T Tech., Inc. v. Communications Workers of Am.*
   475 U.S. 643 (1986) ....................................................................................................................... 13

*AT&T Mobility LLC v. Concepcion*
   563 U.S. 333 (2011) ....................................................................................................................... 10

*Bentley v. GreenSky Trade Credit, LLC,*
   156 F. Supp. 3d 274 (D. Conn. 2015) ............................................................................................. 9

*Brennan v. Opus Bank*
   796 F.3d 1125 (9th Cir. 2015) ....................................................................................... 10, 14, 18, 19

*Capelli Enterprises, Inc. v. Fantastic Sams Salons Corp.*
   Case No. 5:16-cv-03401-EJD, 2017 WL 130284 (N.D. Cal. Jan. 13, 2017) .............................. 13, 19

*Citizens Bank v. Alafabco, Inc.*
   539 U.S. 52 (2003) ......................................................................................................................... 10

*Comedy Club, Inc. v. Improv West Assocs.*
   553 F.3d 1277 (9th Cir. 2009) ........................................................................................................ 13

*Davis v. Einstein Noah Restaurant Group, Inc.*
   Case No. 19-cv-00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23, 2019) ................................. 16

*DeVries v. Experian Info. Solutions, Inc.*
   Case No. 16-cv-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ................................. 17

*Henry Schein, Inc. v. Archer and White Sales, Inc.*
   139 S. Ct. 524 (2019) .......................................................................................................... 14, 15, 19

*Howsam v. Dean Witter Reynolds, Inc.*

537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ....................................................................... 14

*In re Apple & AT & TM Antitrust Lit.*

   826 F. Supp. 2d 1168 (N.D. Cal. 2011) ........................................................................................ 14

*In re Apple iPhone 3G Prod. Liab. Lit.*

   859 F. Supp. 2d 1084 (N.D. Cal. 2012) ........................................................................................ 12

*Johnmohammadi v. Bloomingdale's, Inc.*

   755 F.3d 1072 (9th Cir. 2014) ............................................................................................... 12, 20

*Johnson v. Oracle America, Inc.*,

   Case No. 17-cv-05157-EDL, 2017 WL 8793341 (N.D. Cal. Nov. 17, 2017) ..................................... 19

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*

   363 F.3d 1010 (9th Cir. 2004) ............................................................................................... 12, 13

*Magana v. DoorDash, Inc.*

   343 F. Supp. 3d 891 (N.D. Cal. 2018) ................................................................................... 13, 20

*McLellan v. Fitbit, Inc.*

   Case No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ..................................... 19

*MegaCorp Logistics LLC v. Turvo, Inc.*

   Case No. 18-cv-01240-EMC, 2018 WL 3619656 (N.D. Cal. July 30, 2018) ............................... 17, 19

*Mohamed v. Uber Technologies, Inc.*,

   848 F.3d 1201 (9th Cir. 2016) ............................................................................................... 15, 16

*Momot v. Mastro*

   652 F.3d 982 (9th Cir. 2011) ................................................................................. 13, 15, 16, 17

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*

   460 U.S. 1 (1983) ............................................................................................................................ 13

*O'Connor v. Uber Technologies, Inc.*

   904 F.3d 1087 (9th Cir. 2018) ....................................................................................................... 13

*Oracle America, Inc. v. Myriad Group A.G.*

    724 F.3d 1069 (9th Cir. 2013) ................................................................................... 13, 15, 18

*Portland Gen. Elec. Co. v. Liberty Mutual Ins. Co.*

    862 F.3d 981 (9th Cir. 2017) ................................................................................................ 14

*Poublon v. C.H. Robinson Co.*

    846 F.3d 1251 (9th Cir. 2017) .............................................................................................. 12

*Rent-A-Center, West, Inc. v. Jackson*

    561 U.S. 63 (2010) .................................................................................................... 14, 15, 16

*Sanchez v. Gruma Corp.*

    Case No. 19-cv-00794-WHO, 2019 WL 1545186 (N.D. Cal. Apr. 9, 2019) ........................ 10

*SteppeChange, LLC v. VEON Ltd.*

    354 F. Supp. 3d 1033 (N.D. Cal. 2018) ......................................................................... 18, 19

*Taylor v. Shutterfly, Inc.*

    Case No. 18-cv-00266-BLF, 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ................. 17, 18

*Williams v. Eaze Solutions, Inc.*

    417 F. Supp. 3d 1233 (N.D. Cal. 2019) ................................................................................ 10

