UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH BELYEA,<br><br>            Plaintiff,<br><br>    v.<br><br>GREENSKY, INC., et al.,<br><br>            Defendants. | Case No.  20-cv-01693-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 5 |

     Elizabeth Belyea brings this putative class action against GreenSky of Georgia, LLC and GreenSky, LLC alleging violation of California's consumer protection and lending and credit services laws. GreenSky's motion to compel arbitration is now pending before the Court.[1]  After careful consideration of the parties' briefing, including their Court-ordered supplemental briefs, and having had the benefit of oral argument on July 2, 2020, the Court DENIES the motion to compel arbitration without prejudice.  GreenSky has failed to prove by a preponderance of the evidence that Plaintiff agreed to arbitrate.

## BACKGROUND

    Elizabeth Belyea needed some plumbing work done on her rental home and was told by the Roto-Rooter employee hired to perform the plumbing work that she could finance the $23,600

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4 & 11.)

United States District Court<br>Northern District of California

plumbing bill "through an affiliate of the company." (Complaint, Dkt. No. 1-1 at ¶¶ 123, 127. [2])

When Plaintiff told him she was interested in applying for the loan "he helped me fill out a credit application on his iPad. I input my social security number, phone number, and income, and handed him back the iPad." (Dkt. No. 15-2 at ¶ 6.) She does "not recall receiving or reviewing the loan terms before the GreenSky shopping pass was used to pay Roto-Rooter, and did not intend to agree to those loan terms when the loan was initiated." (*Id*. at ¶ 7.) However, "she eventually discovered that the GREENSKY-branded loan came with an APR of 25.05%, subject to eighteen months of interest-waiver." (Dkt. No. 1-1 at ¶ 131.)

On January 9, 2020, Plaintiff filed this putative class action in the Superior Court for the County of San Francisco against GreenSky of Georgia, LLC and GreenSky, LLC (collectively "GreenSky") alleging violations of California's lending and credit services laws, as well as consumer protection laws. (Dkt. No. 1-1 at 5.) GreenSky thereafter removed the action to this Court alleging jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) ("CAFA"). (Dkt. No. 1.) Less than a week later, GreenSky filed this motion to compel arbitration. (Dkt. No. 5.)

GreenSky offers evidence that Plaintiff obtained the loan at issue from SunTrust and that upon being approved for the loan, Plaintiff was sent a number of documents, including a Greensky Shopping Pass, a document entitled "Understanding Your Deferred Interest Loan," and an "Installment Loan Agreement." (Dkt. No. 5-1 at 3, 5-16.) The Installment Loan Agreement identifies the Lender as SunTrust Bank and the Borrower as Liz Bely [sic].[3] (*Id*. at 7.) Only SunTrust Bank signed the Agreement, not Plaintiff (*id*.); however, the GreenSky Pass states the electronic record of any purchases made by the borrower pursuant to the loan "will constitute the signature of (all) Borrower(s) on such Loan Agreement." (*Id*.)

The Installment Loan Agreement contains an Arbitration Provision which states in its

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[3] The Welcome paragraph also identifies "SunTrust Bank, a Georgia banking corporation" as the "Lender," "we," "our," or "us" who has "approved Borrower(s) for a GreenSky Program Installment Loan." (Dkt. No. 5-1 at 8, ¶ 1.)

United States District Court
Northern District of California

entirety:

**25. ARBITRATION PROVISION. Agreement to Arbitrate Disputes:** This Arbitration Provision sets forth the circumstances and procedures under which Claims (defined below) that arise between you and us will be resolved through binding arbitration; provided, however, that this provision does not apply if, on the date this Agreement is issued, you are covered by the federal Military Lending Act as a member of the Armed Forces or a dependent of such a member. UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION AS PROVIDED BELOW OR EXCEPT AS APPLICABLE LAW PROHIBITS US FROM IMPOSING BINDING ARBITRATION ON YOU, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR ABILITY TO PARTICIPATE IN A CLASS ACTION. Nothing in this provision precludes you from filing and pursuing your individual Claim in a small claims court in your state or municipality, so long as that claim is pending only in that court. Definitions: As used in this Arbitration Provision, the term "Claim" means and includes any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your Loan Agreement as well as the relationship resulting from such Agreement ("the Agreement"), including the validity, enforceability or scope of this Arbitration Provision or the Agreement. "Claim" also includes claims by or against any third party providing any product, service or benefit in connection with the Agreement (including, but not limited to, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a claim asserted by you or us against the other. As used in this Arbitration Provision, "you " and "us " also includes any corporate parent, wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns and purchasers of any accounts, all agents, employees, directors and representatives of any of the foregoing and any third party providing any product, service or benefit in connection with the Agreement. Initiation of Arbitration Proceeding / Selection of Administrator: Any Claim will be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"), except to the extent the Code conflicts with the Agreement. Claims must be referred to either JAMS or The American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of either of these organizations is unacceptable to you, you will have the

