UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH BELYEA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GREENSKY, INC., et al.,<br><br>    Defendants. | Case No. 20-cv-01693-JSC<br><br>**ORDER RE: MOTIONS TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 55, 56, 58 |

Elizabeth Belyea, Heidi Barnes, Hazel Lodge, and David Ferguson bring this putative class action against GreenSky of Georgia, LLC and GreenSky, LLC (collectively "GreenSky") alleging violation of California's consumer protection, lending and credit services laws. GreenSky moves to compel arbitration of Belyea, Lodge, and Ferguson's claims and moves to dismiss Barnes' claims.[1] This Order addresses GreenSky's motions to compel arbitration. Having considered the parties' briefs and having had the benefit of oral argument on January 14, 2021, the Court DENIES the motions to compel arbitration. GreenSky has failed to show that it is undisputed that Plaintiffs agreed to the Arbitration Provision; indeed, the evidence in the record is insufficient to support such a finding.

**BACKGROUND**

**A. Factual Background**

GreenSky is a "financial technology company" which among other things acts as a loan servicer for "point-of-sale loans for consumers to pay for home improvement, home repair, and

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4, 11, 77, 78, 79.)

healthcare costs." (First Amended Class Action Complaint ("FAC"), Dkt. No. 52 at ¶¶ 1-4.[2]) Between 2016-2019 each of the plaintiffs took out one or more such loans to pay for home repair projects. (*Id*. at ¶¶ 74-103.)  In each plaintiff's case, the contractor or plumber ("merchant") suggested that he could arrange financing for the home repair/improvement project. (*Id*. at ¶¶ 75, 80, 85, 90, 95.)  Once the plaintiff agreed, the merchant "procure[d] a loan" for the plaintiff using the GreenSky App. (*Id*. at ¶¶ 75, 80, 85, 95.)  Each of these loans was provided by a third-party bank—generally, SunTrust Bank (now Truist) or InTrust Bank—which was serviced by GreenSky. (*Id*. at ¶¶ 75-76, 80-81, 85-86, 100-101.)

Belyea "financed $23,600 through a GreenSky-serviced loan, with GreenSky transferring those funds directly to the plumber. The loan carried a 25% APR over seven years of monthly payments, with an 18-month interest-waived promotion." (*Id*. at ¶ 76.)  Lodge financed two loans for a total of $14,607 through a GreenSky-serviced loan, with GreenSky transferring those funds directly to the plumber. (*Id*. at ¶ 86, 91.)  The loans carried a purported 0% APR over four years of monthly payments. (*Id*. at ¶ 86, 91.)  Ferguson financed two loans for a total of $10,117.50 through the GreenSky loan program. (*Id*. at ¶¶ 96, 101.)  Each Plaintiff's loan included an undisclosed merchant fee which was paid directly to GreenSky. (*Id*. at ¶¶ 82, 92, 97, 102.)  As a result of the unlawful fee, each Plaintiff paid more than they otherwise would have. (*Id*. at ¶¶ 78, 83, 88, 93, 98, 103.)

In support of its motions to compel arbitration, GreenSky offers unsigned copies of Plaintiffs' loan agreements. (Dkt. No. 55-1 at 33; Dkt. No. 56-1 at 75; Dkt. No. 58-1 at 32.)  Each of these agreements includes the following clause.

> **ACCEPTANCE OF THIS LOAN AGREEMENT BY ELECTRONIC SIGNATURE:** The first use of the Shopping Pass or the associated loan to make a purchase will constitute acceptance by (all) Borrower(s) of the terms of this Loan Agreement. The dated physical or electronic record of such use will evidence the signature of (all) Borrower(s) on this Loan Agreement and have the same legal effect as a physical signature.
>
> **CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. NON-NEGOTIABLE CONSUMER NOTE.**
> Borrower: _____ Date: _____  Co-Borrower: _____ Date: _____
> *Electronic record constitutes acceptance of this Agreement (see above)*   *Electronic record constitutes acceptance of this Agreement (see above)*
> **LENDER: /s/** SunTrust Bank, a Georgia banking corporation       Date: 07/01/2019

(Dkt. No. 55-1 at 34; *see also*, Dkt. No. 56-1 at 76; Dkt. No. 58-1 at 33.)  The loan agreements contain the following Arbitration Provision:

