UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH BELYEA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GREENSKY, INC., et al.,<br><br>Defendants. | Case No. 20-cv-01693-JSC<br><br>**ORDER RE: MOTIONS TO DISMISS AS TO PLAINTIFF BARNES**<br><br>Re: Dkt. Nos. 54, 57 |

Elizabeth Belyea, Heidi Barnes, Hazel Lodge, and David Ferguson bring this putative class action against GreenSky of Georgia, LLC and GreenSky, LLC alleging violation of California's consumer protection, and lending and credit services laws. Defendants have moved to compel arbitration of the claims of Belyea, Lodge, and Ferguson, and move to dismiss Barnes' claims under Rules 12(b)(6) and 12(b)(1).[1] This Order addresses the motion to dismiss. (Dkt. Nos. 54 and 57.) Having considered the parties' briefs and having had the benefit of oral argument on January 14, 2021, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss. Barnes' CSA, CLRA, and unjust enrichment claims are dismissed as untimely and her UCL claim is dismissed for lack of Article III standing.

**BACKGROUND**

**A. First Amended Complaint Allegations**

In September 2016, Heidi Barnes contacted Reliable Home Improvement, Inc., regarding building a patio at her home in Roseville, California. (First Amended Class Action Complaint

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4, 11, 77, 78, 79.)

1  ("FAC"), Dkt. No. 52 at ¶ 79.[2])  The contractor told Barnes that the project would cost more than

2  $10,000, but that she could finance the project.  (*Id*. at ¶ 80.)  "Using the GreenSky app, the

3  contractor proceeded to procure a loan from InTrust Bank of Wichita on Barnes' behalf."  (*Id*.)

4  Barnes ended up financing $7,500 through the GreenSky loan program.  (*Id*. at ¶ 81.)  "The loan

5  carries a 6.99% APR over 120 monthly payments, with a five-month promotional period."  (*Id*.)

6  Barnes alleges that GreenSky received 9% of the loan as a merchant fee, but the merchant fee was

7  not disclosed to her.  (*Id*. at ¶ 82.)  As a result, she ended up paying more for her loan than she

8  otherwise should have.  (*Id*.)  In addition, GreenSky "conducted the entire transaction without a

9  license from the California Department of Business Oversight, or being registered as a credit

10 services organization with the California Department of Justice."  (*Id*. at ¶ 83.)

**B.  Procedural Background**

In January 2020, Plaintiff Belyea filed this putative class action in the Superior Court for the County of San Francisco against GreenSky of Georgia, LLC and GreenSky, LLC (collectively "GreenSky") alleging violations of California's lending and credit services laws, as well as consumer protection laws. (Dkt. No. 1-1at 5.)  GreenSky thereafter removed the action to this Court alleging jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) ("CAFA"). (Dkt. No. 1.)  Less than a week later, GreenSky filed a motion to compel arbitration which the Court denied finding that GreenSky failed to prove by a preponderance of the evidence that Beylea agreed to arbitrate.  (Dkt. No. 40.)  Beylea thereafter filed a motion for leave to file an amended complaint, and following GreenSky's stipulation to amendment, the now operative FAC was filed.  (Dkt. Nos. 46, 50, 52.)  The FAC added Heidi Barnes, Hazel Lodge, and David Ferguson as representative plaintiffs.  Defendants then filed the now pending motions to dismiss and to compel arbitration.  (Dkt. Nos. 54, 55, 56, 57, 58.)

**DISCUSSION**

GreenSky moves to dismiss Barnes' claims for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

claim.

## I. Failure to State A Claim

Barnes pleads four claims for relief: (1) violation of California Credit Services Act ("CSA"), Cal. Civ. Code §§ 1789.10, et seq.; (2) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; and (4) unjust enrichment/quasi-contract. GreenSky's motion to dismiss under 12(b)(6) is two-fold. First, GreenSky insists that Barnes' CSA, CLRA, and unjust enrichment claims are barred by the three-year statute of limitations. Second, and in the alternative, GreenSky contends that Barnes' CLRA and UCL claims fail to satisfy Rule 9(b) and that her CSA claim fails as a matter of law.

