FISHERBROYLES, LLP
Barry Goheen (admitted *pro hac vice*)
Diem N. Kaelber [SBN # 329317]
21081 Canyon View Drive
Saratoga, CA 95070
Telephone: 408-898-3170
Facsimile: 866-414-5083
diem.kaelber@fisherbroyles.com

Attorneys for Defendants GreenSky, Inc.,
GreenSky of Georgia, LLC, and GreenSky, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH BELYEA,** **individually and on behalf of all others similarly situated,** | ) ) ) ) |
| | ) **CASE NO. 3:20-cv-01693-JSC** |
| **Plaintiff,** | ) ) |
| | ) |
| **v.** | ) **OPENING BRIEF OF** |
| | ) **DEFENDANTS ON REHEARING** |
| | } **OF MOTION TO COMPEL** |
| | ) **ARBITRATION OF CLAIMS** |
| **GREENSKY, INC.,** | ) **ASSERTED BY PLAINTIFFS** |
| | ) **ELIZABETH BELYEA,** |
| **a corporation,** | ) **DAVID FERGUSON, AND** |
| | ) **HAZEL LODGE** |
| **and** | ) |
| | ) |
| **GREENSKY OF GEORGIA, LLC,** **and GREENSKY, LLC,** **limited liability companies, and** **DOES 1-20,** | ) ) ) ) |
| | ) |
| **Defendants.** | ) |

# **TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................ 1

**RELEVANT FACTUAL BACKGROUND** ........................................................ 2

    I.     PLAINTIFFS AND THEIR GREENSKY-SERVICED LOANS ............................. 2

          A.  Belyea ............................................................................................ 2

          B.  Ferguson ....................................................................................... 3

          C.  Lodge ............................................................................................ 3

          D.  Summary of Plaintiffs' Critical Dates Concerning Loan Agreements ................. 4

    II.    THE LOAN AGREEMENT'S MANDATORY ARBITRATION PROVISION ....... 4

**ARGUMENT** ..................................................................................................... 5

    I.     THE RECORD EVIDENCE IS UNDISPUTED THAT EACH PLAINTIFF'S LOAN DOCUMENTS, INCLUDING THE ARBITRATION PROVISION, WERE DISPLAYED DURING THE APPLICATION AND APPROVAL PROCESS. ........ 6

          A.  With One Exception, Prior to Each Plaintiff's Transacting on Their Loans, Their Loan Agreement Was Displayed Through the GreenSky® App and Each Plaintiff Certified That (S)he Had Received the Loan Agreement in a Manner That Could Be Retained. ..................................................................................... 6

          B.  Plaintiffs' Testimony Is Insufficient to Create a Question of Fact Concerning the Display of Their Loan Agreements under the Hansen Standard. ......................... 9

               1. Ferguson and Lodge's "Do Not Recall" Testimony Is Inadequate Per Hansen. .................................................................................... 9

               2. Belyea's Less Equivocal Testimony Is Nevertheless Insufficient to Create an Issue of Material Fact on Her Receipt. ................................................ 11

               3. The Court Should Credit the Undisputed Fact That GreenSky Received a Certification From Plaintiffs Acknowledging Receipt of the Loan Documents. ............................................................................... 13

    II.    IT IS PRESUMED THAT PLAINTIFFS BELYEA AND FERGUSON RECEIVED, BY U.S. MAIL, THE LOAN AGREEMENT CONTAINING THE ARBITRATION PROVISION PRIOR TO TRANSACTING ON THEIR LOANS. .......................... 14

i

A. The Court's Application of the Mailbox Rule Was Appropriate and Is Unaffected by *Hansen*. .................................................................................................. 14

B. Belyea and Ferguson Received the Physical Copies of Their Loan Agreements by U.S. Mail Several Days After They Were Mailed to Them. ................................ 16

C. Under Presumptions Employed by Federal Courts, Including the Ninth Circuit Court of Appeals, Belyea and Ferguson Are Presumed to Have Received Their Loan Agreements by U.S. Mail Within Three Days of Mailing. ......................... 17

D. Having Received the Loan Agreement Prior to Drawing Down on Their Loans But Having Failed to Opt Out, Ferguson and Belyea Agreed to Arbitrate Their Disputes With GreenSky, as the Wright Court Held. .......................................... 18

E. In Light of Hansen, the Pertinent Facts Pertaining to Belyea and Ferguson Fall Within One or More Norcia Exceptions. ............................................................ 19

 1. The "Duty to Act" Exception Applies. .................................................. 20

  a. The April 9 Order Erroneously Held That Each Plaintiff's Lending Transaction Was Complete at the Time of Application and Approval. ................................................................................... 20

  b. Having Received Their Loan Agreements Prior to Transacting on Their Loans, Plaintiffs Had a Duty to Opt Out of Arbitration If They So Desired, But They Failed to Do So. .............................. 21

 2.The "Retention of Benefits" Exception Applies. ..................................... 23

 3. The "Course of Dealing" Exception Applies to Lodge. ......................... 24

CONCLUSION .................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Case(s)**                                                                                    **Page(s)**

*Ackerberg v. Citicorp USA, Inc.,*
       898 F. Supp. 2d 1172 (N.D. Cal. 2012) ............................................................. 22, 23-24

*Beatty Safway Scaffold, Inc. v. Skrable,*
       180 Cal. App. 2d 650, 4 Cal. Rptr. 543 (1960) ............................................... 25

*Castro v. Macy's, Inc.,*
       2017 WL 344978 (N.D. Cal. Jan. 24, 2017) ........................................12, 16, 22

*Circuit City Stores, Inc. v. Najd,*
       294 F.3d 1104 (9th Cir. 2002) ............................................................... 25

*Daugherty v. Experian Info. Sols., Inc.,*
       847 F. Supp. 2d 1189 (N.D. Cal. 2012) ................................................. 16

*Fed. Election Comm'n v. Toledano,*
       317 F.3d 939 (9th Cir. 2002) ................................................................ 10

*Furlough v. Capstone Logistics, LLC,*
       2019 WL 2076723 (N.D. Cal. May 10, 2019) .................................... 10

*Grabowski v. Robinson,*
       817 F. Supp. 2d 1159 (S.D. Cal. 2011) .......................................... 12

*Hansen v. LMB Mortgage Services, Inc.,*
       1 F.4th 667 (9th Cir. 2021) ......................................................... 1, 3

*Harris v. TAP Worldwide, LLC,*
       248 Cal. App. 4th 373, 203 Cal. Rptr. 3d 522 (2016) ................................ 11, 24

*Heller v. Rasier, LLC,*
       2020 WL 413243 (C.D. Cal. Jan. 7, 2020) ......................................... 23

*Hermosillo v. Davey Tree Surgery Co.,*
       2018 WL 3417505 (N.D. Cal. July 13, 2018) ............................................ 22

*Hernandez v. Spacelabs Medical Inc.,*
       343 F.3d 1107 (9th Cir. 2003) ............................................................. 11

*Holl v. United Parcel Serv., Inc.*,
　　2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) ............................................................. 13

*In re CFLC, Inc.*,
　　166 F.3d 1012 (9th Cir. 1999) ..................................................................................... 25

*In re Facebook Biometric Info. Priv. Litig.*,
　　185 F. Supp. 3d 1155 (N.D. Cal. 2016) ........................................................................ 13

*In re Juul Labs, Inc., Antitrust Lit.*,
　　2021 WL 3675208 (N.D. Cal. Aug. 19, 2021) ............................................................... 13

*James v. Comcast Corp.*,
　　2016 WL 4269898 (N.D. Cal. Aug. 5, 2016) ........................................................... 16, 22

*Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*,
　　2019 WL 144585 (N.D. Cal. Jan. 9, 2019) ....................................................... 9-10, 11, 12

