1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH BELYEA, *et al.*, | Case No. 3:20-cv-01693-JSC |
| Plaintiffs, | [~~PROPOSED~~] **ESI AND DOCUMENT** |
| v. | **PRODUCTION PROTOCOL** |
| GREENSKY, INC., *et al.*, | |
| Defendants. | |

The parties in the above-captioned litigation, by and through their undersigned counsel, have proposed this ESI and Document Production Protocol. The parties' stipulation is hereby approved and adopted as the Court's order.

## I.   GENERAL

**a.**   Pursuant to Fed. R. Civ. P. 34, this Order sets forth the specifications that shall govern document production during discovery in this action. This Order does not govern the scope of production of documents and electronically stored information in the litigation and all parties reserve their rights with respect to the scope of the production of documents, including the potential need to change the form of production to better understand meaning.

**b.**   This Order does not alter the parties' respective responsibility to comply with the Federal Rules of Civil Procedure and the Local Rules of this District, including the District's guidelines and checklist relating to electronic discovery.

**c.** Nothing in this Order shall be interpreted to require production of information protected from disclosure by the attorney-client privilege, work-product privilege, or any other applicable protection or privilege.

## II.   DEFINITIONS

**a.**   "**Documents**" has the meaning contemplated by the Federal Rules of Civil Procedure, and includes any designated hard copy or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

**b.**   "**Electronically Stored Information**" or "**ESI**" has the same meaning as contemplated by the Federal Rules of Civil Procedure and includes all computer-generated information, data, or files of any kind, stored in or on any storage Medium.

**c.**   "**Hard Copy Documents**" means all writings and other things that are physical, tangible, paper originals, or copies.

**d.**   "**Medium**" means an object or device, real or virtual, including but not

[PROPOSED] ESI AND DOCUMENT PRODUCTION PROTOCOL
Case No. 3:20-cv-01693-JSC

limited to a disc, tape, computer, flash drive, server, cloud-based storage, virtual machine, or other device on which data is or was stored.

        **e.**      "**Metadata**" means information about information or data about data and includes, without limitations: (1) information that is embedded in or associated with a Native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native file and/or (2) information generated automatically by the operation of a computer or other information technology system when a Native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

        **f.**      "**Native**", "**Native Format**" or "**Native Data Format**" means the format of ESI in which it was created.

        **g.**      "**Optical Character Recognition**" or "**OCR**" means the process of recognizing and creating a file containing visible text within an image.

        **h.**      "**Data Dictionary**" means a list of all tables and fields in a database, along with a description of their intended purpose, use, and function. This may include all tables and fields, regardless of whether the tables and fields have actually been used (i.e., it shall include "blank" and "empty" tables and fields).

### III.    COOPERATION

      The parties are aware of the importance this Court places on cooperation and commit to cooperate in good faith throughout the matter in a manner consistent with this Court's principles for the discovery of ESI.

### IV.    LIAISON

      The parties shall designate e-discovery liaison(s) who are and will be knowledgeable about and responsible for discussing their respective ESI and the party's discovery efforts. Each e-discovery liaison shall be, or shall have access to those who are familiar with the party's electronics systems and capabilities in order to explain those systems and answer relevant questions. Each e-discovery liaison shall be, or shall have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and the location, nature, accessibility, format,

collection, search methodologies, and production of ESI in this matter.  The parties will rely upon these liaisons, as needed, to confer about ESI and to help resolve disputes without Court intervention.

**V.     PRESERVATION**

Each party is hereby directed to take reasonable steps to preserve relevant and discoverable ESI within its possession, custody, or control. If a party fails to take reasonable steps to preserve relevant and discoverable ESI within its possession, custody, or control, and relevant and discoverable ESI is lost or destroyed, that party may have sanctions levied against it pursuant to the Federal Rules of Civil Procedure and applicable case law.

