UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH BELYEA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GREENSKY, INC., et al.,<br><br>Defendants. | Case No. 20-cv-01693-JSC<br><br>**ORDER REGARDING MOTION TO SET ASIDE JUDGMENT**<br><br>Re: Dkt. No. 176 |

Elizabeth Belyea ("Belyea") moves to set aside the entry of partial judgment against her under Federal Rule of Civil Procedure 60(b)(6). (Dkt. No. 176.) Defendants (collectively, "GreenSky") oppose. Having carefully reviewed the parties' briefing and having had the benefit of oral argument on September 15, 2022, the Court DENIES Belyea's motion.

## BACKGROUND

Belyea and several other plaintiffs brought this case against GreenSky arising out of loans for home improvements. The relevant arbitration agreement delegates all claims including "the validity, enforceability or scope of this Arbitration Provision or the Agreement" to the arbitrator. (Dkt. No. 5-1 at 10 ¶ 25.) GreenSky moved to compel arbitration against Belyea. (Dkt. No. 134.) Plaintiffs opposed. The Court found a trial would be necessary to determine whether the parties formed an agreement to arbitrate. (Dkt. No. 148.) Rather than conduct a trial, Belyea and GreenSky stipulated to certain facts regarding contract formation. (Dkt. No. 156.) This Court then compelled Belyea and Greensky to arbitration and dismissed her claims without prejudice. (Dkt. No. 159.)

Because a different plaintiff's claims are still pending in this Court, Belyea and two co-plaintiffs requested that the Court enter separate judgment on their claims. The Court entered

partial judgment in favor of GreenSky as to those plaintiffs' claims. (Dkt. No. 163.) Belyea's co-plaintiff appealed that final order. *See Ferguson v. GreenSky, Inc.*, 22-15780, 22-15817 (9th Cir.).

Belyea chose to proceed with arbitration. The arbitration agreement required that the party initiating arbitration select either JAMS or AAA as an arbitration provider. (Dkt. No. 176-2 at 52.) Belyea filed a demand for arbitration with JAMS. (*Id.* at 29.) Before JAMS, Belyea argued two questions related to the validity and scope of the arbitration agreement. (*Id.* at 5.) GreenSky responded on June 22, 2022. (*Id.* at 27.) JAMS then issued a bill to GreenSky for $1500.00 on June 24, 2022, with "payment due upon receipt." (*Id.* at 29.) On July 15, 2022, JAMS again requested payment. (*Id.* at 35.)

Because GreenSky had not yet paid the JAMS bill as of August 3, 2022, Belyea moved to set aside this Court's final judgment on that date. (Dkt. No. 176.) GreenSky paid JAMS the following day. (Dkt. No. 178 at 3.)

**DISCUSSION**

Belyea moves to set aside the final judgment against her under Federal Rule of Civil Procedure 60(b)(6). Rule 60(b)(6) allows the Court to "relieve a party . . . from a final judgment, order, or proceeding" for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice" and is used "only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). "A movant seeking relief under Rule 60(b)(6) must show extraordinary circumstances justifying the reopening of a final judgment." *Henson v. Fidelity Nat'l Fin., Inc.*, 943 F.3d 434, 443–44 (9th Cir. 2019) (internal quotation marks omitted).

Belyea alleges GreenSky materially breached the parties' delegation clause in the arbitration agreement when it failed to pay the JAMS invoice in accordance with California Code of Civil Procedure ("CCP") § 1281.97. CCP § 1281.97 requires certain parties to pay arbitration fees within 30-days of the invoice date. Failure to comply constitutes "material breach" of the agreement and "waiver" of the right to enforce the agreement. *Id.* Because GreenSky failed pay within 30-days of the JAMS invoice, Belyea requests relief from the Court's earlier judgment.

2

## I. Threshold Questions

The Court must resolve two threshold questions before considering Plaintiff's request for relief under Rule 60(b)(6). First, GreenSky argues the Court lacks jurisdiction to consider Plaintiff's post-judgment motion. Second, GreenSky contends that the arbitration agreement delegates this dispute to the arbitrator. The Court disagrees on both counts.

