UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH BELYEA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREENSKY, INC., et al., <br><br> Defendants. | Case No. 3:20-cv-01693-JSC <br><br> **ORDER RE: MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** <br><br> Re: Dkt. No. 206 |

David Ferguson and Heidi Barnes allege GreenSky, Inc., GreenSky of Georgia, LLC, and GreenSky, LLC (collectively "GreenSky") violate California's consumer protection, lending, and credit services laws. (Dkt. No. 95.)[1] Now pending before the Court is Defendants' motion for partial judgment on the pleadings. (Dkt. No. 206.) After carefully considering the briefing, and with the benefit of oral argument on December 14, 2023, the Court GRANTS IN PART and DENIES IN PART GreenSky's motion to dismiss certain of Plaintiffs' claims.

**BACKGROUND**

**I.     SECOND AMENDED COMPLAINT ALLEGATIONS**

GreenSky is a "loan broker and sometimes-lender" that brokers loans for consumers "to pay for home improvement, home repair, and healthcare costs," then improperly charges consumers for those loans. (Dkt. No. 95 ¶ 2.) "Merchants in GreenSky's program"—"a group of over 17,000 contractors and other home improvement specialists" and "medical offices"— "connect their customers with GreenSky's bank partners using GreenSky's mobile app, which allows GreenSky to orchestrate the entire lending process, from application to funding." (*Id.* ¶¶

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

28-29.) GreenSky then "earns the bulk of its revenues by charging a 'merchant fee' on each loan, which is calculated as a percentage of the loan amount," with an average merchant fee equaling "7% of the total loan amount." (*Id.* ¶¶ 30, 43.) "GreenSky receives this compensation for the service of brokering the loans between consumer-borrowers and lenders." (*Id.* ¶ 40.) However, "the nature and amount of this fee is not disclosed to the consumer at any point in the lending process." (*Id.* ¶ 30.) Moreover, "[m]erchants pass on the cost of the merchant fees to consumer-borrowers through higher project costs," so "the cost of the merchant fees is ultimately borne by consumer-borrowers." (*Id.* ¶¶ 44-45.) Plaintiffs assert GreenSky also "contracts with its bank partners, via loan origination agreements to receive 'incentive payments.'" (*Id.* ¶ 46.) These "incentive payments" are "compensation for the service of brokering the loans between consumer-borrowers and lenders" and "entail a kick-back of interest-rate spreads to GreenSky." (*Id.* ¶¶ 46, 47.)

Plaintiffs allege four counts: (1) Violation of the Credit Services Act of 1984, Cal. Civ. Code § 1789.10, *et seq.*; (2) Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (3) Unlawful, Unfair, and Fraudulent Business Practices, Cal. Bus. & Prof. Code § 17200, *et seq.*; and (4) Unjust Enrichment/Quasi-contract.

## II.   PROCEDURAL HISTORY

In January 2020, Elizabeth Belyea filed this putative class action in the Superior Court for the County of San Francisco. (Dkt. No. 1-1 at 5.) GreenSky removed the action to this Court. (Dkt. No. 1.) GreenSky also filed a motion to compel arbitration. (Dkt. No. 5.) The Court denied that motion, finding GreenSky failed to prove by a preponderance of the evidence that Beylea agreed to arbitrate. (Dkt. No. 40.) Beylea filed an amended complaint, adding Heidi Barnes, Hazel Lodge, and David Ferguson as representative plaintiffs. (Dkt. No. 52.). After the Court partially granted Defendants' motion to dismiss, Plaintiffs filed the now-operative second amended complaint. (Dkt. No. 95.)

After additional briefing, the Court compelled arbitration as to Belyea, Lodge, and Ferguson. (Dkt. No. 159.) Barnes' claims remained pending, as she was not subject to the arbitration agreement. (Dkt. No. 163.) Belyea and Lodge dismissed their claims with prejudice.

