David Stein (Bar No. 257465)
Amanda M. Karl (Bar No. 301088)
Kyla J. Gibboney (Bar No. 301441)
Delaney Brooks (Bar No. 348125)
**GIBBS LAW GROUP LLP**
1111 Broadway, Ste. 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com
amk@classlawgroup.com
kjg@classlawgroup.com
db@classlawgroup.com

Bryce Bell (*pro hac vice*)
Andrew R. Taylor (*pro hac vice*)
**BELL LAW, LLC**
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
bryce@belllawkc.com
at@belllawkc.com

*Counsel for Plaintiffs and the Proposed Class*

[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH BELYEA, *et al.*,<br><br>            Plaintiffs,<br><br>    v.<br><br>GREENSKY, INC., *et al.*,<br><br>            Defendants. | Case No. 3:20-cv-01693-JSC<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Heidi Barnes and David Ferguson, on behalf of themselves and all others similarly situated, allege the following against Defendants GreenSky, Inc., GreenSky Holdings, LLC, GreenSky of Georgia, LLC, and GreenSky, LLC (collectively "GreenSky").

## INTRODUCTION

1.      GreenSky is a financial technology company that defines itself at various times as a technology platform, loan servicer, or program administrator.

2.      In reality, GreenSky is a loan broker and sometimes-lender that leverages its relationships with regional banks to exact finance charges in connection with brokering point-of-sale loans for consumers to pay for home improvement, home repair, and healthcare costs.

3.      In violation of California law, GreenSky acts as an unlicensed and unregistered lender, broker, and credit services organization, and charges unlawful and inadequately disclosed fees in connection with obtaining and facilitating consumer loans.

4.      Plaintiffs, consumers with GreenSky-serviced loans, bring this action on behalf of themselves and a class of California consumers, to recover the funds that GreenSky collected unlawfully or unjustly as detailed in this complaint and to enjoin GreenSky's continuing unlawful conduct.

## PARTIES

5.      Plaintiff Heidi Barnes is a resident of Roseville, California, in Placer County.

6.      Plaintiff David Ferguson is a resident of Mill Valley, California, in Marin County.

7.      Defendant GreenSky, Inc., is a Delaware corporation with its headquarters and principal place of business at 5565 Glenridge Connector, Suite 700, Atlanta, Georgia 30342.

8.      Defendant GreenSky Holdings, LLC, is a Georgia limited liability company with its headquarters and principal place of business at 5565 Glenridge Connector, Suite 700, Atlanta, Georgia 30342.

9.      Defendant GreenSky, LLC, is a Georgia limited liability company with its headquarters and principal place of business at 5565 Glenridge Connector, Suite 700, Atlanta, Georgia 30342.

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-01693-JSC

10.     Defendant GreenSky of Georgia, LLC, is registered in California as a foreign limited liability company.

11.     On information and belief, GreenSky of Georgia, LLC, and GreenSky, LLC, are related entities controlled by GreenSky Holdings, LLC (collectively, GreenSky).

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed $5,000,000, exclusive of interest and costs, and this is a class action in which diversity exists between members of the proposed class and Defendants. *See* Notice of Removal, ECF No. 1.

13.     Venue is proper in this district because Defendants solicit and conduct business, including by making and brokering GreenSky-serviced loans, throughout California, including in this district.

14.     This Court may exercise personal jurisdiction over Defendants because they have sufficient minimum contacts in California and intentionally avail themselves of the markets within California through the solicitation and sale their loan products, including to Plaintiffs and members of the proposed class. Exercise of jurisdiction by this Court is therefore proper and necessary.

## SUBSTANTIVE ALLEGATIONS

### California's Lending and Finance Laws

15.     Entities that make or broker consumer loans in California are regulated by, among other laws, the California Financing Law, Cal. Fin. Code § 22000, *et seq.*

16.     The stated purposes of the CFL are to "foster competition among finance lenders, . . . protect borrowers against unfair practices by some lenders, . . . encourage the development of fair and economically sound lending practices, . . . and protect . . . property owners from deceptive and misleading practices that threaten the efficacy and viability of property-assessed clean energy financing programs." Cal. Fin. Code § 22001.

17.     Entities that "obtain extensions of credit" or assist in obtaining extensions of credit for consumers, referred to as credit services organizations, are also regulated by the Credit Services Act of 1984, Cal. Civ. Code § 1789.10, *et seq.*

18.     California enacted the CSA to "protect the public from unfair or deceptive advertising and business practices," recognizing the importance of consumer credit and that "[c]ertain advertising and business practices of some credit service organizations have worked a financial hardship upon the people in this state, often those who are of limited economic means and inexperienced in credit matters." Cal. Civ. Code § 1789.11.

19.     Broadly speaking, the CFL and CSA require lenders, brokers, and credit services organizations to be licensed, bonded, and registered with the California Department of Justice or Department of Business Oversight; prohibit misrepresentations and fraudulent and deceptive acts in connection with making and brokering loans; and provide remedies for consumers harmed by unlawful lending practices.

