PIERSON FERDINAND, LLP
Barry Goheen (admitted *pro hac vice*)
100 Mount Paran Ridge
Atlanta, Georgia 30327-3561
(404) 793-3093
barry.goheen@pierferd.com

PIERSON FERDINAND, LLP
Diem N. Kaelber (SBN 329317)
2100 Geng Road, Suite 210
Palo Alto, California 94303
(408) 898-3170; (866) 414-5083 (fax)
diem.kaelber@pierferd.com

Attorneys for Defendants GREENSKY, LLC; GREENSKY OF GEORGIA, LLC; and GREENSKY HOLDINGS, LLC (successor-in-interest to GREENSKY, INC.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

ELIZABETH BELYEA et al.,

Plaintiffs,

vs.

GREENSKY, INC. et al.,

Defendants.

Case No. 3:20-cv-01693-JSC

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Proposed Order filed concurrently herewith]

**FILED UNDER SEAL**

Date: October 31, 2024
Time: 10 AM
Courtroom: 8
Judge: Honorable Jacqueline Scott Corley

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

NOTICE OF MOTION ........ 1

STATEMENT OF ISSUES TO BE DECIDED ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 2

INTRODUCTION ........ 2

STATEMENT OF FACTS ........ 4

I. THE GREENSKY PROGRAM ........ 4

A. GreenSky's Platform and Patented Technology ........ 4

B. Transaction Fees and Incentive Payments ........ 5

II. THE NAMED PLAINTIFFS ........ 6

A. Ferguson's Six-Week, Net Interest-Free Loan in 2018 ........ 6

B. Barnes' 2016 GreenSky Program Loan ........ 7

RELEVANT PROCEDURAL HISTORY ........ 10

ARGUMENT ........ 10

I. GREENSKY IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF PLAINTIFFS' CLAIMS FOR MONETARY RELIEF. ........ 11

A. Each of Plaintiffs' Claims Requires Proof of Injury. ........ 11

B. Plaintiffs Cannot Prove Any Injury Under Either the "Transaction Fee" Theory or the "Incentive Payment" Theory. ........ 12

1. Plaintiffs Admitted under Oath That They Have No Proof that They Paid Any Portion of Their Merchants' Transaction Fees. ........ 12

2. Plaintiffs Have No Evidence That They Paid More on Their Loans Because of Any Incentive Payments Made by Program Lenders to GreenSky. ........ 13

a. Ferguson Admits That Because He Did Not Pay Interest on His Loan, He Could Not Possibly Have Been Harmed by Incentive Payments. ........ 13

b. Barnes Has No Evidence She Was Injured by Incentive Payments. ........ 14

C. Plaintiffs' UCL Claim Fails for Additional, Alternative Reasons. ........ 15

1. Plaintiffs' UCL Claim Relating to Fee Caps Fails Because They Have No Evidence That They Paid Any Fee in Excess of an Applicable Cap. ........ 15

2. Plaintiffs' UCL Claim Relating to Rebates Fails Because the Statutory Rebate Provision Did Not Apply to Plaintiffs' Loans. …… 16

D. Alternatively, Barnes' Claims Are Barred by the Statute of Limitations and by the Voluntary Payment Doctrine. ……………………………………….. 17

1. The Three-Year Statute of Limitations Bars Barnes' Unjust Enrichment and CSA Claims. …………………………………………………….. 17

2. Barnes' Claims Are Barred by the Voluntary Payment Doctrine. ……… 20

II. GREENSKY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF. ………………………………………… 21

CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*Aluminicaste Fundicion De Mex. S. De RL CV v. Shen*, 2017 WL 4326369 (C.D. Cal. Sept. 25, 2017) .......... 21

*Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581 (1961) .......... 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 10

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) .......... 23

*Belyea v. Greensky, Inc.*, 2021 WL 1338549 (N.D. Cal. Apr. 9, 2021) .......... 19

*Benton v. CVS Pharmacy, Inc.*, 604 F. Supp. 3d 889 (N.D. Cal. 2022) .......... 24

*Bernson v. Browning–Ferris Indus. of Cal., Inc.*, 7 Cal.4th 926 (1994) .......... 21

*California v. Campbell*, 138 F.3d 772 (9th Cir. 1998) .......... 11

*California Medical Assn. v. Aetna Health of California Inc.*, 14 Cal.5th 1075 (2023) .......... 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 11, 14

*In re Coca-Cola Prod. Mktg. & Sales Pr. Lit.*, 2021 WL 3878654 (9th Cir. Aug. 31, 2021) .......... 24

*Cooper v. United Air Lines, Inc.*, 582 F. Supp. 3d 1084 (N.D. Cal. 2015) .......... 10-11

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) .......... 11

*Emerson Equity, LLC v. Forge Underwriting Ltd.*, 707 F. Supp. 3d 900 (N.D. Cal. 2023) .......... 14

*Hilario v. Allstate Ins. Co.*, 2020 WL 7643233 (N.D. Cal. Dec. 23, 2020) .......... 22

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) .......... 12

*Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) .......... 23

*Keilholtz v. Lennox Health Prods. Inc.*, 2009 WL 2905960 (N.D. Cal. Sept. 8, 2009) .......... 19

*Krouch v. Wal-Mart Stores, Inc.*, 2014 WL 5463333 (N.D. Cal. Oct. 28, 2014) .......... 12

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011) .......... 12

*Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) .......... 24

*Lepkowski v. CamelBak Prods., LLC*, 2019 WL 6771785 (N.D. Cal. Dec. 12, 2019) .......... 24

*Linton v. Axcess Fin. Servs., Inc.*, 2023 WL 4297568 (N.D. Cal. June 30, 2023) ........................ 24

*Luman v. Theismann*, 647 F. App'x 804 (9th Cir. 2016) ........................................................... 24

*Miller v. Bechtel Corp.*, 33 Cal.3d 868 (1983) ........................................................................ 21

*Murthy v. Missouri*, 144 S.Ct. 1972 (2024) ............................................................................. 23

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) ....................... 11

*Norgart v. Upjohn Co.*, 21 Cal.4th 383 (1999) ........................................................................ 20

*O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139 (9th Cir. 2002) .............................................. 20

*Oracle America, Inc. v. Hewlett Packard Enterprise Co.*, 971 F.3d 1042 (9th Cir. 2020) .......21-22

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ................................................................................ 23

*Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900 (N.D. Cal. 2011) ............................................... 22

*Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583 (2008) .................................................. 12

*Phillips v. U.S. Customs and Border Prot.*, 74 F.4th 986 (9th Cir. 2023) .................................. 23

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049 (9th Cir. 2008) ......................... 20, 21

*Plumlee v. Pfizer, Inc.*, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ......................................... 21

*Pope v. United States*, 2015 WL 1743462 (N.D. Cal. Apr. 16, 2015) ......................................... 15

*Portnoy v. City of Woodland*, 2013 WL 2156560 (E.D. Cal. May 17, 2013) ............................. 14

*Rabin v. Google LLC*, 2024 WL 1269313 (N.D. Cal. Mar. 26, 2024) ......................................... 23

*Rahman v. Mott's LLP*, 2014 WL 325241 (N.D. Cal. Jan. 29, 2014) ......................................... 24

*Romero v. HP, Inc.*, 2017 WL 386237 (N.D. Cal. Jan. 27, 2017) .............................................. 24

