1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    ELIZABETH BELYEA, et al.,              Case No.  20-cv-01693-JSC

8                Plaintiffs,

9          v.                              **ORDER RE: MOTION FOR PARTIAL
                                           SUMMARY JUDGMENT**
10   GREENSKY, INC., et al.,
                                           Re: Dkt. No. 338
11               Defendants.

12

13          Plaintiffs' certified class action alleges GreenSky, which partners with contractors and

14   banks to provide point-of-sale loans to consumers, charges fees in violation of California

15   consumer protection statutes.  (Dkt. No. 216.)[1]  The Court previously concluded "GreenSky is

16   entitled to summary judgment on all performance fee-related claims" because Plaintiffs agreed to

17   dismiss Plaintiff David Ferguson's claims related to performance fees and did not present

18   evidence Plaintiff Heidi Barnes was injured by performance fees.  (Dkt. No. 294 at 28.)  Plaintiffs

19   subsequently asserted the California Credit Services Act ("Credit Act") permits them to "recoup

20   the money they paid toward performance fees—even if those fees did not injure Plaintiffs."  (Dkt.

21   No. 341 at 7.)  Pending before the Court is GreenSky's motion for partial summary judgment on

22   the issue of "performance fee recoveries sought by named Plaintiff Heidi Barnes."  (Dkt. No. 338

23   at 6.)  Having carefully reviewed the parties' submissions, and with the benefit of oral argument

24   on September 18, 2025 and supplemental briefing, the Court GRANTS GreenSky's motion for

25   partial summary judgment.  The Credit Act does not permit recovery of amounts paid that did not

26   result in injury and are unrelated to the injury conferring statutory standing to sue.

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents

United States District Court
Northern District of California

**BACKGROUND**

The Court's January 2, 2025 order contains a detailed summary of the factual and procedural history in this case.  (Dkt. No. 279 (sealed); Dkt. No. 294 (unsealed).)  Briefly, Greensky partners with contractors ("merchants") and banks to provide point-of-sale loans to consumers for home-improvement and home-maintenance projects.  (Dkt. No. 294 at 1.)  GreenSky collects two types of fees.  (*Id.* at 2.)  First are "transaction fees," which the merchant pays GreenSky when a consumer uses a GreenSky Program loan to pay the merchant.  (*Id.*)  Second are "performance fees," which GreenSky receives from bank partners.  (*Id.*)  Performance fees are calculated across all loans in the lender's portfolio at the end of the month:

> The [performance fee] includes "all amounts billed to the borrowers, fees and finance charges, less the fixed servicing fee, less all credit losses, [and] less the bank margin or the yield that . . . the servicing fee sets forth that is due to the lender."  (Dkt. No. 235-7 at 33.)  "[T]o the extent that the result of that calculation is a positive number," GreenSky is due the remainder as a performance fee.

(*Id.*)

Plaintiffs filed a putative class action against GreenSky, alleging the company's business practices violate California consumer protection statutes.  The amended complaint alleges (1) violations of the Credit Act, Cal. Civ. Code §§ 1789.10; (2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, including for predicate California Financing Law ("Financing Law"), Cal. Fin. Code § 22000, violations; and (3) unjust enrichment.  (Dkt. No. 216.)  The amended complaint alleges entities that make or broker consumer loans in California and assist consumers in obtaining extensions of credit are regulated by the Financing Law and the Credit Act, respectively.  (*Id.* ¶¶ 15-18.)  Both laws require entities to register with the California Department of Justice or Department of Business Oversight and disclose specified information to consumers.  (*Id.* ¶ 19.)  Both laws "also limit the nature and amount of fees that lenders, brokers, and credit services organizations may charge."  (*Id.* ¶ 20.)  The amended complaint alleges GreenSky fails to comply with the Financing Law's and Credit Act's requirements.  As a result, "Plaintiffs and Class members have suffered injury and damages, including that they paid more in connection with their GreenSky-serviced loans than they

1    otherwise would have."  (*Id.* ¶ 111.)

2        GreenSky moved for "summary judgment on each of Plaintiffs' claims," asserting

3    Plaintiffs "failed to adduce any evidence to show that (a) their GreenSky Program merchants

4    passed through to them any portion of the 'transaction fee' the merchants paid GreenSky related to

5    Plaintiffs' loans, or (ii) they paid any part of an 'incentive payment' that Program banks paid to

6    GreenSky pursuant to negotiated contracts between GreenSky and those lenders."[2]  (Dkt. No. 254

7    at 7.)  Essentially, GreenSky argued Plaintiffs could not prove they were injured by paying

8    transaction fees or performance fees, so "Plaintiffs' claims relating to such payments [could not]

9    survive summary judgment."  (*Id.* at 22.)

