UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELIZABETH BELYEA, et al.,

Plaintiffs,

v.

GREENSKY, INC., et al.,

Defendants.

Case No.  20-cv-01693-JSC

**ORDER RE: GREENSKY'S MOTION TO DECERTIFY CLASS**

Re: Dkt. No. 402

Plaintiffs allege GreenSky, which partners with home improvement contractors ("merchants") and banks to provide point-of-sale loans to consumers ("borrowers"), charges fees in violation of California consumer protection statutes.  (Dkt. No. 216.)[1]  The Court has certified a class of "[a]ll persons who secured in California, between January 9, 2016 and [January 2, 2025], a GreenSky Consumer Program loan for which the loan principal amount was $500 or higher and the associated transaction fee was at least 1% of the loan principal amount."  (Dkt. No. 294 at 44; Dkt. No. 378 at 6.)[2]  Now pending before the Court is GreenSky's motion to decertify the class.  (Dkt. No. 402.)  Having carefully considered the parties' submissions, and with the benefit of oral argument on May 12, 2026, the Court DENIES GreenSky's motion to decertify.  Despite GreenSky's new merchant declarations and employee testimony, Plaintiffs have shown their case meets the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

\\

\\

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] The class definition has certain exclusions.  (Dkt. No. 235-3 at 19 n.2.)

<div style="text-align:center">

**BACKGROUND**[3]

</div>

**I.    RELEVANT FACTS**

GreenSky collects two types of fees.  (Dkt. No. 294 at 2.)  First, merchants pay GreenSky "transaction fees," a percentage of the loan amount each time a borrower uses the GreenSky program loan to pay the merchant.  (*Id.*)  Although GreenSky's "Merchant Program Agreement, which every merchant must sign, states merchants shall not surcharge or otherwise pass through to their customers any part of the transaction fee," the GreenSky Managing Director explained transaction fees "'should be effectively built into the sales process and contract price making it a homeowner expense,'" and GreenSky provides a tool for merchants to add the cost of the transaction fee into their margins.  (*Id.* (quoting Dkt. No. 239-6 at 2).)  Nonetheless, Reliable Home Improvement, Inc., the merchant Plaintiff Heidi Barnes contracted with, "attests the company has never 'passed through[] any portion of the [transaction] fee to its customers that use a GreenSky[] Program loan to pay,'" and "'did not pass through, or surcharge, any portion of that [transaction] fee'" to Ms. Barnes specifically.  (*Id.* at 14 (quoting Dkt. No. 263-2 ¶¶ 7, 13).)

Second, banks pay GreenSky "performance fees," which include the remainder of "'all amounts billed to the borrowers, fees and finance charges, less the fixed servicing fee, less all credit losses, [and] less the bank margin or the yield that . . . the servicing fee sets forth that is due to the lender.'"  (*Id.* at 2 (quoting Dkt. No. 235-7 at 33).)

**A.    Dr. Williams's Report**

Plaintiffs retained Michael A. Williams as an expert to opine on how GreenSky's transaction and performance fees affected putative class members.  For transaction fees, Dr. Williams set out to determine "whether GreenSky transaction fees to merchants were passed through (partially or completely) to the Class Members" in the form of inflated project costs.  (Dkt. No. 239-14 ¶ 39.)  To do so, he "built an economic model to estimate the differences between (1) what Class Members paid for a project funded through a GreenSky-program loan and (2) what Class Members would have paid for the project in the but-for world where GreenSky did

---

[3] The Court's January 2, 2025 order contains a detailed summary of the factual and procedural history in this case.  (Dkt. No. 279 (sealed); Dkt. No. 294 (unsealed).)

<div style="writing-mode: vertical-rl">United States District Court
Northern District of California</div>

not charge the allegedly unlawful GreenSky transaction fees." (*Id.* ¶ 40.)  Dr. Williams relied on GreenSky's transaction data and "employ[ed] a multivariate pass-through regression" to "estimate the pass-through rate by merchants to Class Members." (*Id.* ¶¶ 47-48.)  Using his regression model, Dr. Williams concluded "the common pass-through rate to Class Members is 42.5%," with "over a 95% chance to be correct in rejecting that the pass-through rate is lower than 38.0% or higher than 46.9%." (*Id.* ¶¶ 49, 55.)  This means, "all else equal, for a one dollar GreenSky transaction fee to a merchant, 42.5 cents are passed-through to the Class Members by the merchant to consumers using a GreenSky-program loan." (*Id.* ¶ 56.)  Dr. Williams also estimated "[t]otal Classwide damages from GreenSky transaction fees equal $67.8 million, which is the product of (1) the total GreenSky transaction fee and (2) the pass-through rate." (*Id.* ¶ 84.)

In addition, based on "five separate common-impact analyses," Dr. Williams opined "at least a portion of the GreenSky transaction fees was passed through to all Class Members." (*Id.* ¶ 57.)  First, because the 42.5% pass through rate "is economically and statistically significant," Dr. Williams observed "it is highly likely at least part of GreenSky's transaction fees were passed through in at least one transaction to all Class Members during the Class Period." (*Id.* ¶¶ 58-60.)  Second, he "re-estimat[ed] [his] pass-through regression for sub-groups of transactions based on categories of loan durations, two alternative definitions of groups of loan plans, and merchant size," and found "positive and statistically significant pass-through rates" for each category.  (*Id.* ¶¶ 61-64.)  Third, Dr. Williams observed "[l]ong-established economic theory demonstrates that price increases in cost components . . . will be passed through to all consumers." (*Id.* ¶ 65.)  Fourth, he concluded the home improvement industry has the characteristics of a highly competitive market, and "[t]he more competitive an industry, the higher the pass-through rate" because "profit margins are small, leaving firms little to no room to absorb costs." (*Id.* ¶ 69.)  And fifth, he reviewed GreenSky's communications encouraging merchants to pass the transaction fees on to consumers.  (*Id.* ¶ 76.)

## II.    RELEVANT PROCEDURAL HISTORY

In January 2024, named Plaintiffs Heidi Barnes and David Ferguson, on behalf of a putative class, filed the now-operative third amended complaint alleging GreenSky's business

practices violate California consumer protection statutes. (Dkt. No. 216.) Specifically, Plaintiffs allege (1) violations of the Credit Services Act of 1984 ("Credit Act"), Cal. Civ. Code § 1789.10; (2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (3) unjust enrichment. (*Id*. ¶¶ 102-129.) First, Plaintiffs' Credit Act claim alleges GreenSky, as a credit services organization subject to the Credit Act, violates the Act, including by collecting transaction and performance fees, failing to provide specific disclosures, and failing to register with the California Department of Justice. (*Id.* ¶¶ 102-112.) Second, Plaintiffs' UCL claim alleges GreenSky's predicate violations of the Credit Act, as well as the California Financing Law ("Financing Law"), Cal. Fin. Code § 22000, including because GreenSky acts as an unlicensed finance lender and charges excessive administrative fees. (*Id.* ¶¶ 113-122.) Third, Plaintiffs' unjust enrichment claim alleges it would be "inequitable and unjust for GreenSky to retain [] wrongfully obtained profits." (*Id.* ¶¶ 123-129.)