*Wulfe v. Valero Refining Co. Cal.*

    641 F. App'x 758 (9th Cir. 2016) ......................................................................................... 10

**Other Authorities**

*JAMS Comprehensive Arb. Rules & Procedures*, Rule 11(b) ...................................................... 18

**Rules**

Am. Arb. Ass'n, *Consumer Arbitration Rules*, R-14(a) ............................................................... 18

Defendants, GreenSky, Inc., GreenSky of Georgia, LLC, and GreenSky, LLC (collectively, "GreenSky"), expressly preserving all defenses including but not limited to defenses related to personal jurisdiction and proper venue, file this Motion to Compel Arbitration of all claims asserted by Plaintiff, Elizabeth Belyea.

## INTRODUCTION

Plaintiff filed this putative class action against GreenSky purporting to assert claims for violations of the California Finance Code, the California Credit Services Act, California's Unfair Competition Law, California's False Advertising Law, and the Consumer Legal Remedies Act. She alleges, vaguely, that she obtained a $35,000 loan from SunTrust Bank ("SunTrust") – a loan that was serviced by GreenSky – in order to pay for drainage repairs on a rental property Plaintiff owned. She seems to allege the interest rate on the loan was exorbitant, even though she alleges that she paid off the loan shortly after obtaining it.

Plaintiff's claims, which arise from a loan document captioned "Installment Loan Agreement" ("Loan Agreement"), should be sent to arbitration. The Loan Agreement contains, among other provisions, (1) an arbitration agreement and (2) an agreement to arbitrate all "Claims" – a term defined exceptionally broadly in the Loan Agreement – individually. Therefore, as discussed below, GreenSky respectfully requests that the Court enter an order compelling arbitration of Plaintiff's individual claims and staying all proceedings against GreenSky pending the outcome of the arbitration.

## RELEVANT FACTUAL BACKGROUND

**I. PLAINTIFF'S DEFICIENT COMPLAINT**

Plaintiff's scattershot complaint purports to criticize GreenSky and its business model but, in fact, never connects any of those allegations to Plaintiff herself. Indeed, out of 166 supposed "factual" allegations in the complaint, only a mere 13 have anything to do with Plaintiff (D.E. 1-1 (Compl.), ¶¶ 121-133), and even those allegations are woefully deficient – there is no allegation that Plaintiff ever spoke to anyone at GreenSky, met anyone at GreenSky, relied on anything GreenSky ever wrote or said, or was even damaged by any alleged conduct of GreenSky. Instead, she alleges, in the most skeletal form possible, that, in June 2019, a rental property she owned experienced "drainage problems," which required her to spend over $10,000 on two sets of repairs – events that had nothing to do with GreenSky. (*Id.*, ¶¶ 122-126.)

Subsequently, a third drainage problem at Plaintiff's rental property resulted in a repair bill of $23,600, which allegedly was too much for Plaintiff to pay out-of-pocket. (*Id.*, ¶ 127.) Accordingly, an unidentified "plumber" (termed "an agent of the plumbing company") purportedly told Plaintiff that she could finance the $23,600 bill through an unidentified "affiliate of the company." (*Id.*, ¶ 128.) The plumber allegedly told Plaintiff that "she could obtain that financing under the condition that if she were able to pay the loan back within eighteen months, interest would be waived," and the plumber then allegedly selected a "financing plan" for Plaintiff. (*Id.*, ¶¶ 128-129.) Plaintiff alleges that she obtained a "GREENSKY-branded loan" that supposedly had an APR of 25.03%. (*Id.*, ¶ 131 (capitalization original).) She promptly paid off the entire loan in November 2019. (*Id.*, ¶ 132.)

Based on those skeletal allegations, Plaintiff purports to assert claims for violations of the California Finance Code ("CFL"), the California Credit Services Act ("CSA"), California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), and the Consumer Legal Remedies Act ("CLRA"). (*Id.*, ¶¶ 167-243.) Plaintiff asks the Court to certify a class against

8

GreenSky comprised of "**California consumers who transacted business with and/or received funds from or through GREENSKY ('Class') for a period beginning four years prior to the date this Complaint is filed until the date of class certification ('Class Period')**." (*Id.*, ¶ 159 (bold and capitalization original).)