right within 30 days after you receive notice of our election to select the other organization listed to serve as arbitration administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact (1) JAMS at 1920 Main Street, Suite 300, Irvine, CA 92614; www.jamsadr.com or (2) AAA at 335 Madison Avenue, New York, NY 10017, www.adr.org . In addition to the arbitration organizations listed above, Claims may be referred to any other arbitration organization that is mutually agreed upon in writing by you and us, or to an arbitration organization or arbitrator(s) appointed pursuant to Section 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, provided that any such arbitration organization and arbitrator(s) will enforce the terms of the restrictions set forth below. Class Action Waiver and Other Restrictions: Arbitration will proceed solely on an individual basis without the right for any Claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others. The arbitrator's authority to resolve and make written awards is limited to Claims between you and us alone. Claims may not be joined or consolidated unless agreed to in writing by all parties. No arbitration award or decision will have a preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in these terms and conditions and without waiving either party's right of appeal, if any portion of this "Class Action Waiver and Other Restrictions" provision is deemed invalid or unenforceable, then the entire Arbitration Provision (other than this sentence) will not apply. Arbitration Procedures: This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and will be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as it may be amended ("FAA"), and the applicable Code. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations and will honor claims of privilege recognized by law. Federal or state rules of civil procedure or evidence will not apply. Written requests to expand the scope of discovery rest within the arbitrator's sole discretion and will be determined pursuant to the applicable Code. The arbitrator will take reasonable steps to preserve the privacy of individual, and of business matters. Judgment upon the written arbitral award may be entered in any court having jurisdiction. Subject to the right of appeal under the FAA, the arbitrator's written decision will be final and binding unless you or we take an appeal from the award by making a dated, written request to the arbitration organization within 30 days from the date of entry of the written arbitral award. A three-arbitrator panel administered by the same arbitration organization will consider anew any aspect of the award objected to by the appellant, conduct an arbitration pursuant to its Code and issue its decision within 120 days of the date of the appellant's written notice. The panel's majority vote decision will be final and binding. Location of Arbitration / Payment of Fees: The arbitration will take place in the federal judicial district where you live. Regardless of who wins in arbitration, you will only be responsible for paying your share, if any, of the arbitration fees required by the applicable Code, which amount will not exceed the filing fees that you would have incurred if the Claim had been brought in the appropriate state or federal court closest to where you live. We will pay the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees. Waivers also may be available from the JAMS or AAA. Continuation: This Arbitration provision will survive termination of the Agreement, as well as voluntary payment in full of your account, any debt collection proceeding by or between you and us, and any bankruptcy by you or us. If any portion of this Arbitration Provision, except the "Class Action Waiver and Other Restrictions" provision above, is deemed invalid or unenforceable for any reason, it will not invalidate the remaining portions of this Arbitration Provision or the Agreement, each of which will be enforceable regardless of such invalidity. Opt-Out Process: You may choose to opt out of and not be subject to this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within forty-five (45) calendar days of the date of the Agreement at the following address: P.O. Box 29429, Atlanta, GA 30359, Attention: Legal. Your written notice must include your name, address, social security number, the date of the Agreement, and a statement that you wish to opt out of this Arbitration Provision. Your notice to opt out will only apply to this particular Agreement with us and not to subsequent or previous agreements.

(*Id.* at 10-11.)