---

[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

2

> **25. ARBITRATION PROVISION. Agreement to Arbitrate Disputes:** This Arbitration Provision sets forth the circumstances and procedures under which Claims (defined below) that arise between you and us will be resolved through binding arbitration; provided, however, that this provision does not apply if, on the date this Agreement is issued, you are covered by the federal Military Lending Act as a member of the Armed Forces or a dependent of such a member. UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION AS PROVIDED BELOW OR EXCEPT AS APPLICABLE LAW PROHIBITS US FROM IMPOSING BINDING ARBITRATION ON YOU, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR ABILITY TO PARTICIPATE IN A CLASS ACTION. Nothing in this provision precludes you from filing and pursuing your individual Claim in a small claims court in your state or municipality, so long as that claim is pending only in that court. Definitions: As used in this Arbitration Provision, the term "Claim" means and includes any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your Loan Agreement as well as the relationship resulting from such Agreement ("the Agreement"), including the validity, enforceability or scope of this Arbitration Provision or the Agreement. "Claim" also includes claims by or against any third party providing any product, service or benefit in connection with the Agreement (including, but not limited to, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a claim asserted by you or us against the other. As used in this Arbitration Provision, "you" and "us" also includes any corporate parent, wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns and purchasers of any accounts, all agents, employees, directors and representatives of any of the foregoing and any third party providing any product, service or benefit in connection with the Agreement. Initiation of Arbitration Proceeding / Selection of Administrator: Any Claim will be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"), except to the extent the Code conflicts with the Agreement. Claims must be referred to either JAMS or The American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of either of these organizations is unacceptable to you, you will have the right within 30 days after you receive notice of our election to select the other organization listed to serve as arbitration administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact (1) JAMS at 1920 Main Street, Suite 300, Irvine, CA 92614; www.jamsadr.com or (2) AAA at 335 Madison Avenue, New York, NY 10017, www.adr.org . In addition to the arbitration organizations listed above, Claims may be referred to any other arbitration organization that is mutually agreed upon in writing by you and us, or to an arbitration organization or arbitrator(s) appointed pursuant to Section 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, provided that any such arbitration organization and arbitrator(s) will enforce the terms of the restrictions set forth below. Class Action Waiver and Other Restrictions: Arbitration will proceed solely on an individual basis without the right for any Claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others. The arbitrator's authority to resolve and make written awards is limited to Claims between you and us alone. Claims may not be joined or consolidated unless agreed to in writing by all parties. No arbitration award or decision will have a preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in these terms and conditions and without waiving either party's right of appeal, if any portion of this "Class Action Waiver and Other Restrictions" provision is deemed invalid or unenforceable, then the entire Arbitration Provision (other than this sentence) will not apply. Arbitration Procedures: This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and will be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as it may be amended ("FAA"), and the applicable Code. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations and will honor claims of privilege recognized by law. Federal or state rules of civil procedure or evidence will not apply. Written requests to expand the scope of discovery rest within the arbitrator's sole discretion and will be determined pursuant to the applicable Code. The arbitrator will take reasonable steps to preserve the privacy of individual, and of business matters. Judgment upon the written arbitral award may be entered in any court having jurisdiction. Subject to the right of appeal under the FAA, the arbitrator's written decision will be final and binding unless you or we take an appeal from the award by making a dated, written request to the arbitration organization within 30 days from the date of entry of the written arbitral award. A three-arbitrator panel administered by the same arbitration organization will consider anew any aspect of the award objected to by the appellant, conduct an arbitration pursuant to its Code and issue its decision within 120 days of the date of the appellant's written notice. The panel's majority vote decision will be final and binding. Location of Arbitration / Payment of Fees: The arbitration will take place in the federal judicial district where you live. Regardless of who wins in arbitration, you will only be responsible for paying your share, if any, of the arbitration fees required by the applicable Code, which amount will not exceed the filing fees that you would have incurred if the Claim had been brought in the appropriate state or federal court closest to where you live. We will pay the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees. Waivers also may be available from the JAMS or AAA. Continuation: This Arbitration provision will survive termination of the Agreement, as well as voluntary payment in full of your account, any debt collection proceeding by or between us and us, and any bankruptcy by you or us. If any portion of this Arbitration Provision, except the "Class Action Waiver and Other Restrictions" provision above, is deemed invalid or unenforceable for any reason, it will not invalidate the remaining portions of this Arbitration Provision or the Agreement, each of which will be enforceable regardless of such invalidity. Opt-Out Process: You may choose to opt out of and not be subject to this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within forty-five (45) calendar days of the date of the Agreement at the following address: P.O. Box 29429, Atlanta, GA 30359, Attention: Legal. Your written notice must include your name, address, social security number, the date of the Agreement, and a statement that you wish to opt out of this Arbitration Provision. Your notice to opt out will only apply to this particular Agreement with us and not to subsequent or previous agreements.