### A. Statute of Limitations

GreenSky maintains that because Barnes' allegations involve a loan she obtained on September 6, 2016 any claim subject to a three-year statute of limitations is time-barred.[3] *See* Cal. Civ. Code § 1783 (setting a three-year statute of limitations for actions under the CLRA); *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 348 (2008) (stating that an unjust enrichment claim is governed by the three-year statute of limitations set forth in Cal. Code Civ. Pro § 338(d)); Cal. Code Civ. Pro § 338(a) (setting three-year statute of limitations for a liability based on statute like the CSA). Barnes does not dispute that this action was filed more than three years after she obtained the GreenSky loan; instead, she insists that her claims are timely based on (1) a continuous accrual theory, (2) the delayed discovery rule, and (3) the fraudulent concealment doctrine.[4]

#### 1) The Continuous Accrual Theory

Barnes insists that her claims are timely to the extent that they are based on payments she

---

[3] GreenSky also moved to dismiss Barnes' UCL claim as barred by the statute of limitations, but has abandoned this argument. *See* Cal. Bus. & Prof. Code § 17208 (setting forth a four-year statute of limitations); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-79 (2000) (holding, even if borrowed statute has shorter statute of limitations, "[a]ny action on any UCL cause of action is subject to the four-year period of limitations created by that section").

[4] Although the FAC also pleads tolling based on estoppel and equitable tolling theories, Barnes does not argue that those theories present a basis for tolling her claims.

3

made in the last three years. For this, Barnes relies upon the continuous accrual theory. Under this theory, "separate, recurring invasions of the same right can each trigger their own statute of limitations." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013). Barnes posits that because she continues to make monthly payments on the loan and GreenSky collects fees as a percentage of the loan her monthly payment is inflated. (Dkt. No. 66 at 27 (citing FAC at ¶¶ 44-46, 125.) Barnes, however, did not plead the continuous accrual theory in her FAC and thus cannot raise it in opposition to the motion to dismiss. *See Gonzalez on Behalf of Estate of Perez v. JP Morgan Chase Bank, N.A.*, No. C-14-2558 EMC, 2014 WL 5462550, at *4 (N.D. Cal. Oct. 28, 2014) ("[plaintiff] must plead an equitable exception to the running of the statute of limitations by alleging, e.g., the discovery rule, equitable tolling, fraudulent concealment, continuous violation, or continuous accrual.") (citing *Aryeh*, 55 Cal.4th at 1192). Barnes' FAC alleges tolling based on the discovery rule, active concealment, estoppel, and equitable tolling—not under the continuous accrual theory. (FAC at ¶¶ 104, 107.) Further, while Barnes alleges that GreenSky's merchant and incentive fees are unlawful, *see* FAC ¶¶ at 39-48, she does not allege that each monthly payment on her loan included these fees such that each payment "was a distinct breach."[5] *Aryeh*, 55 Cal.4th at 1201, n.8. (finding that plaintiff had adequately pled that it was a continuous accrual case because the complaint alleged "each monthly overcharge [w]as a distinct breach."). Rather, she alleges generally that as a result of the unlawful fee she "*paid* more than she otherwise would have." (FAC at ¶ 83 (emphasis added).) Barnes has therefore not plausibly alleged that the continuous accrual theory tolls her claims.

**2) The Discovery Rule**

Barnes also insists that the statute of limitations is tolled under the discovery rule. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Aryeh*, 55 Cal. 4th at 1192 (internal citation omitted). "[A] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the

---

[5] While the FAC alleges that consumers pay for the "incentive payments" via interest payments, Barnes does not allege that her loan included an incentive payment. (*Compare* FAC at ¶ 45 *with* ¶ 82.)