*La Force v. GoSmith, Inc.*,
　　2017 WL 9938681 (N.D. Cal. Dec. 12, 2017) ............................................................... 13

*Mercon Coffee v. Beanbag Storage Co.*,
　　1992 WL 1352743 (N.D. Cal. Oct. 15, 1992) ............................................................... 10

*Mohamed v. Uber Techs., Inc.*,
　　109 F. Supp. 3d 1185 (N.D. Cal. 2015), *aff'd in part, rev'd in part and remanded*,
　　836 F.3d 1102 (9th Cir. 2016), *aff'd in part, rev'd in part and remanded*,
　　848 F.3d 1201 (9th Cir. 2016) .................................................................................... 11

*Moujaes v. San Francisco City and Co.*,
　　2016 WL 4702671 (N.D. Cal. Sept. 8, 2016) ............................................................... 10

*Needleman v. Golden 1 Credit Union*,
　　474 F. Supp. 3d 1097 (N.D. Cal. 2020) ....................................................................... 23

*New West Fruit Corp. v. Coastal Berry Corp.*,
　　1 Cal. Rptr. 2d 664, 1 Cal. App. 4th 92 (1991)............................................................. 25

*Norcia v. Samsung Telecomm. Am., LLC*,
　　845 F.3d 1279 (9th Cir. 2017) ............................................................................ 2, 19, 22

iv

*Oppenheimer & Co., Inc. v. Neidhardt,*
    56 F.3d 352 (2d Cir. 1995) ........................................................................ 12

*Paxton v. Macy's West Stores, Inc.,*
    2018 WL 4297763 (E.D. Cal. Sept. 7, 2018) ........................................ 16, 22

*Payan v. Aramark Management Services L.P.,*
    495 F.3d 1119 (9th Cir. 2007) .................................................................. 17

*Perry v. American Express,*
    2014 WL 12515241 (S.D. Cal. July 11, 2014) ...................................... 12, 21

*Rhodes v. Raytheon Co.,*
    555 Fed. Appx. 665 (9th Cir. 2014) ...................................................... 17, 18

*Safadi v. Citibank, N.A.,*
    2012 WL 4717875 (N.D. Cal. Oct. 2, 2012) ............................................ 12

*Simi Mgmt. Corp. v. Bank of America, N.A.,*
    930 F. Supp. 2d 1082 (N.D. Cal. 2013) .................................................. 25

*Snow v. Eventbrite, Inc.,*
    2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) .......................................... 13

*Stoot v. Cain,*
    570 F.3d 669 (5th Cir. 2009) .................................................................... 18

*Wright v. Greensky, Inc.,*
    2021 WL 2414170 (S.D. Fla. June 14, 2021) ................... 18, 19, 20, 21, 23, 24


**Statute(s)**

9 U.S.C. § 4 ............................................................................................ 4


**Rules**

Fed. R. Civ. P. 6(e) ................................................................................ 18

v

## INTRODUCTION

Defendants, GreenSky, Inc., GreenSky of Georgia, LLC, and GreenSky, LLC (collectively, "GreenSky"), submit this opening brief on the Court's rehearing of the Court's Order dated April 9, 2021 ("April 9 Order") concerning GreenSky's Motion to Compel Arbitration as to all claims asserted by Plaintiffs Elizabeth Belyea, David Ferguson, and Hazel Lodge (collectively, "Plaintiffs"). When analyzed under the proper standard as recently announced by the Ninth Circuit in *Hansen v. LMB Mortgage Services, Inc.*, 1 F.4th 667 (9th Cir. 2021), GreenSky respectfully submits that the Court should compel arbitration as to all three Plaintiffs.

First, the record establishes that, with one exception, the GreenSky® App displayed the loan documents for each Plaintiff's loan, including the Loan Agreement containing the arbitration provision, at the time of application and approval. The equivocal testimony of Lodge and Ferguson that they "do not recall" seeing such documents is insufficient to create an issue of material fact under *Hansen*, and Belyea's slightly more definitive testimony, submitted without any evidence and constituting a mere general denial of facts without more, likewise fails to create an issue of material fact on this point. Because Plaintiffs are presumed to have received notice of the Loan Agreements that displayed on the GreenSky® App and certified their receipt of their Loan Agreements, they assented to arbitrate their disputes with GreenSky.

Second, as the Court held in the April 9 Order, each Plaintiff is presumed to have received their Loan Agreement by U.S. Mail. Moreover, the Ninth Circuit employs a presumption that an addressee receives a mailing within three calendar days. For Plaintiffs Belyea and Ferguson, they are presumed to have received the mailed copies of their Loan Agreements several days before they transacted on their loans, yet they failed to opt out of the Loan Agreement's arbitration provision. For this independent reason, and as held by a district court in Florida on materially

indistinguishable facts, Belyea and Ferguson agreed to arbitrate.

These facts, applied under *Hansen*, fit squarely into one or more exceptions to the "silence is not assent" holding of *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017). Because Belyea and Ferguson received their Loan Agreements before drawing down on their loans, the "duty to act" exception applies. Plaintiffs retained the benefits of their loans, thus implicating another *Norcia* exception.  And Lodge's second loan falls within the "course of dealing" exception.

For these reasons, and applying *Hansen*, these three Plaintiffs agreed to arbitrate their disputes with GreenSky.  Accordingly, GreenSky respectfully requests that the Court compel arbitration of their claims.

## RELEVANT FACTUAL BACKGROUND

### I.   PLAINTIFFS AND THEIR GREENSKY-SERVICED LOANS

#### A.  Belyea

In 2019, Belyea solicited the help of Roto-Rooter to assist in a plumbing project at her home.  (D.E. 95 (2d Am. Compl.), ¶¶ 75-76).  According to Belyea, Roto-Rooter (a) informed her that the cost of the plumbing work would exceed $20,000, (b) offered to facilitate financing for the project on her behalf, and (c) procured a loan from SunTrust Bank (now Truist) on Belyea's behalf, pursuant to which Belyea ultimately financed $23,600 through a GreenSky-serviced loan. (*Id.*, ¶¶ 76-77.)  Specifically, the record shows that on July 1, 2019, Belyea applied for and was approved for a loan from Truist Bank, successor to SunTrust Bank, through the GreenSky® Program for her project with Roto Rooter.  (D.E. 55-1 (8/24/20 Kaliban Decl.), ¶ 5.)

 On July 8, 2019, ***seven days*** after GreenSky mailed Belyea a hard copy version of the Loan Agreement to the mailing address Belyea had provided in her application, Belyea used the

Shopping Pass that was included with, and was a part of, her Loan Agreement and authorized Roto Rooter to charge her account in the amount of $23,600.  (*Id.*, ¶ 28.)

### B.  Ferguson

In September 2018, a representative from Peter Levi Plumbing, Inc., conducted an inspection of a furnace at Ferguson's home. (D.E. 95 (2d Am. Compl.), ¶ 103.)  The representative informed Ferguson that the furnace needed to be repaired, that the cost for the repairs would exceed $1,500, and that it could facilitate financing for the repair on his behalf.  (*Id.*, ¶ 104.)

On September 20, 2018, Ferguson applied for and was approved for a loan from Synovus Bank through the GreenSky® Program for his home improvement project with Levi Plumbing. (D.E. 58-1 (Kaliban Decl.), ¶ 5.)   On September 28, 2018, ***six days*** after GreenSky mailed Ferguson a hard copy version of the Loan Agreement to the mailing address Ferguson had provided in his application, Ferguson used the Shopping Pass that was included with, and was a part of, his Loan Agreement and authorized Levi Plumbing to charge his account in the amount of $1,791. (*Id.*, ¶ 28.)  Ferguson financed $1,791 through the GreenSky loan program.  (D.E. 95 (2d Am. Compl.), ¶¶ 105, 109.)