**VI.   SEARCH**

**a.       Cooperation on Search Terms.** The parties understand the cost and complexity of reviewing and producing ESI and seek to engage in a cooperative, iterative process to limit costs but ensure relevant, responsive documents are likely discovered in any ESI search. As such, the parties shall cooperate regarding the disclosure and formulation of appropriate search terms and protocols for use in the review and production of ESI. These meet-and-confer efforts should include search methodologies to be utilized (such as Boolean searches, TAR, and/or predictive coding), disclosure and selection of all search terms (including foreign language and search terms based upon actual terminology used in the producing party's documents), and the search protocol.

**b.       Disclosure of Records Custodians and Relevant Systems.** By fourteen (14) calendar days after serving written responses and objections to Requests for Production, the producing party will disclose (a) a list of the  custodians whose data will be searched/reviewed for responsive documents, and include a general job title or description of each custodian and information relating to the type of relevant documents and/or ESI that each custodian is expected to possess, and (b) a list of the databases, if any, most likely to contain documents or ESI, including a brief description of the database and a list of the individual or departmental custodians who have access to the database. This description of the database shall include a copy of a Data Dictionary, if one exists.

c. **Search Terms and Custodians.** Whether or not the parties opt to use Technology-Assisted Review ("TAR"), the producing party, as the one with greater familiarity with the terminology used by its client(s), will first provide a list of search terms and likely custodians of ESI within fourteen (14) days of serving written responses and objections to Requests for Production. At the time of providing the list of search terms, the producing party shall also provide a 'hit report' identifying the total number of documents captured by each search term.  For searches done in Mimecast, the hit report will include total email hit count per search term. For searches done in NUIX, the hit report will include the total item (document) level  hit count per search term, the total email and attachment count after deduplication across custodians per search term, and the same counts if running all proposed search terms.

d. The requesting party shall be given the opportunity to review this list of search terms and may provide additional or alternative suggestions for custodians and search terms.

e. A producing party may object to any of the additional custodians or additional search terms proposed by the requesting party. Any such objections by the producing party must be provided within fourteen (14) calendar days of receipt of the search terms and custodians proposal. Any disputes over the initial set of custodians and search terms to test shall, after meet-and-confer, be presented to the Court.

f. The producing party may produce ESI on a rolling basis, provided that it first informs the requesting party that it is doing so and provides an estimate of when the production of ESI will be substantially completed. If production is performed on a rolling basis, upon written request, the producing party shall attempt in good faith to provide an update to the requesting party within a reasonable time period.

g. **Additional Custodians and Search Terms**

1. At any point in discovery, but no later than forty-five (45) days before the close of fact discovery (absent extenuating circumstances), a party may request additional search terms or custodians. Such requests must be made in good faith. This is

4

no way limits the producing party's ability to test the terms for reasonableness and/or object.

   **2.**  Any disputes over additional custodians or terms pursuant to this paragraph shall, after meet-and-confer, be presented to the Court.

   **3.**  The parties will continue to meet and confer regarding any search process issues as necessary and appropriate. This ESI protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests.

   **h.**  **Inaccessible data.** The following types of data stores are presumed to be inaccessible and are not subject to discovery absent a particularized need for the data as established by the facts and legal issues of the case:

    **a.**  On-line access data such as temporary internet files, history, cache, cookies, and the like.

    **b.**  Back-up data that is substantially duplicative of data that are more accessible elsewhere.

    **c.**  Deleted, slack, fragmented, or other data only accessible by forensics;

    **d.**  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

    **e.**  Server, system or network logs;

    **f.**  Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices, i.e, cell phones and/tablets), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

    **g.**  Neither party is required to image all mobile devices used by relevant custodians. Both parties agree it is appropriate to locate responsive texts by the responding party interviewing custodians and collecting relevant items using standard tools.