### A. Jurisdiction After Entry of Judgment

GreenSky invokes what it calls a "general rule of divestiture" after final judgment. (Dkt. No. 178 at 4.) According to GreenSky, this Court's order entering final judgment against Belyea divested it of jurisdiction "over anything related to [Belyea's] claims, which includes her present motion." (*Id.*)

GreenSky is incorrect. The very purpose of Federal Rule of Civil Procedure 60(b) is to allow district courts to consider whether to set aside earlier judgments. The principle that a court loses jurisdiction over an "independent action" to compel arbitration after compelling arbitration does not apply here. *See Matter of Arb. Between Chung and Pres. Enterprises Corp.*, 943 F.2d 225, 228 (2d Cir. 1991) (describing jurisdiction over "independent" vs. "embedded" orders to compel arbitration). This matter is not an independent action where "plaintiff seeks only an order compelling or staying arbitration." (Dkt. No. 178 at 4 (quoting *Philadelphia Elec. Co. v. Nuclear Elec. Ins. Ltd.*, 845 F. Supp. 1026, 1028 (S.D.N.Y. 1994).) Rather, this matter is an action for other relief (an "embedded" action) in which a defendant moved to compel arbitration under the terms of the agreement. *See Chung*, 943 F.2d at 228. GreenSky cites no cases in which a court held it could not consider whether to reopen a matter under these circumstances. Thus, because Rule 60(b) explicitly allows a court to revisit earlier decisions, the Court has jurisdiction here.

### B. Delegation

Under CCP § 1281.97, a drafting party's failure to pay required arbitration fees within 30-days of the invoice due date constitutes "material breach" of the arbitration agreement, "default" of arbitration, and "waive[r]" of the right to compel arbitration under California law.

The parties' arbitration agreement delegates all claims including "the validity, enforceability or scope of this Arbitration Provision or the Agreement" to the arbitrator. (Dkt. No.

3

5-1 at 10 ¶ 25.) GreenSky argues that this "delegation clause" requires the arbitrator to decide whether GreenSky complied with CCP § 1281.97. The Court disagrees.

### 1. Delegation of Waiver and Breach

When enforcing arbitration agreements, certain issues must presumptively be decided in a court. Others are better suited to the arbitration forum. In *Howsam v. Dean Witter Reynolds, Inc.*, the Supreme Court distinguished between two categories of gateway issues on motions to compel arbitration, each of which has a different presumption as to whether a court or an arbitrator should decide. 537 U.S. 79, 83 (2002); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120–21 (9th Cir. 2008) (describing two categories).

The first category of gateway issues are "question[s] of arbitrability"—that is, "whether the parties have submitted a particular dispute to arbitration." *Howsam*, 537 U.S. at 83. This category includes issues that the parties would have expected a court to decide such as "whether the parties are bound by a given arbitration clause" or whether "an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* at 84. These disputes are "for judicial determination unless the parties *clearly and unmistakably provide otherwise*." *Id.* at 83 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (emphasis added).

The second category—"procedural" issues—are "presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* at 84. In *Howsam*, for example, the Court held that compliance with the arbitral forum's statute of limitations was a procedural question that the parties would have expected the arbitrator to decide. *Id.* Accordingly, the arbitrator should presumptively decide such disputes. *Id.* at 85.

#### a. Decision-maker Presumption

CCP § 1287.97 compliance sits uncomfortably between a "question of arbitrability" and a "procedural" question, as described in *Howsam*, 537 U.S. at 83–84. *Howsam* presumes the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, (1983)). But the Ninth Circuit has subsequently made it clear that "waiver by litigation conduct" and "breach" are part of the first category of gateway issues. *Martin v. Yasuda*, 829 F.3d 1118, 1123

4

(9th Cir. 2016); *see also Cox*, 533 F.3d at 1121. In *Cox*, the employee contended "he was not bound" by an arbitration agreement because his employer breached or waived the agreement when it refused an earlier request to arbitrate. *Cox*, 533 F.3d at 1118–21. The Ninth Circuit held a court, not the arbitrator, could decide the matter because the "reasoning of *Howsam* is simply inapplicable to resolution of the first gateway issue: whether the parties are *bound* by the arbitration clause." *Id.* (emphasis in original). Likewise in *Yasuda*, the Ninth Circuit noted that "the reference to waiver in *Howsam*" was limited to "whether the party waived arbitration by failing to comply with the arbitration forum's specific rules—a question that the Supreme Court logically concluded was better answered by the forum that wrote the rules." *Yasuda*, 829 F.3d at 1123, n.3. By contrast, a court is better suited to resolve issues of litigation conduct in front of that court. *Id.*