1  (Dkt. Nos. 175, 199.)  Ferguson appealed.  (Dkt. No. 165.)  The Ninth Circuit reversed the Court's
2  order compelling arbitration as to Ferguson's claims.  (Dkt. No. 188.)  So, Barnes and Ferguson
3  are the only two remaining named Plaintiffs.
4  Now pending before the Court is Defendants' motion for judgment on the pleadings.  (Dkt.
5  No. 206.)

**DISCUSSION**

**I.   LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings."  A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts should apply the same standard.  *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Judgment on the pleadings is proper when "taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law."  *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007) (cleaned up).  The Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  A court need not, however, accept conclusory allegations as true.  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

**II.   THE CONSUMERS LEGAL REMEDIES ACT CLAIM**

The Consumers Legal Remedies Act (CLRA) prohibits "unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  The CLRA defines "goods" as "tangible chattels."  *Id.* § 1761(a).  It defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  *Id.* § 1761(b).  In *Fairbanks v. Superior Court*, the California Supreme

1  Court held "life insurance" is neither a good nor a service, and thus, "life insurance is not subject
2  to the protections of the Consumers Legal Remedies Act." 46 Cal. 4th 56, 60 (2009). The court
3  explained life insurance is not a "service" because "[a]n insurer's contractual obligation to pay
4  money under a life insurance policy is not work or labor, nor is it related to the sale or repair of
5  any tangible chattel." *Id.* at 61.

California courts, interpreting *Fairbanks*, have also held loans fall outside the purview of the CLRA. *See Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 40 (2015) ("A mortgage loan is not a 'good' because it is not a 'tangible chattel;' it is not a 'service' because it is not 'work, labor, or services . . . furnished in connection with the sale or repair of goods.'"). Further, a lender's provision of "ancillary services," such as advice about the terms of a loan or insurance, does not "convert a non-'service' into a 'service.'" *Id.*

Plaintiffs "take no issue with GreenSky's role in homeowners repaying their loan" (Dkt. No. 209 at 15), but assert GreenSky also acts as a loan *broker*. Plaintiffs argue this brokerage activity—GreenSky's work setting up the loan application process (Dkt. No. 95 ¶¶ 31-32), running homeowners' credit and helping to obtain the bank's approval for the homeowner (*id.* ¶ 34), selecting among lenders to fund the loan (*id.*), and helping pay contractors using the loan (*id.* ¶ 35)—qualifies its activities as a "service" under the CLRA.

However, California caselaw compels the conclusion even these loan brokerage activities are not a "service" as defined by the CLRA. In *Fairbanks*, the California Supreme Court explained:

> [A]ncillary services are provided by the sellers of virtually all intangible goods—investment securities, bank deposit accounts and loans, and so forth. **The sellers of virtually all these intangible items assist prospective customers in selecting products that suit their needs, and they often provide additional customer services related to the maintenance, value, use, redemption, resale, or repayment of the intangible item**. Using the existence of these ancillary services to bring intangible goods within the coverage of the Consumers Legal Remedies Act would defeat the apparent legislative intent in limiting the definition of "goods" to include only "tangible chattels." (Civ. Code, § 1761, subd. (a).) We conclude, accordingly, that **the ancillary services that insurers provide to actual and prospective purchasers of life insurance do not bring the policies within the coverage of the Consumers Legal Remedies Act**.

4

*Fairbanks*, 46 Cal. 4th at 65 (emphasis added).  Similar to the insurance providers in *Fairbanks*, GreenSky aids "prospective customers in selecting" a loan, and then "provide[s] additional customer services related to the maintenance, value, [and] use" of that loan.  *Id.*