20.     Both laws also limit the nature and amount of fees that lenders, brokers, and credit services organizations may charge consumers for lending, brokering, obtaining, or assisting consumers with obtaining loans, and require all fees associated with providing these services to be disclosed.

21.     For example, under the CFL, lenders and brokers may—directly or indirectly— charge only a total of $50 dollars (or 5 percent of the principal amount, whichever is less) in fees for loans of $2,500 or less; and $75 for loans over $2,500. Cal. Fin. Code § 22305. These fees must be disclosed at the time the loan is made. *See id.*, §§ 22337 & 22338.

22.     Credit services organizations are also prohibited from referring consumers to lenders for which the credit services organization provides services related to the extension of credit (such as underwriting, billing, payment processing, or debt collection), or directly or indirectly extending credit to consumers. Cal. Civ. Code § 1789.13(p) & (r).

23.     As described below, GreenSky operates in California as an unlicensed and unregistered credit services organization, finance lender, and broker, and engages in practices prohibited by the CFL and the CSA.

**GreenSky's business model**

24.     GreenSky has built a multi-billion-dollar business partnering with lending institutions and merchants to offer point-of-sale loans to consumers who wish to finance home improvement projects and repairs, solar-panel installation, and elective healthcare. (These loans are at times referred to as "GreenSky-serviced loans" in this complaint.)

25.     The merchants in GreenSky's program are a group of over 17,000 contractors and other home improvement specialists, such as Roto-Rooter and Home Depot, as well as medical offices.

26.     GreenSky's bank partners are a group of about 12 lending institutions, including regional banks SunTrust (now Truist), Fifth Third, and BMO Harris.

27.     Merchants in GreenSky's program connect their customers with GreenSky's bank partners using GreenSky's mobile app, which allows GreenSky to orchestrate the entire lending process, from application to funding, in a matter of minutes.

28.     As discussed below, GreenSky earns the bulk of its revenues by charging a "merchant fee" on each loan, which is calculated as a percentage of the loan amount. The nature and amount of this fee is not disclosed to the consumer at any point in the lending process.

**The loan-origination process**

29.     Merchants in GreenSky's program submit applications for GreenSky loans for their customers in minutes primarily using the GreenSky app on a tablet belonging to the merchant.

30.     To submit an application, the merchant first logs into the GreenSky app using that particular merchant's username and password, and then selects one of GreenSky's loan products, which vary by APR, loan duration, and merchant fee.

31.     The customer or merchant then enters the customer's personal information, including the customer's date of birth, phone number, income, and social security number, into GreenSky's app, and the merchant submits the application to GreenSky for underwriting and approval.

32.     GreenSky then runs the customer's credit and approves or denies the loan—usually in seconds—based on the criteria set forth in the agreements with its bank partners and its own proprietary risk calculations, and allocates the loan to one of its bank partners for funding.

33.     Once GreenSky approves the loan, and arranges for one of its bank partners to fund the loan, the GreenSky app generates a "shopping pass" for the consumer's loan, like the one below. The shopping pass has a sixteen-digit number that functions like a credit card.



34.     GreenSky afterward mails (and in some cases emails) the consumer a copy of the shopping pass and loan agreement, and arranges for the consumer to make payments on the loan, which GreenSky also services. This is typically the first time in the lending process that the consumer sees the loan terms.

35.     The merchant receives the shopping pass through the app as soon as it is generated and may charge the project amount upon approval without needing any further action by the consumer.

36.     Once the shopping pass is charged, the loan is funded through the bank partner to which GreenSky has allocated the loan.

**GreenSky receives unlawful fees and otherwise violates the CFL and CSA**

37.     GreenSky is paid a predetermined percentage of every loan, which GreenSky calls a "merchant fee," or  "merchant transaction fee."

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-01693-JSC

38.     This fee is the result of agreements between merchants and GreenSky to which consumers are not privy. GreenSky receives this compensation for the service of brokering the loans between consumer-borrowers and lenders. (To the limited extent GreenSky acts as a traditional loan servicer for the same loans, GreenSky may receive additional compensation, which is not at issue in this case.)

39.     GreenSky calculates the merchant fee by multiplying a set fee percentage (as outlined in a schedule that GreenSky provides to the merchants) by the dollar amount of the loan principal at the point of origination.

40.     These merchant fees make up the bulk of GreenSky's revenue and profitability; thus GreenSky's "profitability is strongly correlated with merchant transaction volume."[1]

41.     Although the precise amounts of the merchant fees vary, GreenSky collects, on average, 7% of the total loan amount as a merchant fee per loan.

42.     Merchants pass on the cost of the merchant fees to consumer-borrowers through higher project costs. The higher project costs, in turn, entail increases in the overall amount consumer-borrowers borrow through GreenSky-program loans and, correspondingly, the dollar amount of the consumer-borrowers' payments on those loans, since the loan payments are a function of the loan principal.