*San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 358 F. App'x 793 (9th Cir. 2009) ........ 12

*Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787 (N.D. Cal. 2019) .................................................... 24

*Shield v. Otter Products, LLC*, 680 F. App'x 560 (9th Cir. 2017) .............................................. 14

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................................ 23

*Stover v. Experian Holdings, Inc.*, 978 F.3d 1082 (9th Cir. 2020) ............................................. 24

*Taylor v. Bosco Credit, LLC*, 2019 WL 3555304 (N.D. Cal. Aug. 5, 2019) ............................... 12

*Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216 (9th Cir. 1995) .......................................... 11

*Tseng v. PeopleConnect, Inc.*, 665 F. Supp. 3d 1136 (N.D. Cal. 2023) .......... 22

*Zamudio-Soto v. Bayer Healthcare Pharms. Inc.*, 2017 WL 386375 (N.D. Cal. Jan. 27, 2017) .......... 21

## STATUTES AND RULES

Cal. Bus. & Prof. Code § 17204 .......... 11

Cal. Civ. Code § 1789.21(a) .......... 11

Cal. Code Civ. Proc. § 338(a) .......... 19

Cal. Fin. Code § 22305 .......... 16-17, 19

Cal. Fin. Code § 22307(a) .......... 18, 19

Cal. Fin. Code § 22400 .......... 18, 19

Cal. Fin. Code § 22250(b) .......... 17, 18

California Credit Services Act ("CSA") .......... *passim*

California Unfair Competition Law ("UCL") .......... *passim*

Consumer Legal Remedies Act ("CLRA") .......... 10

Federal Rule of Civil Procedure 56 .......... 1, 10

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on October 31, 2024 at 10 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Jacqueline Scott Corley, located at 450 Golden Gate Avenue, 19th Floor, Courtroom 8, San Francisco, California, 94102, Defendants, GREENSKY, LLC; GREENSKY OF GEORGIA, LLC; and GREENSKY HOLDINGS, LLC (successor-in-interest to GREENSKY, INC.) (collectively, "GreenSky"), will and hereby do move, under Federal Rule of Civil Procedure 56, for summary judgment on all claims asserted by the named Plaintiffs, Heidi Barnes and David Ferguson. This Motion is based on this Notice of Motion, the Statement of Issues to Be Decided, the Memorandum of Points and Authorities below, the Proposed Order filed herewith, any reply GreenSky may submit, oral argument of counsel, the complete files and records in this case, and such additional matters as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

(1) Whether GreenSky is entitled to summary judgment on each of Plaintiffs' claims under California's Credit Services Act ("CSA") and California's Unfair Competition law ("UCL") and for unjust enrichment where Plaintiffs have failed to adduce any evidence to show that (a) their GreenSky Program merchants passed through to them any portion of the "transaction fee" the merchants paid GreenSky related to Plaintiffs' loans, or (ii) they paid any part of an "incentive payment" that Program banks paid to GreenSky pursuant to negotiated contracts between GreenSky and those lenders;

(2) Whether, in the alternative:

a. Summary judgment should be entered on Plaintiffs' UCL claims regarding "fee caps" and "rebates";

b. Summary judgment should be entered as to Plaintiff Heidi Barnes' claims under the CSA and for unjust enrichment as time-barred by the three-year statute of limitations;

c. Summary judgment should be entered against Plaintiff Heidi Barnes pursuant to the voluntary payment doctrine; and

(3) Whether summary judgment should be entered as to Plaintiffs' request for injunctive relief because Plaintiffs lack standing to obtain prospective injunctive relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

GreenSky is entitled to summary judgment on each of Plaintiffs' three remaining claims. Plaintiffs challenge certain aspects of the GreenSky Program® (the "GreenSky Program"),

In this case, the two remaining Plaintiffs, Heidi Barnes and David Ferguson, make two basic factual allegations: (1) their respective home improvement merchants passed through, or otherwise surcharged them, a portion of the "transaction fee" each merchant paid GreenSky related to their loans, and (2) any interest payments Plaintiffs made on their loans were funneled to GreenSky when the third-party banks made contractually required "incentive payments." Plaintiffs contend that either or both of these alleged actions caused them to pay more for their home improvement projects or their loans than they should have. Yet, over four years after this lawsuit was filed in January 2020, Plaintiffs admitted in sworn deposition testimony that they have no evidence to support those speculative allegations. These basic evidentiary failures warrant the entry of summary judgment in GreenSky's favor on all of Plaintiffs' remaining claims.

As a threshold matter, it is axiomatic that each of Plaintiffs' three remaining causes of action – alleged violations of California's Credit Services Act ("CSA") and California's Unfair Competition law ("UCL") and a claim for unjust enrichment – requires proof of actual injury. That means that Plaintiffs must prove their respective merchants passed through some portion of their transaction fee to them that increased the price of their home improvement projects, and that Plaintiffs must demonstrate GreenSky's alleged receipt of "incentive payments" – the negotiated product of individual commercial contracts between GreenSky and its Program lenders – somehow made Plaintiffs' loans more expensive.

Neither Plaintiff has made such a showing. Both Plaintiffs testified at deposition that they have no facts whatsoever to support their allegations regarding pass-through of transaction fees, nor have they produced any documentary evidence that their merchants passed through those fees to them. Likewise, Plaintiffs have adduced no evidence to support the assertion that they paid more on their loans because of any "incentive payments" that may have passed between their GreenSky Program lender and GreenSky under those entities' contracts (contracts to which Plaintiffs were not parties); indeed, Ferguson himself admitted that he has no claim under the "incentive payment" theory because he received the equivalent of an interest-free loan by paying off his loan within the "promotional period," which meant that any accrued interest was credited back to him upon his full repayment of his loan within that promotional period. This total failure of proof mandates the entry of summary judgment in GreenSky's favor on all three of Plaintiffs' remaining claims.

Plaintiffs' claims fail for other reasons as well, though the Court need not reach these other issues. The UCL claim fails to the extent it is premised on certain provisions of the California Financing Law because, among other reasons, those provisions did not apply to Plaintiffs' loans as a matter of law. Moreover, summary judgment should be granted on Barnes' claims because the three-year statute of limitations bars her claims for unjust enrichment and CSA violations, and the voluntary payment doctrine bars all of her claims after the date she allegedly discovered the events that give rise to her claims.

Finally, the Court should grant summary judgment as to Plaintiffs' request for injunctive relief. Neither Plaintiff has standing to pursue forward-looking injunctive relief because they admitted in sworn testimony that they have no present or immediate intention to obtain another loan through the GreenSky Program.

Plaintiffs have had more than sufficient opportunities to support their claims. Four-and-a-half years of litigation, over 700,000 documents and ESI produced in this case and the parallel *Wright* case in the Southern District of Florida, and multiple depositions of GreenSky and its representatives in this and the *Wright* case have given Plaintiffs abundant time and opportunity to support their allegations. They have utterly failed to do so. Accordingly, and as further discussed

herein, GreenSky respectfully requests that the Court enter full and final summary judgment in its favor and dismiss this lawsuit.

## STATEMENT OF FACTS

### I. THE GREENSKY PROGRAM

#### A. GreenSky's Platform and Patented Technology

[redacted]

---

[1] The parties have agreed that discovery and depositions from *Wright* may be used in this case.