10        In its Order, the Court observed Plaintiffs' Credit Act, UCL, and unjust enrichment claims

11    all "require[] proof of injury."  (Dkt. No. 294 at 13.)  On this issue, "Plaintiffs presented evidence

12    creating a dispute of fact as to injury resulting from transaction fees, but Plaintiffs [did] not

13    present[] evidence creating a dispute of fact as to performance fees."  (*Id.*)  Regarding transaction

14    fees, Plaintiffs' theory was that Ms. Barnes, Mr. Ferguson, and every class member paid GreenSky

15    transaction fees because the merchants "passed through a portion of the transaction fee to them . . .

16    in the form of inflated project costs."  (*Id.*)  Plaintiffs contend the imposition of transaction fees

17    violates Credit Act section 1789.13(d)(2) because the fees "are derived from payments made by

18    buyers to GreenSky's bank partners for costs, fees, finance charges, or principal," as well as

19    Financing Law section 22305, because—at least as to Mr. Ferguson—GreenSky "charge[d]

20    administrative fees in excess of $50 for loans of $2500 or less, and $75 for loans more than

21    $2500."  (Dkt. No. 216 ¶¶ 109(a), 116(f).)[3]  As evidence, Plaintiffs filed an expert report

22    "conclud[ing] every class member paid transaction fees in the form of inflated project costs."

23    (Dkt. No. 294 at 35.)  So, Plaintiffs argued, GreenSky's imposition of the transaction fee via a

24    pass through injured consumers.  (*Id.*; Dkt. No. 235-3 at 29 (class certification motion arguing

25

26    ───────────────
      [2] "Transaction fees" are also referred to as "merchant fees," and "performance fees" are also
27    referred to as "incentive payments."  (Dkt. No. 294 at 2.)
      [3] The Court held GreenSky was entitled to summary judgment on Ms. Barnes's section 22305
28    claim because "Ms. Barnes's loan was more than $5,000, and the Financing Law cap does not
      apply to loans over $5,000."  (Dkt. No. 294 at 20 (citing Cal. Fin. Code § 22250(b)).)

United States District Court
Northern District of California

"[t]he fact that GreenSky's unlawful transaction fees were passed through to the class, inflating the prices of their projects, constitutes an injury under California law").)  Because Plaintiffs presented evidence creating a dispute of fact, the Court denied GreenSky's summary judgment motion as to the transaction fee claims.  (Dkt. No. 294 at 19.)

Regarding performance fees, Plaintiffs argued GreenSky's collection of performance fees also violated Credit Act § 1789.13(d)(2).  (Dkt. No. 294 at 15.)  Section 1789.13(d)(2) prohibits a credit services organization from:

> Charg[ing] or receiv[ing] any money or other valuable consideration for referral of the consumer to a retail seller or other credit grantor who will or may extend credit to the consumer, if . . . The money or consideration is paid by the credit grantor or is derived from the consumer's payments to the credit grantor for costs, fees, finance charges, or principal.

Cal. Civ. Code § 1789.13(d)(2).  While Plaintiffs presented evidence from which a factfinder could conclude the performance fees Ms. Barnes's lender paid GreenSky were derived, in part, from interest Ms. Barnes paid her lender, the payment of interest on the loan GreenSky generated did not, by itself, constitute injury.  (Dkt. No. 294 at 16.)  And Plaintiffs' theory "GreenSky set the interest rate on Ms. Barnes's loan at a rate higher than the bank would otherwise require, so Ms. Barnes spent money she would not have spent absent GreenSky's allegedly unlawful conduct— lack[ed] sufficient evidentiary support."  Furthermore:

> Nor does the evidence support a finding Ms. Barnes in particular paid more interest than InTrust (or any other bank) would have charged her for a similar loan, let alone that the higher rate was caused by the performance fees. There are no documents from InTrust reflecting interest rates. No deposition testimony. And no expert regression analysis.  And, indeed, Ms. Barnes herself thought she received a good interest rate. (Dkt. No. 241-54 at 50 ("I don't think the interest rate is too high. It's a good interest rate.").

(*Id.* at 17.)  So, the Court granted GreenSky's "motion for summary judgment on the performance fee claims."  (*Id.* at 19.)