### A.    The Court's January 2, 2025 Order

GreenSky moved to exclude Dr. Williams's opinions and for summary judgment, and Plaintiffs moved for class certification. (Dkt. Nos. 241, 248, 254.) On January 2, 2025, the Court denied GreenSky's *Daubert* motion, granted in part and denied in part GreenSky's motion for summary judgment, and granted Plaintiffs' motion for class certification as to the transaction fee claims. (Dkt. No. 279 (sealed); Dkt. No. 294 (unsealed).)

#### 1.    GreenSky's *Daubert* Motion

GreenSky sought to exclude Dr. Williams's opinion as to transaction fees as unreliable and incapable of demonstrating class-wide impact, but the Court denied GreenSky's motion. (Dkt. No. 294 at 7-11.) The Court also denied GreenSky's motion to exclude Dr. Williams's separate opinion on performance fees. (*Id.* at 11-12.)

#### 2.    GreenSky's Summary Judgment Motion

GreenSky first moved for summary judgment on each of Plaintiffs' claims on the ground Plaintiffs presented no evidence of injury; specifically, GreenSky argued Plaintiffs had no evidence (1) "GreenSky Program merchants passed through to them any portion of the transaction fee, or (2) "Plaintiffs paid any part of the performance fee." (*Id.* at 13.) After agreeing Plaintiffs'

United States District Court
Northern District of California

Credit Act, UCL, and unjust enrichment claims all required proof of injury, the Court held "Plaintiffs presented evidence creating a dispute of fact as to injury resulting from transaction fees, but Plaintiffs [did] not present[] evidence creating a dispute of fact as to performance fees." (*Id.*) As to the transaction fees, despite Ms. Barnes's, Mr. Ferguson's, and Ms. Barnes's merchant's testimony, Dr. Williams's "conclu[sion] every class member paid transaction fees in the form of inflated project costs" preserved a genuine dispute Ms. Barnes and Mr. Ferguson "paid a portion of the transaction fee and thus suffered an economic injury." (*Id.* at 13-14 (citing Dkt. No. 239-14 ¶ 57).) However, Plaintiffs agreed to dismiss Mr. Ferguson's claims related to performance fees and presented no evidence from which a reasonable juror could find Ms. Barnes was injured by performance fees. (*Id.* at 15-19.) So, the Court denied GreenSky's motion for summary judgment on the transaction fee claims but granted GreenSky's motion for summary judgment on the performance fee claims. (*Id.* at 19.)

The Court also granted GreenSky summary judgment on Ms. Barnes's UCL claim predicated on California Financial Code § 22305, and both Mr. Ferguson's and Ms. Barnes's UCL claims predicated on California Financial Code § 22400. (*Id.* at 20, 22.) In addition, as to Plaintiffs' claims for injunctive relief, the Court granted GreenSky's motion for summary judgment for Mr. Ferguson's claim but denied the motion for Ms. Barnes's claim because she had "established a real threat of repeated injury." (*Id.* at 25-28.) The Court otherwise denied GreenSky's motion for summary judgment. (*Id.* at 28.)

### 3. Plaintiffs' Motion for Class Certification

The Court then considered Plaintiffs' motion to certify a class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). (*Id.* at 28-44.) Because Plaintiffs satisfied each requirement of Rules 23(a), 23(b)(2), and 23(b)(3), the Court granted Plaintiffs' motion and certified Plaintiffs' claims as to a class including:

> All persons who secured in California, between January 9, 2016, and the present, a GreenSky Consumer Program loan for which the loan principal amount was $500 or higher and the associated transaction fee was at least 1% of the loan principal amount.

(*Id.* at 44.) As GreenSky now moves to decertify, the Court summarizes its prior reasoning when

United States District Court
Northern District of California

5

it considers each requirement of Rules 23(a), 23(b)(2), and 23(b)(3) below.

**B.    Subsequent History**

GreenSky petitioned for permission to appeal the Court's class certification decision. (Dkt. No. 285.)  Over the following months, the parties negotiated a class notice plan and trial schedule, but the Court held class notice in abeyance pending the Ninth Circuit's ruling on GreenSky's class certification appeal.  (Dkt. Nos. 296, 299, 301, 304, 316.)  In response to Plaintiffs' motion, the Court also clarified its summary judgment order.  (Dkt. Nos. 305, 320.) The Ninth Circuit denied GreenSky's petition for permission to appeal on May 2, 2025.  (Dkt. No. 314.)

GreenSky then moved to compel individual arbitration for all class members whose loan agreements contain an arbitration provision.  (Dkt. No. 326.)  The Court found "[w]hether the loan agreements form valid arbitration agreements between GreenSky and class members depends on whether GreenSky is a credit services organization ('CSO')" under the Credit Act.  (Dkt. No. 371 at 1.)  However, as the Court had recognized at summary judgment, "there remained a genuine dispute of material fact regarding whether merchants pass through all or part of their transaction fees to borrowers."  (*Id.* at 14 (citing Dkt. No. 294 at 13-15); *see also id.* at 19.)  Because this factual dispute created a "genuine dispute of fact regarding whether borrowers purchase or are solicited to purchase GreenSky's services," the Court could not "conclude as a matter of law whether borrowers are 'consumers' under the Credit Act and therefore whether GreenSky is a CSO."  (*Id.* at 1.)  So, as "neither party [was] entitled to a ruling an agreement to arbitrate was or was not formed as a matter of law," the Court determined "the motion to compel [arbitration] must be held in abeyance pending trial on the arbitration formation question, specifically, whether GreenSky is a credit services organization under the Credit Act."  (*Id.* at 22.)

GreenSky also sought partial summary judgment regarding performance fee recoveries. (Dkt. No. 338.)  After the Court's summary judgment order concluded GreenSky was entitled to summary judgment on all performance-fee related claims, Plaintiffs had asserted the Credit Act nonetheless allowed them to "recoup the money they paid toward performance fees—even if those fees did not injure Plaintiffs."  (Dkt. No. 341 at 7.)  The Court granted GreenSky's motion because

United States District Court
Northern District of California

"[t]he Credit Act does not permit recovery of amounts paid that did not result in injury and are unrelated to the injury conferring statutory standing to sue." (Dkt. No. 368 at 1.)