## II.    RELEVANT TERMS OF THE LOAN AGREEMENT

While not alleged in the Complaint, Plaintiff obtained a loan in the amount of $35,000 facilitated and serviced by GreenSky and funded by SunTrust through the "GreenSky Program." (Declaration of Timothy D. Kaliban (attached as Exhibit A), ¶ 1.)  That loan was documented by a lending agreement ("Loan Agreement") provided to Plaintiff, which set forth the relevant terms pursuant to which Plaintiff obtained her loan. (Kaliban Decl., Collective Ex. 1.)[1]

### A. Arbitration Provision

For purposes of this Motion, the most relevant provision of the Loan Agreement is Paragraph 25, which is prominently titled "**ARBITRATION PROVISION. Agreement to Arbitrate Disputes**." (*Id.* (Loan Agmt.), ¶ 25 (bold and capitalization original).)  That provision requires that all "Claims" between the parties be resolved, "upon the election" by any party, through arbitration to be governed by the Federal Arbitration Act ("FAA"). (*See id.* ("This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and will be

---

[1] While GreenSky is listed in the title of the Loan Agreement, the Agreement lists SunTrust as the "Lender." GreenSky was the servicer for the loans. *See Bentley v. GreenSky Trade Credit, LLC*, 156 F. Supp. 3d 274, 292 (D. Conn. 2015) ("GreenSky is a third-party service provider that partners with lenders that fund loans under the GreenSky Program.") (quotations omitted).

governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as it may be amended ("FAA"), and the applicable Code." (underlining in original).)[2]

The arbitration agreement mandates that all "Claims" between Plaintiff and GreenSky "will be resolved through binding arbitration." (*Id.*) The term "Claim" is broadly defined to mean "any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your Loan Agreement as well as the relationship resulting from such Agreement (the 'Agreement'), including the validity, enforceability or scope of this Arbitration Provision or the Agreement." (*Id.* (underlining in original).) Likewise, the terms "you" and "us" are broadly defined to "include[] any corporate parent, wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns and purchasers of any accounts, all agents, employees, directors and representatives of any of the foregoing and any third party providing any product, service or benefit in connection with the Agreement."

Plaintiff was given the opportunity to opt out of the arbitration provision pursuant to the following provision in the Loan Agreement:

> You may choose to opt out of and not be subject to this arbitration provision but only by following the process set forth below. If you do not wish to be subject to

---

[2] Aside from the contractual provision designating the applicability of the FAA, there is no dispute that the arbitration agreement is "a transaction involving interstate commerce," as two of the Defendants are based in Georgia (as well as the non-party lender, SunTrust) and Plaintiff lives in California. (*See* Compl., ¶ 2; Kaliban Decl., ¶ 4.) *See, e.g.*, *Wulfe v. Valero Refining Co. Cal.*, 641 F. App'x 758, 760 (9th Cir. 2016) (employment claims subject to FAA where "the employment relationship undoubtedly involves interstate commerce: Wulfe, a citizen of California, was employed by Valero, a citizen of Texas . . ."); *Sanchez v. Gruma Corp.*, Case No. 19-cv-00794-WHO, 2019 WL 1545186, *3 (N.D. Cal. Apr. 9, 2019) (FAA applied to dispute where defendant "is incorporated in Nevada and has its corporate headquarters in Texas" and hired "a resident of California, to perform work in California"); *see also Williams v. Eaze Solutions, Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019); *see generally Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). Clearly, Plaintiff's interstate loan was one "evidencing a transaction involving commerce." *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (quoting 9 U.S.C. § 2). The FAA, therefore, applies.

> this Arbitration Provision, then you must notify us in writing within forty-five
> (45) calendar days of the date of the Agreement at the following address: P.O.
> Box 29429, Atlanta, GA 30359, Attention: Legal.

(*Id.*) Plaintiff was notified in the Loan Agreement, in all capital letters, of the consequences of not opting out of the arbitration provision:

> UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION AS
> PROVIDED BELOW OR EXCEPT AS APPLICABLE LAW PROHIBITS US
> FROM IMPOSING ARBITRATION ON YOU, NEITHER YOU NOR WE
> WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A
> JURY TRIAL ON A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE
> IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN
> ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR
> ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.* (capitalization original).) Nevertheless, even if she did not opt out of arbitration, Plaintiff remained able to file and pursue an "individual Claim in a small claims court in your state or municipality, so long as that claim is pending only in that court." (*Id.*)