GreenSky moved to compel arbitration on the grounds that due to the Arbitration Provision's delegation clause, any dispute as to whether GreenSky could invoke the Arbitration Provision should be decided by the arbitrator.  In its reply brief, GreenSky raised two new arguments in support of its theory that it can enforce the at-issue arbitration agreement as a non-signatory: (1) as an agent of the lender SunTrust Bank or (2) based on equitable estoppel. GreenSky also offered new evidence in support of its reply.   Because the Court could not consider these arguments and evidence without giving Plaintiff the opportunity to address them, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), the Court requested supplemental briefing regarding these matters.  (Dkt. No. 26.)  The parties have since submitted their supplemental briefs

3

United States District Court
Northern District of California

1  (Dkt. Nos. 31, 36) and the Court heard oral argument on July 2, 2020.

2  **LEGAL FRAMEWORK**

3      The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid,

4  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of

5  any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with

6  other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-*

7  *Center, West, Inc. v. Jacks*on, 561 U.S. 63, 67 (2010) (internal citations omitted). A party may

8  petition a court to compel "arbitration [to] proceed in the manner provided for in such agreement."

9  9 U.S.C. § 4.

10     The United States Supreme Court recognizes a "liberal policy favoring arbitration

11  agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Moses H.*

12  *Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that "as a matter of

13  federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

14  arbitration"). Thus, courts must direct parties to proceed to arbitration should it determine: (1) that

15  a valid arbitration agreement exists; and (2) that "the agreement encompasses the dispute at issue."

16  *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *see also Chiron Corp. v.*

17  *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (noting that "[i]f the response is

18  affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement

19  in accordance with its terms").

20     **DISCUSSION**

21     GreenSky contends there is no dispute that Plaintiff entered into the Arbitration Provision

22  with SunTrust.  It also argues that under the Arbitration Provision's plain language, Plaintiff

23  agreed to arbitrate any disputes with GreenSky arising from the loan agreement.  In particular, the

24  Arbitration Provision identifies "the circumstances and procedures under which Claims (defined

25  below) that arise between you and **us** will be resolved through binding arbitration."  (Dkt. No. 5-1

26  at 10 (emphasis added).)  The Arbitration Provision goes on to explain:

27      As used in this Arbitration Provision, "<u>you</u>" and "<u>us</u>" also includes any corporate
        parent, wholly or majority owned subsidiaries, affiliates, any licensees,
28      predecessors, successors, assigns and purchasers of any accounts, all agents,

4

employees, directors and representatives of any of the foregoing **and any third party providing any product, service or benefit in connection with the Agreement**.

(*Id.* at 10 (emphasis added.)  GreenSky asserts that as it is SunTrust's agent or at least "a third party providing any product, service or benefit in connection with the Agreement," Plaintiff agreed to arbitrate her claims against it.

Plaintiff does not dispute that GreenSky is at least "a third party providing any product, service or benefit in connection with the Agreement."  Instead, she responds that (1) she did not agree to the Arbitration Provision, and (2) even if she did, her claims against GreenSky are not covered by the Arbitration Provision.

**A.  GreenSky has not Proved that Plaintiff Assented to Arbitration**

As the party seeking to compel arbitration, Defendant has the burden of demonstrating that a valid agreement exists to arbitrate the claims at issue.  *See Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (holding that the party compelling arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.").

GreenSky maintains that a valid arbitration agreement exists because Plaintiff was "provided" the loan documents which included the Arbitration Provision.  (Dkt. No. 5 at 9:10-11.) Plaintiff counters that there is no evidence that she consented to arbitrate; indeed, the loan agreement GreenSky relies on is unsigned:

ACCEPTANCE OF THIS LOAN AGREEMENT BY ELECTRONIC SIGNATURE: The first use of the Shopping Pass or the associated loan to make a purchase will constitute acceptance by (all) Borrower(s) of the terms of this Loan Agreement. The dated physical or electronic record of such use will evidence the signature of (all) Borrower(s) on this Loan Agreement and have the same legal effect as a physical signature.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. NON-NEGOTIABLE CONSUMER NOTE.
Borrower: _____ Date: _____   Co- Borrower: _____ Date: _____
*Electronic record constitutes acceptance of this Agreement (see above)*     *Electronic record constitutes acceptance of this Agreement (see above)*
LENDER: /s/ SunTrust Bank, a Georgia banking corporation _____   Date: 07/01/2019