(Dkt. No. 67 at 33.)

**B. Procedural Background**

Belyea filed this putative class action in the Superior Court for the County of San Francisco against GreenSky of Georgia, LLC and GreenSky, LLC alleging violations of California's lending and credit services laws, as well as consumer protection laws. (Dkt. No. 1-1 at 5.) GreenSky thereafter removed the action to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) ("CAFA"). (Dkt. No. 1.) Less than a week later, GreenSky filed a motion to compel arbitration which the Court denied finding that GreenSky failed to prove by a preponderance of the evidence that Belyea agreed to arbitrate. (Dkt. No. 40.) Belyea thereafter filed a motion for leave to file an amended complaint, and following GreenSky's stipulation to amendment, the now operative FAC was filed. (Dkt. Nos. 46, 50, 52.) The FAC added Heidi

3

Barnes, Hazel Lodge, and David Ferguson as representative plaintiffs.  In response to the FAC, Defendants filed the now pending motions to dismiss and to compel arbitration.  (Dkt. Nos. 54, 55, 56, 57, 58.)  The Court heard argument regarding these motions on January 14, 2021.

## LEGAL FRAMEWORK

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). A party may petition a court to compel "arbitration [to] proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The United States Supreme Court recognizes a "liberal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Thus, courts must direct parties to proceed to arbitration should it determine: (1) that a valid arbitration agreement exists; and (2) that "the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (noting that "[i]f the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms").

## DISCUSSION

"[A]rbitration is a matter of contract.  State contract law controls whether the parties have agreed to arbitrate." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* As the party seeking to compel arbitration, GreenSky bears the burden of demonstrating by a preponderance that the parties entered into an agreement to arbitrate the claims at issue. *Id.* (noting that the party seeking to compel arbitration "bears the burden of proving the

4

existence of a valid arbitration agreement by the preponderance of the evidence") (internal quotation marks and citation omitted). Under California law, mutual assent is a required element of contract formation." *Id.*

### A. GreenSky's has Standing to Enforce the Arbitration Agreement

As a preliminary matter, Plaintiffs insist that the Court need not even decide whether they agreed to arbitrate disputes arising from their GreenSky loan because GreenSky is not a signatory to the loan agreement that includes the Arbitration Provision that GreenSky seeks to enforce. The Court disagrees. The Arbitration Provision identifies "the circumstances and procedures under which Claims (defined below) that arise between you and us will be resolved through binding arbitration." (Dkt. No. 5-1at 10 (emphasis added).) The Arbitration Provision goes on to explain:

> As used in this Arbitration Provision, "you" and "us" also includes any corporate parent, wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns and purchasers of any accounts, all agents, employees, directors and representatives of any of the foregoing **and any third party providing any product, service or benefit in connection with the Agreement**.

(*Id*. at 10 (emphasis added).) By servicing the loan memorialized in the loan agreement containing the Arbitration Provision, GreenSky is at least "a third party providing any product, service or benefit in connection with the Agreement." Plaintiffs do not contend otherwise.

Plaintiffs' reliance on *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 715 (9th Cir. 2020), is unavailing. There the court ruled that a non-signatory affiliate could not enforce an arbitration agreement despite a clause stating that it applied to affiliates because DIRECTTV—the party moving to compel—was not an affiliate of AT&T at the time the plaintiff and AT&T entered into the contract containing the arbitration agreement; as such, "it was not and is not" a party to the agreement. *Id*. at 718. Here, in contrast, there is no dispute that GreenSky was the servicer of the loan agreements containing the Arbitration Provision from the beginning. *Cf. Revitch*, 977 F.3d at 718 (9th Cir. 2020) ("Had the wireless services agreement stated that 'AT&T' refers to 'any affiliates, both present and future,' we might arrive at a different conclusion.").

Nor is the Court persuaded by Plaintiffs' reliance on *Wezel-Peterson v. Home Depot U.S.A., Inc.*, No. CV1705199 MWF JCX, 2017 WL 11272588, at *5 (C.D. Cal. Oct. 3, 2017). As

5

1   the Court noted at oral argument on GreenSky's prior motion to compel arbitration, the "if and
2   only if" clause in the Arbitration Provision relates to *what* claims may be brought, not *who* is a
3   party to the Arbitration Provision in the first place. As GreenSky falls within the Arbitration
4   Provision's definition of "us," it may move to compel arbitration.