4

discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 883 (N.D. Cal. 2019) (internal citation omitted) (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999)). Here, Barnes generally pleads that "Plaintiffs' and class members' claims accrued upon discovery of the facts described above. While GreenSky knew and concealed these facts, Plaintiffs and class members could not and did not discover these facts through reasonable diligent investigation." (FAC at ¶ 104.) This conclusory allegation is insufficient as there are no allegations as to when Barnes discovered the basis for her claims. *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995) ("California law makes clear that a plaintiff must allege specific facts establishing the applicability of the discovery-rule exception."). While Barnes argues in her opposition that she could not have discovered the facts that give rise to her claims, she still must allege when and how she eventually did so. Without such allegations it is not plausible that she could not have earlier discovered facts sufficient to put her on inquiry. To the extent that Barnes seeks to supplement the FAC allegations through the submission of a declaration, the Court will not consider it. "[I]n a ruling on a 12(b)(6) motion, a court cannot consider evidence outside the pleadings without converting the motion to dismiss into one for summary judgment and giving the opposing party an opportunity to respond." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012) (citing *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001)).

### 3) Fraudulent Concealment

Finally, Barnes maintains that her claims are timely because GreenSky fraudulently concealed the underlying facts from her. "The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). "When a plaintiff alleges the fraudulent concealment of a cause of action, the same pleading and proof is required as in fraud cases: the plaintiff must show (1) the substantive elements of fraud, and (2) an excuse for late discovery of the facts." *Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2018 WL 2552266, at *3 (N.D. Cal. June 4, 2018) (citing *Community Case v. Boatwright*, 124 Cal. Ct. App. 3d 888, 899,

5

(1981)). The second prong requires a plaintiff to allege "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Finney*, 2018 WL 2552266 at *3. "Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b)." *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *8 (N.D. Cal. Mar. 12, 2014), order corrected on denial of reconsideration, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014).

Barnes has not adequately pled fraudulent concealment for the same reason she has not adequately pled that the delayed discovery rule applies—she had not pled any facts regarding her discovery of the alleged fraud.

\*\*\*

Accordingly, Barnes' CLRA, CSA, and unjust enrichment claims are dismissed as barred by the three-year statute of limitations. To the extent that Barnes has a good faith basis for doing so, she may amend her complaint to allege tolling.

### B. Barnes' UCL Claim

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because the UCL is broadly remedial and written disjunctively, "it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (internal quotations and citation omitted). Barnes alleges a violation of all three prongs here, but Defendants have only moved to dismiss the claim under the fraudulent and unlawful prongs. (FAC at ¶¶ 140, 143, 144.)

#### 1) Unlawful

"An unlawful business practice or act within the meaning of the UCL is an act or practice, committed pursuant to business activity that is at the same time forbidden by law." *Pinel v. Aurora Loan Servs.*, LLC, 814 F. Supp. 2d 930, 937 (N.D. Cal. 2011) (internal quotation marks and citation omitted). The UCL's "unlawful" prong covers a wide range of conduct; among them, it makes violations of other laws independently actionable. *See CRST Van Expedited, Inc. v. Werner Enters, Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (internal quotation marks and citations omitted).

6

Barnes alleges that GreenSky's business practices and acts are unlawful because they violate the CSA, CLRA, and California Financing Law, Cal. Fin. Code § 22000, et seq., but she only includes specific allegations with respect to the CFL. (FAC at ¶¶ 139, 140.)   In any event, the Court only addresses the allegations with respect to the CFL as Barnes' CSA and CLRA claims are barred by the statute of limitations as discussed *supra*.  As to Barnes' CFL claim, she alleges that "GreenSky acts as a finance lender for consumer loans," that it does not have a license to do so, and that "by failing to disclose its role as a lender and broker…and failing to disclose the nature and amount of fees charged," GreenSky violated several provisions of the CFL  (*Id.* at ¶ 140.)