### C.  Lodge

Lodge applied for, and obtained, two GreenSky-serviced loans.  First, on June 4, 2019, Lodge applied for and was approved for a loan through the GreenSky® Program for a home improvement project with Benjamin Franklin Plumbing in the amount of $10,000.  (D.E. 56-1 (Kaliban Decl.), ¶¶ 5, 11.)  Second, on September 10, 2019, Lodge applied for and was approved for a second loan through the GreenSky® Program. (*Id.*, Ex. H (p.89).)[1]

---

[1] In earlier briefing, GreenSky erroneously stated that the date of Lodge's application for the second loan was September 17, as the Court noted in the April 9 Order.  (*See* D.E. 91 at 11.)  As the

Because Lodge obtained two loans from GreenSky, she received two separate loan agreements, one for each loan.  The first, dated June 3, 2019, was sent to her by U.S. Mail on June 4, 2019 to the mailing address Lodge provided as part of the loan application process.  (*Id.*, ¶ 23, Ex. F.)  GreenSky mailed to Lodge a printed copy of the second Loan Agreement by U.S. Mail on September 11, 2019.  (*Id.*, ¶ 45, Ex. K.)

### D.  Summary of Plaintiffs' Critical Dates Concerning Loan Agreements

To summarize, these are the critical dates concerning each Plaintiff's loan agreement(s):

| Loan | Date of Loan Agmt. | Date Loan Agmt. E-mailed to Plf and Sent by Web Link | Date Loan Agmt. Sent to Plf by U.S. Mail | Date of First Shopping Pass Charge |
|---|---|---|---|---|
| Belyea | 7/1/19 | 7/1/19 | 7/1/19 | 7/8/19 |
| Ferguson | 9/20/18 | 9/20-21/18 | 9/22/18 | 9/28/18 |
| Lodge #1 | 6/3/19 | 6/3/19 | 6/4/19 | 6/4/19 |
| Lodge #2 | 9/10/19 | 9/10/19 | 9/11/19 | 9/17/19 |

## II.    THE LOAN AGREEMENT'S MANDATORY ARBITRATION PROVISION

As is undisputed, each Plaintiff's loans were facilitated and serviced by GreenSky and funded by a GreenSky bank partner through the GreenSky® Program.  (D.E. 5-1 (3/16/20 Kaliban Decl.), ¶ 1.)  Each loan was documented by a Loan Agreement provided to each borrower, which set forth the relevant terms pursuant to which each of the Plaintiffs obtained their loans.  (*See, e.g.*, D.E. 55-1 (Kaliban Decl.), Ex. F.)

Paragraph 25 of each Plaintiff's Loan Agreement is prominently titled "**ARBITRATION**

---

documents in Exhibit H (D.E. 56-1, pp.89-94) clearly indicate on multiple pages ("Application Status Date"), the application date was September 10.  GreenSky apologizes for the confusion.

**PROVISION. Agreement to Arbitrate Disputes**."  (D.E. 91 at 3 (quoting the provision) (bold and capitalization original).)  Each Plaintiff was given the opportunity to opt out of the arbitration provision pursuant to the following provision in the Loan Agreement:

> You may choose to opt out of and not be subject to this arbitration provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within forty-five (45) calendar days of the date of the Agreement at the following address: P.O. Box 29429, Atlanta, GA 30359, Attention: Legal.

(*Id.*)  Furthermore, each Plaintiff was notified in the Loan Agreement, in all capital letters, of the consequences of not opting out of the arbitration provision:

> UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION AS PROVIDED BELOW OR EXCEPT AS APPLICABLE LAW PROHIBITS US FROM IMPOSING ARBITRATION ON YOU, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM.  OTHER RIGHTS THAT YOU WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.* (capitalization original).)

## ARGUMENT

In its recent decision in *Hansen v. LMB Mortgage Services, Inc.*, 1 F.4th 667 (9th Cir. 2021), the Ninth Circuit clarified the standards for district courts faced with a dispute over whether an agreement to arbitrate exists.  First, the *Hansen* court held that, under the FAA, "[i]f the court is 'satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'"  1 F.4th at 670 (quoting 9 U.S.C. § 4).  As the Ninth Circuit held in *Hansen*, "[i]n applying this language, district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure."  *Id.* (citing several district court opinions from this Circuit).  Adopting that standard for this Circuit, the court held that "[t]he

summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Id.* (quotations omitted).  Thus, Rule 56's summary-judgment standard applies to the question of "agreement to arbitrate" for the three Plaintiffs here.

## I.   THE RECORD EVIDENCE IS UNDISPUTED THAT EACH PLAINTIFF'S LOAN DOCUMENTS, INCLUDING THE ARBITRATION PROVISION, WERE DISPLAYED DURING THE APPLICATION AND APPROVAL PROCESS.

In the April 9 Order, the Court observed that "GreenSky offers an 'internal system log' which it contends shows that the GreenSky App presented each Plaintiff with a loan summary and that each Plaintiff 'certified that she[/he] had received a copy of the Installment Loan Agreement ('Loan Agreement') in a manner that she[/he] could retain.'"  (D.E. 91 at 7 (citing GreenSky's evidence)), the certification being made on the merchant's iPad.  Nevertheless, stating "Plaintiffs attest that they either do not recall handling the iPad, or that, as with Belyea, after she inputted her social security number into the iPad, she 'did not view or control the iPad at all,'" the Court refused to compel arbitration on this basis, holding that "importantly, [GreenSky] has not offered evidence that each Plaintiff—as opposed to the merchants through whom they applied for the loans—clicked on anything as part of the application process." (*Id.* at 8.)  The Order cites no case supporting that ruling, and when assessed under *Hansen*, the Court should compel arbitration.

### A.   With One Exception, *Prior to* Each Plaintiff's Transacting on Their Loans, Their Loan Agreement Was Displayed Through the GreenSky® App and Each Plaintiff Certified That (S)he Had Received the Loan Agreement in a Manner That Could Be Retained.

The evidence in the record establishes that, with the exception of Lodge's second loan, *each the Loan Agreement documents, including the arbitration provision, were displayed through the GreenSky® App at the time each Plaintiff's loan was approved*.

- **Belyea**: On July 1, 2019 at 5:12:50 PM, Belyea's loan application was approved

and the GreenSky® App presented Belyea with a summary of the loan for which she was approved. (D.E. 55-1 (8/24/20 Kaliban Decl.), ¶ 17; *id.*, Ex. C.)  On July 1, 2019 between 5:12:00 and 5:14:00 PM, upon loan approval, Belyea accepted and created a loan account via the GreenSky® App and proceeded through the online activation process for her loan.  (*Id.*, ¶ 18.)  As part of the activation process, Belyea certified that she had received a copy of the Loan Agreement in a manner that she could retain.  (*Id.*, ¶ 19.)  Further, as part of the activation process and creation of the loan account, on July 1, 2019 at 5:14:01 PM, the GreenSky® App displayed the following documents during Belyea's application process: (1) the Loan Agreement governing her loan, which included an arbitration provision; (2) the GreenSky Shopping Pass; and (3) a document entitled "UNDERSTANDING YOUR DEFERRED INTEREST LOAN."  (*Id.*, ¶ 20 (capitalization original.)  GreenSky knows this because the logs show a successful delivery to the user's browser based on the http "200" code, which is a protocol that signifies a successful web delivery.  (*Id.*; *see also* D.E. 55-1, Ex. D (log of emails sent to Belyea by GreenSky, reflecting that "Installment Loan Agreement" was sent to Belyea's email address at 5:13:16 PM on July 1, 2019).)