   **i.**  **Responsiveness Review**

Nothing in this Order shall be construed or interpreted as precluding a producing party

[PROPOSED] ESI AND DOCUMENT PRODUCTION PROTOCOL
Case No. 3:20-cv-01693-JSC

from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's requests. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is in good faith and reasonably deemed not relevant to any of the requesting party's discovery requests, provided that the producing party shall at the time of production identify the total number of documents which were captured by a search term but not produced after a responsiveness review. The parties agree that they will meet and confer if the requesting party has concerns about the responsiveness review conducted by the producing party.

### j.      Non-Custodial Data

Searches of custodial databases using search terms do not relieve a party of the obligation to (a) search non-custodial databases and non-custodial sources of ESI, and/or (b) to collect documents without using search terms. Each party is in the best position to determine how to search non-custodial data sources, though the parties agree that it is appropriate to locate responsive documents on shared drives using a targeted collection method. Upon reasonable request from the requesting party, the producing party shall identify and explain the nature of all available search and collection methods, and identify which method(s) are used, for non-custodial ESI sources, and collections not involving search terms.  The requesting party shall have the right, subject to meet and confer, to request an alternative method be used. The parties agree to work cooperatively to identify the types of documents that should be collected from non-custodial sources and to identify the types of documents that should be collected without using search terms.

### VII.   PRODUCTION FORMATS

### a.      Document Image Format

**1.** The Parties will produce Documents and ESI in Tagged Image File Format ("TIFF"). For documents that do not contain redactions, the producing party will produce an extracted text (.TXT) file containing searchable text for each electronic document and an Optical Character Recognition ("OCR") text file for each imaged paper

document along with image load files. For documents that contain redactions, the producing party will provide an OCR text file for the unredacted portions of such documents.

2.      Every TIFF file in each production must be referenced in the production's corresponding load file. The total number of TIFF files referenced in a production's load file should match the number of TIFF files in the production.

3.      To the extent they are available, the metadata that shall be extracted and produced in the metadata load files (.DAT file using concordance standard delimiters) are:

     a.      **Metadata from Email:**

          i.      Email Subject

          ii.     Email Author

          iii.    Email Recipient

          iv.     Email CC

          v.      Email BCC

          vi.     Email Received Date:  MM/DD/YYYY

          vii.    Email Received Time:       HH:MM:SS

          viii.   Email Sent Date:  MM/DD/YYYY

          ix.     Email Sent Time:  HH:MM:SS

          x.      Time Offset Value (indicate which time zone the data is set to when processed).

     b.      **Metadata from Electronic Files:**

          i.      File Name

          ii.     File Author

          iii.    File Manager: Native File Application (e.g., Microsoft Excel, Word, etc.)

          iv.     File Created Date:  MM/DD/YYYY

          v.      File Created Time:  HH:MM:SS

vi.      File Modified Date: MM/DD/YYYY

vii.     File Modified Time: HH:MM:SS

viii.    Time Offset Value (indicate which time zone the data is set to when processed).

ix.      File Extension

x.       Has Hidden Data: Yes or blank (Hidden data refers to not only Excel files with hidden columns, rows, spreadsheets, etc., but also PowerPoint or other files in which comments or other fields may be hidden).

**c.      Data for both Email and Electronic Files:**

i.       Custodian

ii.      MD5 Hash

**4.**      Each Party reserves the right to request native files for documents that are difficult to understand after they have been produced in the format specified herein or that contain potentially relevant embedded information, and such requests will not be unreasonably denied. Such a request shall be made according to the following protocol.

**a.**      The requesting Party shall make any such request as soon as reasonably practicable after receiving a document production.

**b.**      The requesting Party shall provide a list of Bates numbers of the documents that it is requesting to be produced in native file format.

**c.**      Within fourteen (14) days of receiving this request, the producing Party will either (i) produce the requested native files to the extent reasonably practicable or (ii) respond in writing, setting forth its position on the production of the requested documents.

**d.**      If the Parties are unable to agree as to the production of the requested documents in native format, the Parties may submit the matter to the Court.