Neither paradigm fits here. CCP § 1287.97 compliance differs from the circumstances in *Yasuda* because the crux of the dispute is conduct before the arbitrator—i.e. untimely payment—not conduct in the trial court. But CCP § 1287.97 compliance does not fit squarely within *Howsam* either. In *Howsam*, the arbitration provider's specific rules were at issue, but here, the California legislature wrote CCP § 1287.97. And here, unlike in *Howsam*, an arbitrator is not better positioned to determine the dispute because if a defendant refuses to pay the arbitrator's fees, no arbitration will ever take place.

The only workable solution is that "waiver" and "breach" for failure to pay the arbitrator under CCP § 1281.97 are presumptively disputes "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83. This interpretation comports with common sense. While payment timing seems "procedural," it would defy logic to require that an arbitrator must presumptively resolve issues of waiver and breach under § 1281.97 where the dispute's substance is the failure to pay the arbitrator to decide the case. If a party continued to withhold payment, the arbitrator would never resolve the dispute.

### b. Application

"Gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide [for it].'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

5

(quoting *AT&T Techs.*, 475 U.S. at 649). "Such 'clear and unmistakable evidence of [an] agreement to arbitrate arbitrability might include a course of conduct demonstrating assent or an express agreement to do so'—*i.e.*, a delegation clause." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999–1000 (9th Cir. 2021) (citing *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (cleaned up)). Here, the parties' arbitration agreement delegates disputes over "the validity, enforceability or scope of this Arbitration Provision or the Agreement" to the arbitrator. (Dkt. No. 5-1 at 10 ¶ 25.) Belyea argues that (1) this clause fails to clearly delegate disputes regarding CCP § 1281.97 compliance and (2) the clause itself is unenforceable because GreenSky waived its right to enforce just that provision under CCP § 1281.97. The latter argument controls here.

If the Court assumes—without deciding—that the delegation clause clearly and unmistakably delegates this dispute, the Court may still analyze the merits of Belyea's challenge to that delegation clause under 9 U.S.C. § 2. Critically, Belyea challenges only the enforceability *of the delegation clause itself*, not the contract generally. *See Lim*, 8 F.4th at 1000 (considering unconscionability challenge to clause that "clearly and unmistakably" delegated arbitrability questions). A court, not an arbitrator, must address that question. *See Rent-A-Ctr., W., Inc., v. Jackson,* 561 U.S. 63, 71 (2010).

FAA Section 2 provides that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under § 4, if the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

A delegation clause is a "written provision" to "settle by arbitration a controversy." *See Rent-A-Ctr.*, 561 U.S. at 70. "Thus, a delegation clause is essentially a mini-arbitration agreement, nested within a larger one." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) "[T]he FAA operates on this additional arbitration agreement just as it does on any other." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 71). "[I]f a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge *before*

6

ordering compliance with that agreement." *Rent-A-Ctr.*, 561 U.S. at 71.[1] But a challenge to the entire agreement rather than the specific arbitration provision does not trigger judicial determination. *Id.* Put differently, "a party seeking to invalidate a [delegation] provision must challenge it specifically rather than the agreement it is part of generally." *Mesachi v. Postmates*, 3:20-CV-07028-WHO, 2021 WL 736270, at *4 (N.D. Cal. Jan. 8, 2021).

Belyea's challenge goes solely to the "enforceability" of a specific written provision—the delegation clause—under state contract law. Before JAMS, Belyea argued two questions related to arbitrability. (Dkt. No. 176-2 at 5.) Now, Belyea specifically argues that GreenSky cannot enforce *delegation* of those arbitrability questions to an arbitrator because GreenSky waived the right to enforce the delegation clause under CCP § 1281.97. (Dkt. No. 176 at 8 ("Greensky has materially breached the delegation clause and waived its rights to have the issues in the Demand heard by an arbitrator.") Thus, Belyea's challenge goes solely to the delegation clause's enforceability, not to the validity, enforceability, and scope of the entire contract.