        Plaintiffs attempt to distinguish GreenSky's activity from the activity of the insurance salespeople in *Fairbanks* because GreenSky "is paid separately for the loan-servicing," so the loan-servicing is a separate transaction and not "ancillary" to the loan. (Dkt. No. 16.)  But, even if GreenSky's "merchant fee" is charged on top of the loan fees, and therefore "separate," that fee is still "ancillary" to the loan because it would not be charged in absence of the loan, and the fee is payment for services related to the loan.  *See Palestini v. Homecomings Fin., LLC*, No. 10-CV-1049-MMA, 2010 WL 3339459, at *12 (S.D. Cal. Aug. 23, 2010) (dismissing CLRA claim based on services related to a mortgage loan because "[w]ithout their mortgage loan, Plaintiffs would never have been charged for these services; they are, by definition, ancillary to the mortgage loan"); *Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *7 (S.D. Cal. Nov. 6, 2017) ("It would seem wildly incongruous that the CLRA would apply to advertising or marketing of loans but not apply to the loans themselves.  Indeed, bootstrapping the CLRA into this case in this manner would, as the Supreme Court of California explained, 'defeat the apparent legislative intent in limiting the definition of' goods and services.") (citing *Fairbanks*, 46 Cal. 4th at 65.)

        Plaintiffs further argued Greensky differs from the insurance providers in *Fairbanks*, because Greensky finds customers and then selects a bank to service the loan, rather than providing in-house services alongside provision of insurance or a loan.  However, this behavior is not unlike the insurance salespeople in *Fairbanks*, who may choose among the various insurance options and "help[] consumers select policies that meet their needs."  *Fairbanks*, 46 Cal. 4th at 65. Moreover, while the insurance salespeople may have worked for the insurance company, while Greensky is a separate company from the banks, does not make Greensky's services any less "ancillary."  In *Meyer*, like in this case, the defendants did not themselves provide the loans, but instead were "loan advertisers."  *Meyer*, 2017 WL 5138316, at *6.  Plaintiffs' attempt to distinguish *Meyer* on the grounds the *Meyer* defendants only engaged in "marketing and

1    advertising" for loan companies, whereas Greensky not only connects customers to banks, but also

2    plays a more active role in the loan application process is unpersuasive.  Plaintiffs fail to explain

3    why such a distinction matters—after all, the *Meyer* defendants' active "telemarketing efforts" is

4    likely equally if not more labor-intensive than Greensky's use of technology to find and set up

5    loan applications for customers.  Moreover, the *Meyer* court concluded "the CLRA simply does

6    not apply to loan products." *Id.* at *5.  All Greensky's activities are in effect "loan products";

7    Plaintiffs agree without the loan, Greensky would be providing no "service." *See Suski v.*

8    *Marden-Kane*, Inc., No. 21-CV-04539-SK, 2022 WL 3974259, at *8 (N.D. Cal. Aug. 31, 2022),

9    *appeal dismissed sub nom. Suski v. Coinbase, Inc.*, No. 22-16506, 2023 WL 6532382 (9th Cir.

10   June 30, 2023), *and appeal dismissed*, No. 22-16508, 2023 WL 6532674 (9th Cir. June 30, 2023)

11   (concluding Coinbase, which facilitates trading in cryptocurrency, did not fall under the CLRA

12   because the "service" was "ancillary" to the sale of cryptocurrency, which is "an intangible good

13   outside the purview of the CLRA" because "[t]he case law is clear, . . . if the Coinbase's alleged

14   services were offered by an entity which sold cryptocurrency, such services would be considered

15   ancillary and would not be covered by the CLRA. The Court finds that Coinbase offering the same

16   services for others selling cryptocurrency does not meaningfully distinguish the services.);

17   *Ancillary*, Black's Law Dictionary (11th ed. 2019) (defining "ancillary" as "[s]upplmentary" or

18   "subordinate").