43.     Thus, the cost of the merchant fees is ultimately borne by consumer-borrowers. As GreenSky's Vice Chairman and CEO explained in an investor call, GreenSky encourages merchants to pass these fees onto consumers:

> Andrew Jeffrey [financial analyst]: "I guess your research as I understand it is that merchants' willingness to pass on higher transaction costs to consumers, and consumers' willingness and desire to sort of absorb these costs . . . even though the consumer might be paying more today than he was yesterday, he still feels like he's getting a pretty good deal. Did I sort of summarize that reasonably well . . ."

> Gerry Benjamin [GreenSky Vice Chairman and CAO]: "Yes. Absolutely."[2]

---

[1] GreenSky, Inc., 2019 Form 10-K at 5.
[2] GreenSky, Inc., Q3 2018 Earnings Call, Corrected Transcript (Nov. 6, 2018), at 13-14.

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-01693-JSC

44.     GreenSky also contracts with its bank partners, via loan origination agreements, to receive "incentive payments." Consumers are not privy to these loan origination agreements or the nature of such incentive payments even though consumers pay them via interest payments. As with the merchant fees, GreenSky receives the incentive payments as compensation for the service of brokering the loans between consumer-borrowers and lenders.

45.     These incentive payments, which are derived from the GreenSky program's "waterfall" incentive structure, entail a kick-back of interest-rate spreads to GreenSky on its loan portfolio with a given bank partner. GreenSky is thereby incentivized to generate higher APRs on a portfolio-wide basis than the banks would otherwise be willing to receive.

46.     The cost of the incentive payments are thus borne directly by consumer-borrowers as the incentive payments are taken from the interest paid by consumer-borrowers on their loans.

47.     GreenSky's receipt of the incentive payments, like the merchant fees, violates the CFL and the CSA.

48.     The fees that GreenSky collects are typically higher than the $50 or $75 fee allowed under the CFL.

49.     Additionally, the CSA bars GreenSky from receiving any money or compensation derived from interest paid by consumers, and therefore GreenSky is prohibited from collecting these incentive payments.

50.     In the course of effectuating and approving loans, GreenSky never discloses the nature or amount of the merchant fee or incentive payment to consumers, as required by the CFL and the CSA.

**GreenSky offers loans on the same terms as those available to the general public**

51.     Despite charging a fee on each loan transaction, the terms of GreenSky loans are, in aggregate, not better for consumers than what they would receive without GreenSky's assistance.

52.     For example, SunTrust, one of GreenSky's largest bank partners by volume, offers home improvement loans directly to consumers on substantially the same—and often better—terms as those offered by GreenSky.

53.      Per SunTrust's website, through a program called LightStream, SunTrust offers home improvement loans on an unsecured basis, with durations from 24 to 144 months, for amounts from $5,000 to $100,000, with "same-day funding available" and "no fees" for large projects such as adding kitchens, swimming pools, or solar systems, and "will beat any qualifying rate."[3]

54.     The applicable APR-duration-loan amount matrix for LightStream loans, as of April 8, 2020, was:[4]

| Loan Amount | Loan Term (months) * | | | | | |
|---|---|---|---|---|---|---|
| | 24 - 36 | 37 - 48 | 49 - 60 | 61 - 72 | 73 - 84 | 85 - 144 |
| $5,000 to $9,999 | 7.84% - 13.29% | 8.59% - 14.39% | 9.09% - 14.99% | 9.84% - 15.29% | N/A | N/A |
| $10,000 to $24,999 | 4.99% - 13.29% | 7.19% - 14.14% | 7.79% - 14.49% | 8.39% - 14.79% | 8.94% - 14.99% | N/A |
| $25,000 to $49,999 | 6.59% - 13.29% | 7.19% - 14.14% | 7.79% - 14.49% | 8.39% - 14.79% | 8.94% - 14.99% | 6.89% - 14.99% |
| $50,000 to $100,000 | 6.59% - 13.29% | 7.19% - 14.14% | 7.79% - 14.49% | 8.39% - 14.79% | 8.94% - 14.99% | 6.89% - 14.99% |

---

[3] *See* https://www.lightstream.com/consumer-loans.
[4] https://www.suntrust.com/loans/home-improvement/unsecured-home-improvement-loans (accessed April 8, 2020).

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-01693-JSC

55.     By comparison, a GreenSky-branded SunTrust loan product generated in June 2017 for $10,000 carried an APR of 23.99% over a duration of 36 months—much higher than the 4.99 to 13.29% APR offered directly through SunTrust.