4

DEF. NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT (NO. 3:20-CV-01693-JSC)



terms

**B. Transaction Fees and Incentive Payments**

Under the merchant agreement, GreenSky Program merchants are prohibited from surcharging or otherwise "passing through" to their customers any or all of the transaction fee they pay on a loan. ( ECF 241-30, §§ 2(b)(v), 5(b).) The transaction fee "

## II.   THE NAMED PLAINTIFFS

### A. Ferguson's Six-Week, Net Interest-Free Loan in 2018

In September 2018, a representative of Peter Levi Plumbing ("Levi Plumbing") inspected the furnace at Plaintiff Ferguson's home and advised him that it needed repairs, the cost of which would be $1,791. (ECF 216, ¶ 83; ECF 241-55 (Ferguson Dep.), 54:5-15, 61:20-24.) Ferguson was unable to pay for the repairs in cash at that time; thus, Levi Plumbing mentioned the GreenSky Program as a financing option for the repairs. (ECF 241-55 (Ferguson Dep.), 56:2-3, 19-57:1, 58:5-7, 60:8-11.) Because Ferguson was "concerned about interest," he was told that he could obtain a loan, "pay it off early," and avoid interest payments. (*Id.*, 59:10-14.) Therefore, the Levi Plumbing representative chose a plan from the GreenSky Program that contained a six-month "promotional period," in which interest on the loan would accrue during the promotional period but would be credited back to Ferguson if he paid off the loan before the expiration of the six-month period. (*Id.*, 99:18-100:1.) Ferguson had the opportunity to seek alternative financing for the repair but did not inquire with Levi Plumbing about other options. (*Id.*, 207:8-12, 233:11-15.)

Ferguson gave information to Levi Plumbing, which input it onto an iPad for Ferguson, told him "right away" that he was approved for a loan through the GreenSky Program (*id.*, 74:22-75:4), and, upon Ferguson's authorization, performed the furnace repairs. (*Id.*, 66:7-8, 104:24-105:1.) That same day, Ferguson received an email from GreenSky containing a link to access his Loan Agreement from Synovus Bank, which he clicked to obtain those documents. (*Id.*, 78:1-18; ECF 243-2.) Ferguson understood that Levi Plumbing was charged a transaction fee related to his loan, but he did not ask any questions about it, nor was he denied the opportunity to do so. (ECF 241-55 (Ferguson Dep.), 122:8-13, 124:1-6, 199:22-25, 200:7-9.)

Ferguson intended to pay off the loan as soon as possible. (*Id.*, 100:11-16.) Therefore, he made a payment of $1,000 in early October 2018 and a second – and final – payment of $791 in early November. (*Id.*, 147:7-14, 148:1-10.) Ferguson thus agreed that his "entire relationship" with GreenSky "lasted about six weeks in the fall of 2018." (*Id.*, 156:24-157:3.)

While the Complaint alleges that Levi Plumbing paid a transaction fee of $107.79 on Ferguson's loan (ECF 216, ¶ 85), Ferguson admitted that he has no evidence that he paid that amount as part of his $1,791 project cost. (ECF 241-55 (Ferguson Dep.), 202:17-23.) Asked whether knowing the amount (if any) of Levi Plumbing's merchant fee related to his loan would have made a difference in whether to obtain the loan, Ferguson admitted, "I don't know." (*Id.*, 172:2-5.) Regardless, he has no evidence that he paid any part of the transaction fee Levi Plumbing paid to GreenSky related to his loan (*id.*, 173:20-25, 174:24), or that the transaction fee Levi Plumbing paid related to his loan derived from any payment Ferguson made on that loan. (*Id.*, 217:10-14.) Asked how much he believed he was overcharged, Ferguson responded, "I really have no idea." (*Id.*, 35:1.) Nor does he have any facts to support his belief that he was "overcharged." (*Id.*, 36:12-15, 249:9-16.) Acknowledging his Loan Agreement's provision that Levi Plumbing was paying transaction fees and was *prohibited* from surcharging any of those fees to him Ferguson admitted, "I don't have any facts" to support a belief that Levi Plumbing passed on to Ferguson any amount of its transaction fees. (*Id.*, 122:3-13, 124:13-21.)

In short, Ferguson agreed that he paid exactly $1,791, the quoted cost of the furnace repair, and "not a penny more." (*Id.*, 157:4-11.) Ferguson, therefore, agreed that he "received the equivalent of an interest-free loan through the GreenSky Program." (*Id.*, 181:7-17.) Moreover, he agreed that his loan "wasn't bad or unfair" to him. (*Id.*, 180:14-15, 19, 23.) Likewise, Ferguson agreed that allegations concerning incentive payments do not apply to him because he paid no interest on his loan. (*Id.*, 179:17-20.) Ferguson testified that "financially, I was not harmed directly." (*Id.*, 282:22-23.) And when asked, "you have no facts in your possession to say that you were actually damaged in – in the amount of an extra payment or further and surcharged payments on your loan, correct?", Ferguson replied, "For an extra payment today, no." (*Id.*, 283:9-14.)

Ferguson has no plans in 2024 to undertake any further home improvements. (*Id.*, 68:17-21, 214:4-7.) Ferguson's Loan Agreement contained an arbitration provision (ECF 58-1, pp.37-38, ¶ 25), and he admits he did not opt out of the arbitration provision within the time required. (ECF 241-55 (Ferguson Dep.),135:4-25.)

**B. Barnes' 2016 GreenSky Program Loan**

Barnes moved into her home in 2016 and, soon thereafter, representatives of Reliable Home Improvement ("Reliable") conducted door-to-door marketing soliciting their services. (ECF 241-54 (Barnes Dep.), 49:23-25, 50:16-20.) Barnes took a flyer as she was interested in building a patio at her home. (*Id.*, 50:9-15, 51:10, 52:3-6.) A person from Reliable visited her, estimated the patio cost to be $12,707, and told Barnes that GreenSky could "help finance the project." (*Id.*, 53:5-6, 20-21.) Even though Barnes originally intended to pay for the project in cash, she changed her mind after she "was given the terms of the loan, with the 6.99 percent interest" and "interest-only payments for the first five months, [which] seemed like a pretty good deal." (*Id.*, 54:6-8, 14-19.) She added that the "interest rate today is a good rate." (*Id.*, 57:24.) Once she was quoted the loan terms, Barnes did not ask about the availability of financing outside the GreenSky Program, nor did she research the GreenSky Program. (*Id.*, 55:9-11, 59:2-7.) She agreed that her decision to finance the project instead of paying for it in cash "did not increase the cost of the project." (*Id.*, 64:14-20.)

Barnes obtained a loan through the GreenSky Program from Intrust Bank in the amount of $7,500 with a five-month interest-free period at 6.99% APR, for a duration of ten years. (ECF 57-1, p.3.) Barnes, a loan officer by trade, expressed her belief in the fairness of her interest rate multiple times in her deposition. (ECF 241-54 (Barnes Dep.), 192:10-11 ("I don't think the interest rate is too high. It's a good interest rate."); *id.*, 230:6 ("[I]t's a great interest rate.").) She did not compare her loan's interest rate to those of other lenders. (*Id.*, 197:13.) Barnes agreed to the loan's terms by electronically signing the Reliable representative's device. (*Id.*, 207:12-17.) She paid the remaining project cost herself. (*Id.*, 70:3-7, 77:8-10.)