Plaintiffs subsequently filed a motion for clarification "ask[ing] that the Court clarify its summary-judgment ruling to confirm that the Court did not construe the [Credit Act]'s damages provision or otherwise rule on the scope of damages available under the [Credit Act]."  (Dkt. No. 305 at 8.)  Plaintiffs contended because the performance fees are derived from the interest Ms.

Barnes and class members paid, the performance fees constitute amounts the class paid to

GreenSky and therefore can be recovered as damages for GreenSky's Credit Act violation even if

the performance fees did not injure Ms. Barnes or class members.  (*Id.* at 4-5.)  In response, the

Court "clarifie[d] it did not decide whether the Credit Services Act permits Plaintiffs—should they

prevail—to recover performance fee damages even though the Court granted summary judgment

as to Plaintiffs' performance fee claims."  (Dkt. No. 320 at 1.)  "[T]he Court decline[d] to go

further by ruling on whether Plaintiffs are entitled to such fees, as that issue was not before the

Court when it issued the summary judgment order."  (*Id.*)

  At a further case management conference, the parties stated they were "at a discovery

impasse on performance fee damages."  (Dkt. No. 332 at 3.)  The Court informed GreenSky it

could move for partial summary judgment on whether performance-fee damages are recoverable

under the Credit Act and granted the parties' subsequent stipulated briefing schedule.  (*Id.* at 6-7;

Dkt. No. 334.)  GreenSky now moves for partial summary judgment on whether performance-

fee damages are recoverable under the Credit Act.  (Dkt. No. 338.)

## DISCUSSION

  GreenSky raises three arguments in its motion for partial summary judgment.  Its first two

arguments are based on the Credit Act's language, which provides:

> Any consumer injured by a violation of this title or by the credit
> services organization's breach of a contract subject to this title may
> bring any action for recovery of damages, or for injunctive relief, or
> both.  **Judgment shall be entered for actual damages, but in no
> case less than the amount paid by the consumer to the credit
> services organization**, plus reasonable attorney's fees and costs.  An
> award, if the trial court deems it proper, may be entered for punitive
> damages.

Cal. Civ. Code § 1789.21(a) (emphasis added).  GreenSky argues Plaintiffs cannot recover

performance-fee damages because (1) "nothing in the statute permits Plaintiffs to recover free-

floating 'performance-fee damages' when they no longer have a live claim based on performance

fees;" and (2) "performance fees are paid exclusively by banks to GreenSky, not by Plaintiffs to

GreenSky, and, therefore, such fees cannot be recovered by Plaintiffs under the express language

of the" Credit Act permitting recovery of "the amount paid by the consumer *to the credit services*

*organization*."  (Dkt. No. 338 at 5-6, 11 (citing Cal. Civ. Code § 1789.12(a)).)  In the alternative, GreenSky argues Ms. Barnes's "lack of standing to raise 'performance fee-related claims' necessarily means that Barnes cannot recover performance fees, whether characterized as 'damages' or otherwise."  (*Id.* at 5.)  As described below, the Court concludes the Credit Act's language precludes recovery of amounts paid that did not result in injury and are unrelated to the injury conferring statutory standing to sue.  For this reason, Plaintiffs are not entitled to recover performance-fee damages, and the Court need not consider GreenSky's second and third arguments.

## I.    STATUTORY CONSTRUCTION

The parties dispute whether the Credit Act permits Plaintiffs to recover performance-fee damages.  To resolve this question of statutory construction, courts begin with "the statutory language, giving it a plain and commonsense meaning."  *Niedermeier v. FCA US LLC*, 15 Cal. 5th 792, 804 (2024) (quotation marks and citation omitted).  The Court "examine[s] the entire statute to construe the words in context."  *Id.* (quotation marks and citation omitted).  "If the language is unambiguous, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.'"  *Id.* (citation omitted).  But "if the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."  *Id.* (cleaned up).  "When more than one statutory construction is arguably possible, [the] policy is to favor the construction that leads to the more reasonable result."  *Id.* (cleaned up).

### A.    Plain Language

Under the Credit Act, "[a]ny consumer injured by a violation of this title . . . may bring any action for recovery of damages."  Cal. Civ. Code § 1789.21(a).  When a consumer is injured, the statute provides "for actual damages, but in no case less than the amount paid by the consumer to the credit services organization."  *Id.*  The statute thus sets forth two possible measures of recoverable damages if the consumer is injured by a violation of the Act.  First, the injured consumer can recover "actual damages," Cal. Civ. Code § 1789.21(a), which "are those which compensate someone for the harm from which he or she has been proven to currently suffer or

from which the evidence shows he or she is certain to suffer in the future." *DeLisi v. Lam*, 39 Cal. App. 5th 663, 681 (2019). "'[A]ctual damages' is a term synonymous with compensatory damages." *Id.* (cleaned up). Second, the injured consumer can recover "the amount paid by the consumer to the credit services organization." Cal. Civ. Code § 1789.21(a). This second measure of damages acts as a floor: if the amount of actual damages to compensate the injured consumer for the harm suffered is less than the amount the consumer paid the credit services organization, then the consumer recovers the amount paid to the credit services organization.