In addition, following a case management conference, the Court clarified because "[w]hether GreenSky is a CSO under the Credit Act is a material issue both precluding the Court's [] ruling on GreenSky's motion to compel arbitration and going to the merits of Plaintiff's claims against GreenSky," "the Court will try the issue whether GreenSky is a CSO at one time for both arbitrability and liability purposes." (Dkt. No. 378 at 3, 5.)  The Court also "clarifie[d] the class includes an end date of January 2, 2025, the date the Court adopted Plaintiffs' definition and certified the class." (*Id.* at 6.)

GreenSky now moves to decertify the class.  (Dkt. No. 402.)

## III.   GREENSKY'S NEW EVIDENCE

To support its motion to decertify, GreenSky presents two types of new evidence.  First, GreenSky attaches declarations from "175 separate merchants who performed projects for over 51,000 class members . . . showing that they treated transaction fees in a wide variety of ways." (Dkt. No. 402 at 8.)  To gather these declarations, GreenSky drafted form declarations containing the attestation: "In accordance with the obligations of Merchant under the GreenSky® Merchant Program Agreement, for any customer who has used a GreenSky® Program loan to pay for their project, Merchant has not surcharged (or otherwise passed through to) that customer any portion of any GreenSky® Program fees charged to Merchant" (the "General Statement").  (Dkt. No. 402-1 ¶¶ 15-16, 21-23.)  The form declaration also included an "attestation regarding how the Merchant treats or has treated transaction fees, with several options to select and an instruction for the merchant to check any or all boxes that apply." (*Id.* ¶¶ 17, 23.)  Specifically, the form declaration stated:

> Merchant treats or has treated the GreenSky® Program fees charged to it as follows:
> ### *(check any or all that apply)*
> □ Absorbs those fees without increasing its overall pricing for customers.
> □ Does nothing regarding those fees because it does not incur any net incremental added costs, as it is able to save other costs by participating in the GreenSky® Program (e.g., by spending less on marketing, sales, credit card acceptance fees, etc.).

7

□ Deducts those fees from the sales commissions or other compensation paid to its employees or representatives.
□ Treats some of those fees as overhead that it factors into its overall pricing for all of its customers, similar to other business expenses such as credit card acceptance fees, other vendor fees, insurance or advertising.
□ Treats all of those fees as overhead that it factors into its overall pricing for all of its customers, similar to other business expenses such as credit card acceptance fees, other vendor fees, insurance or advertising.
□ Our treatment of GreenSky® Program fees has changed from time to time over the years of our participation in the GreenSky® Program.

(*Id.* ¶ 23.)  In December 2025 and January 2026, GreenSky conducted targeted outreach and obtained two sworn declarations from the merchant 3 Day Blinds, LLC ("3 Day Blinds"), which "account[s] for approximately 14,637 Program loans to class members," and Lasting Legacy Plumbing Heating and Air ("Lasting Legacy"), which "account[s] for some 162 Program loans to class members."  (*Id.* ¶¶ 15, 18-20 (citing Dkt. No. 402-7 at 2, 5).)  Both 3 Day Blinds and Lasting Legacy attested to the General Statement, but while 3 Day Blinds attested it "[a]bsorbs those fees without increasing its overall pricing for customers," Lasting Legacy attested it "[t]reats all of those fees as overhead that it factors into its overall pricing for all of its customers, similar to other business expenses such as credit card acceptance fees, other vendor fees, insurance or advertising."  (Dkt. No. 402-3 at 2-3.)

GreenSky then initiated more general outreach to 1,230 merchants which had performed or potentially had performed projects for class members.  (Dkt. No. 402-1 ¶¶ 24-27.)  To do so, GreenSky emailed these merchants about an "Important Compliance Request" and asked them to "complete this declaration regarding how your company has treated the GreenSky® Program transaction fees."  (Dkt. No. 402-5 at 2, 4.)  Through this outreach, GreenSky received an additional 172 merchant declarations.  (Dkt. No. 402-1 ¶ 32 (citing Dkt. No. 402-6).)

So, including the earlier declaration from Ms. Barnes's merchant, GreenSky received declarations from "175 merchants who performed projects for 51,645 class members."  (Dkt. No. 402-1 ¶ 33.)  To summarize these declarations, GreenSky states:

a. . . . 80 merchants (46% of responding merchants) that serviced 28,880 class members (65% of class members covered by the merchant declarations) stated that they did not pass through transaction fees in any way. Within this set of 80 merchants:
i. 77 attested that they absorbed the transaction fees without

increasing their overall pricing for customers (i.e., they took the fees out of their own profits).

ii. 6 attested that they deduct transaction fees from the sales commissions or other compensation paid to its employees or representatives.

iii. 9 attested that they do nothing regarding transaction fees because they do not incur any net incremental added costs, as they are able to save other costs by participating in the GreenSky® Program (e.g., by spending less on marketing, sales, credit card acceptance fees, etc.).

iv. 12 checked one or more of the above three boxes.

b. 90 merchants (51% of responding merchants) that serviced 19,768 class members (38% of class members covered by the merchant declarations) treated transaction fees as overhead to at least some extent, at least some of the time. Within that set of 90 merchants:

i. 27 attested that they treated only some fees as overhead, while 68 attested that they treated all fees as overhead.

ii. 5 attested that they treated some fees as overhead and all fees as overhead.

iii. 47 also checked one or more of the boxes indicating that they absorbed fees, deducted fees from employees' sales commissions, or did nothing regarding fees since they do not incur net incremental costs from being in the Program.

c. [] 15 Program merchants representing 7,338 class members attested that they changed the way they treated transaction fees over time, with 12 that checked boxes indicating that they treated some or all fees as overhead and one or more of the three boxes indicating they absorbed fees, deducted fees from employees' sales commissions, or did nothing regarding fees because they do not incur net incremental costs from participating in the Program. To the extent those 12 treated transaction fees as overhead at some point in time, they did not treat those fees as overhead at other points in time.

d. Additionally, 59 of the 175 responding merchants that serviced 14,174 class members checked more than one box describing how they treated transaction fees.

e. 5 merchants did not select any boxes indicating how they treated transaction fees.

(*Id.*; *see also* Dkt. No. 402-6 (individual declarations); Dkt. No. 402-7 (summary spreadsheet).)