Claims will be referred either to JAMS or to the American Arbitration Association ("AAA"). (*Id.*) The arbitration will take place in the federal judicial district where Plaintiff resides. (*Id.*) Nor will Plaintiff be required to pay more in arbitration fees than she paid in initiating litigation: "Regardless of who wins in arbitration, you will only be responsible for paying your share, if any, of the arbitration fees required by the applicable Code, which amount will not exceed the filing fees that you would have in court if the Claim had been brought in the appropriate state or federal court closest to where you live. We will pay the remainder of any arbitration fees." (*Id.*) Furthermore, the arbitration agreement provides that GreenSky "will consider in good faith making a temporary advance of all or part of your share of the arbitration fees." (*Id.*)

### B. Agreement to Pursue Claims Individually

The Loan Agreement's arbitration provision also contains an agreement that the arbitration will be conducted on an individual basis only. That provision states, in relevant part: "Arbitration

11

will proceed solely on an individual basis without the right for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of others." (*Id.*) Furthermore, the parties agreed, "The arbitrator's authority to resolve and make written awards is limited to Claims between you and us alone. Claims may not be joined or consolidated unless agreed to in writing by all parties." (*Id.*)[3]

### C. Applicable Law

With regard to the applicable law, the Loan Agreement states: "**Governing Law. This Loan Agreement, including the rate of interest and fees, is governed by applicable federal law and, to the extent not preempted by federal law, the laws of GA where the Lender is located as shown in Section 1 (Welcome) of this Loan Agreement (without regard to the State's conflict of laws provisions).**" (*Id.* (bold text in original).)

## ARGUMENT

### I. FEDERAL COURTS STRONGLY FAVOR ARBITRATION, WITH ALL DOUBTS RESOLVED IN FAVOR OF ARBITRATION.

"A party to a valid arbitration agreement may 'petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4); *accord*, *In re Apple iPhone 3G Prod. Liab. Lit.*, 859 F. Supp. 2d 1084, 1088 (N.D. Cal. 2012). "The Federal Arbitration Act (FAA) requires courts to 'place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.'" *Poublon v.*

---

[3] There is no question that the class action waiver is enforceable. *See, e.g.*, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-77 (9th Cir. 2014).

*C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

It is well settled that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)); *see also Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) ("presumption of arbitrability," quoting *AT & T Tech.*); *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (noting "the general presumption in favor of arbitration"); *Capelli Enterprises, Inc. v. Fantastic Sams Salons Corp.*, Case No. 5:16-cv-03401-EJD, 2017 WL 130284, *2 (N.D. Cal. Jan. 13, 2017) ("presumption of arbitrability"). As such, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement." *Lifescan*, 363 F.3d at 1012; *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 898 (N.D. Cal. 2018); *see also O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).

Furthermore, any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Moses H. Cone*, 460 U.S. at 24-25); *Magana*, 343 F. Supp. 3d at 898 (same); *Apple iPhone 3G*, 859 F. Supp. 2d at 1088 (same). "Thus, arbitration should only be denied

13

where 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Apple iPhone 3G*, 859 F. Supp. 2d at 1088 (quoting *AT & T Tech.*, 475 U.S. at 650); *accord, In re Apple & AT & TM Antitrust Lit.*, 826 F. Supp. 2d 1168, 1173 (N.D. Cal. 2011).

## II. BECAUSE THE LOAN AGREEMENT'S ARBITRATION PROVISION DELEGATES GATEWAY ISSUES OF ARBITRABILITY TO THE ARBITRATOR, THE COURT'S SOLE FUNCTION HERE IS TO COMPEL ARBITRATION.

### A. The Parties Can Agree To Delegate "Gateway" Issues To The Arbitrator.

In light of the foregoing principles and the broad language of the arbitration agreement here, the Court's sole function should be to transfer this dispute to arbitration. As the Ninth Circuit has held:

> Generally, in deciding whether to compel arbitration, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). However, these gateway issues can be expressly delegated to the arbitrator where "the parties *clearly and unmistakably* provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (emphasis added).

*Brennan*, 796 at 1130; *see also Portland Gen. Elec. Co. v. Liberty Mutual Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) ("parties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so") (citing *Howsam*, 537 U.S. at 83-84).

Just last year, the Supreme Court confirmed that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). As the

14

Supreme Court observed in *Rent-A-Center*, an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70 (quoted in *Henry Schein*, 139 S. Ct. at 529). Parties can agree to delegate these "gateway" issues to the arbitrator where "there is clear and unmistakable evidence that they did so." *Henry Schein*, 139 S. Ct. at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016); *Oracle America*, 724 F.3d at 1072; *Momot*, 652 F.3d at 987-88. Here, there are two separate and independent bases of "clear and unmistakable" evidence that Plaintiff and GreenSky intended to delegate to the arbitrator threshold questions of arbitrability, either of which warrants sending this dispute to arbitration.