(Dkt. No. 5-1 at 7.)  Plaintiff also insists that GreenSky cannot rely on the language above that "[t]he first use of the Shopping Pass or the associated loan…will constitute acceptance" because GreenSky has not submitted any evidence that she was on notice of the loan terms when the shopping pass—loan proceeds—were  used to pay Roto-Rooter. In reply, GreenSky insists that the arbitrator, not this Court, must decide whether Plaintiff assented to the Arbitration Provision because the Provision contains a delegation clause; that is, because the arbitration clause delegates

United States District Court
Northern District of California

to the arbitrator the power to decide "any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your Loan Agreement as well as the relationship resulting from such Agreement (the 'Agreement'), including the validity, enforceability or scope of this Arbitration Provision or the Agreement," (Dkt. No. 15-1 at ¶ 25), the arbitrator decides whether Plaintiff agreed to arbitrate at all.  The Court disagrees.

### 1)   The Court Decides Contract Formation Questions

"Gateway" questions of arbitrability are typically for a court, and not the arbitrator, to decide, even where there is a facial agreement to arbitrate. *See Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (stating that gateway questions of arbitrability "are presumptively reserved for the court"). Gateway questions include "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Id.* (internal quotation marks and citation omitted).  Notwithstanding the presumption of judicial determination, "parties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so." *Id.*; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" through a delegation clause."). The question of contract formation, however, is not a delegable gateway issue. *See Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) ("[a]lthough challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court."); *Galilea, LLC v. AGCS Mar. Ins. Co.*, 879 F.3d 1052, 1056 (9th Cir. 2018) (noting that the court "must first make a threshold finding that the document [evidencing an agreement] at least purports to be ... a contract.").

### a)   The Delegation Clause Does Not Apply to Contract Formation Issues

Notwithstanding this clear authority, GreenSky insists that the issue of whether an agreement to arbitrate exists, that is, whether Plaintiff agreed to the Arbitration Provision, falls within the delegation clause and thus must be decided by the arbitrator in light of (1) the Supreme

1    Court's recent decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527

2    (2019); and (2) the Arbitration Provision's incorporation of the JAMS and AAA rules.  Neither

3    argument is availing.

4            In *Schein*, the Supreme Court provided guidance on the question of who—the court or the

5    arbitrator—decides "whether [an] arbitration agreement applies to [a] particular dispute." 139 S.

6    Ct. at 527. The Supreme Court instructed that the answer is "a question of contract law." *Id*.

7    *Schein* "did not change—to the contrary, it reaffirmed—the rule that courts must first decide

8    whether an arbitration agreement exists at all." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921

9    F.3d 508, 515 n.4  (5th Cir. 2019) (citing *Schein*, 139 S.Ct. at 530 ("To be sure, before referring a

10   dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.")); *see*

11   *also In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 385 (6th Cir. 2020) (refusing "defendants'

12   invitation for us to merge challenges to the validity of an agreement ('whether it is legally

13   binding') with challenges to the existence of an agreement in the first instance ('whether it was in

14   fact agreed to' or 'was ever concluded')).

15           GreenSky's argument that *Schein* stands for something more relies heavily on an out-of-

16   circuit district court case, *De Angelis v. Icon Entm't Grp. Inc.*, 364 F. Supp. 3d 787, 796 (S.D.

17   Ohio 2019).  *De Angelis* focused on the Supreme Court's statement in *Schein* that once the parties

18   have a delegation clause, "a court possesses no power to decide the arbitrability issue," *id*. at 796-

19   97 (quoting *Henry Schein, Inc.*, 139 S.Ct. at 529; but as other courts have noted, "*Schein* dealt

20   with an exception to the threshold arbitrability question—the so-called 'wholly groundless'

21   exception—not a challenge to the validity of an arbitration clause itself." *Gingras v. Think Fin.,*

22   *Inc.*, 922 F.3d 112, 126 (2d Cir. 2019), cert. denied sub nom. *Sequoia Capital Operations, LLC v.*

23   *Gingras*, 140 S. Ct. 856 (2020) (rejecting defendant's argument that *Schein* prevented the court

24   from considering whether the delegation clause was fraudulent because "[t]hat specific attack on

25   the delegation provision is sufficient to make the issue of arbitrability one for a federal court.");

26   *see also Brice v. 7HBF No. 2, Ltd*., No. 19-CV-01481-WHO, 2019 WL 5684529, at *4 (N.D. Cal.