### B. GreenSky has not Established Plaintiffs' Assent

The Court previously held that California law governs the question of contract formation in this case. (Dkt. No. 40 at 9.) Under California law, "[a]n essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal.4th 261, 270 (2001) (citing Cal. Civ. Code §§ 1550, 1565); *see also Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212 (9th Cir. 2016) (noting that the "mutual intention to be bound by an agreement is the sine qua non of legally enforceable contracts and recognition of this requirement is nearly universal"). Mutual assent usually consists of an offer and acceptance. *Donovan*, 26 Cal.4th 270-71. "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014).

Generally, "silence or inaction does not constitute acceptance of an offer." *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, 1385, 25 Cal.Rptr.2d 242 (1993). "California courts have long held that '[a]n offer made to another, either orally or in writing, cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, for the offerer cannot prescribe conditions of rejection so as to turn silence on the part of the offeree into acceptance.'" *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (quoting *Leslie v. Brown Bros. Inc.*, 208 Cal. 606, 621 (1929)).

GreenSky insists that Plaintiffs agreed to the Arbitration Provision because (1) Greensky provided Plaintiffs with the loan agreement containing the Arbitration Provision by at least three different methods, and (2) Plaintiffs' use of the Shopping Pass associated with the loans demonstrates their assent and acceptance of the Arbitration Provision.

Based on GreenSky's argument that Belaya's use of the Shopping Pass constituted assent,

the Court previously concluded that the contract most closely resembles a browsewrap agreement. (Dkt. No. 40 at 11 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014) (noting that contracts formed on the internet such the one here "come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an agree box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen.").)  GreenSky now disputes that characterization and argues in a footnote that the Arbitration Provision is more akin to a clickwrap agreement.  (Dkt. No. 58 at 22 n.5.)  GreenSky's President and CEO attests that when consumers complete a loan application using the GreenSky App—as Plaintiffs did here—the GreenSky App requires the loan applicant to "certify[y] that he had received a copy of the Installment Loan Agreement …in a manner he could retain."  (*See, e.g.*, Dkt. No. 58-1 at ¶ 19.)  GreenSky also argues that it provided Plaintiffs with notice of the Arbitration Provision through additional means (email and mail) prior to each Plaintiff's use of the Shopping Pass, and that this notice coupled with Shopping Pass use is sufficient to demonstrate assent.

### 1.  Certification at Point-of-Sale Loan Approval

GreenSky first insists that when Plaintiffs applied for their respective loans, they submitted applications through the GreenSky App which "required [them] to acknowledge reading and accepting (1) the installment loan application disclosures, (2) the consent to electronic records and communication, and (3) an authorization for GreenSky to pull her[/his] credit report on behalf of the participating financial institutions."  (Dkt. No. 55-1, Kaliban Decl. at ¶ 9 (Belyea's application); Dkt. No. 56-1, Kaliban Decl. at ¶ 9 (Lodge application); Dkt. No. 58-1, Kaliban Decl. at ¶ 9 (Ferguson application).)   GreenSky offers an "internal system log" which it contends shows that the GreenSky App presented each Plaintiff with a loan summary and that each Plaintiff "certified that she[/he] had received a copy of the Installment Loan Agreement ("Loan Agreement") in a manner that she[/he] could retain."  (Dkt. No. 55-1, Kaliban Decl. at ¶ 19 (Belyea's application); Dkt. No. 56-1, Kaliban Decl. at ¶¶ 17, 41 (Lodge applications); Dkt. No. 58-1, Kaliban Decl. at ¶ 19 (Ferguson application).)

1       Plaintiffs dispute that they received copies of the loan agreements or that they certified
2   anything on the iPad when they applied for their loans through their respective merchants. (Dkt.
3   No. 67-1, Belyea Decl. at ¶¶ 8-9; Dkt. No. 67-2, Ferguson Decl. at ¶¶ 4-6; Dkt. No. 67-3, Lodge
4   Decl. at ¶¶ 5, 7.)   Indeed, Plaintiffs attest that they either do not recall handling the iPad, or that,
5   as with Belyea, after she inputted her social security number into the iPad, she "did not view or
6   control the iPad at all." (Dkt. No. 67-1, Belyea Decl. at ¶¶ 6-7; Dkt. No. 67-2, Ferguson Decl. at ¶
7   4; Dkt. No. 67-3, Lodge Decl. at ¶¶ 5, 13.)