GreenSky insists that these allegations are insufficient to state a CFL claim because Barnes has not alleged that these business practices had any effect on her—that is, that she was injured. However, as Barnes notes in her opposition, she alleges that GreenSky received 9% of her loan as merchant fee, that the nature of this fee was not explained to her, and that she paid more for the services she obtained as a result of this undisclosed fee. (*Id.* at ¶¶ 82-83.)  Barnes' allegation that she paid more than she would have absent the unlawful business practice is sufficient to allege injury—or at least, GreenSky has not cited any authority that this is not sufficient to allege an injury under the CFL.  Accordingly, Barnes' UCL claim predicated on a violation of the CFL is adequately pled.

### 2) Fraudulent

UCL claims alleging fraudulent business practices under the statute's third prong typically trigger a heightened pleading requirement; in addition to the Rule 8 general pleading requirements, a plaintiff must allege "with particularity the circumstances constituting fraud." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016). "Omissions can form the basis of a fraudulent prong UCL claim." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015). "For an omission to be actionable under the UCL, the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Id.* (internal citation and quotation marks omitted).

Barnes alleges that GreenSky's practices are fraudulent because they are likely to deceive a

7

reasonable consumer. (FAC at ¶ 144.) In particular, she points to GreenSky's "deceptive marketing practices including false and misleading misrepresentations regarding its role in the lending process, and the nature and amount of fees it charges and collects in connection with GreenSky-serviced loans." (*Id*.)

GreenSky maintains that these allegations do not meet the heightened pleading requirement for fraud-based claims relying on *Heber v. Toyota Motor Sales, U.S.A., Inc*., 823 F. App'x 512 (9th Cir. 2020). However, in *Heber*, the Ninth Circuit held that the plaintiffs failed to plead the fraud with particularity because they only pled in a conclusory manner that Toyota fraudulently failed to disclose the alleged defect and they failed to allege the extent to which Toyota was aware of the defect. *Id*. at 515. Here, in contrast, Barnes alleges the nature of misrepresentation by omission: GreenSky collects merchant fees which amounted to 9% of her loan and that this fee was not disclosed to her. (FAC at ¶ 82.) She alleges further that GreenSky's business model is based upon collecting these undisclosed fees. (*Id.* at ¶¶ 39-45.) As such, GreenSky knows what business practice is at issue—there is no defect to speculate about. *Cf. Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("Even in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendants.").

GreenSky's reliance on *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009), is also misplaced. In *Kearns*, the plaintiff alleged a fraudulent course of conduct based on a conspiracy between Ford Motor Company and its dealerships to misrepresent the benefits of its Certified-Pre-Owned vehicle program in its marketing materials to sell more cars and increase revenue. *Id*. at 1126-27. The court found that Kearns' misrepresentation allegations were not sufficiently particularized because he did not allege the particular circumstances surrounding the representations—what the advertising material said, when he was exposed to the advertising, and was sales information he relied upon. *Id*. at 1126. Here, in contrast, the misrepresentation is the failure to disclose the service fee at any time in connection with the provision or servicing of the loan.

Barnes' allegations are thus more akin to *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007, 1020 (9th Cir. 2020). In *Moore*, the plaintiffs alleged misrepresentation based defendants'

8

1 practice of charging more for prescription pet food than non-prescription pet food despite the fact
2 that the food was "not materially different." *Moore*, 966 F.3d at 1019. The Ninth Circuit
3 concluded that these allegations were sufficient to put defendants on notice of the alleged fraud.
4 *Id*. at 1020. So too here.

5     Barnes' allegations are likewise sufficient to demonstrate reliance. "Actual reliance ... is
6 inferred from the misrepresentation of a material fact." *Chapman v. Skype Inc*., 220 Cal. App. 4th
7 217, 229 (2013). To allege reliance on a "misrepresentation of material facts, [Plaintiff] only
8 needed establish it to be plausible that a reasonable man would attach importance to [their]
9 existence or nonexistence in determining his choice of action in the transaction in question."
10 *Friedman v. AARP, Inc*., 855 F.3d 1047, 1056 (9th Cir. 2017) (internal citation and quotation
11 marks omitted). Barnes' allegation that because the merchant fee was not disclosed she paid more
12 for the loan than she otherwise would have plausibly supports an inference of reliance. *See*
13 *Moore*, 966 F.3d at 1019 (finding that allegations that "[a]s a result of the false and fraudulent
14 prescription requirement, each Plaintiff paid more for Prescription Pet Food than each Plaintiff
15 would have paid in the absence of the requirement, or would never have purchased Prescription
16 Pet Food" were sufficient to demonstrate reliance). "We think that it is not, as a matter of law, an
17 obviously unimportant consideration for a reasonable purchaser of insurance to know that an
18 undisclosed fee charged to a group insurance policyholder would be collected in addition to—
19 rather than from—the actual cost of the insurance." *Friedman*, 855 F.3d at 1056 (internal citation
20 and quotations marks omitted). The same reasoning applies here.