- **Ferguson**: On September 20, 2018 between 4:20-4:21 PM, Ferguson's loan application was approved and the GreenSky® App presented Ferguson with a summary of the loan for which he was approved. (D.E. 56-1 (Kaliban Decl.), ¶ 17 & Ex. C thereto.)  On September 20, 2018 between 4:20:36 PM and 4:21:45 PM, upon loan approval, Ferguson accepted and created a loan account via the GreenSky® App and proceeded through the online activation process for his loan.  (*Id.*, ¶ 18 & Ex. C thereto.)  As part of the activation process, Ferguson certified that he had received a copy of the Loan Agreement in a manner that he could retain.  (*Id.*, ¶ 19.)  Then, at 4:21:12 PM, the GreenSky® App displayed the following documents during Mr. Ferguson's application process: (1) the Loan Agreement governing his loan, which included an arbitration

provision; (2) a "GreenSky Shopping Pass;" and (3) a document entitled "UNDERSTANDING YOUR DEFERRED INTEREST LOAN." (*Id.*, ¶ 20 & Ex. C thereto.)  Again, GreenSky knows this because the logs show a successful delivery to the user's browser based on the http "200" code, which is a protocol that signifies a successful web delivery.  (*Id.*, ¶ 20.)

- **Lodge Loan 1**: On June 3, 2019 at 7:12:46 PM, Lodge's first loan application was approved and the GreenSky® App presented Lodge with a summary of the loan for which she was approved. (D.E. 56-1 (Kaliban Decl.), ¶ 15.)  On June 3, 2019 between 7:12 and 7:13 PM, upon loan approval, Lodge accepted and created a loan account via the GreenSky® App and proceeded through the online activation process for her loan. (*Id.*, ¶ 16.)  As part of the activation process, Lodge certified that she had received a copy of the Loan Agreement in a manner that she could retain. (*Id.*, ¶ 17.)  On June 3, 2019 at 7:12 PM, the GreenSky® App displayed the following documents during Lodge's  application process: (1) the Loan Agreement governing her loan, which included an arbitration provision; (2) a "GreenSky Shopping Pass;" and (3) a document entitled "UNDERSTANDING YOUR DEFERRED INTEREST LOAN," again because the logs show a successful delivery to the user's browser based on the http "200" code.  (*Id.*, ¶ 18.)

- **Lodge Loan 2**: Lodge applied for her second loan on September 10, 2019.  (*Id.*, Ex. H, (D.E. 56-1, pp.89-94) ("Application Status Date" of "09/10/2019").)  The application was approved on September 10 as well.  (*Id.*, p.67 (noting "Application Approved on "9/10/19").  One week later, on September 17, 2019 between 3:55:00 and 3:57:00 PM, upon loan approval, Lodge accepted and created a loan account via the GreenSky® App and proceeded through the online activation process for her loan.  (*Id.*, ¶ 40.)  Also on September 17, at 3:56.45 PM, the GreenSky® App displayed the following documents during Lodge's application process: (1) the Loan Agreement governing her loan, which included an arbitration provision; (2) a "GreenSky Shopping

Pass;" and (3) a document entitled "UNDERSTANDING YOUR DEFERRED INTEREST LOAN," once again based on the http "200" code.  (*Id.*, ¶ 42.)

### B. Plaintiffs' Testimony Is Insufficient to Create a Question of Fact Concerning the Display of Their Loan Agreements under the *Hansen* Standard.

In their declarations attempting to create a question of fact on receipt of their Loan Agreements, which were sent to them in multiple ways by multiple methods, Plaintiffs supply no evidence other than their own conclusory statements.  That is not sufficient under *Hansen*.

### 1. Ferguson and Lodge's "Do Not Recall" Testimony Is Inadequate Per *Hansen*.

Neither Ferguson nor Lodge denies receiving or reviewing the Loan Agreements. Moreover, it is undisputed that GreenSky received certifications from both Ferguson and Lodge that each had received a copy of their Loan Agreement, and they were allowed to activate their loans only upon answering the required authentication challenge question to verify their identities. (D.E. 56-1 (Kaliban Decl.), ¶¶ 17, 41; D.E. 58-1 (Kaliban Decl.), ¶ 19.)  In response to these facts, Ferguson simply states, "I do not recall reviewing a copy of the Loan Agreement or a 'Shopping Pass' on the iPad after the [loan] approval."  (D.E. 67-2 (Ferguson Decl.), ¶ 6.)  Similarly, Lodge states: "I do not recall viewing or controlling the iPad other than to sign off on the plumbing work" for the first loan; "I do not recall receiving or reviewing the Loan Agreement or a 'Shopping Pass' before Benjamin Franklin Plumbing took out the loan for me"; "I do not recall receiving or reviewing the second Loan Agreement or a 'Shopping Pass' before Benjamin Franklin Plumbing took out the second loan for me"; and "I do not recall viewing or controlling the iPad other than to sign off on the plumbing work" for the second loan.  (D.E. 67-3 (Lodge Decl.), ¶¶ 4, 7, 11, 13.)

Such equivocal testimony is insufficient to create a question of fact under the summary-judgment standard that applies to agreements to arbitrate under *Hansen*.  Recent cases from this District have so held in compelling arbitration.  For example, in *Knepper v. Ogletree, Deakins,*

9

*Nash, Smoak & Stewart, P.C.*, 2019 WL 144585 (N.D. Cal. Jan. 9, 2019), the plaintiff attempted

to create a fact issue with the same type of testimony Plaintiffs proffer here:

> In her declaration, Knepper states that she does not "recall receiving, viewing, or
> opening any email from anyone at Ogletree that contained an arbitration agreement
> that would cover disputes between the Firm and me," she does not "recall receiving,
> viewing, or opening any email from anyone at Ogletree that discussed opting-out
> of an arbitration agreement that would cover disputes between the Firm and me,"
> and she "does not recall reviewing any arbitration agreement that would cover
> disputes between the Firm and me, and I did not consider entering into any
> arbitration agreement that would cover such disputes. I did not knowingly enter into
> any arbitration agreement that would cover disputes between the Firm and me. Had
> I been aware that I needed to opt-out of the agreement, I would have done so."

*Id.*, *4. Compelling arbitration, the Court held that plaintiff's testimony "that she cannot currently

recall her understanding of or knowledge of what she meant by that response" acknowledging

receipt of the arbitration agreement "does not alter her acknowledgement of receipt of the

information on that date." *Id.*, *6.

Similarly, in *Furlough v. Capstone Logistics, LLC*, 2019 WL 2076723, *5 (N.D. Cal. May

10, 2019), the plaintiff answered "I don't recall" and "I don't have a recollection" to questions

whether he completed an onboarding form containing an arbitration agreement.  This Court

granted summary judgment and compelled arbitration: "Testimony regarding failed recollection—

such as '*I don't recall*,' 'I forgot,' 'I'm not entirely sure,' and 'I have no independent

recollection'—falls short of satisfying the requirement that a party seeking to defeat a summary

judgment motion must present evidence that would support a judgment in his favor." *Id.* (emphasis

added) (citing *Fed. Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002)); *see also*

*Moujaes v. San Francisco City and Co.*, 2016 WL 4702671, *4 (N.D. Cal. Sept. 8, 2016)

("[T]estimony that a party does not recall is insufficient to present competent evidence to create a

genuine issue of material fact to survive a motion for summary judgment.") (citing *Toledano*);

*Mercon Coffee v. Beanbag Storage Co.*, 1992 WL 1352743, *3 (N.D. Cal. Oct. 15, 1992)

("Plaintiff concedes that the signature on the application appears to be his own, but he claims he does not recall signing it. The fact that plaintiff does not remember signing the document does not raise any genuine issue of disagreement as to require submission to a jury.").