**b.       Production of Excel, PowerPoint, MS Access, and MS Project Files**

Unless such materials contain privileged information, spreadsheets, audio files,

photos, video files, Excel, PowerPoint, and project files shall be produced in Native Format. If the files, however, contain privileged information, they need not be produced in Native Format but shall be produced with the extracted text and metadata fields set forth in this Order, and in TIFF format, except to the extent the extracted text or metadata fields are themselves redacted. If a party in good faith believes the native file is necessary for interpretation of the document, the parties shall work together to determine a plan for handling the text that needs to be redacted.

c.      **Production of Structured Data**

In the event that information from structured databases, or any documents or data prepared, organized, or managed using any proprietary software, is subject to production in this action, the parties shall meet and confer to discuss the information contained in such data sources, how they are structured, and how they can be queried. In order to facilitate that meet-and-confer, the producing party will provide the following information regarding the databases prior to the meet-and-confer:

- Database Name
- Type of System
- Business Purpose
- A complete Data Dictionary, if it already exists. The information shall be produced in a reasonably usable form, which may include Microsoft Word, Microsoft Excel, Microsoft Access, and/or TIFF.

d.      **Document Unitization and Load Files**

ESI shall be produced in 300 dots per inch ("DPI") or greater, Group IV Grayscale TIFF files. TIFF files shall be produced in single-page format along with image load files (.OPT files and .LFP files).  All documents are to be provided with per-document searchable text (.TXT) files, and such text files shall contain the full text extraction. In the event a document is scanned into TIFF format, the file should contain that document's OCR text. If a document is redacted for privilege or to comply with privacy regulations, the document shall undergo a second OCR to omit the extracted text behind the redaction.

[~~PROPOSED~~] ESI AND DOCUMENT PRODUCTION PROTOCOL
Case No. 3:20-cv-01693-JSC

**e.      Duplicates**

Where a producing party has more than one identical copy of an electronic document (i.e., the documents, including their metadata, are exact duplicates as that term is used in the electronic discovery field), the producing party need only produce a single copy of that document, provided that all family relationships shall be maintained. A party may de-duplicate ESI across each party's custodians or sources but if that option is exercised, the producing party shall identify each custodian or source where the document was located in a coding field. De-duplicated documents must have the other custodians specifically identified in the load file.

**f.      E-Mail Thread Analysis**

Electronic mail (e-mail) thread analysis may be used to reduce the volume of e-mails reviewed and produced, provided that the parties disclose such use. The produced e-mails must include all of the responsive information from a thread, including attachments.

**g.      Non-Substantive Files**

System and program files defined on the NIST list need not be processed, reviewed, or produced. The parties may suppress container files (.zip, .pst, .rar) that do not reflect substantive information prior to production but must produce the remainder of those responsive, non-privileged document families found within the container file, including any emails to which the container file is attached. Similarly, the parties may suppress any non-substantive images extracted from email documents (e.g., logos and icons) prior to production.

**h.      Color**

For files not produced in Native Format, if the original contains color, the producing party may produce black and white image(s) if doing so is more efficient, unless doing so will impair the readability of the files.  At the request of the requesting party, the producing party will produce color image(s) for specific documents.

**i.      Bates Numbering**

**1.**      Document Images: Each page of a produced Document shall have a unique identifier ("Bates Number") electronically "burned" onto the image in a location and

manner that does not conceal or interfere with any of the information or substance of the original document. Bates Numbers shall be unique across all production, shall maintain a constant length (0-padded) across the entire production, shall not contain any special characters or embedded spaces, and shall be sequential within each given document. Any confidentiality legend shall similarly be "burned" onto the document's image, also in a location and manner that does not conceal or interfere with any of the information or substance of the original document. Redacted documents will be so identified by electronically "burning" the word "REDACTED" onto each document's image in the place where the redactions are made. This legend shall not otherwise conceal or interfere with any of the information or substance of the original document that is not being redacted.