A hypothetical helps illustrate the distinction. Were Belyea to prevail on this motion, the Court would then decide the questions that were delegated to the arbitrator, whose authority was then waived under CCP § 1281.97—namely (1) whether Belyea's substantive claims fell within the scope of the arbitration agreement, and (2) whether the arbitration agreement itself was enforceable under the Credit Services Act of 1984. (See Dkt. No. 176-2 at 5–8 ¶¶ 20–53.) If the Court then found that the arbitration agreement is enforceable *and* Belyea's claims are within the scope of the arbitration agreement, the Court would—again—compel arbitration under the contract to resolve the underlying dispute. The arbitration agreement could stand, even if the severable delegation clause challenged here falls.

GreenSky's contrary caselaw is unpersuasive. In *Mesachi v. Postmates*, for example, the

---

[1] *Rent-A-Center* addressed only challenges to the "validity" under § 2. *See Rent-A-Ctr.*, 561 U.S. at 70 n.2. There is no reason why its holding—that a court must address a § 2 challenge directed specifically to the delegation clause—should not apply to questions of "enforceability" under § 2 as well. *See Kindred*, 137 S. Ct. at 1428 (discussing equal-treatment principle in 9 U.S.C. § 2 and finding that a "rule selectively finding arbitration contracts invalid because improperly formed fares no better under the Act than a rule selectively refusing to enforce those agreements once properly made.").

plaintiff argued that the § 1281.97(a) violation "would invalidate the entire agreement to arbitrate including the delegation clause." *See* 3:20-CV-07028-WHO, 2021 WL 736270, at *5 (N.D. Cal. Jan. 8, 2021). Here, by contrast, Belyea challenges only the delegation clause. GreenSky's other cited authority, *Farmer v. Airbnb*, did not consider a challenge specifically to the delegation clause. *See* No. 20-CV-07842-JST, 2021 WL 4942675, at *1 (N.D. Cal. June 1, 2021).

Belyea's challenge goes *only* to waiver and breach of the delegation clause—not the enforceability of the entire arbitration agreement. Under the FAA, "the federal court *must* consider the challenge before ordering compliance with that agreement." *Rent-A-Ctr.*, 561 U.S. at 71 (emphasis added).

## II. The Merits

GreenSky argues that relief under Rule 60(b)(6) is unwarranted because the Federal Arbitration Act ("FAA") preempts CCP § 1281.97. The Court agrees. Because the FAA preempts Belyea's invocation of CCP § 1281.97 and traditional principles of waiver do not apply here, Belyea's motion for relief is denied.

### A. FAA Preemption

#### 1. CCP § 1281.97

Section 1281.97 places requirements on the arbitration agreement's "drafting party"—the company or business that included a pre-dispute arbitration provision in the contract. *See* CCP § 1280 (defining drafting party). Specifically, CCP § 1281.97(a)(1) provides that:

> In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2.

Section § 1281.97(a)(2) requires that

> After an employee or consumer meets the filing requirements necessary to initiate an arbitration, the arbitration provider shall immediately provide an invoice for any fees and costs required before the arbitration can proceed to all of the parties to the arbitration. The invoice shall be provided in its entirety, shall state the full amount

8

> owed and the date that payment is due, and shall be sent to all parties by the same means on the same day. To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt.

If the drafting party fails to comply with § 1281.97(a), the employee may withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction. *Id*. § 1281.97(b)(1). "If the employee or consumer proceeds with an action in a court of appropriate jurisdiction, the court shall impose sanctions on the drafting party in accordance with Section 1281.99" *Id*. § 1281.97(d). Specifically, "[t]he court shall impose a monetary sanction against a drafting party," and "may order" additional sanctions, including evidentiary sanctions, default on the underlying claims, and contempt of court. *Id.* § 1281.99.

### 2.     The FAA Preempts CCP § 1281.97

"The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). Nonetheless, the FAA may preempt a state law under two circumstances. First, under the "equal-treatment" principle, a court may invalidate or refuse to enforce an arbitration agreement based on "generally applicable contract defenses" like "fraud or unconscionability," but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1917 (2022) (quoting *Kindred Nursing Centers L. P.* v. *Clark*, 137 S. Ct. 1421, 1426 (2017)). Second, under "obstacle preemption," a state law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).