19         At oral argument, Plaintiffs urged the Court to follow *Sonoda v. Amerisave Mortgage*

20   *Corp.*, No. C-11-1803 EMC, 2011 WL 2690451 (N.D. Cal. July 8, 2011).  In *Sonoda*, the district

21   court held the CLRA did not apply to the conduct of the defendant Amerisave, because any

22   services the defendant offered were "ancillary to the loan itself and therefore do not bring this case

23   within the coverage of the CLRA." *Id.* at *5.  In what Plaintiffs acknowledge was "dicta," the

24   district court stated:

25   > To be sure, if Amerisave was not loaning money but instead acted
   > only as a broker for other third-party lenders, then arguably what
26   > Amerisave was selling was its work or labor in finding a loan for
   > Plaintiffs (rather than negotiating terms of it own loans). Such
27   > brokerage services might well qualify as "services" under the CLRA.
   > *See* [Cal. Civ. Code] § 1761(b) (defining services as "work, labor, and
28   > services for other than a commercial or business use, including

services furnished in connection with the sale or repair of goods"). *Id.* at *4. However, later on, the district court explained "[i]n determining what is ancillary for purposes of the instant case, the Court finds it appropriate to look at what was intended to be sold or what was sold as required by the language of the statute." *Id.* (citing Cal. Civ. Code § 1770). Since "what was ultimately being sold by Amerisave was a mortgage loan (an intangible good)," the district court held "the services directly related to the sale of the loan (e.g., representations about and negotiations over the terms of the loan)—especially those which serve as a necessary predicate to the transaction—are ancillary." *Id.* Here, what was ultimately being sold was a loan, and Defendants' actions were all "predicate" to that loan transaction. Greensky provides no standalone services unrelated to procuring and servicing the loan and would receive no payment if the loan did not exist. So, *Sonada* does not persuade the Court Defendants' conduct falls within the CLRA.

Accordingly, Plaintiffs' CLRA claims are dismissed. In holding the CLRA does not apply to Greensky, the Court accepts Plaintiffs' characterization of Greensky's conduct. Since granting leave to amend would therefore be futile, *see Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015), Plaintiffs' CLRA claims are dismissed without leave to amend.

### III.     UNFAIR COMPETITION LAW CLAIM

GreenSky moves to dismiss in part Plaintiffs' claim Greensky violated California's Unfair Competition Law, California Business & Professions Code § 17200, *et seq*. California's Unfair Competition Law defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Therefore, under the statute there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009) (cleaned up). Plaintiffs allege Defendants violate all three prongs of California's Unfair Competition Law: pleading Defendants' conduct is unlawful (Dkt. No. 95 ¶¶ 145-148); unfair (*Id.* ¶ 149); and fraudulent (*Id.* ¶ 150).

#### A.     GreenSky Is a "Finance Lender"

Under the "unlawful" prong, Plaintiffs allege Greensky "violate[s] the Credit Services Act

of 1984 and the Consumer Legal Remedies Act . . . as well as the California Financing Law, Cal. Fin. Code § 22000, *et seq.*"  (Dkt. No. 95 ¶ 145.)  The California Financing Law provides, in part: "[n]o person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner."  Cal. Fin. Code § 22100.  Plaintiffs allege GreenSky is "not licensed as a finance lender" and therefore violates various provisions of the California Financing Law.  (Dkt. No. 95 ¶ 146.)  Defendants argue these California Financing Law provisions do not apply to GreenSky because GreenSky is not a "finance lender" under California law.

California law defines a "finance lender" as:

> any person who is engaged in the business of making consumer loans or making commercial loans. The business of making consumer loans or commercial loans may include lending money and taking, in the name of the lender, or in any other name, in whole or in part, as security for a loan, any contract or obligation involving the forfeiture of rights in or to personal property, the use and possession of which property is retained by other than the mortgagee or lender, or any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income, or commission.

Cal. Fin. Code § 22009.

"[A]ccept[ing] the factual allegations of the complaint as true and constru[ing] them in the light most favorable to the plaintiff[s]," *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018), Plaintiffs adequately plead GreenSky is a "finance lender" under California law.  California Financial Code § 22001(a) provides the California Financing Law "shall be liberally construed and applied" to "protect borrowers against unfair practices by some lenders."  Cal. Fin. Code § 22001(a).  A "finance lender" includes those "engaged in the business of making consumer loans."  Cal. Fin. Code § 22009.  While GreenSky itself may not be funding Plaintiffs' loans, GreenSky's business is certainly premised on "making consumer loans"—indeed, it is because GreenSky's business is intimately connected with making loans that Plaintiffs cannot state a claim under the CLRA.