56.     For approximately 40% of its loan volume, GreenSky offers a variety of its own promotional terms, including introductory interest-waived periods where the consumer is given a period (usually six to 18 months) to repay the loan principal in full without incurring interest charges. For these loans, which are not offered by GreenSky's bank partners, GreenSky continues to bill interest each month, but if the consumer pays off the loan balance in full before the promotional period ends, GreenSky itself is obligated to remit the billed interest to its bank partner. GreenSky refers to these payments as "finance charge reversals."[5] Since GreenSky is assuming the pre-payment risk for loans with promotional periods, they carry high APRs and/or merchant fees.

57.     For these loans, GreenSky acts as a lender, relending funds from its bank partners with its own promotional terms.

58.     GreenSky also offers so-called zero interest loans, which carry large merchant fees to offset their lack of interest charges.

**GreenSky is not licensed or registered in California as a broker, credit services organization, or lender**

59.     Despite performing the services of a broker, credit services organization, and lender, GreenSky is not registered as a credit services organization, or licensed as a finance broker or lender, in California.

60.     Instead, GreenSky attempts to pass itself off as merely a "loan servicer,"[6] or "payment platform."[7]

61.     These attempts to avoid being recognized (and regulated) as a broker, credit services organization, and lender do not square with GreenSky's role in the loan process

---

[5] See, e.g., GreenSky, Inc., 2019 Form 10-K at 16.
[6] https://www.greenskyonline.com (accessed Oct. 17, 2019).
[7] See Statement of Information dated April 27, 2018, filed with the California Secretary of State.

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-01693-JSC

described above, or with GreenSky's investor materials, public statements, and financial reports.

62.   Indeed, GreenSky's IPO prospectus touted its central role in the lending process, telling investors that GreenSky's platform supports "the full transaction lifecycle, including credit application, underwriting, real-time allocation to bank partners, funding, settlement, and servicing."[8]

63.   GreenSky's financial statements reveal that the lion's share of its revenues come from brokering fees – not from loan servicing or software licenses.[9]

64.   GreenSky's practice of originating consumer loans without a license has been challenged by regulators and consumers in several states.

65.   The New Jersey Department of Banking and Insurance sent GreenSky a letter in 2015 regarding its "possible unlicensed New Jersey consumer loan activity," prompting GreenSky to register as a "money transmitter" in New Jersey.

66.   In 2017, a federal court in Florida upheld a complaint filed by a consumer alleging that GreenSky operated as an unlicensed credit services organization under a Florida law that is nearly identical to the California CSA.[10]

67.   And in 2019, a court-appointed receiver in Alabama concluded that GreenSky loans in the state "were improperly obtained and should be invalidated," after finding that GreenSky "d[id] not have a license to engage in lending activity in the State of Alabama, and had "[e]ffectively [] made plumbers with no banking training or experience its de facto loan officers."[11]

---

[8] *See* Evolve Capital Partners, GreenSky, Inc., Summary of Initial Public Offering (May 2018), available at https://www.evolve-capital.com/wp-content/uploads/2018/06/GreenSky-IPO-Profile.pdf (accessed October 11, 2019).

[9] *See, e.g.*, GreenSky, Inc., 2018 Form 10-K at 78.

[10] *Locicero v. Intrust Bank, N.A.*, No. 17-cv-61484, 2018 WL 4374908, at *6-7 (S.D. Fla. Sept. 13, 2018).

[11] *See Alabama v. Am. Plumbing & Septic Serv., LLC*, No. 11-CV-2018-900431, Receiver's Report, Doc. 333, at 1-2 (Cir. Ct. Calhoun County, Mar. 7, 2019).

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-01693-JSC

68.     GreenSky's competitors recognize that they must comply with California's lending and finance laws.

69.     For example, San Francisco-based Affirm, which, like GreenSky, is a point-of-sale fintech firm, reported itself to the Secretary of State as a "financial services" firm, is licensed as a finance lender with the Department of Business Oversight, and discloses its fees on consumer loans.

70.     Oakland-based Solar Mosaic, Inc., which, like GreenSky, offers point-of-sale financing, also became a licensed lender in California by at least 2012.

71.     In sum, despite what GreenSky says, and despite not being licensed to do so, GreenSky brokers and facilitates loans for consumers across the state, extending credit without being registered, and charging substantial undisclosed fees, in violation of the CFL, CSA, and consumer protection laws.

PLAINTIFFS' EXPERIENCES

**Plaintiff Barnes**

72.     In September 2016, Plaintiff Barnes contacted Reliable Home Improvement, Inc., to build a custom concrete patio at her home in Roseville, California.

73.     The contractor informed Barnes that the project cost would exceed $10,000. The contractor informed Barnes that it could facilitate financing for the project on her behalf. Using the GreenSky app, the contractor proceeded to procure a loan from InTrust Bank of Wichita on Barnes' behalf.

74.     Barnes ultimately financed $7,500 through the GreenSky loan program, with GreenSky transferring those funds directly to the contractor. The loan carries a 6.99% APR over 120 monthly payments, with a five-month promotional period.