While Barnes admits receiving the Loan Agreement 10-12 days after the September 6, 2016, date of the accompanying cover letter (*id.*, 262:9-12), she testified that she never read the Loan Agreement until allegedly learning of this lawsuit in early 2020. (*Id.*, 114:2-7.) She admitted that nothing "prevented" her in 2016 from "asking Reliable" about "any portion of the Loan Agreement," including asking whether "you're not surcharging me, are you, because you're not supposed to, according to the Loan Agreement." (*Id.*, 263:24-264:5 ("I could have.").)

As Barnes confirmed multiple times in her deposition, she has no facts to support her

allegation that Reliable passed through any part of its transaction fee to her. (*Id.*, 121:22-23 ("I don't personally have any documentation for that."), 122:6-8 ("Q. But you haven't seen anything today; correct? A. You are correct."), 153:2-12 ("Q. My question is: Do you have any facts, whether on a document or otherwise, that would support your belief that Reliable Home Improvement surcharged you for some or all of the cost of its merchant fee that was required, if any, to pay to GreenSky? . . . THE WITNESS: I personally do not have any of that information."), 178:21-25 ("Q. And, as we sit here today, you don't have any facts in your possession that would prove the allegation that you were surcharged for any portion of your loan; correct? A. I personally do not."), 277:24-278:8 ("Q. And as we discussed today, you personally have no facts, sitting here today, to support the allegations that the merchant fees are derived from any payment made by you on your loan; correct? . . . THE WITNESS: I have not personally seen any documentation . . . on that.").) Thus, as she testified, "Regarding the merchant fee, I don't have any documentation supporting that . . . the merchant fee was passed on to the consumer." (*Id.*, 185:12-17.)

Similarly, Barnes has no knowledge as to whether Reliable's "merchant fee was affected by the ultimate amount of what [she was] approved for versus what [she] applied for." (*Id.*, 223:16-19.) Similarly, she does not know if she paid a "higher project cost" because of alleged pass-through of transaction fees. (*Id.*, 182:1-23.) Nor does she have any information that Reliable even paid a transaction fee to GreenSky related to her loan. (*Id.*, 151:16-19.) As to incentive payments, Barnes has no facts that any interest she has paid on her loan was "an illegal assessment of interest." (*Id.*, 279:6-10.) She cannot identify any item of damage she has incurred regarding the "allegation that [she has] paid more in connection with" her loan. (*Id.*, 301:8-14.)

Even after learning of GreenSky's alleged conduct that forms the basis for her Complaint, Barnes "still made payments" on the loan until the payments were frozen as a result of this litigation. (*Id.*, 271:25-272:4, 273:13-18.) Barnes never contacted GreenSky to express a belief that she had been overpaying on her loan. (*Id.*, 272:5-9.) To the extent Barnes undertakes any home improvement projects in the future, she intends to pay for those projects in cash. (*Id.*, 232:1-3.)

**RELEVANT PROCEDURAL HISTORY**

This lawsuit was originally filed in state court in January 2020 and removed to this Court by GreenSky in March 2020. (ECF 1, 1-1.) Plaintiffs Ferguson and Barnes were added to the case via the first amended complaint filed in September 2020. (ECF 52.) That complaint asserted claims under the UCL, the Credit Services Act, the Consumer Legal Remedies Act ("CLRA"), and for unjust enrichment. (ECF 52, ¶¶ 116-153.) GreenSky moved for partial dismissal of Barnes' claims based on the statute of limitations in October 2020. (ECF 57.) The Court granted that motion, dismissing each of Barnes' claims that were subject to a three-year statute of limitations. (ECF 92 at 6.) Barnes and the other Plaintiffs filed a second amended complaint in April 2021. (ECF 95.) In October 2023, GreenSky moved for partial judgment on the pleadings. (ECF 205, 206.) The Court granted that motion in part, dismissing Plaintiffs' claim under the CLRA with prejudice and dismissing Ferguson's request for injunctive relief without prejudice. (ECF 212 at 15.)

Plaintiffs filed the operative Complaint, the Third Amended Complaint (hereinafter "Complaint"), in January 2024. (ECF 216.) The Complaint contains claims for violations of the CSA and the UCL, seeks recovery for unjust enrichment, and requests both monetary and injunctive relief for the two Plaintiffs and on behalf of a proposed class. (*Id.*, ¶¶ 102-129; *id.* at 23-24.) Plaintiffs moved for class certification on May 23, 2024 (ECF 241), which GreenSky opposed in papers filed on July 22, 2024. (ECF 243.) GreenSky now files this motion for summary judgment seeking dismissal, with prejudice, of Plaintiffs' individual claims.

**ARGUMENT**

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Cooper v. United Air Lines, Inc.*, 582 F. Supp. 3d 1084, 1095 (N.D. Cal. 2015) (Corley, M.J.) (quoting Fed. R. Civ. Proc. 56(a)). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and an issue is genuine if 'a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "[t]here can be 'no genuine issue as to any material fact' when the moving party shows 'a complete failure of proof concerning an essential element of the nonmoving party's

case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "On those claims on which Defendant does not carry the ultimate burden of persuasion . . ., Defendant, as the moving party, has the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing that Plaintiff cannot produce evidence sufficient to satisfy her burden of proof at trial." *Id.* (citing *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). "Once Defendant meets that burden, Plaintiff, as the non-moving party, must show that a material factual dispute exists." *Id.* (citing *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998)). "Allegations alone are not sufficient to meet Plaintiff's burden; instead, Plaintiff must submit admissible evidence," which "must be such that a reasonable trier of fact could return a verdict in Plaintiff's favor." *Id.* (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995)).

## I. GREENSKY IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF PLAINTIFFS' CLAIMS FOR MONETARY RELIEF.

The critical – and dispositive – issue is straightforward. Each of Plaintiffs' claims requires proof of actual injury. After four-and-a-half years of litigation, Plaintiffs have failed to produce any evidence that they were actually injured under their two core theories of "transaction fees" and "incentive payments." Consequently, GreenSky is entitled to summary judgment on Plaintiffs' claims for monetary relief.

### A. Each of Plaintiffs' Claims Requires Proof of Injury.

Each of Plaintiffs' claims requires them to prove economic harm. First, the plain language of the CSA requires a plaintiff to have been "injured by" the purported CSA violation before the plaintiff may obtain "damages[] or . . . injunctive relief," and that statute limits any recovery to "actual damages." Cal. Civ. Code § 1789.21(a). Accordingly, there is no question that the CSA claim requires proof of actual harm.

Second, the UCL requires a named plaintiff to "ha[ve] suffered injury in fact and to ha[ve] lost money or property" in order to seek a remedy under "this chapter," whether that remedy consists of disgorgement or injunctive relief under § 17203. Cal. Bus. & Prof. Code § 17204. As this Court has summarized:

> To have standing to bring suit pursuant to § 17200, a plaintiff must "make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition." *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1590 (2008). The UCL's "'lost money or property' requirement ... requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 320 (2011)).