So, under the Credit Act's plain and unambiguous language, a plaintiff can recover "the amount paid by the consumer to the credit services organization" even if that amount exceeds the "actual damages." The parties largely agree on this issue. However, they disagree about whether a consumer who suffers an injury under the Credit Act may recover *all* amounts paid, including payments unrelated to the predicate underlying injury. According to Plaintiffs, a consumer is entitled "*no less than* the amount paid by the plaintiff to the defendant." (Dkt. No. 341 at 13.) So, Plaintiffs contend, so long as they prove the transaction fees violated the Credit Act and injured Plaintiffs, Plaintiffs can recover not only all the transaction fees paid, but also any performance fees paid.

In contrast, GreenSky argues "[a] plaintiff 'injured by a violation' can recover 'actual damages,' *i.e.*, harm suffered 'as a result of the unlawful act,' *De Lisi,* 39 Cal. App. 5th at 681, subject to a floor on such causally related damages in 'the amount paid by the consumer to the credit services organization.'" (Dkt. No. 342 at 5.) So, according to GreenSky, Plaintiffs can recover transaction fees, but not the performance fees which are wholly unrelated to any injury caused by the transaction fees.

GreenSky has the stronger textual argument. The Court "do[es] not consider statutory language in isolation; instead, [it] examine[s] the entire statute to construe the words in context." *Niedermeier*, 15 Cal. 5th at 804. The statute begins with an injury requirement. Cal. Civ. Code § 1789.21(a) ("Any consumer injured by a violation of this title . . . may bring an action for recovery for damages."). To read "amounts paid by the consumer" as any and all amounts—regardless of their relationship to the injury—would ignore the language confining eligibility for recovery to

United States District Court
Northern District of California

1    consumers who have demonstrated injury arising from a specific violation of the Act.

2        Plaintiffs argue GreenSky's reading "identifies no situation in which 'but in no case less

3    than the amount paid' takes effect." (Dkt. No 341 at 12.)  Not so.  On reply, GreenSky sets forth

4    the following scenario:

5            Suppose a CSO [credit services organization] promises to improve a
             consumer's credit score by 100 points, charges $1,000 for the service,
6            but then improves the score by only 25 points.  The CSO's violation
             would cause damages, namely, the consumer's payment for services
7            that were not fully rendered.  If the "amount paid" proviso did not
             exist, the CSO would be liable for $750 because it failed to deliver
8            only 75% of the promised results.  But because the proviso *does* exist,
             the CSO must refund the full $1,000, *i.e.*, the "amount paid by the
9            consumer to the credit services organization."

10   (Dkt. No. 342 at 3.)  Thus, reading the Credit Act to require "amount paid" be related to the

11   underlying injury does not nullify any statutory text.  In the scenario GreenSky offers, the "amount

12   paid" language results in a greater recovery than damages that would compensate the consumer.

13       **B.    Reasonable Result**

14       Even if the statute's plain language were ambiguous, the Court must "favor the

15   construction that leads to the more reasonable result."  *Niedermeier*, 15 Cal. 5th at 804 (cleaned

16   up).  Here, reading Credit Act section 1789.21(a) to not include as damages monies the consumer

17   paid which are unrelated to the conduct that injured the consumer produces the more reasonable

18   result.  Consider a hypothetical: a credit services organization helps a consumer obtain two

19   different home-improvement loans—one for roof repairs and one to remodel the patio.  For the

20   roof repair loan, the credit services organization renders services in compliance with the Credit

21   Act.  But for the patio remodel loan, the credit services organization violates the Credit Act by

22   charging and receiving payment from the consumer one day before completing performance of its

23   services.  *See* Cal. Civ. Code § 1789.13(a) (prohibiting "[c]harg[ing] or receiv[ing] any money . . .

24   prior to full and complete performance of the services the credit services organization ha[d] agreed

25   to perform").  Under Plaintiffs' interpretation, the consumer could nevertheless recover all

26   amounts paid to the credit services organization, including amounts paid for services fully and

27

28

United States District Court
Northern District of California

1  lawfully rendered for the roof repair loan.[4]  When no injury resulted from those services, this is

2  not a reasonable result.