Second, GreenSky presents deposition testimony from current and former GreenSky employees. The employees testified "it was against the rules [for a merchant] to surcharge [a customer] specifically for using the program," and "if [merchants] were to charge additional funds to cover the [transaction] fee on top of the project cost, that would be prohibited." (Dkt. No. 402-10 at 3; Dkt. No. 402-11 at 3; *see also* Dkt. No. 402-12 at 92-95.). However, because "[e]verything [GreenSky] did was options based," "[t]he [merchant]," rather than GreenSky, was

"the decision maker in this entire instance." (Dkt. No. 402-10 at 4-5.) So, while GreenSky "would coach and give options to the [merchant] from an informational perspective," "GreenSky wasn't responsible for how merchants handled any of their costs." (*Id.* at 6; Dkt. No. 402-12.) For this reason, "how [merchants] accounted for the overall cost of the program varied from merchant to merchant," and "GreenSky [never] require[d] its merchants to treat transaction or merchant fees as overhead." (Dkt. No. 402-12 at 4, 6-7; *see also* Dkt. No. 402-1 ¶ 34 ("GreenSky has never dictated merchants' pricing strategies and has never mandated that merchants treat transaction fees in a particular way (e.g., as overhead), aside from the Program's prohibition on surcharging for transaction fees.").) And GreenSky did not "punish[]" or take "disciplinary measure[s]" against merchants unless they surcharged borrowers. (Dkt. No. 402-10 at 7-8.)

**DISCUSSION**

An order certifying a class "may be altered or amended before final judgment." *See* Fed. R. Civ. P. 23(c)(1)(C). On a motion to decertify, "the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-CV-05221-SI, 2016 WL 4529430, at *12 (N.D. Cal. Aug. 30, 2016) (citing *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000)), *aff'd sub nom. Ridgeway v. Walmart Inc*, 946 F.3d 1066 (9th Cir. 2020). Specifically, "plaintiff[s] [must] demonstrate[] that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met." *Id.* at *11 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "The plaintiffs bear 'the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence.'" *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024) (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc)), *cert. denied*, 145 S. Ct. 1308 (2025) (cleaned up); *see also Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (explaining on a decertification motion, "the party seeking class certification, [still] bears the burden of demonstrating that the requirements of Rules 23(a) and (b)

United States District Court
Northern District of California

10

are met" (cleaned up)).[4]

"Although . . . a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' . . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (citation omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466 (citations omitted). In addition, "a district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) (citation omitted).

Because the Court has certified classes under Rules 23(b)(2) and 23(b)(3), Plaintiffs must show their class meets all the requirements of Rules 23(a), 23(b)(2), and 23(b)(3). *See Ridgeway*, 2016 WL 4529430, at *11. Although GreenSky's motion to decertify contests several of these requirements, GreenSky's strongest arguments relate to whether Plaintiffs have shown predominance as required by Rule 23(b)(3). The Court therefore begins with the requirements of Rule 23(b)(3) before addressing the requirements of Rule 23(b)(2) and Rule 23(a).

## I.  RULE 23(B)(3)

To certify a Rule 23(b)(3) class, the court must find (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.  Predominance

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the

---

[4] Relying on district court cases, Plaintiffs argue GreenSky first "must show that the class no longer meets Rule 23's certification requirements," *see In re Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037-YGR, 2014 WL 6783763, at *5 (N.D. Cal. Nov. 25, 2014) (quotation marks and citations omitted), or at least "show[] why [the Court] should consider decertification" before the burden shifts to Plaintiff, *see In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2018 WL 1456618, at *2 (N.D. Cal. Mar. 23, 2018) (citations omitted). Because Plaintiffs do not cite any Ninth Circuit precedent for imposing this burden on GreenSky, the Court will not do so.

case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (quotation marks and citation omitted). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir. 2024) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "Considering whether questions of law or fact common to the class predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (cleaned up). "[T]he Court identifies the substantive issues related to plaintiff's claims (both the causes of action and affirmative defenses); then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried." *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 426 (N.D. Cal. 2013) (citation omitted).

The Court previously held common issues predominated as to each element of Plaintiffs' Credit Act, UCL, and unjust enrichment claims. (*See* Dkt. No. 294 at 33-43.) GreenSky now argues individual issues predominate in proving Plaintiffs' injury for all three claims and GreenSky's liability under the Credit Act. (Dkt. No. 402 at 21 & n.7.) However, the parties agree whether Plaintiffs can prove injury depends on whether Plaintiffs can prove every Class Member paid some pass-through transaction fee. (*Id.*; Dkt. No. 421 at 22; *see also* Dkt. No. 294 at 13-15.) And as to its liability under the Credit Act, GreenSky argues "the question of whether GreenSky is even subject to the [Credit Act]" also depends on whether each Class Member paid pass-through transaction fees. (Dkt. No. 402 at 22-23.)[5] Assuming without deciding GreenSky's interpretation

---

[5] GreenSky relies on the Court's order regarding GreenSky's most recent motion to compel arbitration, which found whether GreenSky is a credit services organization ("CSO") and therefore subject to the Credit Act depends on whether GreenSky provides assistance to "consumers." (Dkt. No. 371.) *See* Cal. Civ. Code § 1789.12(d). But whether borrowers are "consumers" depends on whether borrowers are "solicited to purchase or [] purchase[]" GreenSky's services. (Dkt. No. 371 at 14.) *See* Cal. Civ. Code § 1789.12(b). And the Court held "factual disputes as to whether borrowers purchase GreenSky's services through merchant pass-through fees . . . prevent the Court from determining whether the borrowers are 'consumers' and, by extension, whether GreenSky is a CSO under the Credit Act." (Dkt. No. 371 at 19.) So, GreenSky now argues "if a merchant *did not* pass through transaction fees to customers, then GreenSky indisputably could

is correct, whether Plaintiffs can prove GreenSky's liability under the Credit Act depends on whether Plaintiffs can prove every Class Member paid some pass-through transaction fee.  So, all GreenSky's predominance arguments arise from the same question: did every Class Member pay pass-through transaction fees?  The Court therefore must determine whether, in light of GreenSky's new evidence, this is a common or individualized question.

### 1.    Transaction Fees Issue

In opposing class certification, GreenSky also argued "individualized evidence will be required to establish . . . injury."  (Dkt. No. 294 at 35, 41-42.)  However, the Court found "Plaintiffs have presented common evidence of injury through Dr. Williams's report, which concludes *every* class member paid transaction fees in the form of inflated project costs."  (*Id.* at 35 (citing Dkt. No. 239-14 ¶ 57).)  So, "[b]ecause every class member can rely on Dr. Williams's report to establish injury, common questions predominate as to injury."  (*Id.* (citing *Olean*, 31 F.4th at 667).)  The Court further explained:

> Dr. Williams's report can resolve the injury issue "in a single stroke." *See Olean*, 31 F.4th at 682.  If a jury decides Dr. Williams's report is not persuasive, then the class members have not proved injury and the Credit Act claim fails—in a single stroke.  Conversely, if a jury decides Dr. Williams's report is persuasive, then every class member has established injury—again in a single stroke. *See Tyson*, 577 U.S. at 457 (the question whether the expert's "study was unrepresentative or inaccurate" was "itself common to the claims made by all class members").  At oral argument, Plaintiffs acknowledged that if the fact finder does not believe Dr. Williams's report, GreenSky prevails on every class member's claims.  (Dkt. No. 276 at 42.).