### B. Plaintiff And GreenSky "Unmistakably And Clearly" Delegated To The Arbitrator The Resolution Of Gateway Issues.

#### i. The Arbitration Agreement's Broad Delegation Language Clearly Encompasses Gateway Issues Such As Arbitrability.

In this case, the arbitration agreement between Plaintiff and GreenSky broadly delegates to the arbitrator the power to decide "any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your Loan Agreement as well as the relationship resulting from such Agreement (the 'Agreement'), *including the validity, enforceability or scope of this Arbitration Provision or the Agreement*." (Kaliban Decl., Coll. Ex. 1 (Loan Agmt.), ¶ 25 (underlining in original; italics added).) That language consistently has been held to constitute "clear and unmistakable evidence" by the parties to delegate gateway questions of arbitrability to the arbitrator.

For example, in *Momot*, the parties agreed to delegate to the arbitrator questions concerning "the validity or application of any of the provisions" of the agreement. *Momot*, 652 F.3d at 988. The Ninth Circuit held that "this language, delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Id.* (quoting *Rent-A-Center*, 561 U.S. at 68). "In other words," the court held, "the parties clearly and unmistakably agreed to arbitrate the question of arbitrability." *Id.*

Likewise, in *Mohamed*, the parties agreed to delegate to the arbitrator questions "including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." *Mohamed*, 848 F.3d at 1208. The Ninth Circuit noted that "[t]his language is similar to but more expansive than the language at issue in *Momot*, and thus also 'clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability.'" *Id.* at 1209 (quoting *Momot*, 652 F.3d at 988) (bracketed text added by *Mohamed*); *see also Aceves v. Autonation, Inc.*, 317 F. App'x 665, 666 (9th Cir. 2009) (where "the parties agreed 'that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability or scope of this Arbitration Provision, at your or our election, are subject to arbitration,'" court held that such language "clearly and unmistakably empowers the arbitrator to decide questions of scope in the first instance").

Decisions in this District have followed the Ninth Circuit authorities and held that language substantially similar to the language in the Loan Agreement's arbitration provision clearly and unmistakably delegated to the arbitrator the power to decide the question of arbitrability. *See, e.g., Davis v. Einstein Noah Restaurant Group, Inc.*, Case No. 19-cv-00771-JSW, 2019 WL 6835717, *3 (N.D. Cal. Oct. 23, 2019) (agreement provided that "[t]he enforceability of this Agreement, the

scope of arbitrability and all other questions shall be determined by the arbitrator"); *Taylor v. Shutterfly, Inc.*, Case No. 18-cv-00266-BLF, 2018 WL 4334770, *4, *5 (N.D. Cal. Sept. 11, 2018) (agreement stated that "[a]ll issues are for the arbitrator to decide, including issues relating to the scope and enforceability of this arbitration agreement"); *MegaCorp Logistics LLC v. Turvo, Inc.*, Case No. 18-cv-01240-EMC, 2018 WL 3619656, *5 (N.D. Cal. July 30, 2018) (agreement mandated that "[a]ny dispute, claim, or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by a mutually agreed upon arbitrator"); *DeVries v. Experian Info. Solutions, Inc.*, Case No. 16-cv-02953-WHO, 2017 WL 733096, *9 (N.D. Cal. Feb. 24, 2017) (agreement stated that "the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement"). In short, Plaintiff and GreenSky "clearly and unmistakably" (*Momot*, 652 F.3d at 988) intended for the arbitrator to decide gateway arbitrability issues.

### ii. The Arbitration Agreement's Reference To, And Incorporation Of, The Rules Of JAMS And AAA Also Demonstrates "Clear And Unmistakable Evidence" To Delegate To The Arbitrator Gateway Questions Of Arbitrability.

Even if the plain language of the delegation clause could be interpreted to preclude delegation of gateway issues to the arbitrator, the arbitration agreement's express incorporation of JAMS and AAA rules constitutes an independent basis to conclude that the parties delegated to the arbitrator the power to resolve those gateway issues. The agreement states that any "Claim will be resolved … by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim

is filed." (Kaliban Decl., Coll. Ex. 1 (Loan Agmt.), ¶ 25.) The "national arbitration organization" to be selected is either JAMS or the AAA. (*Id.*) The AAA's Consumer Arbitration Rules expressly state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Am. Arb. Ass'n, *Consumer Arbitration Rules*, R-14(a). The JAMS rules provide likewise: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *JAMS Comprehensive Arb. Rules & Procedures*, Rule 11(b).