27   Nov. 1, 2019) (following *Gingras*).

28           Thus, where, as here, there is a challenge to the existence of an enforceable agreement—

United States District Court
Northern District of California

7

1    which therefore includes a dispute as to whether the parties agreed to the delegation clause—

2    "*Schein* has no bearing on this case." *Gingras*, 922 F.3d 126.

3          GreenSky's related argument that the arbitration clause's incorporation of the JAMS and

4    AAA rules dictates a different result is likewise unavailing.  The Ninth Circuit—along with

5    "[v]irtually every circuit to have considered the issue"—has expressly held that incorporation of

6    arbitration rules, such as the American Arbitration Association's rules, "constitutes clear and

7    unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*,

8    796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d

9    1069, 1074 (9th Cir. 2013)).  *Brennan*, however, is inapplicable to the facts of this case because

10   there was no dispute in *Brennan* that the plaintiff had entered into the arbitration agreement—the

11   court thus did not consider the threshold issue of contract formation.  *See Eiess v. USAA Fed. Sav.*

12   *Bank*, 404 F. Supp. 3d 1240, 1252 (N.D. Cal. 2019) (noting that issue of contract formation was

13   for the court and only considered whether incorporation of the JAMS and AAA rules was clear

14   and unmistakable delegation of gateway issues to the arbitration *after* determining that a valid

15   agreement existed between the parties).

16         Accordingly, the Court rejects GreenSky's argument that because of the delegation clause

17   the arbitrator and not the Court should determine whether Plaintiff agreed to the Arbitration

18   Provision.

19                       **b)  California Law Governs the Question of Contract Formation**

20         The Court thus turns to Plaintiff's argument that Greensky has not met its burden to

21   establish by a preponderance of the evidence that she agreed to the Arbitration Provision because

22   there is no evidence that she accepted the contract terms.  She argues further that even if her use of

23   the loan proceeds could constitute acceptance, she was not on notice of the Arbitration Provision.

24   Courts must apply state law in determining whether a valid agreement to arbitrate exists. *Arthur*

25   *Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009); *see also Ingle v. Circuit City Stores, Inc.*,

26   328 F.3d 1165, 1170 (9th Cir. 2003) ("To evaluate the validity of an arbitration agreement, federal

27   courts should apply ordinary state-law principles that govern the formation of contracts."). While

28   the Loan Agreement contains a Georgia choice-of-law provision, applying this provision would

United States District Court
Northern District of California

8

presume that an enforceable contract exists between the parties. *See Peter v. DoorDash, Inc.*, No. 19-CV-06098-JST, 2020 WL 1967568, at *3 (N.D. Cal. Apr. 23, 2020). Where, as here, the dispute is about contract formation, the Court applies California's choice-of-law rules. [4]   *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012)) ("A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law.") (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001); *Eiess*, 404 F. Supp. 3d at 1249 (where "the underlying basis for CAFA jurisdiction is diversity, the forum state's choice of law rules apply").

Under the governmental interest analysis, California courts engage in a three-step process to determine whether a foreign state's law governs an issue in an action brought in California. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010) (citing *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 915 (2001)).

> First, the court determines whether the relevant law of each potentially affected jurisdiction[] with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Pokorny*, 601 F.3d at 994-95 (internal quotation marks omitted) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-08 (2006)). The party advocating the use of a foreign state's law bears the burden of identifying the conflict between California and that state's laws and establishing that the foreign state has an interest in having its law applied. *Wash. Mut. Bank*, 24 Cal. 4th at 921. If the party fails to meet either of those burdens, the court "may properly find

---

[4] GreenSky's reliance on *In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig.*, No. 11MD2286-MMA (MDD), 2019 WL 398169, at *3 (S.D. Cal. Jan. 31, 2019), for the proposition that Georgia law should apply is misplaced because jurisdiction there was based on federal question jurisdiction, not diversity jurisdiction as here.