8       GreenSky's evidence is insufficient to support an undisputed finding that any of the
9   plaintiffs, let alone each, certified receipt of the loan agreement at the time they applied for the
10  loan through the respective merchants.  It has not offered evidence of the actual certification
11  screen—or any of the screens in the GreenSky App that consumers see when applying for a loan.
12  More importantly, it has not offered evidence that each Plaintiff—as opposed to the merchants
13  through whom they applied for the loans—clicked on anything as part of the application process.
14  Instead, it relies on the declarations of Mr. Kaliban who has no personal knowledge regarding
15  Plaintiffs' loan transactions. GreenSky's emphasis on the transaction logs is insufficient; the logs
16  do not demonstrate *who* clicked the box on the iPad acknowledging receipt of the loan agreement.
17  For whatever reason, the application process did not require a borrower's initial or signature or
18  some other action that would demonstrate that it was the borrower rather than the merchant that
19  was tapping the boxes on the ipad.  Thus, there is nothing in the record that disputes Plaintiffs'
20  testimony that they did not do so.  The "clickwrap" theory therefore does not apply at this point.
21  GreenSky has accordingly failed to show through undisputed facts that Plaintiffs received notice
22  of the Arbitration Provision through the GreenSky App and the point-of-sale loan application
23  process and then assented to its terms, or that Plaintiffs otherwise consented to the Arbitration
24  Provision through the loan application process.

25       **2. Email Notice**

26       GreenSky next contends that Plaintiffs were provided with email notice of the Arbitration
27  Provision to the email addresses Plaintiffs provided on their applications and these emails were
28  not returned.  However, the emails on which GreenSky relies did not attach the loan agreements;

8

nor did they contain a hyperlink to the loan agreements.[3] Instead, the emails provided a "registration link" for the GreenSky Customer Self Service Portal which "allows borrowers to perform certain actions on their accounts, including viewing and/or saving their loan agreement [sic] reviewing the details of their account, viewing transactions that post to the account, scheduling payments on their loan, making one-time payments on their loan." (Dkt. No. 55-1 at ¶¶ 21-22; Dkt. No. 56-1 at ¶¶ 19-20, 43; Dkt. No. 58-1 at ¶¶ 21-22.) The full text of the sample email is as follows:

> Thank you for choosing GreenSky®. We are delighted you have chosen to trust us with your financing needs. Please click the link below to activate your GreenSky account, so that you can transact with your merchant:
>
> https://portal.greenskycredit.com/loanagreement?as=email&loanId=2006112201
>
> You will need the following information to log-in to your account:
> Application ID: 2006112201
> Last four digits of either the Borrower's or Co-Borrower's SSN
>
> If you have already activated your account, you can use the link above to view your loan documents and retrieve your account number.
>
> Best Regards,
> The GreenSky® Team
> www.GreenSkyCredit.com

(*See, e.g.*, Dkt. No. 55-1 at 31.) This email does not "put[] a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177. It does not discuss the terms of the loan agreement or advise the recipient that upon receipt, the reader will be deemed to have accepted the loan agreement terms. *Id.* ("where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements"). It simply tells the recipient that they can click on the link to activate their account and transact with the merchant. While it states that the recipient can use the link to view their loan documents if they have already activated their account, it does not contain any admonishment that the recipient apprise themselves of the terms of the loan agreement. (Dkt. No. 55-1 at 31.) *See also Nguyen*, 763 F.3d at 1178-79 (holding that even

---

[3] GreenSky also did not provide copies of the actual emails sent to the plaintiffs, and instead, offer sample emails.

9

1  "where a website makes its terms of use available via a conspicuous hyperlink on every page of
2  the website but otherwise provides no notice to users nor prompts them to take any affirmative
3  action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must
4  click on—without more—is insufficient to give rise to constructive notice."). That Belyea
5  apparently clicked on the link and created an account (nearly a month later) and added a payment
6  method to pay online does not change this analysis because there is no evidence that she was
7  required to "take any affirmative action to demonstrate [her] assent" to the terms of the agreement
8  when she did so. *Id*.

9  Accordingly, GreenSky has not met its burden of producing evidence sufficient to show
10 that the emails it contends it sent to Plaintiffs put Plaintiffs on notice of the loan agreement and its
11 Arbitration Provision and that Plaintiffs thereafter assented to the Arbitration Provision.