21     Accordingly, Barnes has plausibly pled a UCL claim under the fraudulent claim.

22 **II. Standing**

23     GreenSky separately moves to dismiss Barnes' injunctive relief claim under Federal Rule
24 of Civil Procedure 12(b)(1) on the grounds that Barnes lacks standing to pursue these claims
25 because she fails to plead an immediate or threatened injury.

26     To establish standing, a plaintiff must show that "(1) he suffered an injury in fact; (2) the
27 injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be 'redressed by a
28 favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citation

and quotation marks omitted).  To establish standing for prospective injunctive relief, a plaintiff must demonstrate that he not only "suffered or is threatened with a 'concrete and particularized' legal harm" but also that there is "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  A plaintiff must establish a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985.  Barnes bears the burden of establishing Article III standing. *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008).

        Barnes insists that she has adequately pled standing because she faces pecuniary harm going forward from GreenSky's conduct; that is, she is continuing to make monthly payments that are inflated due to GreenSky's merchant fee.  GreenSky maintains that this is insufficient because her loan agreement represents "a singular transaction" and that she continues to make loan payments is not relevant to the question of injury.  (Dkt. No. 72 at 3:12-16.)   As discussed *supra* in the context of Barnes' continuous accrual theory, she has not alleged that the allegedly unlawful fees are part of her monthly interest payments as opposed to a fee that was assessed at the beginning of her loan.  (FAC at ¶ 82.)  That is, Barnes does not allege that she is seeking to enjoin GreenSky's ongoing collection of this allegedly unlawful fee. *See Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011) (finding that plaintiff had standing to challenge a regulation which "exposed it to individual liability for the claimed overpayments.").  To the extent that Barnes suggests in her opposition brief that she could allege that her "future payments will continue to be inflated by the cost of GreenSky's excessive fees as the fees are taken as a function of both the principal and interest on the loan – which Plaintiff will continue to pay for years to come," Barnes will be granted leave to amend to include these allegations which are not in the FAC.  (Dkt. No. 66 at 29:25-28 (citing FAC ¶¶ 30,45).[6])

---

[6] Paragraph 30 of the FAC alleges: "As discussed below, GreenSky earns the bulk of its revenues by charging a 'merchant fee' on each loan, which is calculated as a percentage of the loan amount. The nature and amount of this fee is not disclosed to the consumer at any point in the lending Process."  Paragraph 45 alleges: "GreenSky also contracts with its bank partners, via loan origination agreements, to receive 'incentive payments.' Consumers are not privy to these loan origination agreements or the nature of such incentive payments even though consumers pay them via interest payments. As with the merchant fees, GreenSky receives the incentive payments as compensation for the service of brokering the loans between consumer-borrowers and

# CONCLUSION

For the reasons stated above, GreenSky's motion to dismiss Barnes' claims is GRANTED IN PART and DENIED IN PART. Barnes' CSA, CLRA, and unjust enrichment claims are dismissed with leave to amend to the extent that Barnes has a good faith basis for alleging tolling consistent with this Order. Barnes' UCL claim is dismissed with leave to amend to the extent that she can allege an ongoing injury sufficient to establish Article III standing.

Barnes' amended complaint is due in 21 days.

**IT IS SO ORDERED.**

Dated: April 9, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

lenders." Neither is specific to Plaintiff Barnes.