The facts and law are plain – the "I don't recall" testimony of Ferguson and Lodge is patently insufficient to rebut GreenSky's evidence that the loan documents, including the Loan Agreement's arbitration provision, were sent to them and, in fact, displayed on the GreenSky® App.  There is no issue of material fact about this; whether they read the contents that displayed for them is not relevant to the Court's consideration.  *See, e.g., Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. 2015) ("[I]t is essentially irrelevant whether a party actually reads the contract or not, so long as the individual had a legitimate opportunity to review it."), *aff'd in part, rev'd in part and remanded*, 836 F.3d 1102 (9th Cir. 2016), and *aff'd in part, rev'd in part and remanded*, 848 F.3d 1201 (9th Cir. 2016) (quoted in *Knepper*, 2019 WL 144585, *5); *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 383, 203 Cal. Rptr. 3d 522, 530 (2016) ("The fact that [party opposing arbitration] either chose not to read or take the time to understand these provisions is legally irrelevant.").  For this reason, there is no disputed fact that both Ferguson and Lodge assented to arbitrate their claims with GreenSky.  *See Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003) (plaintiff's "conclusory allegations" in declaration, "unsupported by facts, are insufficient to survive a motion for summary judgment").

### 2. Belyea's Less Equivocal Testimony Is Nevertheless Insufficient to Create an Issue of Material Fact on Her Receipt.

Belyea's testimony is somewhat less equivocal than that of Ferguson and Lodge.  Belyea admits, "I input my social security number, phone number, and income and handed him [the merchant] back the iPad," but adds, "I did not view or control the iPad after that time"; "I did not use the iPad to certify that I received a retainable copy of a Loan Agreement at any time during

this process"; and "I did not view a copy of the Loan Agreement or a Shopping Pass on the iPad at any time during this process."  (D.E. 67-1 (Belyea Decl.), ¶¶ 7, 8, 9.)  Belyea uncorroborated denials do not satisfy the *Hansen* standard.

Belyea's testimony is no different than denying that she received the Loan Agreement in the mail; such a bare denial does not satisfy *Hansen*.  Thus, in *Knepper*, the Court cited with approval a "physical mailing" case, *Castro v. Macy's, Inc.*, 2017 WL 344978, *3 (N.D. Cal. Jan. 24, 2017), to hold that the same documents delivered electronically merely constitute a distinction without a difference where the plaintiff can only offer a general denial of receipt:

> In *Castro*, the fact that the plaintiff "unequivocally denies receiving the arbitration agreement and Opt Out Form in the mail" was insufficient to show lack of an agreement, where the company had evidence that the information packets and opt out forms were at least mailed to plaintiff (and plaintiff did not dispute having received other mail at that address). *Castro*, 2017 WL 344978 at *3. The evidence here is similar, although delivered and in one case responded to electronically.

*Knepper*, 2019 WL 144585, n.5; *see also Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011) ("[I]t is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.") (compelling arbitration) (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)); *see also Perry v. American Express*, 2014 WL 12515241, *4 (S.D. Cal. July 11, 2014) (quoting *Grabowski* and compelling arbitration); *Safadi v. Citibank, N.A.*, 2012 WL 4717875, *2 (N.D. Cal. Oct. 2, 2012) (quoting *Grabowski* and compelling arbitration).

In short, Belyea's general denials of the evidence put forward by GreenSky, without any corroboration (such as testimony or other proof from the merchant supporting her "iPad handling"

statements) are insufficient to create a disputed issue of fact as to whether she received and/or saw the Loan Agreement that was sent to her electronically at the time of application and approval. The evidence is, therefore, undisputed that the Loan Agreement, with its arbitration provision, displayed on the GreenSky® App at the time Belyea applied for, and was approved for, her loan. Her failure to opt out of arbitration prior to using the Shopping Pass constitutes her assent to arbitrate her current dispute with GreenSky.

### 3. The Court Should Credit the Undisputed Fact That GreenSky Received a Certification From Plaintiffs Acknowledging Receipt of the Loan Documents.

The April 9 Order, citing no supporting caselaw, seemingly rejected the undisputed fact that GreenSky received a certification from each Plaintiff that acknowledged receipt of the Loan Agreement – a precondition to their being to activate their loans, holding that "the transaction logs . . . do not demonstrate *who* clicked the box on the iPad acknowledging receipt of the loan agreement." (D.E. 91 at 9 (emphasis original).)  The Court should revisit that ruling.

Indeed, all that was visible from GreenSky's end (as reflected by the transaction logs) is that the acknowledgement box was clicked, which then allows the borrower to transact on that loan.  The cases are voluminous compelling arbitration where similar certifications were made. *See, e.g.*, *In re Juul Labs, Inc., Antitrust Lit.*, 2021 WL 3675208, *9 (N.D. Cal. Aug. 19, 2021); *Snow v. Eventbrite, Inc.*, 2020 WL 6135990, *7 (N.D. Cal. Oct. 19, 2020); *La Force v. GoSmith, Inc.*, 2017 WL 9938681, *4 (N.D. Cal. Dec. 12, 2017); *Holl v. United Parcel Serv., Inc.*, 2017 WL 11520143, *5 (N.D. Cal. Sept. 18, 2017); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1165-66 (N.D. Cal. 2016).

The requirement that GreenSky know for certain that the borrower/Plaintiff be the one to click the certification box erects a barrier to arbitration squarely in conflict with Congressional objectives. First, such a requirement opens a Pandora's Box as to the possibilities – the borrower

herself checked it; or the borrower was read the certification by the merchant, who then checked it with the borrower's permission; or, if the borrower was elderly or disabled, a family member or other person assisted the borrower and checked the box as a proxy; or the merchant simply checked the box in the interests of time if obtaining the loan as time-sensitive.  The apparent requirement that the borrower – and only the borrower – make the certification is entirely unworkable.[2]

Second, GreenSky is not aware of a case that requires a lender or a loan servicer to verify that a borrower's certification of loan terms is, in fact, the borrower's.  If a borrower can demonstrate with admissible evidence (which these Plaintiffs have not done) that (s)he did not certify receipt of the documents, then that borrower might have a cause of action against the merchant that falsely certified receipt, but surely GreenSky could not be held liable for such an action.  The Court should credit the certification of, at a minimum, Lodge and Ferguson – who have not meaningfully denied (under *Hansen*) their certifications – and compel arbitration.

## II. IT IS PRESUMED THAT PLAINTIFFS BELYEA AND FERGUSON RECEIVED, BY U.S. MAIL, THE LOAN AGREEMENT CONTAINING THE ARBITRATION PROVISION PRIOR TO TRANSACTING ON THEIR LOANS.

It also is important to understand the critical dates concerning the physical mailing of each Plaintiff's Loan Agreements by U.S. Mail.  In the cases of Belyea and Ferguson, they are presumed to have received their Loan Agreements prior to transacting on their loans, yet they failed to opt out of arbitration.  For this separate reason, they agreed to arbitrate their claims against GreenSky.

### A. The Court's Application of the Mailbox Rule Was Appropriate and Is Unaffected by *Hansen*.

---

[2] The April 9 Order suggested that "a borrower's initial or signature or some other action that would demonstrate that it was the borrower rather than the merchant that was tapping the boxes on the ipad [sic]" would somehow be more foolproof (D.E. 91 at 8), but such a process is just as prone to the same types of inaccuracy as the Order seems to believe the current process fosters.  Initials or a signature can be entered by someone other than the borrower just was easily as checking a box.