2. Native Format Documents: Documents produced in Native Format shall be produced with a placeholder TIFF image. Each TIFF placeholder will contain the Bates Number and confidentiality designation, if any. The Native Format Documents shall not be scrubbed and shall therefore include all metadata and embedded data from the original file.

3. Audio and video files: Audio and video files in any form, including but not limited to VCR, DVD, Blu-ray, and including any such files as may be contained in any other produced file or document (e.g., as an attachment to an email) shall be produced in Native Format, with the source file path, metadata, attachment, and other relevant identifying information given as set forth by this ESI Protocol.

4. Technology Exception: To the extent a document is responsive and not privileged but cannot reasonably be converted into a TIFF format, the document shall be presented in Native Format with a placeholder TIFF image. It shall also be produced with all extracted text and applicable metadata fields.

**j.      Production Media**

Documents shall be produced by FTP site or on CD-ROM, DVD, external hard drive (with standard PC-compatible interface, such as a USB, or "flash," drive), or such other readily

accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each item of Production Media shall include (1) text referencing that it was produced in the Litigation, and (2) the Bates range contained on such Production Media item.

### k. Attachments

E-mail attachments and embedded files or links must be mapped to their parent by the Document or Production number. If attachments and embedded files are combined with their parent documents, "BeginDoc" and "EndDoc" fields listing the unique beginning and ending number for each document and "BeginAttach" and "EndAttach" fields listing the begin and end of the entire document family must be included.

### l. Compressed Files

Compression file types (i.e., .cab, .gz, .tar, .z, .zip) shall be decompressed in a reiterative manner to ensure that a .zip within a .zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

### m. Production Problems

Documents that present imaging or format production problems shall be promptly identified and disclosed to the requesting party; the parties shall then meet and confer in an attempt to resolve the problems.

### n. Hard Copy Documents

1.   Hard Copy Documents shall be scanned and produced in the manner in which they are kept in the ordinary course of business. For Hard Copy Documents that are stored in file folders or other containers that have labels, tabs, or other identifying information, all labels and all sides of such file folders and tabs shall be scanned and produced.  In the case of an organized compilation of separate Hard Copy Documents—for example, a binder containing several separate Hard Copy Documents behind numbered tabs—the document behind each tab shall be scanned separately but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. Hard Copy Documents shall

be unitized at the lowest possible level and attachment information preserved.  For example, if a folder contains two Hard Copy Documents, the folder and each document will constitute a separate document but they will have the same attachment start and end.

      **2.**    The following information shall be produced with the Hard Copy Documents:

- Beginning Document Bates Number;
- Ending Document Bates Number;
- Attachment Beginning Bates Number;
- Attachment Ending Bates Number;
- Custodian or source;
- Page Count;
- Redaction (Y/N); and
- OCR Text File.

    **o.**      **Privilege and Privilege Logs**

      i.    The Parties agree that the following privileged communications or documents need not be included in a privilege log: (a) work product of outside legal counsel; (b) any internal communications by a party's outside law firm; and (c) communications with the outside law firm that postdate the filing of the complaint.

      ii.    If only part of a document contains privileged information, the responding party shall redact only the allegedly privileged information and produce the remainder of the document or ESI.

      iii.    Within fourteen (14) days of each production of ESI, the producing party shall provide a privilege log in excel format containing the following information for each document withheld from production in whole or in part on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege:

1.   DOCID (substitute BEGBATES and ENDBATES if the document was produced);

2.   FAMILYID (substitute BEGATTACH and ENDATTACH if the document was produced);

3.   CUSTODIAN;

4.   FROM;

5.   TO;

6.   CC;

7.   BCC;

8.   SUBJECT;

9.   DATESENT;

10. DATERCVD;

11. DATECREATED;

12. FILENAME;

13. AUTHOR;

14. FINGERPRINT;

15. FILEEXT;

16. PRIV_CLAIM (E.G., ATTORNEY-CLIENT, WORK PRODUCT);

17. A description of the document, including the factual basis sufficient to support the claim that the document is privileged and/or protected; and, where not apparent, the relationship of the author, addressee, and any other recipient to each other

18. An indication of whether the document has been withheld.

iv.      Attorneys or their staff must be identified on the log with an asterisk or similar notation.