The Ninth Circuit has not yet decided whether the FAA preempts CCP Section 1281.97. And every court considering the issue to date has found that the FAA does not preempt CCP Section 1281.97. *See Espinoza v. Superior Ct. of Los Angeles Cnty.,* 83 Cal. App. 5th 761 (2022)[2]; *Gallo v. Wood Ranch USA, Inc.*, 81 Cal. App. 5th 621 (2022); *Agerkop v. Sisyphian LLC*,

---

[2] *Espinoza v. Superior Ct. of Los Angeles Cnty.,* 83 Cal. App. 5th 761 (2022) was decided after

9

2021 WL 1940456, at *4–5 (C.D. Cal. Apr. 13, 2021); *Postmates Inc. v. 10,356 Individuals*, 2021 WL 540155, at *8–10 (C.D. Cal. Jan. 19, 2021).

Respectfully, the Court disagrees. Because CCP § 1281.97 violates the "equal-treatment" principle under the FAA, the FAA preempts CCP § 1281.97.

### a. The Equal-Treatment Principle

"The FAA was enacted in response to judicial hostility to arbitration. Section 2 of the statute makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Viking River Cruises,* 142 S. Ct. at 1917 (quoting 9 U.S.C. § 2). As interpreted, that statute contains two clauses: An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation *or non-enforcement* of arbitration clauses on grounds applicable to "any contract." *Concepcion*, 563 U.S. at 339–340; *see also Kindred*, 137 S. Ct. at 1428 ("A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the Act than a rule selectively refusing to enforce those agreements once properly made.")[3]

These clauses jointly establish "an equal-treatment principle": A court may invalidate or refuse to enforce an arbitration agreement based on "generally applicable contract defenses" like "fraud or unconscionability," but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Viking River Cruises,* 142 S.

---

this Court heard oral argument and took the matter under submission. Plaintiff made a motion to file a statement of a recent decision. (Dkt. No. 182.) That motion is GRANTED.

[3] Recent cases—such as *Concepcion*, *Kindred*, and *Viking River Cruises*—describe the equal treatment principle in the context of "validity" rules: A court may *invalidate* an arbitration agreement based on "generally applicable contract defenses" like fraud or unconscionability, but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Viking River Cruises,* 142 S. Ct. at 1917 (quoting *Kindred*, 137 S. Ct. at 1426). However, the text of the FAA and this quoted language in *Kindred* suggest the equal-treatment principle is not limited to questions of *validity* under FAA § 2. *Kindred*, 137 S. Ct. at 142. Rather, the equal treatment principle applies to questions of *enforceability* and *revocability* as well.

10

1   Ct. at 1917 (quoting *Kindred*, 137 S. Ct. at 1426). Thus, the FAA preempts rules "too tailor-made
2   to arbitration agreements—subjecting them, by virtue of their defining trait, to uncommon
3   barriers." *Kindred*, 137 S. Ct. at 1427.

### b. Application

CCP § 1281.97 violates the equal-treatment principle under 9 U.S.C. § 2 because it makes arbitration provisions unenforceable on arbitration-specific grounds. Indeed, as Plaintiff notes in her opening brief, "[t]he 30-day requirement, under sections 1281.97 and 1281.98, is a substantive modification of California contract law with respect to waiver and material breach." (Dkt. No. 176 at 10.) Waiver and breach are, of course, background principles of contract law. *See Cinel v. Barna*, 206 Cal. App. 4th 1383, 1389 (2012) ("Contractual rights are subject to waiver."); *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 280 (1985) (stating "the requirement of performance" of a contractual obligation "may be excused by the other party's breach" or default). And failure to pay an arbitrator or refusal to participate in arbitration can constitute waiver or breach of an agreement to arbitrate. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010–13 (9th Cir. 2005) (finding waiver and breach for refusal to pay arbitration fees and participate in arbitration); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) (finding arbitration agreement unenforceable for failure to pay arbitration fees after arbitrator granted a motion for default).

But Plaintiff cites no case where failure to comply with a strict 30-day payment window constitutes breach or waiver, absent a "time is of the essence" clause in a contract.[4] Rather, waiver or breach for failure to pay fees are traditionally fact-specific inquiries rather than bright-line rules. *See Brown*, 430 F.3d at 1010–13. And neither waiver nor breach would apply under the factual circumstances alleged here. *See* Part II.B *infra*. Thus, CCP § 1281.97's "strict" 30-day defense to enforceability is arbitration specific. *Espinoza*, 83 Cal. App. 5th 761 at *5.