Defendants argue "GreenSky is not in the business of 'making consumer loans' or 'lending money'" because "GreenSky simply supplies the technology that allows merchants to present their customers with bank financing, and then, if the loan closes, a GreenSky affiliate services the loan." (Dkt. No. 206 at 20-21.)  They complain while "Plaintiffs acknowledge that 'finance

8

lender' is defined as a person 'engaged in the business of making consumer loans," Plaintiffs "conspicuously ignore the *rest* of the definition, which specifies that 'making consumer loans' connotes 'lending money' and 'taking . . . security for a loan." (Dkt. No. 210 at 17 (citing Cal. Fin. Code § 22009).) Defendants' selective, out-of-context quoting of § 22009 is not well-received. As quoted above, § 22009 specifies "the business of making consumer loans or commercial loans *may include* lending money" and "taking . . . security for a loan." Cal. Fin. Code § 22009 (emphasis added). Nowhere does § 22009 indicate "the business of making consumer loans" *only includes* those two activities. Rather, those two activities are examples of what "the business of making consumer loans. . . *may include*." *Id.* (emphasis added). Plaintiffs sufficiently plead "the business of making consumer loans" may also include GreenSky's conduct. So, Plaintiffs plausibly allege GreenSky is a "finance lender" for purposes of the California Financing Law.

### B. California Financing Law § 22309

Plaintiffs allege GreenSky's conduct is "unlawful" because it violates nine California Financing Law provisions. (Dkt. No. 95 ¶ 146.) Defendants challenge the factual support for two of those provisions: California Financial Code § 22309, which provides, with certain exceptions, "no charges on loans . . . shall be paid, deducted, or received in advance," and California Financial Code § 22320.5, which regulates delinquency fees for defaults on loans.

Plaintiffs submit they will not pursue relief based on Code § 22320.5. (Dkt. No. 209 at 10.) So, any claim based on that provision is dismissed with prejudice.

However, Plaintiffs insist they plausibly plead a claim under California Financial Code § 22309. That Section provides "no charges on loans made pursuant to this division shall be paid, deducted, or received in advance, or compounded." Plaintiffs assert GreenSky charges a "merchant fee" on each loan, which "GreenSky receives . . . for the service of brokering the loans between consumer-borrowers and lenders." (Dkt. No. 95 ¶¶ 30, 40.) They allege further this "merchant fee" is "a predetermined percentage of every loan" and is determined "at the point of origination." (*Id.* ¶¶ 39, 41.) So, Plaintiffs argue, the Court can "reasonably infer that GreenSky receives its merchant fees 'in advance.'"

9

Whether these "merchant fees" violate California Financial Code § 22309 depends on a determination of what "in advance" refers to: Defendants contend the law prohibits any charges "'in advance' of when the loan is made" (Dkt. No. 210 at 19). Plaintiffs contend the law prohibits any charges "in advance" of "payments . . . made on the loan," but do not specify whether that prohibition applies to any charges paid in advance of *any* loan payments or charges paid in advance of when the loan is fully repaid. (Dkt. No. 209 at 10). Plaintiffs assert GreenSky's "merchant fee" is assessed after the loan is made, but before any payments on that loan are made, and therefore violates California Financial Code § 22309.

But, whatever "in advance" means, Plaintiffs do not allege *when* GreenSky receives its merchant fee—whether it receives that fee before loan payments are made, or as a part of the loan payments. So, Plaintiffs' claim GreenSky's conduct is unlawful under the Unfair Competition Law because GreenSky violates California Financial Code § 22309 is dismissed with leave to amend. If amended, the Court will not entertain another motion on this issue until summary judgment.