75.     GreenSky received an unlawful fee in connection with the transaction. On information and belief, GreenSky received up to $332.06 of Barnes' loan as a "merchant fee." GreenSky did not disclose the nature or amount of this fee to Barnes, denying Barnes the opportunity to choose whether to move forward with GreenSky financing, pay with cash, or seek an alternative financing arrangement. Additionally, GreenSky conducted the entire

transaction without a license from the California Department of Business Oversight, or being registered as a credit services organization with the California Department of Justice.

76.     Nor did GreenSky disclose to Barnes that it would also receive an incentive payment, derived from any interest she paid on her GreenSky loan.

77.     As a result, Barnes paid more than she otherwise would have in connection with the services described above, including in the form of increased project costs.

78.     As described above, these higher project costs increased both the principal of Barnes' GreenSky-program loan and, consequently, the payments on her loan, including interest.

79.     Barnes began making monthly payments on her loan on November 13, 2016. The loan balance is still outstanding, and Barnes will likely continue to pay interest throughout the life of the loan.

80.     GreenSky also services Barnes' loan, collecting payments on the loan, and providing billing statements.

81.     Barnes owns her home in Roseville, and she intends to undertake home repairs and/or home improvement projects in the future.

**Plaintiff Ferguson**

82.     In September 2018, a representative from Peter Levi Plumbing, Inc., conducted an inspection of a furnace at Plaintiff Ferguson's home in Mill Valley.

83.     The representative informed Ferguson that the furnace needed to be repaired, and that the cost for the repairs would exceed $1,500. The representative informed Ferguson that it could facilitate financing for the repair on his behalf. Using the GreenSky app, the representative proceeded to procure a loan on Ferguson's behalf.

84.     Ferguson ultimately financed $1,791 through the GreenSky loan program, with GreenSky transferring those funds directly to Peter Levi Plumbing.

85.     GreenSky received an unlawful fee in connection with the transaction. On information and belief, GreenSky received up to $107.79 of Ferguson's loan as a "merchant fee." GreenSky did not disclose the nature or amount of this fee to Ferguson, denying

Ferguson the opportunity choose whether to move forward with GreenSky financing, pay with cash, or seek an alternative financing arrangement. Additionally, GreenSky conducted the entire transaction without a license from the California Department of Business Oversight, or being registered as a credit services organization with the California Department of Justice.

86.     Nor did GreenSky disclose to Ferguson that it would also receive an incentive payment derived from any interest he may pay on his GreenSky loan.

87.     As a result, Ferguson paid more than he otherwise would have in connection with the services described above, including in the form of increased project costs.

88.     As described above, these higher project costs increased both the principal of Ferguson's GreenSky-program loan and, consequently, the payments on his loan.

89.     Ferguson made his final loan payment on November 6, 2018.

90.     Ferguson owns his home in Mill Valley, and he intends to undertake home repairs and/or home improvement projects in the future.

**STATUTES OF LIMITATIONS AND TOLLING**

91.     <u>Continuous Accrual</u>: As alleged above, Plaintiffs and class members have paid more due to GreenSky's unlawful conduct, including in the form of increased project costs. These costs increase the principal of Plaintiffs' and class members' GreenSky-program loans, which in turn increases the corresponding loan payments. As a result, Plaintiffs and class members pay a portion of GreenSky's unlawful fees with each of their loan payments. Thus, with each loan payment that it bills and accepts payment for, GreenSky continuously overcharges Plaintiffs and class members, continuously violates the statutes at issue in this case, and causes distinct injuries to Plaintiffs and class members.

92.     <u>Discovery Rule</u>: Plaintiffs' and class members' claims accrued upon discovery of the facts described above. While GreenSky knew and concealed these facts, Plaintiffs and class members could not and did not discover these facts through reasonable diligent investigation. For example, Plaintiff Barnes only discovered the facts alleged above on or about February 18, 2020, when she read about Plaintiff Belyea's lawsuit against GreenSky after she received an email from a website that monitors class action lawsuits. Before that time, Plaintiff Barnes had

no reason to suspect any of the unlawful conduct at issue in this complaint (including that she was being charged more as a result of GreenSky's unlawful conduct), as nothing in her transaction, in the GreenSky-program loan or loan documents, or in the news or online made her suspicious of her transactions with GreenSky—nor should any of the information available to her have reasonably made her suspicious before February 2020.

93.    <u>Fraudulent Concealment Tolling</u>: Any statutes of limitations are tolled by GreenSky's knowing and active concealment of the facts set forth above. GreenSky kept Plaintiffs and class members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on Plaintiffs' or class members' part. The details of GreenSky's efforts to conceal its above-described unlawful conduct—including its failure to disclose material facts concerning the nature and amount of the fees it charges and the unlicensed nature of its lending practices—are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery. Plaintiffs and class members could not have reasonably discovered these facts, nor that GreenSky failed to disclose them. For example, Plaintiff Barnes only discovered the facts alleged above on or about February 18, 2020, when she read about Plaintiff Belyea's lawsuit against GreenSky after she received an email from a website that monitors class action lawsuits. Before that time, Plaintiff Barnes had no reason to suspect any of the unlawful conduct at issue in this complaint (including that she was being charged more as a result of GreenSky's unlawful conduct), as nothing in her transaction, in the GreenSky-program loan or loan documents, or in the news or online made her suspicious of her transactions with GreenSky—nor should any of the information available to her have reasonably made her suspicious before February 2020.