*Taylor v. Bosco Credit, LLC*, 2019 WL 3555304, *3 (N.D. Cal. Aug. 5, 2019) (Corley, M.J.). "Thus, the "core inquiry is whether the plaintiff has suffered '*economic injury* ... *caused by* ... the unfair ... practice ... that is the gravamen of the claim.'" *California Medical Assn. v. Aetna Health of California Inc.*, 14 Cal.5th 1075, 1086 (2023) (emphasis and ellipses by *CMA*) (quoting *Kwikset*, 51 Cal.4th at 322).

Third, a "cause of action for unjust enrichment" "requires a finding that the claimant suffered a loss." *Krouch v. Wal-Mart Stores, Inc.*, 2014 WL 5463333, *5 (N.D. Cal. Oct. 28, 2014) (Gonzalez Rogers, J.) (granting summary judgment on unjust enrichment claim); *see also San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 358 F. App'x 793, 795 (9th Cir. 2009) (affirming summary judgment and holding plaintiff's "unjust enrichment claim fails for want of a loss"); *Peterson*, 164 Cal.App.4th at 1594 (plaintiffs must "allege an[] actual injury to bring an unjust enrichment claim"). There can be no dispute that Plaintiffs must prove an actual injury to prevail on each of their three claims.

**B. Plaintiffs Cannot Prove Any Injury Under Either the "Transaction Fee" Theory or the "Incentive Payment" Theory.**

**1. Plaintiffs Admitted under Oath That They Have No Proof that They Paid Any Portion of Their Merchants' Transaction Fees.**

As detailed in the Statement of Facts section, neither Plaintiff has any evidence that they paid any portion of the transaction fees their merchant paid GreenSky related to their loans. As detailed above, Barnes confirmed multiple times in her deposition that she has no facts to support her allegation that her merchant, Reliable, passed through any part of its transaction fee to her. (ECF 241-54 (Barnes Dep.), 119:20-120:4, 22-23, 122:6-8, 153:2-12, 178:21-25, 277:24-278:8.) Indeed, she testified that she has no information "[t]hat the merchant fee was passed on" to her. (*Id.*, 185:12-17.) Likewise, she has no knowledge as to whether Reliable's "merchant fee was

affected by the ultimate amount of what [she was] approved for versus what [she] applied for." (*Id.*, 223:16-19.) Similarly, she does not know if she paid a "higher project cost" because of an alleged pass-through of transaction fees. (*Id.*, 182:1-23.) Simply stated, Barnes has no facts to support her allegation that she paid any portion of a transaction fee Reliable paid GreenSky related to her loan.

Likewise, Ferguson has no facts to support his transaction-fee "pass through" allegations. He admitted that he has no evidence that he paid any part of the transaction fee Levi Plumbing paid to GreenSky related to his loan (ECF 241-55 (Ferguson Dep.), 173:20-25, 174:24), or that the transaction fee Levi Plumbing paid on his loan derived from any payment Ferguson made on that loan. (*Id.*, 217:10-14.) Ferguson testified, "I really have no idea." how much he believes he was overcharged; nor does he have any facts to support his belief that he was "overcharged." (*Id.*, 35:1, 36:12-15, 249:9-16.) Acknowledging that his Loan Agreement contained a provision that Levi Plumbing was paying transaction fees and was prohibited from surcharging any of those fees to him, Ferguson admitted, "I don't have any facts" to support a belief that Levi Plumbing passed on to him any amount of its transaction fees. (*Id.*, 122:3-13, 124:13-21.) Ferguson agreed that he paid $1,791, the quoted cost of the furnace repair, and "not a penny more" (*id.*, 157:4-11), and he agreed that his loan "wasn't bad or unfair" to him. (*Id.*, 180:14-15, 19, 23.) In short, Ferguson testified that "financially, I was not harmed directly." (*Id.*, 282:22-23.) Likewise, he agreed with the proposition that he has "no facts" to support his allegation that "you were actually damaged in – in the amount of an extra payment or further and surcharged payments on your loan." (*Id.*, 283:9-14.)[2]

[2] In an effort to compensate for their total lack of evidence to support their basic "transaction fee" and "incentive payment" allegations, Plaintiffs retained an economist

The bottom line is that neither Ferguson nor Barnes has raised an issue of material fact as to whether their merchants surcharged, or passed through, any portion of a transaction fee to them. Without such facts, they cannot establish the required element of actual injury, or standing, to recover for alleged violations of the CFA and UCL and for unjust enrichment. Such a "failure of proof entitles [GreenSky] to summary judgment." *Shield v. Otter Products, LLC*, 680 F. App'x 560, 563 (9th Cir. 2017); *see also Portnoy v. City of Woodland*, 2013 WL 2156560, *20 (E.D. Cal. May 17, 2013) ("Such a complete failure of proof renders all other facts immaterial, and entitles the [defendant] to summary judgment on plaintiff's . . . claims."); *see generally Emerson Equity, LLC v. Forge Underwriting Ltd.*, 707 F. Supp. 3d 900, 904-05 (N.D. Cal. 2023) (Gilliam, J.) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.") (quoting *Celotex*, 477 U.S. at 322–23).

**2. Plaintiffs Have No Evidence That They Paid More on Their Loans Because of Any Incentive Payments Made by Program Lenders to GreenSky.**

**a. Ferguson Admits That Because He Did Not Pay Interest on His Loan, He Could Not Possibly Have Been Harmed by Incentive Payments.**

Ferguson plainly has no claims relating to incentive payments because *he did not pay interest* on his loan. (*See, e.g.*, ECF 241-55 (Ferguson Dep.), 179:14:16 ("Q. You didn't pay any interest, though, correct? A. I did not.").) As discussed above, incentive payments [REDACTED] Thus, any borrower, such as Ferguson, who does not pay interest or other fees does not, by definition, pay any money that could possibly contribute to any incentive payment ultimately received by GreenSky. Having contributed no money to any incentive payment, Ferguson could not possibly have been harmed by incentive payments and thus has no claim relating to incentive payments under the CSA or the UCL, or for unjust enrichment.

Plaintiffs appear to concede as much. Plaintiffs acknowledge, as they must, that Ferguson did not pay interest or any other finance charge or fees on his loan, and Ferguson agrees that he

---

[REDACTED]

lacks even hypothetical injury relating to incentive payments. (*See* ECF 241-55 (Ferguson Dep.), 179:14-20 ("Q. You didn't pay any interest, though, correct? A. I did not. Q. So 'incentive payments' seemingly would not apply to your specific circumstances, would they? A. Not to my circumstances.").) Given Ferguson's admission and, therefore, the total absence of any genuine dispute of material fact on this point, GreenSky is entitled to summary judgment on Ferguson's claims as they relate to incentive payments. *See Pope v. United States*, 2015 WL 1743462, *4 (N.D. Cal. Apr. 16, 2015) (Freeman, J.) (where "Plaintiff's uncontroverted admissions establish that Defendant . . . did not cause her any injury that resulted in damages, Defendant is entitled to summary judgment").