3        At oral argument, Plaintiffs attempted to distinguish this hypothetical by referring to Credit

4  Act section 1789.13 which prohibits "[a] credit services organization and its salespersons, agents,

5  representatives, and independent contractors who sell or attempt to sell the services of a credit

6  services organization" from conducting certain activities.  Cal. Civ. Code § 1789.13(a).  Plaintiffs

7  argue "the services of" in section 1789.13(a) limits recovery in section 1789.21(a) to amounts paid

8  to the credit services organization for a particular set of services.  The Court is not persuaded "the

9  services of" language in a separate provision can draw the line Plaintiffs are attempting to draw

10  here, wherein performance fees—paid separately through a different mechanism by a different

11  entity than transaction fees—can be recovered as an "amount paid," but in the hypothetical

12  described above, the fee for services on the roof repair loan—made at the same time by the same

13  credit services organization to the same consumer—cannot be recovered as an "amount paid."  In

14  this hypothetical, the credit services organization is rendering the same "services" for both loans.

15        Setting aside these hypotheticals, this case itself demonstrates the unreasonableness of

16  Plaintiffs' interpretation.  On GreenSky's prior motion for summary judgment, acknowledging the

17  Credit Act contains a threshold injury requirement, Plaintiffs vigorously argued Ms. Barnes was

18  injured by both transaction fees and by performance fees.  Those arguments were very different.

19  Transaction fees are paid by merchants to GreenSky, so Plaintiffs presented an expert report

20  opining "*every* class member paid transaction fees in the form of inflated project costs."  (Dkt. No.

21  294 at 35.)  In contrast, performance fees are paid by bank partners to GreenSky, so Plaintiffs

22  argued Ms. Barnes was injured because "GreenSky set the interest rate on Ms. Barnes's loan at a

23  rate higher than the bank would otherwise require."  (*Id.* at 16.)  The Court concluded a reasonable

24

25  _____

    [4] Plaintiffs' supplemental briefing relies on the California Civil Practice Business Litigation
26  treatise, which provides for a violation of section 1789.13(a), in which the credit services
organization charges payment before services are provided, a plaintiff may seek actual damages
27  "equal to or more than the total amount paid by plaintiff."  *See* Cal. Civ. Prac. Bus. Litig. § 56:96.
However, the treatise does not support Plaintiffs' interpretation of section 1789.21(a); applying it
28  to the Court's hypothetical, for example, the treatise only supports the plaintiff's recovery of the
total amount paid for the patio remodel loan, not the roof repair loan as well.

1    trier of fact could find Ms. Barnes was injured by GreenSky having charged merchants transaction

2    fees but not by the banks paying GreenSky performance fees.  To permit Ms. Barnes to

3    nevertheless recover all performance-fee related sums by reading "amount paid" as any and all

4    amounts paid would create a workaround to the Credit Act's injury requirement and contravene

5    the legislature's decision to limit suits to "any consumer injured by a violation of this title or by

6    the credit services organization's breach of a contract subject to this title."  Cal. Civ. Code §

7    1789.21(a).

8         Plaintiffs' interpretation would also impermissibly penalize GreenSky.  "[A] penalty,

9    unlike damages, is a fine assessed for a violation of a statute without regard to the actual injury

10   suffered."  *Cuviello v. City of Oakland*, No. C 06-5517 MHP, 2010 WL 3063199, at *6 (N.D. Cal.

11   Aug. 3, 2010) (citing Black's Law Dictionary definitions of "penalty" and "damage").  In this

12   case, Plaintiffs' expert estimated classwide damages from GreenSky performance fees at

13   $67,251,816—which is slightly less than his estimate of $67.8 million in classwide damages for

14   transaction fees.  (Dkt. No. 294 at 6, 12.)  To interpret the Credit Act to allow Plaintiffs—should

15   they prevail as to the unlawfulness of transaction fees—to nearly double their recovery through

16   performance fees would result in recovery far exceeding Plaintiffs' actual injury.  Such

17   interpretation would thus rewrite the Credit Act to permit recovery of civil penalties, despite the

18   statute's language limiting recovery to "actual damages, but in no case less than the amount paid

19   by the consumer to the credit services organization."  Cal. Civ. Code § 1789.21(a).

20        Plaintiffs, citing *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022), argue

21   "[l]egislatures are empowered to prescribe purely punitive penalties for violations of statutes."