(*Id.* at 36.)

Seeking to decertify the class, GreenSky argues its new evidence—including that merchants claim to not pass through and take various approaches to transaction fees— "demonstrate[s] that individualized adjudications of liability and injury will unquestionably be required."  (Dkt. No. 402 at 21.)  But when considering whether common issues predominate, "the court must make a rigorous assessment of the available evidence and the method or methods by which *plaintiffs* propose to use the class-wide evidence to prove the common question in one

_____

not have acted as a CSO with respect to such customers."  (Dkt. No. 402 at 22-23.)

United States District Court
Northern District of California

stroke," and "find that this common question . . . predominates over individual issues." *See Olean*, 31 F.4th at 666 (emphasis added) (cleaned up). "[A] district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Id.* at 666-67 (emphasis in original).

GreenSky's new evidence does not show Plaintiffs' proposed method—i.e., Dr. Williams's report—is incapable of resolving, on a class-wide basis, the question whether every Class Member paid pass-through transaction fees. Although merchants' attestations they never "surcharged (or otherwise passed through [])" fees, (Dkt. No. 402-6), might make Dr. Williams's report less persuasive, they do not show the report is incapable of resolving the question. As the Court explained when rejecting GreenSky's similar argument based on Ms. Barnes's merchant declaration at class certification, "the merchant may say it and the merchant may believe it, but what Dr. Williams would say is when you look at the numbers, they are, because you can't help but spread it around when you're doing it." (Dkt. No. 276 at 43 (noting Plaintiffs' "evidence is different, [but] the question is whether it's capable").) For similar reasons, merchant declarations suggesting they treat transaction fees differently also do not show Dr. Williams's report is incapable of proving the question on a class-wide basis. According to Dr. Williams, the "effect" of merchants' varying treatment of transaction fees "would be reflected in the class transaction data [he] used" and "[i]n turn, . . . in the results of [his] pass-through regression and robustness checks." (Dkt. No. 421-2 ¶ 12.) So, absent some "reason to disregard Dr. Williams's attestation," evidence merchants treat transaction fees differently does not weaken the capability of Dr. Williams's report to show every Class Member paid pass-through transaction fees. (Dkt. No. 294 at 8 (reaching similar conclusion when GreenSky presented evidence many merchants took the fees out of the salesperson's commission).)

Ultimately, GreenSky's new evidence may make Dr. Williams's report less persuasive, and therefore make it less likely Plaintiffs will persuade a jury every Class Member paid transaction fees. Those implications, however, are not grounds for finding a lack of predominance and decertifying a class. *See Olean*, 31 F.4th at 667 ("[A] district court cannot decline

14

certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." (citing *Amgen*, 568 U.S. at 459-60)).

Instead, the Court must assess whether Plaintiffs' proposed method can resolve the question on a class-wide basis.  Under *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016), "if 'each class member could have relied on [the plaintiffs' evidence] to establish liability if he or she had brought an individual action,' and the evidence 'could have sustained a reasonable jury finding' on the merits of a common question, . . . then a district court may conclude that the plaintiffs have carried their burden of satisfying Rule 23(b)(3) as to that common question of law or fact." *See Olean*, 31 F.4th at 667 (quoting *Tyson*, 577 U.S. at 455).  Because each Class Member could reasonably rely on Dr. Williams's report—specifically, its conclusion "*every* class member paid transaction fees in the form of inflated transaction costs"—Plaintiffs have carried their burden as to predominance.  (Dkt. No. 294 at 35-36 (citing Dkt. No. 239-14 ¶ 57; *Olean*, 31 F.4th at 667).)  GreenSky's reliance on *Wright v. Greensky Mgmt. Co., LLC*, No. 20-CV-62441, 2022 WL 17250331 (S.D. Fla. Nov. 28, 2022), to argue otherwise is unavailing.  There, the court refused to certify a similar class because the court determined it was "impossible to adequately ascertain whether the potential class of borrowers were affected in the same or a similar manner by [GreenSky's] policies," so Dr. Williams's report was "[in]sufficient to establish common proof that all class members were impacted by [GreenSky's] transaction fees." *Id.* at *8.  But unlike the *Wright* court, this Court has already determined Dr. Williams's report is capable of proving common impact, and has rejected GreenSky's arguments his "methodology to determine common impact was [un]reliable." (Dkt. No. 294 at 11, 35-38.)  GreenSky's arguments therefore go to the report's persuasiveness, rather than its capacity, and are not reason to decertify.

To distinguish its decertification motion from its prior opposition to class certification, GreenSky relies on language in *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023).  There, the Ninth Circuit explained while "a plaintiff need not rebut every individualized issue that could possibly be raised," a defendant may "invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-

15

United States District Court
Northern District of California

member-by-class-member adjudication of the issue." *Id.* at 1066-67 (citations omitted). According to GreenSky, its merchant declarations suffice as such evidence. But given Dr. Williams's report contradicts those declarations, the merchant declarations are not dispositive "evidence that individualized issues bar recovery on [any] claim[]." *See id.* at 1066. Furthermore, *Van* makes clear "[i]f the defendant provides evidence that a valid defense . . . will bar recovery on some claims, then the district court must determine, based on the particular facts of the case, 'whether individualized questions . . . will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3).'" *Id.* at 1067 (quoting *Olean*, 31 F.4th at 669). Here, as the Court has previously explained, "Dr. Williams's report can resolve [at least] the injury issue 'in a single stroke.'" (Dkt. No. 296 at 36.) In particular, Plaintiffs have acknowledged GreenSky will prevail on every class member's claims simply by persuading a jury Dr. Williams's report is not persuasive. (*Id.* (citing Dkt. No. 276 at 42).) So, given the facts of this case, individualized questions do not overwhelm common ones.