      It has long been settled in this Circuit that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130; *see also Oracle America*, 724 F.3d at 1074 ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (citing numerous cases). Decisions from this District are in accord. *See, e.g.*, *Williams*, 417 F. Supp. 3d at 1237 ("The parties' incorporation of AAA rules into the contract constitutes clean and unmistakable evidence that contracting parties agreed to arbitrate arbitrability") (quotations omitted); *SteppeChange, LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1043 (N.D. Cal. 2018) ("It is simple enough to determine that the parties agreed to arbitrate arbitrability under the broad scope of the arbitration clause. In the Ninth Circuit, incorporation of an arbitrator's arbitration rules constitutes evidence that the parties agreed to arbitrate arbitrability."); *Taylor*, 2018 WL 4334770, \*6 ("the Court notes that the incorporation of AAA rules, which immediately

precedes the express delegation provision of the Arbitration Agreement, is further evidence that shows the parties' intent to delegate to the arbitrator") (parenthetical omitted);[4] *Johnson v. Oracle America, Inc.*, Case No. 17-cv-05157-EDL, 2017 WL 8793341, *6 (N.D. Cal. Nov. 17, 2017) ("express incorporation of AAA and JAMS rules" delegated to arbitrator questions of arbitrability); *McLellan v. Fitbit, Inc.*, Case No. 3:16-cv-00036-JD, 2017 WL 4551484, *2 (N.D. Cal. Oct. 11, 2017) ("In our circuit, 'incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.'") (quoting *Brennan*, 796 F.3d at 1130); *Capelli Enterprises*, 2017 WL 130284, *3 (arbitrator to decide question of arbitrability where "the Agreement mandates that disputes be 'arbitrated in accordance with the Commercial Arbitration Rules of the [AAA]'") (brackets added by *Capelli Enterprises*).

In this case, the arbitration agreement specifically requires the parties to arbitrate under the rules of JAMS or the AAA. As such, the arbitration agreement's express incorporation of the AAA and JAMS rules provide an independent basis to rule that the parties intended the arbitrator to decide any gateway questions of arbitrability.

## III. THE COURT SHOULD STAY OR DISMISS THE CASE PENDING THE OUTCOME OF THE ARBITRATION.

Defendants request that the Court stay this case pending arbitration of Plaintiff's individual claims. Under the FAA, if the court concludes that the dispute is subject to arbitration, it "*shall* on

---

[4] Prior to 2019, some courts, in addition to the "clear and unmistakable evidence" inquiry, engaged in a second inquiry – whether the movant's assertion of arbitrability was "wholly groundless." *See, e.g.*, *MegaCorp Logistics*, 2018 WL 3619656, **7-8; *SteppeChange*, 354 F. Supp. 3d at 1044-45. In last year's *Henry Schein* decision, however, the Supreme Court rejected the "wholly groundless" exception as "inconsistent with the statutory text and with our precedent. It confuses the question of who decides arbitrability with the separate question of who prevails on arbitrability. When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 531.

application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Defendants respectfully request that the Court compel arbitration and stay this case so that the parties may engage in individual arbitration as provided by the Loan Agreement.[5]

## CONCLUSION

WHEREFORE, Defendants, GreenSky, Inc., GreenSky of Georgia, LLC, and GreenSky, LLC, respectfully move this Court to compel arbitration and dismiss or stay this case pending the outcome of the arbitration.

Dated: March 16, 2020.

/s/ Timothy L. Moore          e
Timothy L. Moore, Esq.
CA Bar No. 305168
Attorney for Defendants GreenSky, Inc. GreenSky of Georgia, LLC, and GreenSky, LLC

FISHERBROYLES, LLP
811 Mason Street
San Francisco, CA 94108
T: 619-678-1588
F: 619-275-7479
timothy.moore@fisherbroyles.com

---

[5] The Court also has the discretion to dismiss this case. *See Johnmohammadi*, 755 F.3d at 1073-74 ("We have held that, notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration.") (citing *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 638 (9th Cir. 1988)); *Magana*, 343 F. Supp. 2d at 902 (same).