1    California law applicable without proceeding to the third step in the analysis." *Id.*  Here, while

2    GreenSky contends that Georgia, rather than California, law applies, it has failed to identify any

3    differences between Georgia and California law.  In fact, both parties contend that Georgia and

4    California law are the same on the issues of contract formation presented here.  (Dkt. No. 15 at 12;

5    Dkt. No. 24 at 8.)  Accordingly, the Court will apply California law to this dispute.

6         Under California law, "[a]n essential element of any contract is the consent of the parties,

7    or mutual assent." *Donovan v. RRL Corp.*, 26 Cal.4th 261, 270 (2001) (citing Cal. Civ. Code §§

8    1550, 1565); *see also Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212

9    (9th Cir. 2016) (noting that the "mutual intention to be bound by an agreement is the sine qua non

10   of legally enforceable contracts and recognition of this requirement is nearly universal"). Mutual

11   assent usually consists of an offer and acceptance. *Donovan*, 27 P.3d at 709.  "Courts must

12   determine whether the outward manifestations of consent would lead a reasonable person to

13   believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559,

14   566 (9th Cir. 2014).

15        Plaintiff insists that the record does not support her consent to arbitrate and emphasizes

16   that the loan agreement containing the Arbitration Provision is unsigned.  "However, the writing

17   memorializing an arbitration agreement need not be signed by both parties in order to be upheld as

18   a binding arbitration agreement."  *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165,

19   176 (2015).  That is, "it is not the presence or absence of a signature [on an agreement] which is

20   dispositive; it is the presence or absence of evidence of an agreement to arbitrate which matters."

21   *Id.*  Such evidence "can be based, for example, on conduct from which one could imply either

22   ratification or implied acceptance of such a provision." *Id.*  (internal quotation marks omitted).

23        The question then is whether Plaintiff's use of the GreenSky shopping pass—the loan

24   funds—constitutes acceptance of the Loan Agreement terms, including the Arbitration Provision.

25   Plaintiff insists that it cannot because she did not have notice of the Arbitration Provision.

26   Contracts formed on the internet such as this "come primarily in two flavors: 'clickwrap' (or

27   'click-through') agreements, in which website users are required to click on an agree box after

28   being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a

United States District Court
Northern District of California

10

website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014).

The contract here is more akin to a browsewrap agreement because there is no suggestion that Plaintiff had to affirmatively click something in order to accept the contract—GreenkSky's argument instead is that her use constituted acceptance.  "The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Id.* at 1176 (quoting *Be In, Inc. v. Google Inc.*, No. 12–CV–03373–LHK, 2013 WL 5568706, at *6 (N.D. Cal. Oct. 9, 2013)). "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Ngyyen*, 763 F.3d at 1176 (internal citation and quotation marks omitted).

Plaintiff insists there is no evidence in the record that she received or reviewed the loan terms, including the Arbitration Provision, before she used the loan proceeds.  And she avers that she does "not recall receiving or reviewing the loan terms before the GreenSky shopping pass was used to pay Roto-Rooter, and did not intend to agree to those loan terms when the loan was initiated." (Dkt. No. 15-2 at ¶ 7.)  The only evidence GreenSky offers regarding Plaintiff's receipt of the loan documents is the Declaration of GreenSky's President and Chief Risk Officer Timothy Kaliban who attests that "Ms. Belyea was sent a number of documents, including a 'GreenSky Shopping Pass,' a document entitled 'UNDERSTANDING YOUR DEFERRED INTEREST LOAN," and an "Installment Loan Agreement."  (Dkt. No. 5-1 at ¶ 6.) This general statement does not dispute Plaintiff's testimony disclaiming actual knowledge given that there is no evidence as to who sent these documents, when they were sent, and how they were sent and received.

Where "there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract. Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the

11

1    agreement's webpage." *Nguyen*, 763 F.3d at 1177.  GreenSky offers no evidence that would

2    support a finding that Plaintiff was on inquiry notice of the Arbitration Provision. Instead,

3    GreenSky argues that the question of her assent must be decided by the arbitrator—an argument

4    which the Court has rejected as discussed *supra*.