### 3. Mail Receipt of the Loan Agreement

13 Finally, GreenSky contends that Plaintiffs were provided notice of the loan agreement and
14 its Arbitration Provision via the U.S. Mail. The Kaliban Declarations attest that each Plaintiff was
15 mailed a copy of the loan agreement and that none of the mailings were returned. (Dkt. No. 55-1
16 at ¶¶ 25-27 (Belyea mailing); Dkt. No. 56-1 at ¶¶ 423-24, 5-47 (Lodge mailings); Dkt. No. 58-1 at
17 ¶¶ 25-27 (Ferguson mailing).) GreenSky thus insists that under the mailbox rule, Plaintiffs are
18 presumed to have received actual notice of the Arbitration Provision. The mailbox rule creates a
19 presumption of mail receipt unless the intended recipient can rebut the presumption of receipt
20 through actual, credible evidence of non-receipt, which requires more than a bare denial. *See
21 Schikore v. BankAmerica Sup. Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001) (stating that the
22 mailbox rule is intended to avoid "swearing contests" between parties on the question of receipt by
23 mail); *see also James v. Comcast Corp*., No. 16-CV-02218( EMC), 2016 WL 4269898, at *2
24 (N.D. Cal. Aug. 15, 2016) (holding that the mailbox rule renders bare denial of receipt insufficient
25 to prove non-receipt of an arbitration agreement).

26 The record reflects the following with respect to the mailing and receipt of the loan
27 agreements:

- Belyea applied for her loan on July 1, 2019 and the Kaliban Declaration attests that

10

- she was mailed a copy of the loan agreement on the same date.  (Dkt. No. 55-1 at ¶¶ 5, 25.)  Belyea does not dispute that the address the agreement was mailed to was her correct address or that she received the agreement; instead, she attests only that she "did not intend to agree to the Loan Agreement's terms."  (Dkt. No. 67-1 at ¶ 11.

- In the FAC, Ferguson alleges that he first applied for and obtained a GreenSky loan in 2017; however, GreenSky has no record of this loan. (*Compare* FAC at ¶¶ 94-96 *with* Dkt. No. 58-1 at ¶ 37.)  The Court thus focuses his undisputed second loan on September 20, 2018.  The Kaliban Declaration attests that he was mailed a copy of his loan agreement on September 22, 2018.  (Dkt. No. 58-1 at ¶¶ 5, 25.)  Ferguson does not dispute that the address the agreement was mailed to was his correct address; rather, he attests that he "do[es] not recall receiving or reviewing the Loan Agreement before Peter Levi redeemed the funds."  (Dkt. No. 67-2 at ¶ 8.)

- Lodge applied for her first loan on June 4, 2019 and the Kaliban Declaration attests her Shopping Pass was used on this same date and her loan agreement was mailed on this same date.  (Dkt. No. 56-1 at ¶¶ 5, 23, 26.) Lodge applied for her second loan on September 17, 2019; however, the Kaliban Declaration confusingly indicates that the loan agreement was mailed a week earlier—on September 10, 2019. (*Id.* ¶¶ 29, 45.)  As with Ferguson, Lodge attests that she "do[es] not recall receiving or reviewing" either loan agreement.  (Dkt. No. 67-3 at ¶¶ 7,13.)

Plaintiffs insist that the mailbox rule does not establish assent to the Arbitration Provision under these facts for two reasons.  First, Plaintiffs contend that the Kaliban Declaration lacks foundation.  However, Mr. Kaliban attests under penalty of perjury that Greensky mailed the Loan Agreements to each Plaintiff, provides the address to which they were mailed, and attaches a copy of the mailings.  This testimony sufficiently lays a foundation. *See Izett v. Crown Asset Mgmt., LLC*, No. 18-CV-05224-EMC, 2019 WL 4845575, at *6 (N.D. Cal. Oct. 1, 2019) (applying the mailbox rule to an arbitration agreement and finding "credible evidence of mailing" where the company's representative attested that the agreement was mailed to the address on file). Further, to the extent Plaintiffs challenge the adequacy of Mr. Kaliban's Declaration, they had the opportunity to pursue arbitration-related discovery following the first motion to compel arbitration and have not argued that GreenSky refused to provide evidence in support of its attestation of mailing.  Thus, the mailbox rule applies to establish proof of receipt of Belyea's loan agreement, Ferguson's 2018 loan agreement, and Lodge's June 2018 loan agreement, but not Lodge's September 2018 loan agreement as the Kaliban Declaration attests that it was mailed before the loan was ever obtained.

11

1        Second, Plaintiffs contend that notice is only part of the question and GreenSky also bears

2 the burden of demonstrating notice before the Shopping Pass was used.  GreenSky counters that

3 the timing is irrelevant because even if Plaintiffs did not receive the loan agreement until after the

4 Shopping Pass was used, the Arbitration Provision includes an opt-out option and Plaintiffs had

5 45-days to opt out, but did not do so.  Greensky's argument is, in effect, that Plaintiffs' silence

6 after receiving the loan agreement by mail constitutes their assent to the loan agreement's terms,

7 including the Arbitration Provision.