In the April 9 Order, the Court properly applied the mailbox rule to hold that each Plaintiff is presumed to have received the Loan Agreement via U.S. Mail. The Court cited and quoted each Plaintiff's ambivalent (at best) testimony regarding receipt of the Loan Agreement in the mail in holding that they (1) were presumed to have received the Loan Agreement and (2) had failed to rebut the presumption of receipt:

> The record reflects the following with respect to the mailing and receipt of the loan agreements:
>
> • Belyea applied for her loan on July 1, 2019 and the Kaliban Declaration attests that she was mailed a copy of the loan agreement on the same date. (Dkt. No. 55-1 at ¶¶ 5, 25.) Belyea does not dispute that the address the agreement was mailed to was her correct address or that she received the agreement; instead, she attests only that she "did not intend to agree to the Loan Agreement's terms." (Dkt. No. 67-1 at ¶ 11.
>
> • In the FAC, Ferguson alleges that he first applied for and obtained a GreenSky loan in 2017; however, GreenSky has no record of this loan. (Compare FAC at ¶¶ 94-96 with Dkt. No. 58-1 at ¶ 37.) The Court thus focuses his undisputed second loan on September 20, 2018. The Kaliban Declaration attests that he was mailed a copy of his loan agreement on September 22, 2018. (Dkt. No. 58-1 at ¶¶ 5, 25.) Ferguson does not dispute that the address the agreement was mailed to was his correct address; rather, he attests that he "do[es] not recall receiving or reviewing the Loan Agreement before Peter Levi redeemed the funds." (Dkt. No. 67-2 at ¶ 8.)
>
> • Lodge applied for her first loan on June 4, 2019 and the Kaliban Declaration attests her Shopping Pass was used on this same date and her loan agreement was mailed on this same date. (Dkt. No. 56-1 at ¶¶ 5, 23, 26.) Lodge applied for her second loan on September 17, 2019; however, the Kaliban Declaration confusingly indicates that the loan agreement was mailed a week earlier—on September 10, 2019. (Id. ¶¶ 29, 45.) As with Ferguson, Lodge attests that she "do[es] not recall receiving or reviewing" either loan agreement. (Dkt. No. 67-3 at ¶¶ 7,13.)

(D.E. 91 at 10-11.)

Thus, the Court held, "the mailbox rule applies to establish proof of receipt of Belyea's loan agreement, Ferguson' s2018 loan agreement, and Lodge's June 2018 [sic] loan agreement." (*Id.* at 11.) The Court properly held that no Plaintiff rebutted the presumption of receipt, and each Plaintiff's conclusory assertions of a lack of receipt do not suffice under *Hansen* standard. The cases from this District rejecting similarly weak denials of receipt continue to apply with full, if

not greater, force post-*Hansen*. *See, e.g.*, *Paxton v. Macy's West Stores, Inc.*, 2018 WL 4297763, *4 (E.D. Cal. Sept. 7, 2018) (rejecting "do not recall" testimony, holding that there was an arbitration agreement and stating that "Plaintiff's testimony that he does not recall whether he received the material does not alter the application of the mailbox rule"); *Castro*, 2017 WL 344978, *3 ("mere denial of receipt" insufficient; compelling arbitration); *James v. Comcast Corp.*, 2016 WL 4269898, *2 (N.D. Cal. Aug. 5, 2016) (plaintiff's "bare denial is insufficient") (compelling arbitration); *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1196 (N.D. Cal. 2012) ("Although it is unclear when Plaintiff actually received the 2006 cardholder agreement, the Court presumes that it was received by Plaintiff in the usual time. . . . Plaintiff is deemed to have received the . . . agreement shortly after it was mailed") (compelling arbitration).

### B. Belyea and Ferguson Received the Physical Copies of Their Loan Agreements by U.S. Mail Several Days After They Were Mailed to Them.

As Plaintiffs are presumed to have received their Loan Agreements by U.S. Mail, the issue becomes the amount of time that lapsed between the mailings and each Plaintiff's use of their loan. In the case of Belyea and Ferguson, they received their hard copies within ample time to opt out of arbitration if they desired to do so, but they did not do so prior to transacting on their loans.

- **Belyea – Seven Days:** As the Court has acknowledged, GreenSky mailed a printed copy of the Loan Agreement by U.S. Mail to Belyea on July 1, 2019 to the physical mailing address Belyea provided as part of the loan application process. (D.E. 91 at 10-11; *see also* D.E. 55-1 (Kaliban Decl), ¶¶ 5, 25.) On July 8, 2019, *seven days after* GreenSky mailed Belyea a hard copy of the Loan Agreement to the mailing address Belyea had provided in her application, her Shopping Pass that was included with, and was a part of, her Loan Agreement was used for Roto Rooter to charge her account in the amount of $23,600. (D.E. 55-1 (Kaliban Decl.), ¶ 28.)

- **Ferguson – Six Days:** As the Court recited in the April 9 Order, Ferguson was mailed a copy of his loan agreement on September 22, 2018.  (D.E. 91 at 10-11; *see also* D.E. 58-1 (Kaliban Decl.), ¶¶ 5, 25.)  On September 28, 2018, *six days after* GreenSky mailed Ferguson a hard copy version of the Loan Agreement to the mailing address Ferguson had provided in his application, Ferguson's Shopping Pass that was included with, and was a part of, his Loan Agreement was used for Levi Plumbing to charge his account in the amount of $1,791.  (D.E. 58-1 (Kaliban Decl.), ¶ 28.)

### C. Under Presumptions Employed by Federal Courts, Including the Ninth Circuit Court of Appeals, Belyea and Ferguson Are Presumed to Have Received Their Loan Agreements by U.S. Mail Within Three Days of Mailing.

Thus, as the facts establish, the transactions of Belyea and Ferguson were not cases of instantaneous application-approval-use of the Shopping Pass/loan at the point of sale.  It is undisputed that neither of these Plaintiffs drew down on their loans until roughly a week after each had been sent the physical copy of their Loan Agreement by U.S. Mail.

The question thus focuses on the appropriate amount of time to allow for the physical mailing.  The answer is three days under the Ninth Circuit's leading decision in *Payan v. Aramark Management Services L.P.*, 495 F.3d 1119 (9th Cir. 2007), which involved the timeliness of an EEOC right-to-sue letter.  The Ninth Circuit noted that federal courts had applied presumptions of receipt ranging from three days to five days to seven days, then declared: "We adopt the three-day presumption."  495 F.3d at 1125.  Furthermore, the three-day presumption is measured in calendar days, not business days: "If a recipient is not sure when the notice arrived, we presume both that it was mailed on its date of issue and that it arrived three days later, *including weekends*."  *Rhodes v. Raytheon Co.*, 555 Fed. Appx. 665, 667 (9th Cir. 2014) (emphasis added) (citing *Payan*).

While the *Payan* presumption was applied in the context of an EEOC/Title VII matter, its

reasoning and holding apply with equal force to any mailings where, as here, the recipient is unsure of the date of actual receipt.   Indeed, in *Payan*, the Ninth Circuit observed that a three-day presumption "accords with Federal Rule of Civil Procedure 6(e), which provides that '[w]henever a party must or may act within a prescribed period after service and service is made [by mail], 3 days are added after the prescribed period would otherwise expire.'"   *Payan*, 495 F.3d at 1125 (quoting Fed. R. Civ. P. 6(e); brackets by *Payan*).   As *Payan* observed, the three-day rule "is well-known, and is reasonable in this context *as in other aspects of civil litigation*."   *Id.* at 1126 (emphasis added).[3]   Accordingly, Plaintiffs are presumed to have received their Loan Agreements within three days of their mailing, which is July 5 for Belyea (agreement mailed on July 1) and September 25 for Ferguson (agreement mailed on September 22).[4]

### D.   Having Received the Loan Agreement Prior to Drawing Down on Their Loans But Having Failed to Opt Out, Ferguson and Belyea Agreed to Arbitrate Their Disputes With GreenSky, as the *Wright* Court Held.