**p.**      **Exception.**  The Parties anticipate that the production from Plaintiffs will

not be of such quantity as to make it economical or efficient to require Plaintiffs to produce documents in the manner dictated by this Protocol. Accordingly, the Parties agree that Plaintiffs may produce documents in PDF format, provided Plaintiffs otherwise comply with the Bates-numbering requirements of this Protocol. In the event Plaintiffs' production reaches such quantity as to make single-page TIFF format, with accompanying .dat files, economical, Defendant may make a reasonable request Plaintiff conduct some or all of his production in that manner.  If the Parties cannot reach an agreement on which portion(s) of Plaintiffs' production should be produced in accordance with the full dictates of this Protocol, they shall meet and confer, and, if necessary, present the issue to the Court for resolution.

## VIII.   MISCELLANEOUS

a.      Any procedure set forth herein may be altered by agreement of the parties and confirmed in writing, where such alteration is deemed appropriate to facilitate the timely and economical exchange of documents or ESI.

b.      If the forms of production allowed by this protocol present an undue burden or cost for a producing party, the parties shall meet and confer as soon as practicable to agree on a reasonable, alternative form of production.  Any party may file a motion to seek individual relief from this protocol.

DATED:      ___March 11, 2022___

*Jacqueline Scott Corley*
_____
Hon. Jacqueline Scott Corley

[PROPOSED] ESI AND DOCUMENT PRODUCTION PROTOCOL
Case No. 3:20-cv-01693-JSC

1

Respectfully submitted: March 10, 2022

2

/s/ Barry Goheen                                        /s/ Brian E. Johnson

3

4        Diem N. Kaelber, Esq. [SBN# 329317]        Brian E. Johnson (*pro hac vice*)
         Barry Goheen (*pro hac vice*)              Victoria S. Nugent (*pro hac vice*)
5        **FisherBroyles, LLP**                      **COHEN MILSTEIN SELLERS & TOLL PLLC**
         Mail: 21081 Canyon View Drive              1100 New York Ave. NW Fifth Floor
6        Saratoga, CA 95070                         Washington, DC 20005
         Tel.: (408) 898-3170                       Telephone: (202) 408-4600
7        Facsimile: (866) 414-5083                  Fax: (202) 408-4699
         Email: diem.kaelber@fisherbroyles.com      vnugent@cohenmilstein.com
8        Email: barry.goheen@fisherbroyles.com      bejohnson@cohenmilstein.com

9

10       *Counsel for Defendants*                   David Stein
                                                    Kyla J. Gibboney
11                                                  Iudis Sominskaia
                                                    **GIBBS LAW GROUP LLP**
12                                                  505 14th Street, Suite 1110
                                                    Oakland, CA 94612-1406
13                                                  Telephone: (510) 350-9700
                                                    Facsimile: (510) 350-9701
14                                                  ds@classlawgroup.com
                                                    kjg@classlawgroup.com
15                                                  ids@classlawgroup.com

16

17                                                  Bryce Bell (*pro hac vice*)
                                                    Mark W. Schmitz (*pro hac vice*)
18                                                  Andrew R. Taylor (*pro hac vice*)
                                                    **BELL LAW, LLC**
19                                                  2600 Grand Blvd., Suite 580
                                                    Kansas City, MO 64108
20                                                  Telephone: 816-886-8206
                                                    Facsimile: 816-817-8500
21                                                  bryce@belllawkc.com
                                                    ms@belllawkc.com
22                                                  at@belllawkc.com

23

24                                                  *Counsel for Plaintiffs*

25

26

27

28

---

16

[PROPOSED] ESI AND DOCUMENT PRODUCTION PROTOCOL
Case No. 3:20-cv-01693-JSC