---

[4] *Compare Espinoza*, 83 Cal. App. 5th 761 at *5 ("Section 1281.97 Contains No Exceptions for Substantial Compliance, Unintentional Nonpayment, or Absence of Prejudice") *with Leiter v. Handelsman*, 125 Cal. App. 2d 243, 250 (1954) ("The general rule is that time is not of the essence unless it has been made so by the express terms of a contract or is necessarily so from the very nature of the contract"); *see also McLellan v. Fitbit, Inc.*, No. 16-cv-00036-JD, 2018 WL 3549042, at *5 (N.D. Cal. July 24, 2018) (finding "a slow payment of filing fees, as opposed to no payment at all," was insufficient "to foreclose arbitration.")

11

Plaintiff argues the "FAA does not prohibit state laws that make arbitration *more effective* by providing targeted remedies *in aid* of arbitration." (Dkt. No. 179 at 16) (emphasis in original); *see also Postmates Inc. v. 10,356 Individuals*, 2021 WL 540155, at *7 (C.D. Cal. Jan. 19, 2021); *Gallo*, 81 Cal. App. 5th at 641 ("sections 1281.97 and 1281.99 do not commit the additional—and, as noted above, *necessary for preemption*—sin of outright prohibiting arbitration or more subtly discouraging arbitration"). This argument is premised upon a distinction without a difference. CCP § 1281.97 is a stick—failure to pay within 30-days constitutes material breach of the arbitration agreement and waiver of the right to enforce the contract—not a carrot to incentivize arbitration. While there is a benefit for paying on time, that benefit is simply not being hit by the stick—*i.e.,* losing a contractually binding right to arbitrate disputes. CCP § 1281.97 only aids arbitration because failure to comply makes the arbitration agreement unenforceable. That is exactly what 9 U.S.C. § 2 prohibits unless all contracts would be unenforceable under the same circumstances. *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (describing the equal-treatment principle in the context of waiver). In other words, the remedy's nature matters, not whether that remedy promotes or inhibits arbitration as a practical matter. An arbitration-specific rule incentivizing arbitration by threatening invalidity or unenforceability fairs no better under 9 U.S.C. § 2 than a rule undermining arbitration via the same means. *See id.* ("[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, *arbitration-preferring* procedural rules.") (emphasis added).

Enforcement discretion also makes no difference. In *Postmates*, *Gallo*, and *Espinoza*, the courts emphasized that CCP § 1281.97 does not "automatically render arbitration agreements unenforceable—it simply gives non-drafting parties the option to choose to litigate their claim in a court of appropriate jurisdiction or compel arbitration." *Postmates,* 2021 WL 540155, at *8; *see also Espinoza*, 83 Cal. App. 5th 761 at *10; *Gallo*, 81 Cal. App. 5th at 642. But it is not clear why that matters. Any non-breaching party can choose to continue to enforce a contract against a party in breach. What matters under CCP § 1281.97 is that the drafting party may no longer enforce the agreement if they miss a 30-day payment deadline—which, as shown above, is a condition unique to arbitration agreements in California. A rule affects the "enforceability" of a contract when it

12

determines that one side may enforce the contract, but the other may not.

Finally, that CCP § 1281.97 is a "procedural" rule makes no difference to the equal-treatment inquiry. *See Morgan*, 142 S. Ct. at 1713. In *Gallo*, the California Court of Appeal described § 1281.97 as a procedural rule and emphasized that "there is no federal policy favoring arbitration under a certain set of procedural rules." *See id.* at 639, 641–642 (quoting *Volt,* 489 U.S. at 476). The *Gallo* court described the consequences if such procedural rules were disallowed:

> Section 1281.97 is one of several statutes that are part of the [California Arbitration Act], which defines the very procedures by which arbitration is to be conducted under California law. These statutes, by definition, set up different procedures from those governing litigation in the California courts. In any given case (and thus in *every* single case), one of the parties to an arbitration will be able to show that it was harmed by being subject to those arbitration-specific procedures . . . .. If that showing were enough to justify preemption under the FAA, then preemption would be found in every case and the CAA would cease to exist.

*Id*. at 644–45. On this reasoning, the *Gallo* court found CCP § 1281.97 not preempted because it "define[s] the procedures governing the date by which the party who drafted an agreement to arbitrate against an employee or consumer must pay the initial fees and costs to arbitrate, and specif[ies] the *consequences* of untimely payment." *Id.* at 641. (emphasis in original).