### C.     Inadequate Remedy at Law

"[T]he [Unfair Competition Law] provides only for equitable remedies." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2 (9th Cir. 2020) (quoting *Hodge v. Superior Court*, 145 Cal.App.4th 278, 51 (2006)). Plaintiffs "must establish that [they] lack[] an adequate remedy at law before securing equitable restitution for past harm under the [Unfair Competition Law]." *Id.* at 844. GreenSky moves to dismiss Plaintiffs' Unfair Competition Law claim because "Plaintiffs do not plead facts showing that they lack an adequate remedy at law." (Dkt. No. 206.)

In *Sonner v. Premier Nutrition Corp.*, the Court held:
> Sonner concedes that she seeks the same sum in equitable restitution as "a full refund of the purchase price"—$32,000,000—as she requested in damages to compensate her for the same past harm. Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion.

971 F.3d 834, 844 (9th Cir. 2020). *Sonner's* holding applies to equitable UCL claims when there is a "viable" legal damages claim. *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022);

*see also id.* (noting the United States Supreme Court's decision in *Guaranty Trust. Co. of New York v. York*, held "equitable relief is not available in federal court in a diversity action unless 'a plain, adequate and complete remedy at law [is] wanting'") (quoting 326 U.S. 99, 105 (1945)).

### 1.     UCL Restitution

Greensky insists Plaintiffs' Credit Services Act claim is a viable legal remedy for the same harms they allege in the UCL claim. And, indeed, one reason Plaintiffs allege Greensky's conduct violates the UCL unlawful prong is the same reason Plaintiffs assert it violates the Credit Service Act. (Dkt. No. 95 ¶ 145.) Plaintiffs emphasize their unlawful-prong UCL claim, and one of their unfair-prong theories, are also predicated on violations of the California Finance Code. (*Id.* ¶¶ 146, 149.) As there is no private right of action for such violations, the Finance Code itself is not an adequate legal remedy. Finally, Plaintiffs assert their fraudulent-prong UCL claim "does not much differ from . . . their CLRA claim." (Dkt. No. 209 at 13.)

But the monies Plaintiffs seek to recover for all prongs of their UCL claim are the same as the damages Plaintiffs seek under their legal Credit Services Act claim. (Dkt. No. 95 ¶ 151.) Plaintiffs' opposition "fail[s] to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion." *Sonner*, 971 F.3d at 844. So, if the Credit Services Act claim is viable as a matter of law, the Court lacks equitable jurisdiction. Plaintiffs' reliance on *Brown v. Nature Path Foods, Inc.*, 2022 WL 717816 (N.D. Cal. March 10, 2022), is unhelpful. There, the court concluded the plaintiffs stated facts sufficient to allege "prospective injuries for which remedies at law would be inadequate." *Id.* at *6 n.5. The question, here, in contrast, is whether the Credit Services Act is an adequate legal remedy as to the demand for equitable monetary relief for past injuries.

The amended complaint does allege UCL monetary restitution is in the alternative to the legal claims and that no adequate remedy exists at law. (Dkt. No. 95 ¶ 152.) Some courts have held that is all that a plaintiff is required to allege at the pleading stage. *See, e.g., Costa v. Apple, Inc.*, No. 23-CV-01353-WHO, 2023 WL 7389276, at *4 (N.D. Cal. Aug. 9, 2023) (quoting *Huynh v. Jabil Inc.*, No. 22-CV-07460-WHO, 2023 WL 1802417, at *7 (N.D. Cal. Feb. 7, 2023)); *Katz-Lacabe v. Oracle Am.*, Inc., No. 22-CV-04792-RS, 2023 WL 2838118, at *13 (N.D. Cal. Apr. 6,

11

2023) (denying the defendant's motion to dismiss claims for equitable relief because *Sonner* did not occur at the pleading stage and the plaintiff's restitution claims could be reassessed later in the litigation process). The Court interprets these cases as meaning that at that stage of litigation, it was premature to determine *as a matter of law* the plaintiff had an adequate remedy at law.