## CLASS ACTION ALLEGATIONS

94.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following proposed Class:

*All persons who secured or made payments on a GreenSky-serviced loan in California between January 9, 2016, and the present.*

95.     Excluded from the proposed Class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff.

96.     **Numerosity**.  Defendants have engaged in millions[12] of the type of lending transactions described in this complaint, including hundreds of thousands in California. Members of the proposed Class are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

97.     **Commonality and Predominance**.  Common questions of law and fact exist as to all proposed Class members and predominate over questions affecting only individual Class members. These common questions include:

a.   Whether the nature and amount of the merchant fees that GreenSky receives are unlawful under the Credit Services Act of 1984, Cal. Civ. Code § 1789.10, *et seq.*;

b.   Whether the nature and amount of the merchant fees that GreenSky receives are unlawful under the California Financing Law, Cal. Fin. Code § 22000 *et seq.*;

c.   Whether GreenSky's failure to disclose the nature and amount of the fees it receives is unlawful under the Credit Services Act of 1984, Cal. Civ. Code § 1789.10, *et seq.*;

d.   Whether GreenSky's failure to disclose the nature and amount of the fees it receives is unlawful under the California Financing Law, Cal. Fin. Code § 22000, *et seq.*;

---

[12] As of, approximately, the end of fiscal year 2019, GreenSky had originated over three million consumer loans.

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-01693-JSC

e.   Whether GreenSky acts as an unlicensed credit service organization in violation of the Credit Services Act of 1984, Cal. Civ. Code § 1789.10, *et seq.*;

f.   Whether GreenSky's conduct is unfair or fraudulent, in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*;

g.   Whether GreenSky was unjustly enriched at the expense of Plaintiffs and Class members; and

h.   Whether Plaintiffs and Class members are entitled to injunctive relief, declaratory relief, or other remedies.

98.   **Typicality**.  Plaintiffs' claims are typical of the claims of members of the proposed Class.  Plaintiffs and the members of the proposed Class all secured or made payments on a GreenSky-serviced loan in California during the Class Period, giving rise to substantially the same claims.

99.   **Adequacy**.  Plaintiffs are adequate representatives of the proposed Class because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on Class members' behalf.

100.   **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the same issues, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

101.   In the alternative, the proposed Class may be certified because:

a.  The prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

b.  The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party Class members or which would substantially impair their ability to protect their interests; and

c.  Defendants have acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

## FIRST CAUSE OF ACTION

### Violation of the Credit Services Act of 1984

### Cal. Civ. Code § 1789.10, *et seq.*

102.  Plaintiffs reallege and incorporate the above paragraphs.

103.  GreenSky has violated, and continues to violate, the Credit Services Act of 1984, Cal. Civ. Code § 1789.10, *et seq.*

104.  The CSA defines a "credit services organization" as "a person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that the person can or will sell, provide or perform, any of the following services, in return for the payment of money or other valuable consideration:

(1)  Improving a consumer's credit record, history, or rating.

(2)  Obtaining a loan or other extension of credit for a consumer.

(3)  Providing advice or assistance to a consumer with regard to either paragraph (1) or (2)." Civ. Code § 1789.12(d).

105.  Plaintiffs are "consumers" within the meaning of Civil Code § 1789.12(b).

106.  GreenSky is a "person" within the meaning of Civil Code § 1789.12(h).

107.  GreenSky is a credit service organization as defined by Civil Code § 1789.12 because it sells, provides, or performs, or represents that it can or will sell, provide or

perform, services relating to obtaining loans or other extensions of credit from its bank partners for buyers like Plaintiffs and Class members in return for payment in the form of merchant fees.

108.    As alleged above, GreenSky obtains, and assists in obtaining, loans and extensions of credit for buyers by: accepting and auto-populating consumer credit applications on its app; partnering with its bank partners to fund buyers' loans; organizing its bank partners into a "program" for the purposes of extending consumer credit; advertising to merchants and buyers like Plaintiffs and Class members that it can obtain credit for home improvement and maintenance projects and elective surgeries; accepting and rejecting consumer credit applications; developing a proprietary "round-robin" system for distribution of loans to its bank partners; "underwriting" consumer credit applications; determining loan terms and conditions; relending funds obtained through its bank partners; transmitting loan funds to merchants through GreenSky-branded shopping passes; and reporting trade lines to consumer reporting agencies.