**b. Barnes Has No Evidence She Was Injured by Incentive Payments.**

While Barnes has paid interest on her loan, she has no evidence whatsoever that she sustained any harm as a result of any incentive payments GreenSky may have received on any portfolio of loans that included her loan. For Barnes to have been injured by incentive payments, she necessarily must prove that she paid more for her loan – i.e., paid a higher interest rate – than she would have absent the incentive payments. And that is Plaintiffs' theory as pled; they allege that borrowers such as Barnes pay more as result of incentive payments because incentive payments allegedly "incentivize" GreenSky "to generate higher APRs [annual percentage rates] on a portfolio-wide basis than the banks would otherwise be willing to receive." (ECF 216, ¶ 45.) But Barnes has admitted that she has *no evidence* to support the proposition that she paid a higher interest rate on her GreenSky Program loan than if she had obtained her loan elsewhere:

> Q. Now, so the—your APR, as we know, is 6.99 percent; correct?
>
> A. Correct.
>
> Q. Do you have a present belief today that that rate is too high, based on the circumstances that you are alleging in the complaint? . . . .
>
> A. *I don't think the interest rate is too high. It's a good interest rate.*

(ECF 241-54 (Barnes Dep.), 192:1-11 (emphasis added).) Barnes hypothesized that "had I gone to InTrust [sic] Bank" – her GreenSky Program lender – "could I have gotten a better deal [than 6.99% APR]? Probably." (*Id.*, 194:15-16.) But when pressed on that conjecture, she admitted that she had no facts to support that hypothetical:

Q. First, you have no idea if you – if InTrust [sic] Bank offered a 6.49 percent APR on a $7,500 loan in 2016; correct?

A. Correct.

Q. So, again, you have no actual evidence to support the allegation for that hypothetical you just spun out; correct?

A. Correct.

(*Id.*, 194:22-195:3.)

Likewise, Barnes seemed to equate incentive payments to "rebate pricing," which, she said, is "a way for companies to make money by charging people higher interest rates," and she speculated that "if GreenSky is getting incentive pricing, they are acting more as a licensed broker, but they weren't licensed to do that." (*Id.*, 181:17-24.) Yet, when asked for "any facts to support that belief," Barnes admitted, "I don't have that information personally." (*Id.*, 181:24; *see also id.*, 279:6-10 ("Q. You have no facts or documents, sitting here today, that any interest you personally paid somehow was an illegal assessment of interest; correct? A. Correct.").) Thus, nothing in the record supports Barnes' unsubstantiated allegations and speculation regarding incentive payments.

Indeed, Barnes repeatedly characterized the interest rate on her GreenSky Program Loan as "good," "fair," and even "great." (*See id.*, 192:10-11 ("I don't think the interest rate is too high. It's a good interest rate."); 210:6-8 ("Q. And as you've said, you felt like the 6.99 percent APR was a fair APR; correct? A. Yes."); 230:6-7 ("I mean, it's a great interest rate. It beats paying 29.99 percent on a credit card.").)[3] Lacking any evidence to sustain their theory that Plaintiffs were injured by incentive payments, Plaintiffs' claims relating to such payments cannot survive summary judgment.

**C. Plaintiffs' UCL Claim Fails for Additional, Alternative Reasons.**

**1. Plaintiffs' UCL Claim Relating to Fee Caps Fails Because They Have No Evidence That They Paid Any Fee in Excess of an Applicable Cap.**

Plaintiffs cannot recover on their UCL claim that "GreenSky charges administrative fees in excess of $50 for loans of $2500 or less, and $75 for loans more than $2500, in violation of Cal.

[3] Furthermore, the report of Plaintiffs' proposed expert

Fin. Code § 22305." (ECF 216, ¶ 116(f); *see also id.*, ¶¶ 21, 448, 116(g).) Plaintiffs' theory appears to be that transaction fees paid by GreenSky Program merchants constitute "administrative fees," that Plaintiffs' merchants passed through a portion of their transaction fees to Plaintiffs, and that Plaintiffs thereby paid fees in excess of the statutory caps. Plaintiffs' allegations fail for multiple reasons, not the least of which is that GreenSky is not a lender and, therefore, does not make "loans of $2500 or less" or "loans [of] more than $2500."

Moreover, as noted, Plaintiffs have no evidence that their merchants passed through any portion of a transaction fee. Accordingly, Plaintiffs necessarily have no evidence that that they paid an amount in excess of an applicable cap.

Further, Barnes has no claim relating to fee caps as a matter of law because "Barnes . . . financed $7,500 through the GreenSky loan program," and the statute that imposes fee caps does not apply to loans of $5000 or more. *See* Cal. Fin. Code § 22250(b) ("The following sections do not apply to any loan of a bona fide principal amount of five thousand dollars ($5,000) or more . . . : Sections . . . 22305[] and 22306 . . . ."). Thus, Barnes' "fee cap" claim fails as a matter of law.

Finally, Ferguson has taken the position that if, contrary to the record (particularly his sworn testimony), Levi Plumbing passed through some portion of the applicable transaction fee to him, the amount passed through was less than $50. Ferguson alleges, and he testified, that "GreenSky received up to $107.79 of Ferguson's loan as a merchant fee." (ECF 216, ¶ 85; *see also* ECF 241-55 (Ferguson Dep.), 272:17-20 ("Q. . . . You don't have any facts to think it could possibly be more than $107.79 sitting here today, correct? A. Sitting here today, no.").) And Plaintiffs' expert

Ferguson thus is doubly barred from pursuing this claim: He has admitted that he has no evidence that a pass-through occurred in his transaction at all and, moreover, has made it clear that, regardless, any pass-through amount was less than $50.

**2. Plaintiffs' UCL Claim Relating to Rebates Fails Because the Statutory Rebate Provision Did Not Apply to Plaintiffs' Loans.**

Furthermore, Plaintiffs have no support for their claim under the UCL that "[d]espite precomputing its charges, GreenSky does not provide borrowers a rebate of the pro-rata portion of the precomputed charge when the loan contract is paid off in full, in violation of Cal. Fin. Code § 22400." (ECF 216, ¶ 116(h).) This claim should be dismissed for multiple reasons.

By way of background, the California Financing Law ("CFL") generally requires interest and certain other charges on a loan to be calculated as a percentage of the loan balance and paid in monthly installments as the loan is repaid and amortization occurs (i.e., the way loans typically work). *See* Cal. Fin. Code § 22307. The CFL provides, however, that in certain circumstances the lender and borrower alternatively can agree that the interest and charges that would be payable over the life of the loan instead shall be precomputed and included in the principal amount of the loan up front, with the borrower's subsequent payments on the loan reducing the principal balance dollar-for-dollar. *See id.* § 22400. Section 22400 provides that, in that situation, if the borrower pays off the loan early, the lender must provide a pro rata rebate of the precomputed interest and other charges. *See id.*

Plaintiffs have no claim under § 22400, even setting aside the undisputed (and dispositive) fact that GreenSky is not a lender and, therefore, could not possibly have failed to provide the rebate that a lender might owe. First, Barnes' transaction was not subject to § 22400 as a matter of law because the statute does not apply to loans of $5000 or more. *See* Cal. Fin. Code § 22250(b) ("The following sections do not apply to any loan of a bona fide principal amount of five thousand dollars ($5,000) or more . . . : Sections . . . 22400 . . . ."). Additionally, Barnes has no claim because a rebate is required only if "the loan is paid in full," *id.* § 22400(a)(2), and she has yet to repay her loan. Thus, Barnes has no claim under § 22400 for these basic reasons.

Second, Ferguson paid off his loan within the promotional period, and any accrued interest was credited back to him, as is undisputed. Therefore, he has no argument that he failed to receive a rebate of any amount due.