22   (Dkt. No. 341 at 16.)  But *Wakefield* was about the constitutionality of aggregated statutory

23   damages awards "where the prescribed per-violation award is constitutionally sound" but the

24   award "is unusually high" due to the large number of violations or class members.  *Wakefield*, 51

25   F.4th at 1121.  *Wakefield* thus addressed a different question: when an award of statutory damages

26   violates due process.  *Wakefield* does not permit the Court to adopt a statutory interpretation

27   imposing a civil penalty when the legislature did not provide for one.

28        Plaintiffs also argue "[t]hat the [Credit Act] contemplates penalizing offenders should not

be controversial" because "the statutory scheme espouses punitive and deterrent purposes." (Dkt. No. 341 at 17.) *See* Cal. Civ. Code § 1789.21(a) ("An award, if the trial court deems it proper, may be entered for punitive damages."). That the statute clearly authorizes punitive damages suggests the legislature knew how to be explicit in this regard, which weighs against a statutory construction inserting a penalty the legislature did not explicitly authorize. Plaintiffs' argument the statutory scheme espouses deterrent purposes is also belied by the statute's language. The legislature chose to require a consumer to establish injury in order to sue under the Credit Act, even though many of the Act's statutory violations are unlikely to result in injury. *See, e.g.*, Cal. Civ. Code § 1789.13(j) (prohibiting a credit services organization from advertising its services "without being registered with the Department of Justice"). If deterrence were the legislature's goal, it would not have required a consumer to demonstrate injury to file suit.

Plaintiffs, citing *Niedermeier*, further argue the Credit Act's imposition of a penalty (or a windfall) is irrelevant when the Credit Act's plain language provides for such. In *Niedermeier*, the relevant statute "provide[d] a specific formula for calculating the amount of restitution." 15 Cal. 5th at 806. That is, the statute provided:

> [T]he manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer. The amount to be paid to the buyer may also be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity.

*Id.* (cleaned up) (quoting Cal. Civ. Code § 1793.2(d)(2)). Because "[t]he statutory restitution remedy has clearly enumerated exceptions, none of which include[d] the offset requested by [the defendant]," the California Supreme Court concluded the defendant was not entitled to the requested offset—even if it resulted in a windfall to the buyer. *Id.* at 806, 822.

Plaintiffs argue here, as in *Niedermeier*, the Credit Act's "specific formula" for calculating

United States District Court
Northern District of California

11

damages should control, and "[a]ny argument about consumers 'receiv[ing] windfalls' under the statutorily prescribed remedy [can]not outweigh the statute's plain text." (Dkt. No. 341 at 12-13, 16-17 (quoting *Niedermeier*, 15 Cal. 5th at 806-07).)  But in *Niedermeier*, the court emphasized the statute's "defined restitution formula, including its express references to specific permissible offsets." *Niedermeier*, 15 Cal. 5th at 806; *see also id.* ("[T]he Act's plain language lays out a specific formula.").  Here, in contrast, the Credit Act provides no "formula" to calculate damages. It merely provides an injured consumer can recover "actual damages" with an "amount paid" floor.  Moreover, at oral argument, Plaintiffs acknowledged "amount paid by the consumer to the credit services organization" cannot be read literally and without limitation, otherwise absurd results would follow. *Niedermeier*'s instruction to adhere to the plain text even if the result is a windfall is thus inapposite.

Nevertheless, if Plaintiffs prevail on their transaction fees theory, their recovery may well exceed their actual damages.  As the Court's prior Order noted, "[i]f Plaintiffs prevail and the Court applies the 42.5% figure to the $107.79 transaction fee his contractor paid, . . . Mr. Ferguson is entitled to approximately $46." (Dkt. No. 294 at 41.)  When accounting for the benefit Mr. Ferguson received from obtaining GreenSky's "point-of-sale loan," Mr. Ferguson's actual damages may be less than his $46 "amount paid."  In such case, the statute would operate as the legislature intended: the "amount paid" floor ensures Mr. Ferguson recovers the entire amount he paid GreenSky related to the fee GreenSky imposed, which caused his injury.

## II.    OTHER COURTS

Plaintiffs' assertion "every court that has interpreted similar language has interpreted it as Plaintiffs do" is also unpersuasive. (Dkt. No. 341 at 13.)  None of the cases Plaintiffs cite address the interpretative question at issue on this motion.