GreenSky's reliance on other Ninth Circuit cases is unavailing because in each of those cases the plaintiffs had no common method of proving class-wide liability. In *Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459 (9th Cir. 2023), the plaintiffs argued the defendant, by misclassifying them as independent contractors, failed to pay overtime compensation and indemnify them for business expenses. *See id.* at 464-65. Because the plaintiffs had withdrawn their expert's aggregate damages model, they "were left relying on individual testimony to establish the existence of an injury and the amount of damages." *Id.* at 469. The plaintiffs therefore "relied on [individual class members'] unaided memories as the primary or sole evidence of the work schedules," which "resulted in a series of mini-trials concerning the work history and credibility of each individual class member." *Id.* at 470 (noting the district court had already "taken eight days to determine damages for only eleven of the 156 class members"). So, the Ninth Circuit observed "[t]he 'individualized mini-trials' required to establish liability and damages plainly distinguish this case from *Olean*, where the proposal for calculating damages for each class member—though individualized—was 'straightforward.'" *Id.* (quoting *Olean*, 31 F.4th at 682 n.31). The Ninth Circuit therefore reversed class certification because "any common question as

16

to misclassification [was] outweighed by the individual questions going to injury and damages." *Id.* at 469. Unlike the *Bowerman* plaintiffs, Plaintiffs have proposed a method for proving injury and liability and calculating damages which will not require individualized testimony. So, as the Court explained when distinguishing *Bowerman* in its class certification order, "this case more closely resembles *Olean* than *Bowerman*, [and] individualized issues . . . do not preclude class certification." (Dkt. No. 294 at 40.)[6]

GreenSky's reliance on *Ambrosio v. Progressive Preferred Insurance Co.*, 154 F.4th 1107 (9th Cir. 2025), is similarly unavailing. In *Ambrosio*, former Progressive customers alleged Progressive undervalued their property damage claims for the total loss of their vehicles. *Id.* at 1108. To pay the plaintiffs their vehicles' actual cash value ("ACV"), Progressive relied on a system incorporating a projected sold adjustment ("PSA") which, according to the plaintiffs, "always resulted in an inherently flawed negative line-adjustment." *Id.* at 1108-09. At class certification, Progressive "provided evidence that at least two members of the proposed class received a higher 'market value' valuation from [Progressive's approach] than they would have from other sources." *Id.* at 1112. The Ninth Circuit therefore concluded "each individual [plaintiff] would need to compare their flawed 'market value' with a correct one to win on the merits," and affirmed the district court's holding common issues did not predominate. *Id.* at 1112-13. So, like in *Bowerman* and unlike here, the *Ambrosio* court's finding individual issues predominated relied on plaintiffs' lack of a common method to prove liability.

In its reply brief, GreenSky argues the *Ambrosio* plaintiffs did in fact "possess and plan on presenting various expert testimony regarding data that Progressive excludes certain data to reach ACV, and empirical list/sell data discounting the use of a PSA for valuation." *See Ambrosio v.*

---

[6] GreenSky also misconstrues the Court's reasoning when it argues the Court previously "rejected GreenSky's reliance on . . . *Bowerman* . . . because the Court determined that, other than for Ms. Barnes, such 'individualized testimony will not be required.'" (Dkt. No. 402 at 26 (citing Dkt. No. 294 at 40-41 (quoting *Bowerman*, 60 F.4th at 470)).) The Court instead stated, "under Plaintiffs' proposed methodology for calculating damages, individualized testimony will not be required." (Dkt. No. 294 at 40.) So, the Court previously rejected GreenSky's reliance on *Bowerman* for the same reason it does so now: unlike Plaintiffs, the *Bowerman* plaintiffs had no proposed method of proving liability or damages which did not depend on individualized testimony.

*Progressive Preferred Ins. Co.*, No. CV-22-00342-PHX-SMB, 2024 WL 915184, at *7 (D. Ariz. Mar. 4, 2024) (citation omitted), *aff'd*, 154 F.4th 1107 (9th Cir. 2025).  However, the *Ambrosio* district court held because "the PSA is only part of one method of ACV calculations," the plaintiffs would still require "individual calculations [which] overwhelm[ed] the common question of whether a PSA was in breach of the policy."  *Id.* at *7-8.  So, even if the *Ambrosio* plaintiffs had expert testimony, the expert testimony was not capable of resolving the issue on a class-wide basis.

Ultimately, GreenSky extrapolates from *Ambrosio* "a 'due process' right to introduce individualized evidence as to '*each* individual plaintiff'" which justifies decertification.  (Dkt. No. 402 at 19 (quoting *Ambrosio*, 154 F.4th at 1112).)  GreenSky specifically relies on the Ninth Circuit's note "denying Progressive this defense"—i.e., the defense individualized issues barred recovery of some class members' claims—"***altogether*** would seem to violate due process."  *See Ambrosio*, 154 F.4th at 1112 (emphasis added) (citations omitted).  However, the Court is not denying GreenSky its defense by proceeding with a certified class.  At trial, GreenSky will have the opportunity to challenge Plaintiffs' case, including by cross-examining Dr. Williams about his opinions, and to present its own case through merchant testimony.  As Plaintiffs acknowledged at class certification and confirmed at oral argument on GreenSky's decertification motion, "if the fact finder does not believe Dr. Williams's report, GreenSky will prevail on every class member's claims."  (Dkt. No. 294 at 36 (citing Dkt. No. 276 at 42).)  So to prevail, GreenSky need only convince the jury a single Class Member did not pay transaction fees passed through from their merchant.  GreenSky's contention due process requires "thousands of [merchants] . . . to testify at trial for GreenSky to have a full and fair adjudication of whether pass-throughs occurred in their individual transactions with class members" is unavailing.  (Dkt. No. 402 at 24.)  Given Plaintiffs have presented a method of demonstrating GreenSky's liability on a class-wide basis notwithstanding some merchants' disavowal of such pass through, and GreenSky may defeat Plaintiffs' claims without individualized evidence from every Class Member, GreenSky's due process rights are not violated merely because this case is proceeding as a class action.

* * *

By demonstrating a common method of proving each Class Member paid pass-through transaction fees, Plaintiffs have shown common issues predominate on that issue.  As explained above, this issue is the basis for GreenSky's arguments individual issues predominate as to Plaintiffs' injury and GreenSky's liability under the Credit Act.  Ultimately, the conflict between Dr. Williams's report and the merchant declarations creates a factual dispute for the jury, rather than grounds for decertifying the class.  So, the Court denies GreenSky's motion to decertify the class on predominance grounds.[7]

### B.    Superiority

To certify, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Courts consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.*  "[T]hese factors require[] the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (cleaned up).