5         In the alternative, Greensky contends that if the Court does consider the merits of

6    Plaintiff's challenge to whether an agreement to arbitrate exists, the Court should follow the

7    reasoning of the two courts which have considered motions to compel arbitration arising from the

8    same GreenSky loan agreements.  *See Alfortish v. GreenSky, LLC*, No. CV 16-15084, 2017 WL

9    699830, at *2 (E.D. La. Feb. 22, 2017); *Terlizzi v. Altitude Mktg., Inc.*, No. 16-CV-1712-WJM-

10   STV, 2018 WL 2196090, at *8 (D. Colo. May 14, 2018).  Both cases, however, are factually

11   inapposite as in both the plaintiffs admitted that they signed documents agreeing to be bound by

12   the loan agreement terms. *See Alfortish*, 2017 WL 699830, at *6 (finding that plaintiffs signed a

13   document which stated "I/We acknowledge receipt of the GreenSky Installment Loan Agreement

14   ('Agreement') with the Lender specified on the Agreement, and agree to be legally bound by the

15   TERMS and CONDITIONS of the Agreement."); *Terlizzi*, 2018 WL 2196090, at *4 (finding that

16   plaintiffs signed "'the Borrower Payment Certificate,' [which] contained an acknowledgment that

17   the signatory 'agree[s] to be legally bound by the TERMS AND CONDITIONS' contained in 'the

18   GreenSky Installment Loan Agreement.'").  Further in *Terlizzi*, the plaintiffs admitted they

19   received the loan agreement by email the following day and one of the plaintiffs electronically

20   signed the loan agreement the same day. *Terlizzi*, 2018 WL 2196090, at *4-5.   There is no such

21   evidence here; instead, there is GreenSky's general statement that Plaintiff was "sent" the

22   agreement, but no evidence as to when, how, or by whom, and critically, no evidence that she

23   received the documents.

24        GreenSky has thus failed to meet its burden of demonstrating by a preponderance of the

25   evidence that Plaintiff had actual, constructive, or inquiry notice of the loan terms, including the

26   Arbitration Provision, a fact necessary to a finding that she agreed to the Arbitration Provision.  .

27   *See Nguyen*, 763 F.3d at 1179 ("the onus must be on website owners to put users on notice of the

28   terms to which they wish to bind consumers.").

United States District Court
Northern District of California

Plaintiff also insists that GreenSky has failed show a valid electronic signature under California's Uniform Electronic Transaction Act, Cal. Civ. Code § 1633.1, which recognizes the validity of electronic signatures. The Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form." Cal. Civ. Code § 1633.7.  However, a party seeking to compel arbitration based on an electronic signature to the contract containing the arbitration clause must present "sufficient evidence to support a finding that the electronic signature on the [] agreement was the act of [the plaintiff]." *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 842 (2014); *see also J.B.B. Inv. Partners, Ltd. v. Fair*, 232 Cal. App. 4th 974, 989 (2014), as modified (Dec. 30, 2014) (noting that section 1633.5(b) requires the parties to agree to conduct a transaction by electronic means).  Here, Plaintiff insists that GreenSky has not offered evidence that Plaintiff electronically signed the loan agreement or that Plaintiff's use of the shopping pass satisfies the electronic signature requirement.  Given the Court's conclusion that GreenSky has failed to demonstrate an agreement to arbitrate, the Court need not consider Plaintiff's argument regarding California's Uniform Electronic Transaction Act.

## CONCLUSION

For the reasons stated above, GreenSky's motion to compel arbitration is DENIED without prejudice. The parties may conduct limited discovery regarding the question of whether an agreement to arbitrate was formed.

Plaintiff shall provide GreenSky with her proposed amended complaint by July 10, 2020. GreenSky shall advise Plaintiff on or before July 20, 2020 whether it will stipulate to amendment of the complaint.  If GreenSky declines to do so, Plaintiff shall file her motion for leave to amend her complaint by July 30, 2020.

The Court sets a video Case Management Conference for August 13, 2020 at 1:30 p.m. The parties shall file an updated Case Management Conference Statement by August 6, 2020.

//

//

//

//

1          This Order disposes of Docket No. 5.

2          **IT IS SO ORDERED.**

3   Dated:

4                                                    _____
                                                     JACQUELINE SCOTT CORLEY
5                                                    United States Magistrate Judge

United States District Court
Northern District of California