8        As explained above, under California law, silence or inaction generally cannot constitute

9 acceptance.  However, there are two exceptions: "inaction in the face of a duty to act or retention

10 of a benefit offered."  *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, 1386

11 (1993).  GreenSky does not expressly argue that either of these exceptions applies, but instead

12 argues that Plaintiffs' use of the Shopping Pass demonstrates assent to the loan agreement, which

13 is essentially an argument that the second exception regarding retention of a benefit applies.

14        The problem with this argument, however, is that it fails to acknowledge that each plaintiff

15 specifically attests that he or she did not authorize use of the Shopping Pass or at a minimum does

16 not recall authorizing use of the Shopping Pass.  (Dkt. No. 67-1 at ¶ 10 (Belyea attests "After the

17 loan was approved, I never gave Roto-Rooter a Shopping Pass or any authorization, whether

18 formal or oral, to redeem the loan funds. Rather, my understanding at the time was that Roto-

19 Rooter would receive the funds without any action by me."); Dkt. No. 67-3 at ¶¶ 7, 13 (Lodge

20 attests "I do not recall giving a Benjamin Franklin Plumbing employee a 'Shopping Pass.'"); Dkt.

21 No. 67-2 at ¶ 7 (Ferguson attests "I do not recall authorizing the Peter Levi Plumbing employee to

22 redeem the loan funds by giving him a 'Shopping Pass.'").)  GreenSky's evidence that the

23 merchant charged Plaintiffs' accounts after the loan agreements were mailed does not dispute

24 Plaintiffs' evidence that the entire transaction was complete on the day they applied for the loans

25 through the merchants and that they took no steps subsequent to that day to authorize transfer of

26 funds to the merchants. Plaintiffs' receipt of the loan agreement with the Arbitration Provision

27 *after* the transaction had already occurred cannot constitute their agreement to arbitrate.  *See Perez*

28 *v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1340 (C.D. Cal. 2017), aff'd sub nom.

*Perez v. DirecTV, LLC*, 740 F. App'x 560 (9th Cir. 2018) ("DirecTV has failed to show that the arbitration provisions in the Customer Agreement were known to Perez or that she ought to have known of them at the time of the transaction."); *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 126 (2d Cir. 2012) (applying California law and finding "that someone has received an email does not without more establish that he or she should know that the terms disclosed in the email relate to a service in which he or she had previously enrolled and that a failure affirmatively to opt out of the service amounts to assent to those terms.").

Greensky nonetheless insists that because the Arbitration Provision contained an opt-out option and Plaintiffs did not opt out, each plaintiff assented to the Arbitration Provision once the time to opt out (45 days) ran. Greensky's argument is foreclosed by binding Ninth Circuit law. In *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017), the Ninth Circuit rejected the notion that the plaintiff consumer had assented to an arbitration provision contained in a product safety and warranty brochure inside the box of the Galaxy S4 he had purchased. There was no dispute that the plaintiff had not expressly assented and the question was whether his silence--*including his failure to exercise his right to opt out of the arbitration agreement*--nevertheless constituted acceptance. *Id*. at 1284-85. The court concluded that it did not because he did not "sign the brochure or otherwise act in a manner that would show his intent to use his silence, or *failure to opt out*, as a means of accepting the arbitration agreement." *Id*. at 1285 (internal citation and quotation marks omitted) (emphasis added). So too here. There are likewise "no outward manifestations of consent [that] would lead a reasonable person to believe the offeree has assented to the agreement" regardless of Plaintiffs' failure to opt out. *Id*. at 1284.

GreenSky attempts to distinguish *Norcia* on the grounds that there was no right to opt out or that it only contained some vague right to opt out. Not so. As the *Norcia* court described:

> a paragraph explained the procedures for arbitration and stated that purchasers could opt out of the arbitration agreement by providing notice to Samsung within 30 calendar days of purchase, either through email or by calling a toll-free telephone number. It also stated that opting out "will not affect the coverage of the Limited Warranty in any way, and you will continue to enjoy the benefits of the Limited Warranty."

845 F.3d at 1282. Indeed, opting out of Samsung's arbitration agreement was easier than

1  GreenSky's agreement: GreenSky's agreement required mailed written notice to opt out whereas a
2  consumer could opt out of Samsung's arbitration agreement by email or telephone.