The bottom line is that Ferguson and Belyea received the hard copies of their Loan Agreements within the time presumed by the Ninth Circuit and before either Plaintiff transacted on their loans.   And it is likewise undisputed that neither Plaintiff opted out of the arbitration agreement prior to transacting on their loans.   Therefore, Belyea and Ferguson agreed to arbitrate.

These facts fall squarely within the holding of *Wright v. Greensky, Inc.*, 2021 WL 2414170 (S.D. Fla. June 14, 2021), where, as with Belyea and Ferguson here, the plaintiff received her GreenSky loan agreement and failed to opt out prior to transacting on the loan, thereby assenting to the arbitration provision in her loan agreement.   As the court in *Wright* held, "[b]ased on these

---

[3] Other contexts in which courts apply a three-day presumption include prisoner mailings.   *See, e.g.*, *Stoot v. Cain*, 570 F.3d 669, 671 (5th Cir. 2009).

[4] The third day for Belyea was July 4, which is a holiday.   Accordingly, GreenSky assumes an extra day for her mailing.

facts, it is evident that Plaintiff received notice of the terms and conditions of the Loan Agreement, including the Arbitration Provision, prior to drawing on the loan and accepted the terms of the Agreement . . .".  *Wright*, 2021 WL 2414170, *16.  Furthermore, the *Wright* court noted that, as occurred here, the plaintiff not only drew down on her loan, but continued to make payments on it after receiving her loan agreement, thereby agreeing to the arbitration provision:

> In sum, the Court concludes that Plaintiff received adequate notice of the terms and conditions in the Loan Agreement and the Arbitration Provision.  Through Plaintiff's subsequent conduct of drawing on the loan and making payments under the terms of that loan, she assented to the terms of the Arbitration Provision.

*Id.*, *18.

The *Wright* ruling is on all fours with the facts of this case, and equally applies to these facts.  Indeed, in the April 9 Order, this Court drew that same temporal line of demarcation in the April 9 Order: "Plaintiffs' receipt of the loan agreement with the Arbitration Provision *after* the transaction had already occurred cannot constitute their agreement to arbitrate."  (D.E. 91 at 12 (emphasis original).)  But, as the Belyea and Ferguson facts establish, and consistent with the *Wright* holding, their transactions had *not* occurred before those two Plaintiffs received their Loan Agreements.  Their facts cannot be distinguished from *Wright* on this basis.

### E.   In Light of *Hansen*, the Pertinent Facts Pertaining to Belyea and Ferguson Fall Within One or More *Norcia* Exceptions.

The April 9 Order rendered an unduly restrictive interpretation of *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017), to reject arbitration.[5]  Based on the facts and applying *Hansen*, the Court should revisit that portion of its ruling and compel arbitration under the *Norcia* exceptions of "duty to act," "retention of benefits," or "course of dealing."

---

[5] In April, the Court suggested that "GreenSky does not expressly argue that either of these exceptions applies."  (D.E. 91 at 12.)  To the contrary, GreenSky did, in fact, argue the *Norcia* exceptions prior to the April 9 Order.  (*See* D.E. 88, 88-1.)

### 1.   The "Duty to Act" Exception Applies.

#### a.   The April 9 Order Erroneously Held That Each Plaintiff's Lending Transaction Was Complete at the Time of Application and Approval.

The first issue concerns when the lending transaction was deemed complete.  The Court recited each Plaintiff's non-committal testimony on allegedly refusing authorization of his/her Shopping Pass, then concluded that "GreenSky's evidence that the merchant charged Plaintiffs' accounts after the loan agreements were mailed does not dispute Plaintiffs' evidence that the entire transaction was complete on the day they applied for the loans through the merchants and that they took no steps subsequent to that day to authorize transfer of funds to the merchants."  (D.E. 91 at 12.)  GreenSky is unsure what "evidence" Plaintiffs offered that would support that ruling, but it is incorrect in any event.

In fact, as the court in *Wright* held, "as numerous provisions of the Agreement make clear, Plaintiff neither accepted the terms of the loan, nor incurred any obligations thereunder *until she chose to draw upon the loan amount*."  *Wright*, 2021 WL 2414170, *16 (emphasis added).  Indeed, each Plaintiff was informed that the use of the Shopping Pass constituted their acceptance and, therefore, signature of the Loan Agreement containing the arbitration provision:

> Use of this Shopping Pass or the associated Loan by (any) Borrower (or any authorized user) to make a purchase constitutes acceptance by (all) Borrower(s) of the terms of the accompanying Loan Agreement.
>
> **The physical or electronic record of any such purchase will constitute the signature of (all) Borrower(s) on such Loan Agreement**.

(*See, e.g.*, D.E. 55-1 (Kaliban Decl.) at 32, Ex. F, p.1 (bold type original).)  Therefore, no Plaintiff could "accept" the Loan Agreement until the Shopping Pass was used.

In other words, the transaction was not complete until the Shopping Pass was used.  GreenSky made that clear in an answer to one of the "Frequently Asked Questions" set forth in the Loan Agreement in a page titled "**UNDERSTANDING YOUR DEFERRED INTEREST**

LOAN": "*You have no obligation on your loan until you authorize a transaction.*"  (*Id.* at 33 (bold and capitalization original; italics added).)   Therefore, neither Belyea nor Ferguson had any liability on the loan until the Shopping Pass was used, which is perfectly logical – since the Shopping Pass operates like a credit card, as Plaintiffs themselves admit (D.E. 95 (2d Am. Compl.), ¶ 95 ("The shopping pass has a sixteen-digit number that functions like a credit card.")), then, just like a credit card, the customer cannot be liable to pay back any money unless charges are made to the card (or, in this case, the Shopping Pass) in the first instance.[6]   As such, the transaction cannot be completed unless and until the borrower actually transacts upon the loan, i.e., incurs and indebtedness that (s)he is required to repay.   That act did not occur until July 8, 2019 for Belyea (at least four days after the law presumed her receipt of her Loan Agreement) and September 28, 2018 for Ferguson (three days after the law presumed his receipt of his Loan Agreement).   By using the Shopping Pass after those respective dates, Belyea and Ferguson assented to the Loan Agreement's arbitration provision.  *See, e.g.*, *Perry*, 2014 WL 12515241, *4 ("[B]y using their credit card after receiving the cardmember agreement enclosed with the . . . billing statement, Plaintiffs assented to the agreement, including the arbitration provision.").

> ### b. Having Received Their Loan Agreements Prior to Transacting on Their Loans, Plaintiffs Had a Duty to Opt Out of Arbitration If They So Desired, But They Failed to Do So.

Because Plaintiffs are deemed to have received the arbitration agreement within three days, each had the opportunity – and, if they did not desire arbitration, the obligation – to opt out of the arbitration provision within 45 days of receipt.  (*See, e.g.*, D.E. 55-1 (Kaliban Decl.), Ex. F, ¶ 25.)

---

[6] As Judge Bloom noted in *Wright*, the plaintiff in that case – represented by the same lead counsel as are Plaintiffs here – made the same point in a brief filed in that case: "[The Loan Agreement] is conditional—the borrower has no obligation unless she draws on this line of credit....[In addition,] because it is a line of credit, the borrower is not promising to pay a fixed amount of money." *Wright*, 2021 WL 2414170, n.17 (brackets by *Wright*; additional quotations omitted).

It is undisputed that she did not do so. The courts in the cases cited above compelled arbitration in those circumstances, as should the Court here. *See Paxton*, 2018 WL 4297763, *2 (compelling arbitration where "Plaintiff did not return the opt-out form"); *Castro*, 2017 WL 344978, *4 (compelling arbitration: "The documents mailed to Castro's home address plainly state the consequences of her failure to opt out."); *James*, 2016 WL 4269898, *1 (compelling arbitration where plaintiff "did not exercise his option to opt out of the 2011 Arbitration Provision, but continued to use Comcast's services"); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012) ("Numerous courts have found that continued use or failure to opt out of a card account after the issuer provides a change in terms, including an arbitration agreement, evidences the cardholder's acceptance of those terms.") (citing several cases).

Furthermore, the April 9 Order does not mention two post-*Norcia* cases from this District GreenSky has cited and that bear on this issue.  In *Hermosillo v. Davey Tree Surgery Co.*, 2018 WL 3417505, *2 (N.D. Cal. July 13, 2018), the plaintiff-employee's arbitration agreement contained similar language to the provision at issue here, including this language: "[E]mployees may opt out of the Arbitration Agreement by providing written notice to the Davey Tree Legal Department within 30 days of receipt of the Employee Handbook." Assessing the arbitration provision under *Norcia*, Judge Koh held: "'An offeree's silence may be deemed to be consent to a contract when the offeree has a duty to respond to an offer and fails to act in the face of this duty.' [*Norcia*, 845 F.3d] at 1284-85. *An opt-out provision presents an example of this type of exception*." 2018 WL 3417505, *8 (emphasis added) (citing *Norcia*).  Accordingly, Judge Koh held that "*the Court assumes that Plaintiffs' acceptance of wages or failure to opt out of the Arbitration Agreement would show Plaintiffs' consent to the Arbitration Agreement* if they were aware of the Arbitration Agreement."  *Id.*, *10 (emphasis added).

In a case from last year, Judge Seeborg, citing Ninth Circuit cases, held likewise:

> In light of the finding that Needleman did have constructive notice of the document, his failure to opt out of the agreement within the allotted time was sufficient to constitute assent. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014 ("By not opting out within the 30-day period, [plaintiff] became bound by the terms of the arbitration agreement.")); *see also Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (holding arbitration agreement enforceable based on employee's failure to opt-out within the 30-day window) . . . . Because Needleman did not opt out within the allotted time, Golden 1 was justified in treating this as consent to the updated terms.

*Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1105 (N.D. Cal. 2020).  The court in *Wright* explained the function of the opt-out provision in language that applies equally here:

> Defendants rightfully note that the opt-out clause was simply another avenue through which Plaintiff could have chosen to communicate her unwillingness to arbitrate and it is undisputed that Plaintiff failed to properly opt out within the forty-five-day limit. Thus, the Court finds that Plaintiff's failure to opt out further evidences her agreement to the Arbitration Provision.

*Wright*, 2021 WL 2414170, *17.  Here, identically to the same agreement and provision in the *Wright* case, the plain, straightforward language of the 45-day opt-out provision placed a duty on Belyea and Ferguson to respond.  They assented to the arbitration agreement by not opting out within the 45-day period set forth in the agreement.

### 2.   The "Retention of Benefits" Exception Applies.

Case after case has held that a plaintiff's use or acknowledgement of the contract containing the arbitration agreement, and retaining its benefits, constitutes assent to arbitrate.  *See, e.g.*, *Heller v. Rasier, LLC*, 2020 WL 413243, *11 (C.D. Cal. Jan. 7, 2020) (compelling arbitration where drivers were advised that "continued use of the Uber App would serve as consent to the updated terms" and "Plaintiffs do not refute that they received such an email, nor that they continued to use the App after receiving the email"); *Ackerberg*, 898 F. Supp. 2d at 1176 (compelling arbitration where plaintiff "could have opted out of her entire credit agreement with Citibank at or after

November 2003, when Citibank issued a new agreement containing an arbitration clause and opt-out opportunity, upon acquiring her account from Sears. Instead, plaintiff accepted Citibank's terms through her subsequent use of the card.").  "Under California law, assent to an offer can occur either by way of performance under the contract or the acceptance of consideration." *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 384 (2016). Here, Plaintiffs accepted the consideration and benefit of the Shopping Pass and used it to charge the loans they had been given. Such use and acceptance constituted assent to the Loan Agreement as the pass itself clearly informed each Plaintiff.  (*See* 8/24/20 Kaliban Decl., Ex. F.) Plaintiffs electronically assented to the Loan Agreement and, therefore, the arbitration provision.

Once again, the holding in *Wright* applies here.  Florida law, which applied in that case, recognizes the same "silence is not assent" principle as does California, yet the court in *Wright* properly held that the facts and circumstances did not implicate that principle:

> Nevertheless, Plaintiff argues that Florida law does not permit silence to constitute acceptance, especially in the absence of some additional exchange of obligations or benefits. This statement, while generally true, *is inapplicable in this instance*. As explained above, Plaintiff received notice of the terms and conditions in the Agreement by mail and had ample time to review those terms before she began drawing down the loan proceeds. Once she initiated the transaction to reimburse [merchant], Plaintiff communicated her acceptance of all of the terms in the Loan Agreement, including those in the Arbitration Provision. Nevertheless, if she wished to avoid being subjected to the Arbitration Provision, she had an additional mechanism through which to opt out. Rather than exercising that option, Plaintiff continued utilizing the loan proceeds and services, which further manifested her intent to arbitrate any claims.

*Wright*, 2021 WL 2414170, *17 (footnotes omitted; emphasis added).  That holding applies with equal force here.

### 3.   The "Course of Dealing" Exception Applies to Lodge.

The concept of "course of dealing" as a factor in considering assent to arbitration is hardly novel, nor did it originate with *Norcia*.  As the Ninth Circuit observed nearly two decades ago in

a case where it reversed the denial of arbitration, "where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (quoting *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650, 4 Cal. Rptr. 543, 546 (1960)). "Course of dealing" is uniformly defined as a "sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." *Simi Mgmt. Corp. v. Bank of America, N.A.*, 930 F. Supp. 2d 1082, 1098 (N.D. Cal. 2013) (quoting *In re CFLC, Inc.*, 166 F.3d 1012, 1017 (9th Cir. 1999)); *New West Fruit Corp. v. Coastal Berry Corp.*, 1 Cal. Rptr. 2d 664 n.5, 1 Cal. App. 4th 92 n.5 (1991) (same).

It is difficult to understand how the "course of dealing" exception would not fully apply to Lodge, who obtained a second loan a mere three months after her first loan, which, the Court held, she is presumed to have received at least by U.S. Mail. (*See* D.E. 91 at 11.) While it is true that "[t]he second loan represents an entirely separate transaction" (*id.* at 15), that fact would *support*, not defeat, a "course of dealing," which, as noted above, relies on a "sequence of *previous* conduct" – here, the first loan – to establish the parties' expectations for any subsequent dealings, such as the second loan just three months later. The April 9 Order cites no case applying such a restrictive view of "course of dealing." Based on settled California-law definitions of that term, the "course of dealing" exception to *Norcia* applies to the Lodge's second loan.

## CONCLUSION

GreenSky respectfully requests that the Court compel arbitration as to all claims asserted in this case by Plaintiffs Elizabeth Belyea, David Ferguson, and Hazel Lodge.

DATED:          September 30, 2021.

/s/*Diem Kaelber*_____
Diem N. Kaelber [SBN # 329317]
Barry Goheen (admitted *pro hac vice*)
Attorneys for Defendants GreenSky,
Inc., GreenSky of Georgia, LLC, and
GreenSky, LLC

FISHERBROYLES, LLP
21081 Canyon View Drive
Saratoga, CA 95070
Telephone: 408-898-3170
Facsimile: 866-414-5083
diem.kaelber@fisherbroyles.com

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 30, 2021 a copy of the foregoing was served upon the following counsel of record in this action via the CM/ECF system and electronic mail.

By: /s/*Diem Kaelber*