But—as with the incentivization argument—this "procedural" argument misses the mark precisely because of CCP § 1281.97's "consequences." *Id.* Under the equal-treatment principle, preemption does not occur because an arbitration specific statute "harmed" a party. *Id.* at 644. Preemption occurs when an arbitration-specific rule invalidates, revokes, or makes unenforceable an arbitration agreement upon grounds that do not exist "at law or in equity" for the "revocation of any contract." 9 U.S.C. § 2. As discussed above, CCP § 1281.97 bears directly on enforceability. Many other "procedural" rules do not.

A specific procedural rule referenced in *Gallo* and *Espinoza* illustrates the distinction. *See id.* at 640; *Espinoza*, 83 Cal. App. 5th 761, at *10. Those courts cite CCP § 1286.2 as a procedural rule not preempted under the FAA's equal-treatment principle. *Id.* But CCP § 1286.2 merely limits judicial review of the merits of arbitration decisions, it does not render any agreement to

arbitrate unenforceable or invalid.[5]  It is true that CCP § 1286.2's consequences can harm a party. But those consequences have no bearing on the agreements' "enforceability" or "validity."  By contrast, CCP § 1281.97 explicitly redefines "material breach" and "waiver" in its text.

In sum, while "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt*, 489 U.S. at 476.[6]  "If an ordinary procedural rule— whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 142 S. Ct. at 1713.  Because CCP § 1281.97 "counsel[s] against enforcement of an arbitration contract," the question is whether § 1281.97 is an "ordinary procedural rule" applicable to all contracts.  *Id.*  As explained above, it is not.

* * *

To summarize, there is an inherent contradiction in Belyea's position.  Belyea avoids the delegation clause by arguing that a challenge to the enforceability of the delegation clause itself is permissible under 9 U.S.C. § 2.  The Court agrees.  But at the preemption stage, Belyea shirks the language of 9 U.S.C. § 2.  Belyea cannot both challenge the enforceability of the delegation clause under CCP § 1281.97 and claim that CCP § 1281.97 does not affect the enforceability of arbitration agreements.  Instead, Belyea attempts to argue that CCP § 1281.97 encourages

---

[5] *Gallo* also cites CCP § 1281.2 as an example of a procedural rule that is not preempted under the FAA. "Section 1281.2, a provision of the CAA that is arbitration-specific, empowers a trial court to stay arbitration or even altogether deny a petition to compel arbitration if one of the parties to the arbitration agreement is "also a party to a pending" judicial action with a third party that involves the same transaction as the nascent arbitration and that could result in a conflicting ruling." *Gallo*, 81 Cal. App. 5th at 639.  The United States Supreme Court blessed the provision allowing a "stay" to avoid contradictory judgments.  *Volt,* 489 U.S. at 476 n.5.  But the decision in *Volt* made no mention of § 1281.2's provision allowing non-enforcement altogether.

[6] There is one additional distinction between this case and the procedural rules discussion in *Volt*, *Gallo*, and *Espinoza*.  In each of those cases, the parties agreed to incorporate the CAA into the arbitration agreement.  *See Volt*, 489 U.S. at 472; *Espinoza*, 83 Cal. App. 5th 761 at *12; *Gallo*, 81 Cal. App. 5th at 642.  *Volt* emphasized that such incorporation agreements should be "vigorously enforce[d]" according to their terms.  *Volt*, 489 U.S. at 479.  Here, the parties agreed that the FAA would govern the arbitration agreement, not the CAA.  (Dkt. No. 176-2 at 72 ¶ 25.)

14

arbitration. But how? It does so by making arbitration agreements unenforceable.

Under 9 U.S.C. § 2, arbitration agreements are "enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." As discussed above, CCP § 1281.97 makes arbitration agreements unenforceable on grounds that exist in the arbitration context only. That violates the equal-footing principle inherent in 9 U.S.C. § 2. Because CCP § 1281.97 violates the equal-treatment principle under 9 U.S.C. § 2, the FAA preempts its application here.

### B.  General Principles of Waiver and Breach

Belyea also argues that GreenSky breached the agreement to arbitrate or waived its right to enforce the delegation clause under traditional principles of contract law. (Dkt. No. 176 at 12.) The Court disagrees.

#### 1.  Breach

A bedrock principle of California contract law is that the party "who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed." *Pry Corp. of Am. v. Leach,* 177 Cal.App.2d 632 (1960) (citing *Cameron v. Burnham,* 146 Cal. 580 (1905)). *See also Loral Corp. v. Moyes,* 174 Cal.App.3d 268 (1985) ("The requirement of performance may be excused by the other party's breach."). This is a contract rule of general application and is thus available to Belyea as a defense against an attempted enforcement of the arbitration agreement. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

Failure to pay arbitration fees in a timely manner or to participate in arbitration can constitute breach. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010–13 (9th Cir. 2005); *see also Eliasieh v. Legally Mine, LLC*, No. 18-CV-03622-JSC, 2020 WL 1929244, at *3 (N.D. Cal. Apr. 21, 2020) (collecting cases). However, in most cases finding material breach, a defendant either utterly refuses to participate in arbitration proceeding, *see Brown*, 430 F.3d at 1010–13, or an arbitration provider terminates the proceedings after sending several notices of unpaid fees. *See*, *e.g.*, *Sink, Inc.*, 352 F.3d at 1201 (finding arbitration agreement unenforceable for failure to pay arbitration fees after arbitrator granted a motion for default); *Eliasieh*, 2020 WL 1929244, at *3 (finding breach for failure to pay fees after AAA terminated arbitration); *Pre-Paid Legal Servs.,*

15

*Inc. v. Cahill*, 786 F.3d 1287, 1289 (10th Cir. 2015) (declining the enforcement of an arbitration agreement when AAA terminated its proceedings after sending several notices of unpaid fees). Absent a "time is of the essence" clause, slow payment—as opposed to no payment at all—is not usually sufficient to constitute breach under general principles of California contract law. *See McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 3549042, at *5 (N.D. Cal. July 24, 2018) (upholding arbitration agreement where "no more than a few weeks passed" before payment, and AAA "never suspended or terminated the proceedings).

The factual circumstances do not constitute breach here. The contract contains no "time is of the essence" clause. And, unlike in *Brown*, *Sink*, and *Eliasieh*, GreenSky paid the fees before the arbitration provider terminated the proceedings. Thus, while GreenSky's late payment may have been inefficient, it does not constitute a breach of the agreement to arbitrate.

### 2. Waiver

General principles of waiver are also inapposite here. Traditionally, "[a] party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1412 (9th Cir.1990). Recently, however, the Supreme Court found that prejudice is not necessary to find waiver of a right to arbitrate. *See Morgan*, 142 S. Ct. at 1713.

Assuming GreenSky's knowledge of its right to compel arbitration, GreenSky did not act so inconsistent with that right as to waive it. In *Brown v. Dillard's*, for example, the defendant refused to arbitrate altogether. *See* 430 F.3d at 1010–13. Here, by contrast, GreenSky participated in arbitration, filed a timely answer before JAMS, and paid its share of fees roughly 40 days post invoice. (Dkt. No. 176-2 at 27; Dkt. No. 178 at 3.) Under general principles of waiver, those acts are consistent with the right to arbitrate under the agreement. Nor is there any evidence in this record that GreenSky acted in bad faith as to the arbitration fees. *See McLellan*, No. 3:16-CV-00036-JD, 2018 WL 3549042, at *5 (finding no breach or waiver but assessing sanctions for tactical delay in arbitration fee payment).

### III.  Summary

"A movant seeking relief under Rule 60(b)(6) must show extraordinary circumstances justifying the reopening of a final judgment." *Henson v. Fidelity Nat'l Fin., Inc.*, 943 F.3d 434, 443–44 (9th Cir. 2019).  The Court may hear Belyea's challenge to the delegation clause.  But her arguments fail to meet the standard for relief under Rule 60(b)(6).  The Federal Arbitration Act, 9 U.S.C. § 2 preempts application of CCP § 1281.97 here.  And traditional principles of waiver do not apply under these circumstances.

### CONCLUSION

For the reasons stated above, Belyea's motion for relief under Rule 60(b)(6) is DENIED.

This Order disposes of Docket Nos. 176, 182.

**IT IS SO ORDERED.**

Dated: October 26, 2022

_____
JACQUELINE SCOTT CORLEY
United States District Judge