The same is true in this case. In the context of the motion to compel arbitration, the Ninth Circuit held there was no genuine dispute that the Credit Services Act applies to Greensky. *Ferguson v. Greensky, Inc.*, 2023 WL 4462126 (9th Cir. July 11, 2023). However, the Ninth Circuit's memorandum disposition suggests Greensky maintains the Credit Services Act does not apply to its conduct as a matter of law. *Ferguson v. GreenSky, Inc.*, No. 22-15780, 2023 WL 4462126, at *1 (9th Cir. July 11, 2023) (explaining Greensky made a "bare assertion" the Credit Services Act does not apply to Greensky because it is not a credit services organization). Whether the Credit Services Act applies to Greensky as a matter of law has not been presented to this Court. At oral argument, the Court asked Greensky to state on the record it does not contest that the Act applies. Greensky refused, expressly reserving the argument the Credit Services Act does not apply to Greensky. Accordingly, at this point, it would be premature to decide the Credit Services Act is a "viable" legal damages claim.

So, the Court DENIES Defendants' motion to dismiss the UCL claim for monetary restitution, without prejudice to Defendants making the same argument at the summary judgment stage. Defendants have not established Plaintiffs have an adequate remedy at law for the monetary relief pled in their UCL claim.

### 2. Injunctive Relief

Plaintiffs also seek prospective injunctive relief under the Unfair Competition Law. (Dkt. No. 95 ¶ 152.) Damages are an inadequate remedy for Plaintiffs' injunctive relief claim because "the prospect of paying damages is sometimes insufficient to deter a defendant from engaging in an alleged unlawful, unfair, or fraudulent business practice." *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (collecting cases declining "to apply *Sonner* to bar [Unfair Competition Law] claims for injunctive relief, recognizing that the prospect of paying damages is sometimes insufficient to deter a defendant

12

from engaging in an alleged unlawful, unfair, or fraudulent business practice"). So, Plaintiffs' claim for prospective injunctive relief under the UCL survives GreenSky's motion to dismiss on this ground.

## IV.  UNJUST ENRICHMENT CLAIM

The fourth cause of action, unjust enrichment, seeks "restitution of the profits" GreenSky "unjustly obtained." (Dkt. No. 95 ¶ 159.) "The equitable doctrine of unjust enrichment 'is based on the idea that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.'" *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 478 (2022) (quoting *County of San Bernardino v. Walsh* 158 Cal.App.4th 533, 542 (2007)). Plaintiffs assert "GreenSky obtained monies which rightfully belong to Plaintiffs" and "GreenSky should not be permitted to retain the benefits of those illegal charges." (*Id.* ¶¶ 155, 157.)

Defendants move for judgment on this claim on the grounds Plaintiffs do not plead the lack of an adequate remedy at law. (Dkt. No. 206 at 18.) But, as explained in the context of the UCL claim, it is premature to make the determination that Plaintiffs have an adequate remedy at law given Defendants do not concede the Credit Act applies. So, Defendants' motion for judgment for this reason is denied without prejudice. The Court notes, however, that even if Plaintiffs did have an adequate remedy at law, dismissal (or remand) would be without prejudice, not with prejudice as Greensky requests. *See Guzman*, 49 F.4th at 1315.

## V.  FERGUSON'S STANDING TO PURSUE INJUNCTIVE RELIEF

GreenSky moves to dismiss Ferguson's request for injunctive relief for lack of Article III standing. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

1  Ferguson alleges he made his final loan payment on November 6, 2018. (Dkt. No. 95 ¶ 109.) Defendants argue because Ferguson does not allege he plans to obtain a loan through GreenSky in the future, he has not established a concrete threat of imminent injury. Plaintiffs respond Ferguson is "reasonably likely to encounter a GreenSky loan again and experience similar harm." (Dkt. No. 209 at 17.) Ferguson did not specifically seek out GreenSky; instead, a representative of Peter Levi Plumbing, Inc., informed Ferguson the representative could facilitate financing for repairing Ferguson's furnace. (Dkt. No. 95 ¶ 103.) The representative then used the GreenSky app and procured a loan on Ferguson's behalf. (*Id.*) Plaintiffs argue because thousands of contractors use GreenSky to broker loans for consumers (*Id.* ¶ 27), and because these contractors often offer individuals "financing" without naming GreenSky (*Id.* ¶ 36 (explaining the consumer "typically" only "sees the loan terms" after the loan has been procured)), Ferguson could plausibly allege a sufficient likelihood he will again be harmed in a similar way. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (cited by Defendants for the proposition Ferguson must establish "a sufficient likelihood that he will again be wronged in a similar way.").

However, Ferguson has failed to plead GreenSky will specifically harm *him* again, as opposed to harming the general public at large. He does not plead that he intends to get any home repairs done, or even that he is still a homeowner. "Absent a sufficient likelihood that he will again be wronged in a similar way" Ferguson "is no more entitled to an injunction than any other citizen." *Lyons*, 461 U.S. at 111; *see also Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 927-28 (N.D. Cal. 2012) (finding no standing for injunctive relief because "Plaintiffs' current allegations establish only that ABC will (allegedly) harm many people, but not necessarily that it will harm Plaintiffs again" because "whether they are subject to ABC's purportedly unlawful conduct in the future depends largely on undefined contingencies. A defendant's practices, even if allegedly routine, must still distinguish the plaintiff from 'any other citizen' in order for the plaintiff to demonstrate entitlement to an injunction. *Lyons*, 461 U.S. at 111. As alleged, whether Plaintiffs face repeated harm is largely outside their control").

Defendants' citation to *Doe v. State Farm General Insurance Co.* to insist Ferguson cannot seek injunctive relief is unavailing. No. 3:23-CV-04734-JSC, 2023 WL 7440203, at *4 (N.D. Cal.

Nov. 8, 2023). In *Doe*, this Court found the plaintiff did not have standing to seek an order enjoining State Farm's business practices because the plaintiff "failed to establish standing to seek injunctive relief." *Id.* *Doe* alleged State Farm mishandled his insurance claim for a lost wristwatch. *Id.* at *1. The plaintiff did not allege "he ha[d] any existing policies with State Farm that would be affected by State Farm's business practices—to the contrary, Plaintiff allege[d] State Farm canceled his insurance policy." *Id.* at *4. However, the plaintiff in State Farm did not allege he had any possibility of obtaining a State Farm insurance policy without knowing he was purchasing a State Farm insurance policy—since obtaining such a policy would require conscious action on the plaintiff's part. In contrast, Plaintiffs here plausibly allege they may use GreenSky's services without realizing they are consenting to use GreenSky's services.

So, Defendants' motion is GRANTED as to Ferguson's claim for injunctive relief, but with leave to amend.

## CONCLUSION

For the reasons explained above, Plaintiffs' CLRA claim (Claim II) is DISMISSED without leave to amend. As a matter of law, the CLRA does not apply to Greensky's conduct. The unlawful prong of Plaintiffs' Unfair Competition Law claim (Claim II) is DISMISSED without leave to amend as to Plaintiffs' theory Defendants violated California Financial Code § 22320.5. The unlawful prong of the Unfair Competition Law claim based on Plaintiffs' theory Defendants violated California Financial Code § 22309 is dismissed with leave to amend. Ferguson's request for injunctive relief is DISMISSED for lack of Article III standing with leave to amend.

Plaintiffs' claim Defendants violated the Credit Services Act of 1984, Cal. Civ. Code § 1789.10, *et seq.* (Claim I) remains, as does Plaintiffs' unjust enrichment claim (Claim IV), and Plaintiffs' Unfair Competition Law Claim (Claim III) for equitable restitution, disgorgement, and injunctive relief (Claim II), except for the specific theories dismissed above.

Any amended complaint shall be filed by January 4, 2024.

This Order disposes of Docket Number: 206.

//

**IT IS SO ORDERED.**

Dated: December 15, 2023

JACQUELINE SCOTT CORLEY
United States District Judge