109.    GreenSky's acts, as allege above, violate Civil Code § 1789.13, for at least the following reasons:

a.  The merchant fees paid to GreenSky are derived from payments made by buyers to GreenSky's bank partners for costs, fees, finance charges, or principal, in violation of § 1789.13(d)(2);

b.  GreenSky receives money or compensation, in the form of incentive payments, that are derived from interest paid by consumers, in violation of § 1789.13(d)(2);

c.  GreenSky fails to provide specific disclosures, as required by § 1789.15(a)-(e);

d.  By failing to disclose its role as a credit services organization, presenting itself as a servicer and payment platform, and failing to disclose the nature and amount of the fees charged in connection with consumer loans, GreenSky engages directly or indirectly in an act, practice, or course of

business that operates as a fraud or deception in connection with the offer or sale of its services, in violation of § 1789.13(i);

e.  On information and belief, GreenSky advertises its services, and causes its services to be advertised, without being registered with the California Department of Justice, in violation of § 1789.13(j);

f.  Through its promotional interest-waived loans, GreenSky directly or indirectly extends credit to buyers like Plaintiffs and Class members, in violation of § 1789.13(p);

g.  GreenSky refers buyers like Plaintiffs and Class members to its bank partners, for whom GreenSky provides, or arranges for a third party to provide, underwriting, billing, payment processing, debt collection, and other services related to the extension of credit, in violation of § 1789.13(r); and

h.  By failing to disclose its role as a credit services organization, presenting itself as a servicer and payment platform, and failing to disclose the nature and amount of the fees charged in connection with consumer loans, GreenSky uses a scheme, device, or contrivance to evade the prohibitions contained in that section, in violation of § 1789.13(t).

110.  GreenSky's acts, as alleged above, violate Civil Code § 1789.18 because GreenSky conducts business in California and, on information and belief, GreenSky has not obtained a surety bond in the principal amount of $100,000 issued by an admitted surety, and has failed to comply with the other requirements of that section, including filing a copy of the bond with the Secretary of State.

111.  As a direct and proximate result of GreenSky's violations of the CSA described above, Plaintiffs and Class members have suffered injury and damages, including that they paid more in connection with their GreenSky-serviced loans than they otherwise would have and were denied a meaningful choice in deciding whether to use GreenSky financing.

112.    Pursuant to Civil Code § 1789.21, Plaintiffs and the members of the Class are entitled to damages, including actual damages and punitive damages, as well as injunctive relief against GreenSky, plus reasonable attorney's fees and costs.

### SECOND CAUSE OF ACTION

**Unlawful, Unfair, and Fraudulent Business Practices**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

113.    Plaintiffs reallege and incorporate the above paragraphs.

114.    GreenSky has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, or fraudulent business acts or practices.

115.    GreenSky's business acts and practices are unlawful in that they violate the Credit Services Act of 1984, as alleged in the previous cause of action, as well as the California Financing Law, Cal. Fin. Code § 22000, *et seq.*

116.    GreenSky's acts and practices violate the California Financing Law for at least the following reasons:

a.  GreenSky acts as a finance lender for consumer loans, as defined by Cal. Fin. Code § 22009, because it is engaged in the business of making consumer loans in the name of its lending partners and itself, and takes as security for a loan, contracts or obligations involving the forfeiture of rights in or to Plaintiffs' and Class members' personal property;

b.  GreenSky is not licensed as a finance lender as required by Cal. Fin. Code § 22100;

c.  GreenSky acts as an unlicensed finance broker as defined by Cal. Fin. Code § 22004, because it engages in the business of negotiating, selling, marketing, and distributing loans made by its lending partners;

d.  GreenSky operates throughout California without complying with the licensing and application procedures set forth in Cal. Fin. Code §§ 22102-22104, 22106-22107, 22151, and 22159;

e.   By failing to disclose its role as a lender and broker, presenting itself as a servicer and payment platform, and failing to disclose the nature and amount of the fees charged in connection with GreenSky-serviced loans, GreenSky has broadly made, directly and indirectly, materially false and misleading statements to consumers in California and violated § 17200 of the Business and Professions Code, in violation of Cal. Fin. Code § 22161;

f.   In connection with making and brokering consumer loans, GreenSky charges administrative fees in excess of $50 for loans of $2500 or less, and $75 for loans more than $2500, in violation of Cal. Fin. Code § 22305;

g.   GreenSky directly or indirectly charges, contracts for, and receives amounts, both on individual loans and in the aggregate, that exceed the limits provided for in the CFL, in violation of Cal. Fin. Code § 22306;

h.   Despite precomputing its charges, GreenSky does not provide borrowers a rebate of the pro-rata portion of the precomputed charge when the loan contract is paid off in full, in violation of Cal. Fin. Code § 22400; and

i.   GreenSky has not obtained a surety bond as required by Cal. Fin. Code § 22112(a).

117.   Plaintiffs' and Class members' GreenSky loans are "consumer loans" as defined by Cal. Fin. Code § 22203 because they are intended for use primarily for personal, family or household purposes.

118.   Pursuant to Cal. Fin. Code § 22750, if any amount other than, or in excess of, the charges permitted by the California Financing Law is willfully charged, contracted for, or received, or if any provision of the California Financing Law is willfully violated in the making or collection of a loan, whether by a licensee or by an unlicensed person subject the California Financing Law, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction.

119.   GreenSky's conduct also constitutes unfair business practices in that:

a.  The gravity of harm to Plaintiffs and the proposed Class from GreenSky's acts and practices far outweighs any legitimate utility of that conduct;

b.  GreenSky's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the proposed Class; and

c.  GreenSky's conduct undermines or violates the stated policies of protecting consumers against unfair and sharp business practices and promoting a basic level of honesty and reliability in the marketplace.

120.   These acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, GreenSky engages in a variety of deceptive marketing practices including false and misleading misrepresentations regarding its role in the lending process, and the nature and amount of fees it charges and collects in connection with GreenSky-serviced loans.

121.   Had GreenSky not engaged in these unlawful, unfair, and fraudulent practices, Plaintiffs and the members of the proposed Class would not have paid, or would have paid less, in connection with their GreenSky-serviced loans. Accordingly, as a direct and proximate result of GreenSky's business practices, Plaintiffs and members of the proposed Class suffered injury in fact and lost money or property.

122.   In the alternative to those claims seeking remedies at law, Plaintiffs and members of the proposed Class allege that there is no plain, adequate, and complete remedy that exists at law to address GreenSky's unlawful, unfair, and fraudulent practices. Therefore, Plaintiffs and members of the proposed Class are entitled to equitable relief including an order enjoining GreenSky's wrongful conduct, restitution, and disgorgement of all profits paid to GreenSky as a result of its unfair, deceptive, and fraudulent practices.

## THIRD CAUSE OF ACTION

### Unjust Enrichment/Quasi-Contract

123.   Plaintiffs reallege and incorporate the above paragraphs.

124.   Plaintiffs and members of the Class conferred a benefit upon GreenSky.

125.    As a result of its fraudulent acts and omissions, GreenSky obtained monies which rightfully belong to Plaintiffs and the proposed Class.

126.    GreenSky appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and members of the proposed Class,

127.    It would be inequitable and unjust for GreenSky to retain these wrongfully obtained profits. GreenSky's collection, acceptance and retention of these charges, when GreenSky was not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and GreenSky has not refunded the charges to members of the Class. GreenSky should not be permitted to retain the benefits of those illegal charges. The continued withholding of the illegal charges is improper.

128.    GreenSky's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

129.    In the alternative to those claims seeking remedies at law, Plaintiffs and members of the proposed Class allege that there is no plain, adequate, and complete remedy that exists at law to address their injuries, and Plaintiffs and the members of the proposed Class are entitled to restitution of the profits unjustly obtained, plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter a judgment:

a.  Certifying the proposed Class and appointing Plaintiffs' counsel to represent the Class;

b.  Awarding Plaintiffs and the Class damages in an amount to be established at trial;

c.  Awarding Plaintiffs and the Class punitive damages in an amount to be established at trial;

d.  Awarding Plaintiffs and the Class restitution, disgorgement, or other equitable relief as the Court deems proper;

e.  Enjoining GreenSky's wrongful conduct;

f.  Awarding Plaintiffs and the Class pre-judgment and post-judgment interest as allowed under the law;

g.  Awarding Plaintiffs and the Class reasonable attorney fees and costs of suit, including expert witness fees; and

h.  Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so triable under the law.

Dated: January 4, 2024                  Respectfully submitted,


_/s/ Amanda M. Karl_____


David Stein (Bar No. 257465)
Amanda M. Karl (Bar No. 301088)
Kyla J. Gibboney (Bar No. 301441)
Delaney Brooks (Bar No. 348125)
**GIBBS LAW GROUP LLP**
1111 Broadway, Ste. 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com
amk@classlawgroup.com
kjg@classlawgroup.com
db@classlawgroup.com

Bryce Bell (*pro hac vice*)
Andrew R. Taylor (*pro hac vice*)
**BELL LAW, LLC**
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
bryce@belllawkc.com
at@belllawkc.com

Geoff Graber (Bar No. 211547)
Brian Johnson (*pro hac vice*)
Madelyn Petersen (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W.
Suite 500 West

THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 3:20-cv-01693-JSC

Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
bejohnson@cohenmilstein.com
mpetersen@cohenmilstein.com

Daniel T. LeBel
**CONSUMER LAW PRACTICE OF DANIEL T. LEBEL**
P.O. Box 720286
San Francisco, CA 94111
Telephone: (415) 513-1414
Facsimile: (877) 563-7848
danlebel@consumerlawpractice.com

*Counsel for Plaintiffs and the Proposed Class*