Third, Plaintiffs' loans were simply ordinary amortizing loans; they did not involve precomputed interest and, therefore, did not implicate § 22400. Further, to the extent Plaintiffs are suggesting that § 22400 requires rebates of transaction fees, such an argument is a non-starter because Plaintiffs have no evidence that they paid any portion of a transaction fee in the first place. And, in any event, Plaintiffs specifically allege (ECF 216, ¶ 116(f)), that transaction fees constitute "administrative fees" within the meaning of California Finance Code § 22305, and the CFL expressly permits charging up-front administrative fees under § 22305 with no obligation to provide a rebate if the borrower repays the loan early. *See* Cal. Fin. Code § 22307(a) ("Except as provided in Section 22305 and . . . Section 22400[], all charges on loans . . . shall be computed and paid only as a percentage each month . . . ."); *id.* § 22305 (permitting "contract[ing] for and receiving] an administrative fee, which shall be fully earned immediately upon making the loan"). For any or all of these reasons, Plaintiffs' UCL claim based on § 22400 should be dismissed.

### D. Alternatively, Barnes' Claims Are Barred by the Statute of Limitations and by the Voluntary Payment Doctrine.

While the Court need not reach the issue because Barnes has failed to prove any injury under either of Plaintiffs' core theories of "merchant fees" and "incentive payments," her claims should be dismissed, in whole or in part, on the alternative bases of the statute of limitations and the voluntary payment doctrine.

#### 1. The Three-Year Statute of Limitations Bars Barnes' Unjust Enrichment and CSA Claims.

Barnes' CSA and unjust enrichment claims are subject to dismissal under the three-year statutes of limitations that applies to each of those claims. *See* Cal. Code Civ. Proc. § 338(a) (three-year limitations period for "[a]n action upon a liability created by statute"); *Keilholtz v. Lennox Health Prods. Inc.*, 2009 WL 2905960, *3 (N.D. Cal. Sept. 8, 2009) (Wilken, J.) (three years for unjust enrichment). Indeed, this Court initially dismissed Barnes' CSA and unjust enrichment claims on this basis, *see Belyea v. Greensky, Inc.*, 2021 WL 1338549, **2-3 (N.D. Cal. Apr. 9, 2021) (Corley, M.J.). As such, there is no dispute that Barnes' CSA and unjust enrichment claims, filed more than three years after her 2016 transaction with Reliable, are facially time-barred.

Barnes' attempt to salvage her claims by invoking the discovery rule and fraudulent

concealment is unavailing. (ECF 216, ¶¶ 92-93.) "[A] plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999)). Once a plaintiff "has notice or information of circumstances to put a reasonable person on *inquiry* . . . he cannot wait for [the facts] to find him and sit on his rights; he must go find them himself if he can and file suit if he does." *Id.* (emphasis original; quoting *Norgart*); *see also O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147-48 (9th Cir. 2002) ("the [California] standard for determining when a plaintiff is on inquiry notice . . . is fundamentally distinct from the federal standard," in that "[t]he California Supreme Court [has] disapproved an interpretation of the discovery rule that requires . . . a plaintiff [to] do more than suspect a factual basis for the elements of a cause of action").

Barnes argues that the statute of limitations for her CSA and unjust enrichment claims did not begin to run until January 2020 when she allegedly discovered GreenSky's alleged conduct involving the Loan Agreement at the time this lawsuit was filed. (ECF 241-54 (Barnes Dep.), 262:9-12.)  But her allegedly delayed discovery occurred because she did not thoroughly read or ask questions about her Loan Agreement until she happened to learn about the lawsuit—*i.e.*, until the so-called facts "found her." (*Id.*, 262:9-12, 262:22-23.) Had she read her Loan Agreement when she received it in September 2016, she would have seen that it expressly disclosed to her that "[y]our Merchant/Provider pays transaction fees as a result of your use of the . . . Loan." (ECF 241-9 [Ex. 5-A, Barnes Loan Agmt.], ¶ 23.) Barnes at that point could have asked questions about the transaction fee and the potential for a pass-through, an opportunity she admitted at deposition she had but did not take. (ECF 241-54 (Barnes Dep.), 263:24-264:5 ("I could have.").) For that matter, Barnes at that point could have just filed the claims she ultimately did file. She did not need to wait to develop evidence that a pass-through actually occurred in her transaction with Reliable in order to file those claims; she has *never* had such evidence, and still does not have it, but that did not deter her from suing GreenSky.

Barnes is not entitled to claim ignorance of facts that she could have ascertained from the

time she received the Loan Agreement in 2016. The terms and conditions surrounding the Loan Agreement were neither secret nor inherently undiscoverable. *See Miller v. Bechtel Corp.*, 33 Cal.3d 868, 875 (1983) ("[Plaintiff] had a duty to investigate further, and she was charged with knowledge of matters which would have been revealed by such an investigation."); *see also Aluminicaste Fundicion De Mex. S. De RL CV v. Shen*, 2017 WL 4326369, *5 (C.D. Cal. Sept. 25, 2017) (same). Barnes admits that she received the Loan Agreement mere days after obtaining her GreenSky Program loan in 2016, but she simply chose not to read the Agreement  b

until she supposedly found out about this lawsuit in early 2020. (*Id.*, 262:9-12, 262:22-23, 114:2-7.)

Barnes also admitted that nothing "prevented" her in 2016 from "asking Reliable" about "any portion of the Loan Agreement," including inquiring as to whether she was being "surcharged for merchant fees." (*Id.* 263:24-264:5.) She admitted that she could have researched the GreenSky Program, but she chose not to. (*Id.* 59:2-59:7.) The fact that Barnes could have exercised due diligence such as reviewing the terms and conditions of the Loan Agreement, obtaining additional information and asking questions regarding the terms and conditions of the Loan Agreement, or reasonably investigating the terms and conditions of the Loan Agreement, in order to discover the alleged acts and omissions of GreenSky involving the Loan Agreement and understand precisely the same, means that the discovery rule does not apply and Barnes' CSA and unjust enrichment claims are time-barred. *See, e.g.*, *Zamudio-Soto v. Bayer Healthcare Pharms. Inc.*, 2017 WL 386375, *11 (N.D. Cal. Jan. 27, 2017) (Koh. J.) (granting summary judgment, rejecting delayed discovery rule); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, *9 (N.D. Cal. Feb. 21, 2014) (Koh, J.) (plaintiff may only benefit from the discovery rule when she can show she acted reasonably and diligently), *aff'd*, 664 F. App'x 651, 2016 WL 6610223 (9th Cir. 2016).

"A close cousin of the discovery rule is the well accepted principle of fraudulent concealment." *Platt Elec. Supply*, 522 F.3d at 1055 (quoting *Bernson v. Browning–Ferris Indus. of Cal., Inc.*, 7 Cal.4th 926, 931 (1994)). "A plaintiff relying on this [fraudulent concealment] doctrine to toll the limitations period must show both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of

the existence of his cause of action." *Oracle America, Inc. v. Hewlett Packard Enterprise Co.*, 971 F.3d 1042, 1048 (9th Cir. 2020) (quotations omitted). Here, Barnes has admitted that she has no facts to demonstrate that GreenSky made any misrepresentation to her on any subject:

> Q. Can you identify for me any materially false and misleading statement that you believe GreenSky made to you personally? [*objection excised*]
>
> THE WITNESS: I can't think of anything at this time.
>
> * * * * * *
>
> Q. . . .Do you still have no knowledge of a false and -- what you would consider to be a false and misleading representation made by GreenSky to you personally; correct? [*objection excised*]
>
> THE WITNESS: Correct.

(ECF 241-54 (Barnes Dep.), 311:17-23).) The law is clear that "when a plaintiff alleges the fraudulent concealment of a cause of action, the same pleading and proof is required as in fraud cases: the plaintiff must show (1) the substantive elements of fraud, and (2) an excuse for late discovery of the facts." *Tseng v. PeopleConnect, Inc.*, 665 F. Supp. 3d 1136, 1149 (N.D. Cal. 2023) (Chen, J.) (quotations omitted) (granting summary judgment on unjust enrichment, rejecting fraudulent concealment tolling). Because Barnes has admitted she has no facts to support a fraud claim against GreenSky (further evidenced by the fact that the Complaint does not contain a fraud cause of action), her assertion that her CSA and unjust enrichment claims are saved by fraudulent concealment tolling necessarily fails.

**2. Barnes' Claims Are Barred by the Voluntary Payment Doctrine.**

"The voluntary payment doctrine bars the recovery of money that was voluntarily paid with full knowledge of the facts." *Hilario v. Allstate Ins. Co.*, 2020 WL 7643233, *6 (N.D. Cal. Dec. 23, 2020) (Orrick, J.) (quoting *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908-09 (N.D. Cal. 2011) (Alsup, J.)). Here, Barnes claims that she "began making monthly payments on her loan on November 13, 2016." (ECF 216, ¶ 79.) Then, after she supposedly discovered the alleged violations by GreenSky in February 2020, she "still made payments" on the loan under the Loan Agreement for approximately two-and-a-half years. (ECF 241-54 (Barnes Dep.), 271:25-272:4, 273:13-18.) She never contacted GreenSky to express a belief that she had been overpaying or

should not be paying on her loan (i.e., complain that the payments were illegal or that there was no liability to pay in the first instance). (*Id.*, 263:24-264:6, 272:5-9, 272:16-22.)  Therefore, the voluntary payment doctrine bars Barnes from recovering the payments she knowingly and voluntarily paid after supposedly discovering GreenSky's alleged acts and omissions. *See Rabin v. Google LLC*, 2024 WL 1269313, *2 (N.D. Cal. Mar. 26, 2024) ("[A] payment voluntarily made with knowledge of the facts affords no ground for an action to recover it back.") (quoting *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961)).

## II.    GREENSKY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF.

Finally, GreenSky is entitled to summary judgment on Plaintiffs' request for injunctive relief on the basis that they lack standing to obtain such relief. As noted above, both the CSA and the UCL require Plaintiffs to have suffered actual injury in order to seek injunctive relief, and they have no evidence of any such injury. Further, as this Court has held, "[t]o establish standing for prospective injunctive relief, a plaintiff must demonstrate that 'he has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with "a sufficient likelihood that he will again be wronged in a similar way."'" *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, *3 (N.D. Cal. Dec. 10, 2013) (Corley, M.J.) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (additional quotations omitted). As this Court held in *Jou*, a plaintiff "must establish a 'real and immediate threat of repeated injury.'" *Id.*, *4 (quoting *Bates*, 511 F.3d at 985). "To the extent a plaintiff seeks relief for a possible future injury, that injury must be certainly impending," or "there must be a substantial risk that the harm will occur." *Phillips v. U.S. Customs and Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023) (quotations omitted); *see also Murthy v. Missouri*, 144 S.Ct. 1972, 1986 (2024) ("[B]ecause the plaintiffs request forward-looking relief, they must face 'a real and immediate threat of repeated injury.'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).[4]

---

[4] Of course, "Article III standing requires a concrete injury even in the context of a statutory violation." *Phillips*, 74 F.4th at 991 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

Neither Plaintiff satisfies this standard. Barnes testified that she (1) has not financed any home project since the 2016 patio, (2) has paid cash for more recent work, and (3) plans to pay cash for any future projects. (ECF 241-54 (Barnes Dep.), 230:20-232:3.) Meanwhile, Ferguson applied for, obtained, and paid off his GreenSky Program loan in a six-week period in the fall of 2018 – six years ago. (ECF 241-55 (Ferguson Dep.), 147:3-157:14.) Like Barnes, Ferguson is not considering financing another home improvement through the GreenSky Program and, if he develops plans for another home improvement project, he would self-fund, pay in cash, or do the work himself. (*Id.*, 214:4-12.)

Here, neither Plaintiff has standing to seek future injunctive relief. In short, "[a]n intention to purchase in the future . . . is necessary to establish Article III standing" for injunctive relief. *Benton v. CVS Pharmacy, Inc.*, 604 F. Supp. 3d 889, 893 (N.D. Cal. 2022) (Seeborg, C.J.). Because both Plaintiffs testified under oath that they have no such future intentions, each lacks Article III standing to seek injunctive relief; accordingly, the Court should grant summary judgment as to the injunctive relief request. *See, e.g.*, *In re Coca-Cola Prods. Mktg. and Sales Prac. Lit.*, 2021 WL 3878654, *2 (9th Cir. Aug. 31, 2021) ("Without any stated desire to purchase Coke in the future, [plaintiffs] do not have standing to pursue injunctive relief.") (citing *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1088 (9th Cir. 2020)); *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (no standing for injunctive relief notwithstanding the plaintiff's verified representation that "she would 'consider buying' [the defendant's] products in the future"); *Luman v. Theismann*, 647 Fed. Appx. 804, 807 (9th Cir. 2016) ("Because Plaintiffs do not allege that they intend to purchase [the product] in the future, they cannot demonstrate a likelihood of future injury."); *accord Linton v. Axcess Fin. Servs., Inc.*, 2023 WL 4297568, *4 (N.D. Cal. June 30, 2023) (Breyer, J.); *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 803 (N.D. Cal. 2019) (no standing where "Plaintiff merely theorizes that he might repair the Watch in the future, which may give rise to the alleged defect") *Lepkowski v. CamelBak Prods., LLC*, 2019 WL 6771785, *3 (N.D. Cal. Dec. 12, 2019) (Rogers, J.); *Romero v. HP, Inc.*, 2017 WL 386237, *9 (N.D. Cal. Jan. 27, 2017) (Koh, J.); *Rahman v. Mott's LLP*, 2014 WL 325241, *10 (N.D. Cal. Jan. 29, 2014) (Illston, J.).

## CONCLUSION

For the foregoing reasons, GreenSky respectfully requests the Court grant its Motion for Summary Judgment and enter final judgment on Plaintiffs' claims in favor of GreenSky.

DATED: September 19, 2024

*s/Diem Kaelber*
Diem N. Kaelber (SBN 329317)
Barry Goheen (admitted *pro hac vice*)

Attorneys for Defendants GreenSky, LLC, GreenSky of Georgia, LLC, and GreenSky Holdings, LLC (successor-in-interest to GreenSky, Inc.)

25

DEF. NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT (NO. 3:20-CV-01693-JSC)

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 19, 2024, a copy of the foregoing was served upon the following counsel of record in this action via the CM/ECF system and electronic mail.

By: /s/*Diem Kaelber*