Several of the cases Plaintiffs cite merely recite section 1789.21's language.  *See*, *e.g.*, *Meza v. 30 Day Credit Repair Inc.*, No. EDCV 23-1166 JGB (KKx), 2024 WL 2037412, at *4 (C.D. Cal. Mar. 29, 2024) (stating "under the [Credit Act], a plaintiff may recover actual damages (no less than the amount paid by the plaintiff to the defendant)"); *Heitmeyer v. Am. Credit-Credit Repair Ctrs.*, No. 2:23-CV-02303-RGK-MAA, 2023 WL 5505875, at *3 (C.D. Cal. July 11, 2023)

United States District Court
Northern District of California

United States District Court
Northern District of California

1   (stating "under the [Credit Act], a consumer may bring any action for a statutory violation to

2   recover actual damages (nothing less than the amount paid by plaintiff to defendant)"); *Jackson v.*

3   *Red Rock Credit Sols., LLC*, No. 22-CV-04471-AGT, 2024 WL 3379663, at *2 (N.D. Cal. June 5,

4   2024), *report and recommendation adopted,* No. 3:22-CV-04471-JSC, 2024 WL 5058028 (N.D.

5   Cal. July 10, 2024) (concluding plaintiff could recover "damages[] equivalent to the service fee

6   she paid . . . under the . . . Credit Services Act").  Contrary to Plaintiffs' assertion, the recitations

7   of section 1789.21's language in *Meza*, *Heitmeyer*, and *Jackson*—all default judgment cases—do

8   not support Plaintiffs' interpretation of the Credit Act: that consumers can recover amounts paid

9   that did not result in injury and are unrelated to the underlying injury.  Instead, the courts

10  discussed the Credit Act in the context of weighing the factors set forth in *Eitel v. McCool*, 782

11  F.2d 1470, 1471 (9th Cir. 1986), such as "the sum of money at stake in the action."  There is no

12  indication the courts considered whether amounts paid unrelated to the injury are recoverable.

13  Nor did the courts have reason to.  In *Meza* and *Jackson*, the courts awarded as damages the fee

14  paid for the defendant's services.  *See Meza*, 2024 WL 2037412, at *5 (awarding plaintiff the $350

15  payment she made to defendant "in connection to the credit repair services Defendant was to

16  perform on [her] account"); *Jackson*, 2024 WL 3379663, at *2 (awarding "$997.00 in damages,

17  equivalent to the service fee" plaintiff paid).  And in *Heitmeyer*, the court denied without prejudice

18  plaintiff's motion for default judgment because plaintiff "requested $1,300 in actual damages" but

19  "failed to prove up damages."  *See* 2023 WL 5505875, at *4 ("Regarding actual damages, the only

20  evidence Plaintiff offers is the attorney's affidavit, which states that 'Plaintiff is requesting'

21  $1,300, . . . [which], by itself, is insufficient.").

22          Plaintiffs also cite cases in which Pennsylvania bankruptcy courts interpreted the

23  Pennsylvania Credit Services Act, which—like California's Credit Act—provides "[j]udgment

24  shall be entered for actual damages, but in no case less than the amount paid by the buyer or

25  borrower to the credit services organization or loan broker."  73 Pa. Stat. Ann. § 2191.  While the

26  courts recited this language and awarded damages according to it, none opined on whether

27  consumers can recover amounts paid when such payments are unrelated to the injury-causing

28  conduct.

13

1    For example, in *In re Bell*, 309 B.R. 139, 146 (Bankr. E.D. Pa. 2004), the court concluded

2    a broker fell within the Pennsylvania Credit Services Act's definition of "credit services

3    organization" and violated the Act by not providing certain required disclosures.  The court then

4    determined the debtor was "entitled to damages in the amount she paid to" the broker, which

5    included "a broker fee of $3,840," "an application fee of $350 from the Borrower's loan

6    proceeds," and "a yield spread premium of $1,280 by the lender at settlement."  *Id.* at 163; *see*

7    *also id.* at 153 n.9 ("A Yield Spread Premium is a bonus paid to a broker when it originates a loan

8    at an interest rate higher than the minimum interest rate approved by the lender for a particular

9    loan.").  Upon reconsideration, the *Bell* court clarified because the loan had been rescinded, the

10    debtor "has no actual damages," so the award "was made pursuant to the language of the CSA

11    which permitted actual damages 'but in no case less than the amount paid by the buyer or

12    borrower to the credit services organization or loan broker.'"  *In re Bell*, 314 B.R. 54, 60 (Bankr.

13    E.D. Pa. 2004) (quoting 73 Pa. Stat. Ann. § 2191).  However, the court maintained its prior

14    holding the debtor "was entitled to damages for [the lender's] violation of the CSA," in other

15    words, the debtor had still been injured by the lender's violating the statute by failing to disclose

16    the loan could be cancelled within 5 days.  *Id.*

17    Similarly, the bankruptcy court in *In re Barker*, 251 B.R. 250, 260-61 (Bankr. E.D. Pa.

18    2000), did not consider whether a consumer can recover amounts paid unrelated to the underlying

19    injury which allows for the recovery of damages in the first place.  After finding the loan broker

20    violated Pennsylvania's Credit Services Act by "engag[ing] in common law fraud and violat[ing]

21    its fiduciary duties to the Debtor," the court determined the debtor could recover the $1,950 fee

22    she paid the broker:

23    [T]he CSA [Credit Services Act] provides that, if any actual damages
      whatsoever are proven, the offending loan broker is liable for an
24    amount no less than the amount of fees paid to it by the borrower, as
      well as reasonable attorney fees and costs.  Here, the Broker charged
25    the Debtor fees of $1950.  It is therefore difficult to see how the
      Broker's damages for the pertinent CSA violation could be less than
26    that amount.

27    *Id*.  The court later elaborated because "the CSA prohibits exactly the kind of deceptive behavior

28    engaged in by the Broker," the Broker is "prohibited from retaining its commission received in the

14

transaction because it engaged in intentional, improper practices." *Id.* at 264. This unremarkable proposition—that the statute permits a consumer to recover the fee she paid the broker when the consumer was injured by services rendered in exchange for that fee—has no bearing on whether a consumer can recover amounts paid when the consumer as a matter of law was not injured by those amounts.

Plaintiffs' supplemental briefing relies on the federal Privacy Act's damages provision, which allows recovery of "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recover receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4)(A). The Supreme Court has held the provision authorizes a plaintiff to recover a "guaranteed minimum award of $1,000 for violations of the Act, but only if they prove at least some 'actual damages.'" *FAA v. Cooper*, 566 U.S. 284, 295 (2012) (citing *Doe v. Chao*, 540 U.S. 614 (2004)). But the Supreme Court has still required plaintiffs to "show[] some pecuniary harm" before "recover[ing] the statutory minimum of $1,000," *id.* at 296, and did not address the question at issue here: whether Plaintiffs can recover amounts paid to GreenSky unrelated to any injury or pecuniary harm.

***

In sum, the Court GRANTS GreenSky's motion for partial summary judgment. As a matter of law, Plaintiffs were not injured by performance fees. So, under the plain language of the Credit Act and considering the most reasonable result, Plaintiffs are not entitled to recover performance fee damages. Having so concluded, the Court need not consider GreenSky's alternative arguments.

## III.    PLAINTIFFS' RULE 56(D) MOTION

In the alternative, Plaintiffs request relief under Federal Rule of Civil Procedure 56(d). "Rule 56(d) offers relief to a litigant who, faced with a summary judgment motion, shows the court by affidavit or declaration that 'it cannot present facts essential to justify its opposition.'" *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 899 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(d)). Under Rule 56(d), the Court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Plaintiffs state they "prioritized expert testimony that established one class-wide injury (from GreenSky's transaction fees)" and "have yet to present expert evidence about how GreenSky performance fees impacted interest rates." (Dkt. No. 341 at 24.) Plaintiffs thus "request time to finish developing" evidence performance fees "caused higher interest rates." (*Id.*) Plaintiffs' corresponding declaration also attests "[t]o brief class certification as early [as is] practicable, following the Ninth Circuit's remand in late 2023, Plaintiffs prioritized developing a limited amount of additional streamlined discovery." (Dkt. No. 341-1 ¶ 8 (quotation marks omitted).)

The Court DENIES Plaintiffs' request for Rule 56(d) relief. Plaintiffs dismissed Mr. Ferguson's performance-fee claims because it was "undisputed Mr. Ferguson did not pay interest on his loan." (Dkt. No. 294 at 15.) As to the only other named plaintiff—Ms. Barnes—the Court granted GreenSky's motion for summary judgment and held as matter of law Ms. Barnes was not injured by performance fees. As such, no named plaintiff has standing to seek the Rule 56(d) relief Plaintiffs now request: time to develop further evidence establishing injury from performance fees. Further, the appropriate time to make such a request was in response to Greensky's motion for summary judgment, not months after the Court granted the motion.

## CONCLUSION

For the reasons stated above, the Court GRANTS GreenSky's motion for partial summary judgment.

This Order disposes of Docket No. 338.

**IT IS SO ORDERED.**

Dated: October 28, 2025

JACQUELINE SCOTT CORLEY
United States District Judge