The Court previously held a class action was superior "[b]ecause 'recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'"  (Dkt. No. 294

---

[7] In passing, GreenSky contends "Plaintiffs have never explained how an independent merchant's decision to treat a vendor's fees as overhead subjects *the vendor* to statutory requirements that would not otherwise apply."  (Dkt. No. 402 at 21.)  Although Dr. Williams's report does not distinguish between transaction fees passed through as surcharges as opposed to as overhead, GreenSky's exclusive reliance on a Georgia district court's finding "Plaintiffs have produced no precedent in support of their remarkable supposition that business charges for overhead violate federal law" does not justify decertification.  *See Price v. Landsafe Credit, Inc.*, No. CV-205-156, 2006 WL 3791391, at *1-2 (S.D. Ga. Dec. 22, 2006) (discussing Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601-2617 claim), *aff'd sub nom. Krupa v. Landsafe, Inc.*, 514 F.3d 1153 (11th Cir. 2008).

at 43 (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).) Rather than dispute the Court's prior conclusion, GreenSky argues because "proof of liability and injury depends on many independent third-parties' testimony regarding their own individual actions, manageability concerns outweigh the benefits of resolving any common issues through a class action."  (Dkt. No. 402 at 29.)  However, unlike in the cases GreenSky cites, Plaintiffs do not rely on independent third parties' testimony to prove liability or injury.  *See, e.g.*, *Zinser*, 253 F.3d at 1192 ("If each **class member** has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" (emphasis added)); *In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 611 (S.D. Cal. 2016) (finding no superiority given the "manageability" concerns of plaintiffs' obtaining records from many contractors to prove their case), *aff'd sub nom. Carrera v. First Am. Home Buyers Prot. Co.*, 702 F. App'x 614 (9th Cir. 2017).  Furthermore, were the Court to decertify the class, GreenSky would need to provide the exact same—if not more—individual testimony to defend against these cases on an individual basis.  *Cf. Wolin*, 617 F.3d at 1175.  So, a class action is superior.  *See Ridgeway*, 2016 WL 4529430, at *17 (finding a class action superior when the plaintiffs presented a plan for proving damages, and it remains "within Wal-Mart's rights to bring in individuals, whether its own experts or individual class members, in an attempt to disprove" the plaintiffs' evidence).

That the parties have not yet agreed on a verdict form is not evidence a class action is not superior.  In briefing and at oral argument, GreenSky relied on *Hale v. Brinker Int'l, Inc.*, 765 F. Supp. 3d 904 (N.D. Cal. 2025), but there, the proposed verdict form merely "underscor[ed]" the court's conclusion "individualized questions will predominate."  *Id.* at 918.  Specifically, the district court explained because the plaintiffs' Labor Code claims may have relied on a rebuttable presumption, the defendant could not defend against the plaintiffs' case without individualized rebuttal evidence "specific to particular restaurants, particular categories of workers, and particular workers within each category."  *Id.* at 915-16.  Here, in contrast, regardless of Plaintiffs' proposed verdict form, GreenSky can defeat Plaintiffs' claims without individualized evidence about every Class Member.  Because GreenSky need only persuade the jury a single Class Member did not pay

United States District Court
Northern District of California

transaction fees, *Hale* is not analogous.

So, Plaintiffs have shown a class action is superior.  Plaintiffs have therefore satisfied their burden of proof as to Rule 23(b)(3).

## II.      RULE 23(B)(2)

To satisfy the requirements of a Rule 23(b)(2) class, the plaintiffs must show the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *See Bates v. United Parcel Service, Inc.,* 511 F.3d 974, 985 (9th Cir. 2007).

In opposing class certification, GreenSky argued "neither named Plaintiff has standing to seek injunctive relief[,] so certification of the (b)(2) class is inappropriate."  (Dkt. No. 294 at 44.) However, on summary judgment, the Court found "[d]rawing inferences in Plaintiffs' favor, the evidence that Ms. Barnes will likely seek financing from GreenSky for a future home repair project creates a genuine dispute as to Ms. Barnes's threat of future harm."  (*Id.* at 27.) Specifically, Plaintiffs' evidence "Ms. Barnes owns a home where repair projects tend to arise, 'would like to obtain financing if available,' and 'would like to be able to finance [the] projects using a Gree[n]Sky loan' . . . establish[ed] a genuine dispute as to her 'real and immediate threat of repeated injury.'" (*Id.* at 28 (citing Dkt. No. 267-6 ¶¶ 6-9; *Bates*, 511 F.3d at 985).)  And because the Court had "denied GreenSky's motion for summary judgment as to Ms. Barnes's claim for injunctive relief," "Ms. Barnes ha[d] standing to pursue injunctive relief," and Plaintiffs met Rule 23(b)(2)'s requirements.  (*Id.* at 44.)

GreenSky now renews its argument Ms. Barnes lacks standing to pursue injunctive relief based on her February 17, 2026 interrogatory response stating she has "undertaken no [GreenSky-funded] Projects since January 1, 2023."  (Dkt. No. 402-14 at 3-4.)  In response, Plaintiffs present Ms. Barnes's April 1, 2026 declaration she has "hired contractors to perform [five] home-improvement projects" since January 1, 2023.  (Dkt. No. 421-3 ¶ 5.)  Although "[n]one of these projects were financed with GreenSky," Ms. Barnes declares she "would like to be able to use a GreenSky-program loan again to finance future home-improvement projects if [she] could trust

21

that GreenSky was complying with the law." (*Id.* ¶¶ 5, 7.)  So, there remains a factual dispute regarding Ms. Barnes's threat of future harm and therefore her standing to seek injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971-72 (9th Cir. 2018) (finding injunctive relief standing when the plaintiff "faces the similar injury of being unable to rely on [the defendant's] representations of its product in deciding whether or not she should purchase the product in the future" (citations omitted)).

The Court is also not persuaded by GreenSky's argument its new evidence shows "[t]here is no common policy or practice that affected all class members." (Dkt. No. 402 at 31.)  Unlike the cases GreenSky cites, GreenSky has not presented dispositive evidence any Class Member was not harmed or would not want the injunctive relief Plaintiffs seek.  *See Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1200-01 (9th Cir. 2024) (reversing 23(b)(2) class certification because the defendant showed relief would "reinstat[e] policies for Insureds who intentionally cancelled and who cannot show that the inadvertent policy lapse caused harm"), *cert. denied*, 145 S. Ct. 2852 (2025); *see also Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1265-66 (9th Cir. 2024) (remanding because the district court had not found commonality under Rule 23(a)).

So, Plaintiffs have met their burden of showing the Rule 23(b)(2) requirements are met.

### III.    RULE 23(A)

Under Federal Rule of Civil Procedure 23(a), a case is appropriate for certification if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### A.    Numerosity

The Court previously held Plaintiffs had satisfied the numerosity prerequisite because they stated the GreenSky Consumer Program included thousands of individuals, and GreenSky did not "dispute this number or contest numerosity." (Dkt. No. 294 at 29.)  As neither party argues any

22

new evidence or law affects the numerosity factor, Plaintiffs have satisfied numerosity.

**B.     Commonality**

"To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  To satisfy Rule 23(a)(2)'s commonality requirement, "even a single common question" is sufficient. *Dukes*, 564 U.S. at 359 (cleaned up).

The Court previously held Plaintiffs satisfied the commonality requirement because one "central issue in the case is whether GreenSky's business falls within the purview of the Credit Act and Financing Law."  (Dkt. No. 294 at 30.)  Because "even a single question" is sufficient for commonality, and the answer to this question "'will resolve an issue that is central to the validity of each one of the claims in one stroke,'" Plaintiffs had met their burden on commonality.  (*Id.* (quoting *Dukes*, 564 U.S. at 350, 359).)

GreenSky now argues the merchant declarations demonstrate a lack of commonality. However, GreenSky relies on Ninth Circuit cases discussing the predominance requirement under Rule 23(b)(3) rather than Rule 23(a)'s commonality requirement.  *See, e.g.*, *Bowerman*, 60 F.4th at 469 ("[I]ndividual inquiries clearly predominate over the common questions in the case, and the district court abused its discretion in holding otherwise."); *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) ("[T]he district court did not abuse its discretion in finding that common questions do not predominate."); *Van*, 61 F.4th at 1067-68 (finding the defendant's "scant evidence . . . is not sufficient to defeat predominance"); *Ambrosio*, 154 F.4th at 1112-13 ("[I]t cannot be said that common issues 'predominate over any questions affecting only individual members.'").  Although "[t]he requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a)," a plaintiff's failure to prove predominance does not mean the

23

United States District Court
Northern District of California

plaintiff cannot show commonality. *See Olean*, 31 F.4th at 664 (explaining commonality is necessary to prove predominance); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("Rule 23(b)(3)'s predominance criterion is [] more demanding than Rule 23(a)."). So, GreenSky's argument is unavailing.

Here, there remains a common question whether GreenSky's business falls within the purview of the Credit Act and Financing Law. Specifically, whether GreenSky is a credit services organization and therefore falls within the purview of Credit Act will "resolve an issue that is central to the validity of each one of the [Class Members' Credit Act] claims in one stroke." *See Dukes*, 564 U.S. at 350. GreenSky's contentions regarding how Plaintiffs will prove or GreenSky will disprove this common question go to predominance, not commonality.

So, Plaintiffs have shown commonality.

### C.    Typicality

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality serves to ensure that the interest of the named representative aligns with the interests of the class." *Ruiz Torres*, 835 F.3d at 1141 (quotations and citations omitted). "Under the Rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* (cleaned up). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The Court previously held the Plaintiffs had established typicality because Ms. Barnes and Mr. Ferguson sought to represent a class of California consumers subject to the same course of conduct: overpayment on their GreenSky-financed home-improvement projects due to GreenSky's allegedly unlawful fee collection. (Dkt. No. 294 at 31.) GreenSky now argues its merchant declarations defeat typicality because "[e]ven if Ms. Barnes and Mr. Ferguson succeeded in proving that *their* merchants passed through fees to *them* in *their* transactions . . . that would say

24

nothing about whether thousands of *other* merchants passed through fees to *other* class members." (Dkt. No. 402 at 29.)  But Plaintiffs plan to prove Ms. Barnes and Mr. Ferguson paid pass-through fees in the same way they plan to prove every other Class Member paid pass-through fees: Dr. Williams's report.  So, contrary to GreenSky's assertion, this remains a case in which "'as goes the claim of the named plaintiff, so go the claims of the class.'"  *See O'Connor*, 197 F.R.D. at 412 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc)).  And unlike in *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429 (C.D. Cal. 2007), where the plaintiff sought different relief from the absent class members, Ms. Barnes and Mr. Ferguson seek the same relief as the absent class members.  *See id.* at 435 (finding no typicality because the named plaintiff "seek[s] relief for her dog's existing injuries, but other class members [] seek costs for monitoring their dogs' health to ensure no injuries arise in the future").

So, Plaintiffs have shown typicality.

### D.      Adequacy

Like typicality, adequacy of representation ultimately concerns whether the class action device will protect the interests of absent class members.  *See Dukes*, 564 U.S. at 349 n.5.  Courts ask, "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the actions vigorously on behalf of the class?"  *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (cleaned up); *see also Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992) (noting adequacy of representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." (cleaned up)); Fed. R. Civ. P. 23(g)(1).

The Court previously held "[g]iven no conflicts are apparent between the named plaintiffs and other class members, and class counsel is experienced in class action employment litigation, the adequacy requirement is met."  (Dkt. No. 294 at 33 (citing Dkt. No. 235-4 ¶¶ 3-7; Dkt. No. 241-3 ¶¶ 3-9; Dkt. No. 241-4 ¶¶ 3-7).)  In a footnote, GreenSky now argues the named "Plaintiffs' prosecution of their own claims will not advance the claims of the vast swaths of the class, given the variability in facts shown by the merchant declarations."  (Dkt. No. 402 at 29 n.11.)  But that

GreenSky may present different rebuttal evidence for each Class Member does not mean named Plaintiffs are inadequate.  To the contrary, as explained above, Ms. Barnes and Mr. Ferguson plan to prosecute their claims by persuading the jury of Dr. Williams's report, which concludes, among other things, every Class Member was injured.

So, there remain no conflicts between named Plaintiffs and absent Class Members, and Plaintiffs have shown adequacy.

<div align="center">

**CONCLUSION**

</div>

For the reasons stated above, Plaintiffs have shown, despite GreenSky's new evidence, the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met.  The Court therefore DENIES GreenSky's motion to decertify Plaintiffs' 23(b)(2) and 23(b)(3) classes.

The parties have agreed on the proposed long and short form notices.  (Dkt. No. 388.) However, in light of GreenSky's impending motion to decertify the class, the Court on March 5, 2026 declined to order class notice.  (Dkt. No. 396.)  Having denied GreenSky's motion to decertify, the Court orders class notice in accordance with the class notice plan granted at Docket No. 304.  The parties shall file a copy of the class notice, once issued, on the docket.

The Court sets a further case management conference for September 23, 2026 at 2:00 p.m. via Zoom video.  An updated joint case management conference statement is due one week in advance.  Plaintiffs shall also file a proposed verdict form by September 9, 2026.

This Order disposes of Docket No. 402.

**IT IS SO ORDERED.**

Dated:

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California