3        GreenSky's reliance on district court cases holding that "continued use or failure to opt out
4  of a card account after the issuer provides a change in terms, including an arbitration agreement,
5  evidences the cardholder's acceptance of those terms" is also unpersuasive.  First, many of these
6  cases were decided prior to the Ninth Circuit's decision in *Norcia* which expressly held that under
7  California law silence cannot be deemed acceptance except in limited circumstances and the
8  ability to opt out is not one of those limited circumstances.  Second, in *Paxton v. Macy's W.*
9  *Stores, Inc.*, 2018 WL 4297763, at *4 (E.D. Cal. Sept. 7, 2018), an employment discrimination
10 lawsuit, the district court relied on *Cir. City Stores, Inc. v. Najd,* 294 F.3d 1104 (9th Cir. 2002),
11 also an employment discrimination lawsuit.  In *Najd*, the plaintiff had acknowledged receipt of the
12 dispute resolution agreement in writing and was asked to review it within the course of his
13 employment.  Given these circumstances, and the previous course of dealing between the parties,
14 the court concluded that the plaintiff had assented to the dispute resolution agreement.  *Id.* at 1109.
15 Here, in contrast, no plaintiff acknowledges receipt of and being asked to review the loan
16 agreement; for whatever reason, the merchant did not require a signature or an initial
17 acknowledging receipt of the loan agreement at the time the agreement was made.

18       Finally, GreenSky insists that even if *Norcia* applies, it recognized an exception to the
19 general rule that silence cannot constitute assent when the plaintiff retains the benefits of the
20 contract. It contends that by paying off their loans within the interest-free period they retained the
21 benefits of the loan agreement and thus should be found to have agreed to the loan agreement's
22 Arbitration Provision.  But *Norcia* disposes of that argument too.  It held that the exception did not
23 apply because the brochure containing the arbitration provision stated that the consumer was
24 entitled to the warranty benefits regardless of whether the consumer opted out of the arbitration
25 agreement. *Id.* at 1286.  Similarly here, Plaintiffs were entitled to the loan agreement benefits
26 regardless whether they opted out; in other words, they did not obtain any additional benefit by not
27 opting out.

28       The Court recognizes that post-*Norcia* some district courts have held that a consumer's use

14

of a defendant's services after receiving notice of an arbitration agreement constitutes assent to the arbitration agreement. But in those cases—which rely on other district court cases for their holdings--the consumer used the defendant's services after receiving the explicit notice. *See e.g., Heller v. Rasier, LLC*, 2020 WL 413243, at *11 (C.D. Cal. Jan. 7, 2020) (Uber sent the plaintiffs an email stating that continued use of the app would constitute assent to the arbitration agreement and the plaintiffs continued to use the Uber service); *Moran v. Charter Commc'ns, Inc.*, 2020 WL 5833640, at *5 (C.D. Cal. June 11, 2020) (holding that the "[f]ailure to opt out after adequate notice of the arbitration provision, coupled with Plaintiffs' continued acceptance of Defendants' services, bound Plaintiffs to the arbitration provision.") (internal citation omitted). The reasoning of these cases does not apply here. First, GreenSky did not provide Plaintiffs notice that continued use of their services would constitute assent to the arbitration agreement; instead, it relied on a failure to opt out as assent. Second, GreenSky has not established that Plaintiffs continued to use their services as opposed to made regularly payments on the loan that was previously provided.

The Court is not persuaded by GreenSky's argument that at a minimum Lodge should be bound by the Arbitration Provision in her second loan agreement given her prior course of dealing with GreenSky. The second loan represents an entirely separate transaction. Even assuming Lodge was put on notice of the Arbitration Provision in the first loan agreement, there is no evidence in the record that supports a finding that she was aware of the Arbitration Provision in the second loan agreement prior to her borrowing money under that agreement. Indeed, the Kaliban Declaration attests nonsensically that Greensky mailed the loan agreement for the second loan before Lodge even applied for the loan and GreenSky has made no effort to correct the record in this regard.

Accordingly, GreenSky has not met its burden of demonstrating that Plaintiffs' receipt of the loan agreements containing the Arbitration Provision via the U.S. Mail coupled with Plaintiffs' silence amounts to assent to the Arbitration Provision.

## CONCLUSION

For the reasons stated above, GreenSky's motion to compel arbitration is DENIED. It has not met its burden of proving by a preponderance of the evidence that any named plaintiff assented

15

1  to the Arbitration Provision.  GreenSky's response to the FAC shall be filed in 21 days of the date

2  of this Order.  In the event that GreenSky moves to dismiss rather than answer, GreenSky is

3  cautioned to avoid duplicative filings and shall file a single motion and not separate motions for

4  each plaintiff.  The Court will hold a further case management conference on May 6, 2021 at 1:30

5  p.m. via Zoom video.  A joint case management conference statement is due one week in advance.

6  This Order disposes of Docket Nos.

7  **IT IS SO ORDERED.**

8  Dated: April 9, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge